# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NEZ PERCE TRIBE, *et al.*,    )
    )
    )
        Plaintiffs,    )
    )    No. 06cv02239-JR
    )
        v.    )
    )
DIRK KEMPTHORNE,    )
Secretary of the Interior, *et al.,*    )
    )
    )
        Defendants.    )
_____)

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR A REMAND AND STAY OF LITIGATION

Pursuant to this Court's order of August 23, 2007 (Doc. #39), Plaintiffs hereby file this supplemental opposition to Defendants' Motion for Remand and Stay of Litigation of August 1, 2007 (Doc. # 37). Plaintiffs' points and authorities set forth herein are not covered in the principal opposition briefs filed October 1, 2007 in, *inter alia, Ak-Chin Indian Community v. Kempthorne,* No. 06-2245 (Doc. # 22) and *Osage Tribe of Indians v. Kempthorne,* No. 04-0283 (Doc. # 51).

Plaintiffs are very concerned that Defendants' Motion for a Remand and Stay of Litigation is nothing more than a concerted and broad effort to limit or avoid judicial declaration and enforcement of Defendants' fiduciary obligations. At least two named Plaintiffs in this action, the Nez Perce Tribe and the Pawnee Nation of Oklahoma, also have actions involving their trust accounts and funds pending in the U.S. Court of Federal Claims (CFC): *Nez Perce Tribe v. United States,* No. 06-910 (Fed. Cl. filed Dec. 28, 2006) and *Pawnee Nation of Oklahoma,* No. 07-02 (Fed.

1

Cl. filed Jan. 3, 2007).

As stated most clearly in a "Proposed Scheduling Order" filed quite recently by Defendants in another tribal trust accounts and funds action in the CFC, *Round Valley Indian Tribes v. United States,* No. 06-0900 (Fed. Cl. filed Dec. 27, 2007), Defendants intend their requested remand – which they claim is necessary for them to prepare a tribal historical accounting plan (and perhaps some actual accountings) – to affect not only the proceedings in tribal trust claims before this Court, but also such claims in the CFC.

> Further according to Defendant, this historical accounting plan and the individual Tribal accountings, in particular, the one for Plaintiff, are likely to have an effect on Plaintiff's trust accounting and trust mismanagement claims herein. Defendants (sic) shall provide periodic reports, as appropriate, to the Court and Plaintiff herein about the status of Interior's preparation and presentation of its historical accounting plan and the individual accounting for Plaintiff. Based on those periodic reports, the Court will determine whether and how to proceed with respect to the effects of the accounting plan and Tribal accounting, if any, on the proceedings in this case.

*Round Valley Indian Tribes v. United States,* No. 06-0900, Defendant's Proposed Scheduling Order at ¶ 13 (Fed. Cl. filed Aug. 28, 2007) (Doc. # 16). This Proposed Scheduling Order, a copy of which is attached hereto as Exhibit 1, shows that a goal of securing a remand in cases in this Court is to reduce Defendants' CFC case obligations to nothing more than "periodic reports."

Moreover, as Plaintiffs stated in their First Amended Complaint at ¶ 52 (filed April 2, 2007 ) (Doc. # 27), only seven months ago, even as they were preparing to ask this Court for a litigation "time-out" to develop a "plan" for accountings which they admit are owed to Plaintiffs, Defendants were asking Congress to relieve them of any and all tribal "historical accounting obligations." *See* "Key Facets of Acceptable Indian Trust Reform and Settlement Legislation," attached to Letter from Secretary of the Interior Dirk Kempthorne and Attorney General Alberto Gonzales to The Honorable

Byron Dorgan, Chairman, Committee on Indian Affairs, United States Senate (Mar. 1, 2007), copy attached hereto as Exhibit 2.

For the above stated reasons as well as those set forth in the principal opposition briefs filed October 1, 2007, Plaintiffs oppose Defendants' Motion for a Remand and Stay of Litigation.[1] Pursuant to LCvR 7(c), a proposed Order is submitted herewith.

DATED this 22nd day of October, 2007

Respectfully submitted,

<div style="margin-left:40%">

*/s/    Melody L. McCoy*
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

</div>

---

[1]  Should this Court find that a remand and stay is appropriate, Plaintiffs respectfully ask that they be granted an opportunity to address to the Court the issue of whether such remand or stay  necessarily precludes discovery on class related issues and even the merits of class certification.  "Initial class rulings may be made before, after, or simultaneously with the disposition of other motions" including non-dispositive motions and dispositive motions.  3 Alba Conte and Herbert Newberg, Newberg on Class Actions § 7:15 (4th ed. 2002).

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of October, 2007, a true and correct copy of the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR A REMAND AND STAY OF LITIGATION was served by Electronic Case Filing or by regular first class U.S. mail, postage pre-paid, on the following counsel:

E. KENNETH STEGBEY
ANTHONY P. HOANG
KEVIN J. LARSEN
MAUREEN RUDOLPH
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663
Tel (202) 616-4119
Tel (202) 305-0241
Tel (202) 305-0479
Fax (202) 353-2021

JOHN H. MARTIN
U.S. Department of Justice
Natural Resources Section
1961 Stout St., Eighth Floor
Denver, CO 80294
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax (303) 844-1350

Attorneys for Defendants

OF COUNSEL:

PAUL SMYTH
ELISABETH BRANDON
THOMAS BARTMAN
GLADYS I. COHOCARI
SHANI N. WALKER
Office of the Solicitor
U.S. Department of the Interior
Washington, DC 20240

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
U.S. Department of the Treasury
Washington, DC 20227

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06cv02239-JR |
| | ) | |
| v. | ) | |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| Secretary of the Interior, *et al.,* | ) | . |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFFS' [PROPOSED] ORDER

This matter is before the Court on Defendants' Motion for a Remand and Stay of Litigation.

Upon consideration of Defendants' Motion and Plaintiffs' Opposition to the Motion, it is hereby

ORDERED that Defendants' Motion for a Remand and Stay of Litigation is DENIED;

SO ORDERED.

Date: _____     _____

HON. JAMES ROBERTSON
United States District Court

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ROUND VALLEY INDIAN TRIBES, a
federally recognized Indian tribe,

      Plaintiff,

      v.

THE UNITED STATES OF AMERICA,

      Defendant.

Case No.: 06-00900 L
Judge Susan G. Braden

Electronically Filed

## [DEFENDANT'S PROPOSED] SCHEDULING ORDER

The Court has instructed the parties herein to submit proposed scheduling orders in this case, for its consideration and for discussion with the parties at a joint status conference on August 29, 2007. The parties have complied with the Court's instruction. In so doing, the parties have undertaken their submission before Defendant has filed its Answer or otherwise responded to the Complaint herein and before the parties have met, conferred, prepared, and filed a joint preliminary status report (JPSR), as required by Appendix A of the Rules of the Court of Federal Claims (RCFC). Upon consideration of the parties' submissions, it is hereby ORDERED that

1.     Defendant shall file an Answer on or before September 10, 2007.

2.     The parties shall file their JPSR, as required by RCFC Appendix A, on or before September 24, 2007. Additionally, the parties shall file a joint proposed discovery scheduling order with their JPSR on that day. If the parties are unable to submit such a joint proposed order, they shall file separate proposed orders.

3.     The parties shall file a joint stipulation and proposed order regarding the confidentiality of certain documents and data to be provided by Defendant to Plaintiff in this case, on or before October 5, 2007. If the parties are unable to submit such a joint stipulation and proposed order, they shall file separate proposed orders. The Court will review the parties' joint or

separate proposal(s) and issue an appropriate confidentiality protective order.

      4.      Discovery in this case shall proceed in three phases.

      5.      The first phase—which shall begin and run for 360 days after the issuance by this Court of an order, based on the joint or separate submissions by the parties, protecting the confidentiality of certain documents and data to be provided by Defendant to Plaintiff herein—shall consist of the factual discovery that Plaintiff needs in order to delineate and define the claims that it shall set forth in a detailed specification of its claims in this case. Such discovery shall be limited to document productions, interrogatories, and requests for admission. Defendant may take discovery from Plaintiff during this phase as well, if Defendant so chooses. The parties shall conduct any discovery in accordance with the requirements of the RCFC.

      6.      As to the documents that are in the possession, custody, and control of the Interior Department, to the extent that those documents relevant or potentially relevant to Plaintiff's claims herein are located at multiple locations, including federal records repositories, around the country and to the extent that those documents may be found in hundreds, possibly thousands, of boxes of retired federal records, as well as active government documents, the parties shall undertake the following process with respect to Interior's response to Plaintiff's document production requests:

      a.      The parties shall work together to identify the boxes that may contain responsive documents;

      b.      The Solicitor's Office of the Interior Department shall conduct a pre-inspection privilege review of those identified boxes;

      c.      Plaintiff's counsel shall inspect the boxes and identify those documents it wishes to have produced; and

      d.      Defendant shall image, code, and conduct a post-inspection confidentiality

and privilege review, before producing the images of the requested documents to Plaintiff, pursuant to the confidentiality protective order to be entered by this Court.

7.    The parties may jointly or separately petition the Court in writing to extend this first phase of discovery, if they deem such extension to be necessary and appropriate.

8.    Within 60 days of the completion of the first phase of discovery, Plaintiff shall file a written specification of its claims in this case.  This specification shall state, in substantive detail, the factual and legal bases for the trust duties and responsibilities and the breaches of those trust duties and responsibilities, that Plaintiff has alleged in this case.   Among other things, the specification shall address, with specificity, whether Plaintiff's claims are based on substantive sources of law, such as a statute, treaty, or regulation that purport to establish specific fiduciary or other duties, and, if so, what those substantive sources are; to the extent that Plaintiff's claims are based on alleged, specific duties purportedly established in substantive sources of law, whether a breach of those alleged duties would mandate the payment of compensation; whether Defendant has failed to perform any alleged, specific money-mandating duties, and, if so, what those alleged specific duties are; and whether Plaintiff's claims were within the exclusive jurisdiction of the Indian Claims Commission.  Additionally, the specification shall recite, in detail, the particular historical accounting of Plaintiff's trust funds and non-monetary trust assets that Plaintiff alleges is owed by Defendant to Plaintiff, as well as the legal source of that trust accounting duty and responsibility.

9.    The second phase of discovery shall begin on the day after Plaintiff has filed its detailed written specification of claims, and it shall run for 120 days thereafter.  This discovery phase shall be limited to the fact discovery required for Defendant's jurisdictional challenges to Plaintiff's claim specification.  The parties may jointly or separately petition the Court in writing

to extend this second discovery phase, if they deem such extension to be necessary and appropriate.

10.    Within 90 days of the conclusion of the second discovery phase, Defendant shall file its dispositive motion or motions raising its jurisdictional defenses.

11.    The parties may confer and jointly propose to the Court a schedule for the briefing on Defendant's jurisdictional challenge to Plaintiff's detailed written specification of claims.

12.    After its ruling on Defendant's jurisdictional challenge, the Court will confer with the parties and schedule further proceedings in this case, including but not limited to the scheduling of the third or final phase of discovery, which would include any remaining fact discovery and fact or RCFC 30(b)(6) depositions on any factual claims that survive Defendant's jurisdictional challenges; expert witness discovery; and, if necessary and appropriate trial.

13.    According to Defendant, the Interior Department has filed a motion for remand in the 37 Tribal trust accounting and trust mismanagement cases that have been filed in the United States District Court for the District of Columbia, because, as required by law, Interior has decided to prepare and present a historical accounting plan to address the claims of Tribes (including Plaintiff) for accountings of Tribal trust funds and non-monetary trust assets or resources.  Also according to Defendant, upon completion and presentation of this historical accounting plan (which addresses accountings of all Tribes, including Plaintiff), Interior plans to prepare and provide accounting(s) to the individual Tribes, including Plaintiff, to the extent required.  Further according to Defendant, this historical accounting plan and the individual Tribal accountings, in particular, the one for Plaintiff, are likely to have an effect on Plaintiff's trust accounting and trust mismanagement claims herein.  Defendants shall provide periodic reports, as appropriate, to the Court and Plaintiff herein about the status of Interior's preparation and presentation of its historical accounting plan and the individual accounting for Plaintiff.  Based on those periodic reports, the Court will determine

- 4 -

whether and how to proceed with respect to the effects of the accounting plan and Tribal accounting, if any, on the proceedings in this case.

       SO ORDERED.

Date: _____

                                      _____

                                      HON. SUSAN G. BRADEN
                                      Judge, United States Court of Federal Claims





MAR 0 1 2007

The Honorable Byron Dorgan
Chairman, Committee on Indian Affairs
United States Senate
Washington, D.C. 20510

Dear Mr. Chairman:

Thank you for your letter and continued interest in legislation to address Indian land trusts. The Administration strongly supports a comprehensive legislative package designed to strengthen the partnership between the Federal Government and American Indians by moving from a litigation-oriented relationship to one of economic prosperity, empowerment, and self-reliance for tribes and individual Indians.

To achieve these goals, the Administration is willing to invest up to $7 billion, over a ten year period, as explained in the enclosed summary. A legislative package valued at that amount would need to take the next step, over an appropriate term of years, in true self-governance and self-determination, by ensuring trust lands are managed by Indian owners and tribes who have full authority, responsibility, and liability for their decisions. Legislation that embraces an Indian owner-managed trust relationship will permit Indian landowners and tribes to exercise their rights to the full beneficial use and enjoyment of their property interests.

Our commitment to implement a successful Indian owner-managed trust relationship includes legislative mechanisms and priority funding to consolidate the millions of fractionated interests that have severely undermined the economic viability of many Indian allotments. In the short term, this land interest consolidation initiative would result in a substitution of trust assets – Indians will receive cash in place of the mostly unmarketable fractionated land interests held by many minor interest owners. In the long term, we believe that the consolidation of fractionated land interests will significantly increase the value of the trust estate, enable increased opportunity for economic development, and ensure Indian landowners are able to make land use decisions.

As noted in the enclosed summary, settlement legislation requires provisions and funding to settle all existing and potential individual and tribal claims for trust accounting, cash and land mismanagement, and other related claims, along with the resolution of other related matters (e.g., trust reform, IT security, etc.) that otherwise burden the lands at issue and permit recurrence of such highly disruptive litigation. Because it will enhance the value of these lands to their Indian owners, we expect that the package would create benefits greatly exceeding the dollars to be expended.

The Honorable Byron Dorgan                                                      2

Over the past few months, we have benefited greatly from the discussions we have had with the majority and minority staff on the Senate Committee on Indian Affairs. We look forward to continuing our work with Congress to help usher in a new era of independence and prosperity for Indian landowners and tribes and a future relationship with Indian Country that reflects our commitments to self-governance and self-determination.

Please let us know how we can assist you, Vice-Chairman Thomas, and Chairman Rahall and Ranking Member Young of the House Natural Resources Committee, with this important legislative initiative. Similar letters have been addressed to them and Senator McCain.

Again, thank you for your continued support on this matter.

The Office of Management and Budget advises that it does not object to enactment of legislation that is consistent with this letter and the enclosed summary entitled "Key Facets of Acceptable Indian Trust Reform and Settlement Legislation."

                                           Sincerely,

DIRK KEMPTHORNE                                              ALBERTO R. GONZALES
Secretary of the Interior                                    Attorney General


Enclosure

**KEY FACETS OF ACCEPTABLE INDIAN TRUST REFORM AND SETTLEMENT LEGISLATION**

The Administration will support Congressional efforts to adopt legislation that would reform and improve major components of Title 25 of the U.S. Code dealing with Indian land trusts. The Administration is prepared to consider a multi-billion dollar expenditure for this purpose if said legislation (as drafted in bill language, not merely outlined in a White Paper) ends all actual and potential litigation disputes associated with those land trusts and is constructed to achieve the following:

**[Land Empowerment Reforms]**

• Requires conversion of all 128,000 individual Indian allotments, once fractionated interests are reasonably consolidated, into Indian-owner-managed trust status, within no more than 10 years.

• Requires mechanisms and guaranteed priority of all necessary funding (within the overall settlement cap) to consolidate the 3.6 million fractionated interests to the degree necessary to enable individual Indians to gain the beneficial use and enjoyment of their property rights within an owner-managed trust, using both voluntary mechanisms and mandatory authority.

• Includes incentives to enable individual Indian land owners to undertake the duties and responsibilities of property management, and to encourage voluntary conversion to Indian-owner-managed trusts sooner than 10 years.

**[Liability Elimination and Positive Future Relationship]**

• Relieves the government of all historical accounting obligations, and deems account balances accurate as of the date of enactment of legislation. Settles all cash mismanagement claims that have been or could be brought by individual Indians, and all land-based mismanagement claims that have been or could be brought by individual Indians (also including disputes about right of way, title recording, trespass, or any others related to land).

• Provides relief from all other aspects of the *Cobell* litigation, including limits on attorney fees (no common fund recovery, hourly fees only and with requisite documentation proof, aggregate cap).

• Precludes the government's future liability exposure on any land which is left under government title. Restricts government liability during transition period. Includes provisions to prevent future mismanagement liability claims for any residual responsibilities that the government would continue to provide (close loopholes tightly). Mechanisms can permit the raising and correction of errors, but without assigning liability or damages to the government. Also requires clear statute of limitations, and bar on prejudgment interest.

**[Tribes]**
*[Note:  Resolution of Tribal litigation claims could be deferred, but value of the settlement will change substantially with the inclusion or exclusion of Tribal exposures]*

• Requires conversion of all Tribal trust lands into Tribal-managed trust status within 10 years.

• Ends all tribal historical accounting claims, cash mismanagement, and land mismanagement issues in similar fashion as for individual claims.

• Includes provisions to prevent future mismanagement liability claims for any residual responsibilities that the government would continue to provide (close loopholes tightly).

**[General]**

• No lump-sum funding. Land consolidation and then settlement administration payouts to be drawn down as needed from U.S. Treasury (i.e., no interest). Funding established up front may be spread over multiple years.

• Aim for legislation enactment in calendar year 2007, but recognize that a complex settlement cannot be rushed.