## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, *et al.,*<br>for and on behalf of themselves<br>all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE,<br>SECRETARY OF THE INTERIOR, *et al.,*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06cv02239-JR<br><br>**Electronically Filed on<br>June 13, 2008** |

## PLAINTIFFS' NOTICE OF FILING CORRECTED MEMORANDUM
## IN SUPPORT OF CLASS CERTIFICATION MOTION

On June 6, 2008, Plaintiffs' filed their Motion for Class Certification (Doc. # 53) and a Memorandum in Support of that Motion (Doc. # 53-2). Subsequent to the filing of these documents, Plaintiffs noted that the Table of Contents and Table of Authorities in the Supporting Memorandum were incorrect or incomplete. Accordingly, on June 6, 2008, Plaintiffs filed an Unopposed Motion for, *inter alia,* Leave to File Corrected Memorandum (Doc. # 55).

On June 12, 2008, the Court by Minute Order granted Plaintiffs' Unopposed Motion for Leave to File Corrected Memorandum. On June 13, 2008, Plaintiffs' Counsel contacted the Clerk's Office ECF Help Line and was advised to file the Corrected Memorandum along with this Notice of Filing. Accordingly, Plaintiffs hereby give notice that they are filing the Corrected Memorandum attached hereto. This Corrected Memorandum replaces Doc # 53-2.

As stated in Plaintiffs' Unopposed Motion for Leave to File Corrected Copy, only the Table

of Contents, Table of Authorities, and pagination of the Memorandum that was filed on June 6, 2008

have been corrected.  No changes to the text of the Memorandum have been made.  Plaintiffs regret

any inconvenience to the Court and to Defendants as a result of the inadvertent and technical error.


Respectfully submitted this 13th day of June, 2008,


*/s/     Melody L. McCoy*
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2008, a true and correct copy of the foregoing PLAINTIFFS' NOTICE OF FILING CORRECTED MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION was served by Electronic Case Filing or by regular first class U.S. mail, postage pre-paid, on the following counsel:

E. KENNETH STEGEBY
ANTHONY P. HOANG
KEVIN J. LARSEN
MAUREEN RUDOLPH
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663
Tel (202) 616-4119
Tel (202) 305-0241
Tel (202) 305-0479
Fax (202) 353-2021

JOHN H. MARTIN
U.S. Department of Justice
Natural Resources Section
1961 Stout St., Eighth Floor
Denver, CO 80294
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax (303) 844-1350

Attorneys for Defendants

3

OF COUNSEL:

PAUL SMYTH
ELISABETH BRANDON
THOMAS BARTMAN
GLADYS I. COHOCARI
SHANI N. WALKER
Office of the Solicitor
U.S. Department of the Interior
Washington, DC 20240


TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
U.S. Department of the Treasury
Washington, DC 20227

*/s/     Melody L. McCoy*
MELODY L. MCCOY, USDC Bar. No. CO0043
Attorney for Plaintiffs

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, *et al.,* | ) | |
| for and on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06cv02239-JR |
| | ) | |
| | ) | |
| DIRK KEMPTHORNE, | ) | |
| SECRETARY OF THE INTERIOR, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR CLASS ACTION CERTIFICATION
AND FOR APPROVAL OF CLASS NOTICE**

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    The Nature of this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    The Government's Fiduciary Trusteeship of Tribal Trust Fund Accounts . . . . . . . . . . 2
    The Government's Historical and Present Misaccounting for Tribal Trust
      Funds is Well-Documented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    The Fiduciary Obligation to Provide Full and Complete Accountings . . . . . . . . . . . . . 6
    The Arthur Andersen (AA) Agreed-Upon Procedures Project . . . . . . . . . . . . . . . . . . . 9
    The AA Reports Are Not Full and Complete Accountings . . . . . . . . . . . . . . . . . . . . . 14
    OIG and GAO Reports Since the AA Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    Congressional Efforts Regarding Tribal Trust Reform in addition to and
      since the 1994 Trust Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    Procedural History of this Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    General Facts About the Twelve Named Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**SUMMARY OF ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    **THIS ACTION SATISFIES THIS COURT'S TEST FOR CLASS**
    **CERTIFICATION UNDER RULE 23** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        A. This Court has Broad Discretion under Rule 23 to Certify a Class . . . . . . . . 27
        B. The Proposed Class As Defined In This Action Exists . . . . . . . . . . . . . . . . . 29
        C. All Requirements Of Rule 23(a) And (b) Are Satisfied Here . . . . . . . . . . . . 32
            1. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            2. Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
            3. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            4. Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
            5. Risk of Separate Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
            6. Defendants' Common Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
            7. Predominance and Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
                a. Predominance of Common Questions of Law . . . . . . . . . . . 47
                b. Superiority of Class Action . . . . . . . . . . . . . . . . . . . . . . . . . 48

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**ATTACHMENTS**

Attachment A

U.S. Department of the Interior, Office of the Inspector General (OIG), Statement of Assets and Trust Fund Balances at September 30, 1995, of the Trust Funds Managed by the Office of Trust Funds Management, Bureau of Indian Affairs, Audit Rep. No. 97-I-196 (Dec. 1996)

Attachment B

U.S. General Accounting Office (GAO), Indian Trust Fund Q&As, GAO/AIMD/OGC-97-23R (Dec. 10, 1996)

Attachment C

U.S. Department of the Interior, Bureau of Indian Affairs (BIA), Interim Improvement Plan for the BIA, Trust Funds Management Improvement Program, Special Report (July 1991)

Attachment D

OIG, Independent Auditors Report on the Financial Statements for Fiscal Years 1998 and 1997 for the OST Tribal and Other Special Trust Funds and Individual Indian Monies Trust Funds Managed by the Office of Trust Fund Management, Rep. No. 00-I-434 (May 2000)

Attachment E

GAO, Testimony before the U.S. Senate Select Committee on Indian Affairs, Financial Management, Status of BIA's Efforts to Resolve Long-Standing Trust Fund Management Problems GAO/T-AFMD-92-16 (Aug. 12, 1992)

Attachment F

OIG Audit Report, Selected Aspects of Indian Trust Fund Activities, BIA, Rep. No. 89-117 (Sept. 1989)

Attachment G

OIG, Accounting Controls Over Tribal Trust Funds, Audit Rep. No. C-IA-BIA-24-83 (Sept. 1983)

Attachment H

BIA, Specifications for Audit and Reconciliation of Tribal Trust Funds Accounts, Solicitation No. RFP BIA K51-91-200 (Feb. 1, 1991)

Attachment I

> BIA, Office of Trust Fund Management, Work Plan Description for the Reconciliation of Tribal and Individual Indian Monies Trust Funds (Jan. 23 and Jan. 25, 1991)

Attachment J

> Arthur Andersen & Co., Trust Funds Management by the U.S. Department of the Interior, Bureau of Indian Affairs, Report on Compliance and Report on Internal Controls as of Sept. 30, 1988 (Mar. 1989)

Attachment K

> BIA Contract No. CMK00129391 (Also known as Contract Nos. CMK00129392, CMK00129393, CMK001293394, and CMK00129395) (Reconciliation of the Bureau of Indian Affairs' Trust Funds, Arthur Andersen & Co., Contractor)
>> 1. Modification #1, Contract CMK00129392
>> 2. Modification #2, Contract CMK00129392
>> 3. Modification #3, Contract CMK00129392
>> 4. Modification #4, Contract CMK00129392
>> 5. Modification #5, Contract CMK00129392
>> 6. Modification #6, Contract CMK00129392
>> 7. Modification #7, Contract CMK00129393
>> 8. Modification #8, Contract CMK00129393
>> 9. Modification #9, Contract CMK00129393
>> 10. Modification #10, Contract CMK00129393
>> 11. Modification #11, Contract CMK00129393
>> 12. Modification #12, Contract CMK00129393
>> 13. Modification #13, Contract CMK00129393
>> 14. Modification #14, Contract CMK00129393
>> 15. Modification #15, Contract CMK00129393
>> 16. Modification #16, Contract CMK00129393
>> 17. Modification #17, Contract CMK00129393
>> 18. Modification #18, Contract CMK00129393
>> 19. Modification #19, Contract CMK00129393
>> 20. Modification #20, Contract CMK00129394
>> 21. Modification #21, Contract CMK00129394
>> 22. Modification #22, Contract CMK00129394
>> 23. Modification #23, Contract CMK00129394
>> 24. Modification #24, Contract CMK00129394
>> 25. Modification #25, Contract CMK00129394
>> 26. Modification #26, Contract CMK00129394
>> 27. Modification #27, Contract CMK00129394
>> 28. Modification #28, Contract CMK00129394

29. Modification #29, Contract CMK00129394
30. Modification #30, Contract CMK00129395
31. Modification #31, Contract CMK00129395
32. Modification #32, Contract CMK00129395
33. Modification #33, Contract CMK00129395

Attachment L
U.S. Department of the Interior, BIA, Acquisition Request, Obligation Authority No. K01-51/1/3400/4361 (Dec. 23, 1991)

Attachment M
BIA, Trust Funds Reconciliation Project Overview Presentation (Jan. 28, 1992)

Attachment N
BIA, AA, Tribal Trust Funds Reconciliation Project Procedures / Results (Feb. 1996)

Attachment O
BIA, AA, Tribal Trust Funds Reconciliation Project, Agreed-Upon Procedures and Findings Report July 1, 1972 through Sept. 30, 1992 (SAMPLE) (Jan. 1996)

Attachment P
BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results (Dec. 1996)

Attachment Q
BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Feb. 1996)

Attachment R
BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Jan. 1996)

Attachment S
Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996)

Attachment T
U.S. Department of the Interior, OST, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 (Apr. 1997)

Attachment U
U.S. Department of the Interior, OIG, Semiannual Report to Congress, Rep. No. 04-S-05 (Apr. 2005)

Attachment V
>Letter from Secretary of the Interior Dirk Kempthorne and Attorney General Alberto R. Gonzales to the Honorable Bryan Dorgan, Chairman, Senate Committee on Indian Affairs and attachment "Key Facets of Acceptable Indian Trust Reform and Settlement Legislation" (Mar. 1, 2007)

Attachment W
>Statement of Dirk Kempthorne, Secretary of the Interior, Before the U.S. Senate Committee on Indian Affairs Oversight Hearing on Indian Trust Fund Litigation (Mar. 29, 2007.)

Attachment X
>Declaration of Samuel N. Penney (Nez Perce Tribe) (May 19, 2008)

Attachment Y
>Declaration of Carleton Naiche-Palmer (Mescalero Apache Tribe) (May 29, 2008)

Attachment Z
>Declaration of Neil Peyron (Tule River Indian Tribe) (May 19, 2008)

Attachment AA
>Declaration of Sherry Counts (Hualapai Tribe) (May 20, 2008)

Attachment BB
>Declaration of Ralph R. Sampson, Jr. (Yakama Nation) (May 30, 2008)

Attachment CC
>Declaration of Joseph Kirk (Klamath Tribes) (May 21, 2008)

Attachment DD
>Declaration of Maria Tripp (Yurok Tribe) (May 22, 2008)

Attachment EE
>Declaration of Darrell Flyingman (Cheyenne-Arapaho Tribe) (June 3, 2008)

Attachment FF
>Declaration of George E. Howell (Pawnee Nation) (May 28, 2008)

Attachment GG
>Declaration of George Thurman (Sac and Fox Nation) (May 27, 2008)

Attachment HH
      Declaration of Roger Trudell (Santee Sioux Tribe) (May 19, 2008)

Attachment II
      Declaration of William E. Martin (Tlingit & Haida Tribes) (June 3, 2008)

Attachment JJ
      Declaration of Kevin W. Nunes (June 5, 2008)

Attachment KK
      Letter from Sue Ellen Sloca, FOIA Officer, Office of the Secretary, to Donald R.
      Wharton, Senior Attorney, Native American Rights Fund, and attachment "Account
      Holders Distribution List" (January 16, 1997)

Attachment LL
      Declaration of Stuart Mermelstein (May 22, 2008)

Attachment MM
      Declaration of Melody McCoy (June 5, 2008)

# TABLE OF AUTHORITIES

## CASES

**Page**

*Ak-Chin Indian Community v. Kempthorne, et al.,*
No. 06-02245-JR (D.D.C filed Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 35

*Angle v. United States,* 709 F.2d 570 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Arizona v. California,* 460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Banyai v. Mazur,* 205 F.R.D. 160 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 42

*Barnes v. District of Columbia,* 242 F.R.D. 113 (D.D.C. 2007) . . . . . . . . . . . . . . . 32, 43, 46, 49

*Chang v. United States,* 217 F.R.D. 262 (D.D.C 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Cherokee Nation v. Babbitt,* 944 F.Supp. 974 (D.D.C. 1996), *rev'd on other grounds,*
117 F.3d 1489 (D.C.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 639 (Fed. Cl. 2006) . . . . . . . . . . . . . 5

*Cobell v. Babbitt,* No. 96-1285-JR (D.D.C. filed June 10, 1996) . . . . . . . . . . . . . . . . . . . *passim*

*Cobell v. Babbitt,* 188 F.R.D. 122 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cobell v. Norton,* 240 F.3d 1081 (D.C.Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 34

*Cobell v. Norton,* 283 F.Supp.2d 66 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 44

*Cobell v. Norton,* 225 F.R.D. 41 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Cobell v. Kempthorne,* 532 F.Supp.2d 37 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Colorado River Indian Tribes v. Kempthorne, et al.,* No. 06-2212-JR
(D.C.C. filed Dec. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Covelo Indian Cmty v. Watt,* 551 F.Supp. 366 (D.D.C. 1982), *aff'd as modified
and vacated as moot,* No. 83-2377 (D.C.Cir. Feb. 1, 1983) . . . . . . . . . . . . . . . . . . . 30, 34

*Disability Rights Council of Greater Washington v. Washington Metro.*
    *Area Transit Auth.*, 239 F.R.D. 9 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Doe v. First City Bancorp.,* 81 F.R.D. 562 (S.D.Tex. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Does I through III v. District of Columbia*, 232 F.R.D. 18 (D.D.C. 2005),
    *rev'd in part on other grounds and vacated in part,*
    489 F.3d 376 (D.C.Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968), *cert. denied,* 394 U.S. 928 (1969) . . . . . . . . . 29

*Eubanks v. Billington,* 110 F.3d 87 (D.C.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 43, 46

*Franklin v. Barry,* 909 F.Supp. 21 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*General Telephone Co. v. Falcon,* 457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Harris v. Graddick,* 615 F.Supp. 239 (M.D.Ala. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*In re Baan Co. Sec. Litig.,* 2002 WL 32307825 (D.D.C. July 19, 2002) . . . . . . . . . . . . . . *passim*

*In re Enron Corp.*, 2006 WL 1662596 (S.D.Tex. June 7, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 41

*In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12 (D.D.C. 2001),
    *review denied*, 289 F.3d 98 (D.C.Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Monumental Life Ins. Co.,* 365 F.3d 408 (5th Cir. 2004), *cert. denied,*
    543 U.S. 870 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*In re Nifedipine Antitrust Litigation,* 246 F.R.D. 365 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . 47

*Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Johnson v. District of Columbia,* 248 F.R.D. 46 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . *passim*

*Keepseagle v. Veneman,* 2001 WL 34676944 (D.D.C. Dec. 12, 2001) . . . . . . . . . . . . . . . *passim*

*Klamberg v. Roth,* 473 F.Supp. 544 (S.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Kyriazi v. W. Elec. Co.,* 647 F.2d 388 (3rd. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*LeBeau v. United States,* 334 F.Supp.2d 1200 (D.S.D. 2004), *rev'd on other grounds,* 474 F.3d 1334 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Lewis v. National Football League,* 146 F.R.D. 5 (D.D.C. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Lightfoot v. District of Columbia,* 246 F.R.D. 326 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . 46

*Littlewolf v. Hodel,* 681 F.Supp. 929 (D.D.C. 1988), *aff'd,* 877 F.2d 1058 (D.C.Cir. 1989), *cert. denied,* 493 U.S. 1043 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . 34, 36

*Lively v. Dynegy, Inc.,* 2007 WL 685861(S.D.Ill Mar. 2, 2007) . . . . . . . . . . . . . . . . . . . . . 34, 37

*Loudner v. United States,* 108 F.3d 896 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Loudner v. United States,* 200 F.Supp.2d 1146 (D.S.D. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*McCarthy v. Kleindienst,* 741 F.2d 1406 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Meijer, Inc. v. Warner Chilcott Holdings, Co. III,* 246 F.R.D. 293 (D.D.C. 2007) . . . . . . . 47, 48

*Merit Motors, Inc. v. Chrysler Corp.,* 1972 WL 603 (D.D.C. July 11, 1972) . . . . . . . . . . . . . . . 29

*Meyer v. Citizens and S. Nat'l Bank,* 106 F.R.D. 356 ((M.D.Ga. 1985) . . . . . . . . . . . . . . . . . . . 34

*Molski v. Gleich,* 318 F.3d 937 n.16 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Montgomery v. Aetna Plywood, Inc.* 1996 WL 189347 (N.D.Ill. Apr. 16, 1996) . . . . . . . . . . . 41

*Moose v. United States,* 674 F.2d 1277 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Nelson v. IPALCO Ent., Inc.,* 2003 WL 23101792 (S.D.Ind. Sept. 30, 2003) . . . . . . . . . . . . . . 40

*Newsome v. Up-To-Date Laundry, Inc.* 219 F.R.D. 356 (D.Md 2004) . . . . . . . . . . . . . . . . . . . . 44

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Passamaquoddy Tribe v. Kempthorne, et al.,* No. 06-2240-JR (D.D.C. filed Dec. 29, 2006) . . . 21

*Pate v. United States,* 328 F.Supp.2d 62 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Pechanga Band of Luiseno Mission Indians v. Kempthorne,* No. 06-2206-JR
    (D.D.C. filed Dec. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147 (2nd Cir. 2001),
    *cert. denied,* 535 U.S. 951 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Rogers v. United States,* 877 F.2d 1550 (Fed.Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Salt River Pima-Maricopa Indian Community v. Kempthorne, et al.,*
    No. 06-2441-JR (D.D.C. filed Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Short v. United States,* 50 F.3d 994 (Fed.Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Shoshone-Bannock Tribes v. Norton,* 2005 WL 2387595 (D.Idaho Sept. 28, 2005) . . . . . . . . . 35

*Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.,*
    140 F.R.D. 474 (S.D.Ga. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Stewart v. Rubin,* 948 F.Supp. 1077, 1088 (D.D.C. 1996), *aff'd,* 124 F.3d 1309
    (D.C.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Te-Moak Tribe of Western Shoshone Indians v. Kempthorne,* No. 05-2500-JR
    (D.D.C. filed Dec. 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Tohono O'Odham Nation v. Kempthorne, et al.,* No. 06-2236-JR
    (D.D.C. filed Dec. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 42

*United States v. Mitchell,* 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Whiskers v. United States,* 600 F.2d 1332 (10th Cir. 1979),
    *cert. denied,* 444 U.S. 1078 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*White Mountain Apache Tribe  v. United States,* 26 Cl.Ct. 446(Cl.Ct. 1992),
    *aff'd,* 5 F.3d 1506 (Fed. Cir. 1993), *cert. denied,* 511 U.S. 1030 (1994) . . . . . . . . . . . . 6

## STATUTES

25 U.S.C. § 155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

25 U.S.C. § 155b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

x

25 U.S.C. § 161a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

25 U.S.C. § 161b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 162a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 1401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 U.S.C. §§ 4001 - 4061 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

43 U.S.C. § 1457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. No. 100-202, 101 Stat. 1329 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pub L. No. 100-446, 102 Stat. 1774 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pub. L. No. 101-121, 103 Stat. 701 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

Pub. L. No. 101-512, 104 Stat. 1915 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

Pub. L. No. 102-154, 105 Stat. 990 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

Pub. L. No. 102-381, 106 Stat. 1374 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

Pub. L. No. 103-138, 107 Stat. 1379 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

Pub. L. No. 103-332, 108 Stat. 2499  (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

Pub. L. No. 104-134, 100 Stat. 1321 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 104-208, 110 Stat. 3009 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 105-83, 111 Stat. 1543 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 105-277, 112 Stat. 2681 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 106-113, 113 Stat. 1501 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 106-291, 114 Stat. 922 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 107-63, 115 Stat. 414 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 107-153, 116 Stat. 79 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pub. L. No. 108-7, 117 Stat. 11 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 108-108, 117 Stat. 1241 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pub. L. No. 108-447, 118 Stat. 2809 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pub. L. No. 109-54, 119 Stat. 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

Pub. L. No. 109-158, 119 Stat. 2954 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pub. L. No. 110-161, 121 Stat. 1844 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Act of Aug. 21, 1916, 39 Stat. 519 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Act of June 28, 1906, 34 Stat. 536 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## LEGISLATIVE MATERIALS

S. Rep. 107-138 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

S. Rep. 109-201 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

H.R. Rep. No. 102-499 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 44

H.R. Rep. No. 103-778 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Prepared Statement of Eddie F. Brown, Assistant Secretary for Indian Affairs
    at the Hearing Before the Environment, Energy, and Natural Resources
    Subcommittee, Committee on Government Operations, U.S. House of
    Representatives on Review of the Bureau of Indian Affairs Management
    of the $1.7 Billion Indian Trust Fund (Oct. 26, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Statement of Dirk Kempthorne, Secretary of the Interior, Before the U.S. Senate
    Committee on Indian Affairs Oversight Hearing on Indian Trust Fund
    Litigation (Mar. 29, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

S. 1439, 109th Cong. § 6; (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

S. 1459, 108th Cong. § 3 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## ADMINISTRATIVE MATERIALS

U.S. Department of the Interior, BIA, Interim Improvement Plan for the BIA,
Trust Funds Management Improvement Program, Special Report (July 1991) . . . . . . . . 4

BIA, Acquisition Request, Obligation Authority No. K01-51/1/3400/4361
(Dec. 23, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

BIA, Contract Nos. CMK00129391 - CMK100129395 (May 23, 1991)
and all 33 modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 39

BIA, AA, Tribal Trust Funds Reconciliation Project Procedures / Results (Feb. 1996) . . . . . . . 13

BIA, AA, Tribal Trust Funds Reconciliation Project, Agreed-Upon Procedures
and Findings Report July 1, 1972 through Sept. 30, 1992 (Jan. 1996) . . . . . . . . 12, 13, 14

BIA, Office of Trust Fund Management, Work Plan Description for the Reconciliation of
Tribal and Individual Indian Monies Trust Funds (Jan. 23 and Jan. 25, 1991) . . . . . . . . 9

BIA, Specifications for Audit and Reconciliation of Tribal Trust Funds Accounts,
Solicitation No. RFP BIA K51-91-200 (Feb. 1, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Feb. 1996) . . . . . . . . . . 14

BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Jan. 1996) . . . . . . . . . . 14

BIA, Trust Funds Reconciliation Project Overview Presentation  (Jan. 28, 1992) . . . . . . . . . . 11

BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation
Project Results (Dec. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

U.S. Department of the Interior, Office of the Inspector General (OIG),
Statement of Assets and Trust Fund Balances at September 30, 1995,
of the Trust Funds Managed by the Office of Trust Funds Management,
Bureau of Indian Affairs, Audit Rep. No. 97-I-196 (Dec. 1996) . . . . . . . . . . . . . . . 2-3, 4

OIG, Semiannual Report to the Congress (Oct. 1, 2006 - Mar. 31, 2007) . . . . . . . . . . . . . . . . . 17

OIG, Semiannual Report to the Congress , Rep. No. 04-S-05 (Apr. 2005) . . . . . . . . . . . . . . . . 17

OIG, Audit Report, Selected Aspects of Indian Trust Fund Activities, BIA,
Rep. No. 89-117 (Sept. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

OIG, Accounting Controls Over Tribal Trust Funds, Audit Rep.
   No. C-IA-BIA-24-83 (Sept. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

OIG, Independent Auditors Report on the Financial Statements for Fiscal Years
   1998 and 1997 for the OST Tribal and Other Special Trust Funds and
   Individual Indian Monies Trust Funds Managed by the Office of
   Trust Funds Management, Rep. No. 00-I-434 (May 2000) . . . . . . . . . . . . . . . . . . . . . . 4

U.S. Department of the Interior, OST, Strategic Plan to Implement the Reforms
   required by the American Indian Trust Fund Management Reform Act of 1994
   (Apr. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. Government Accountability Office (GAO), Testimony before the Committee
   on Natural Resources, House of Representatives:
   Department of the Interior:  Major Management Challenges,
   GAO-07-502T (Feb. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

GAO, Indian Trust Fund Q&As, GAO/AIMD/OGC-97-23R (Dec. 10, 1996) . . . . . . . . . . . . . . 3

GAO, Testimony before the Committee on Indian Affairs, U.S. Senate,
   Indian Trust Funds, Individual Indian Accounts, GAO-02-970T (July 2002) . . . . . . . 6, 16

GAO, Major Improvements Needed in the Bureau of Indian Affairs'
   Accounting System, Audit Rep. No. GAO/AFMD-82-71 (Sept. 1982) . . . . . . . . . . . . . 7

GAO, OST, Financial Statement Audit Recommendations and the
   Audit Follow-up Process, GAO-07-295R (Jan. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

GAO, Posthearing Questions:  Major Management Challenges at the
   Department of the Interior, GAO-07-659R (Mar. 28, 2007) . . . . . . . . . . . . . . . . . . . . . 16

GAO, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management,
   BIA's Tribal Trust Fund Account Reconciliation Results,
   GAO/AIMD-96-63 (May 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

GAO, Report, Major Management Challenges and Program Risks,
   Department of the Interior, Performance and Accountability Series,
   GAO-03-104 (Jan. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

GAO, Testimony before the Committee on Indian Affairs, U.S. Senate,
   Indian Trust Funds, Tribal Account Balances, GAO-02-420T (Feb. 2002) . . . . . . . . 6, 16

GAO, Testimony before the U.S. Senate Select Committee on Indian Affairs,
   Financial Management, Status of BIA's Efforts to Resolve Long-Standing
   Trust Fund Management Problems, GAO/T - AFMD-92-16 (Aug. 12, 1992) . . . . . . . . . 5

Letter from Paul M. Homan,  Special Trustee for American Indians and Hilda A. Manuel,
   Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department
   of the Interior to Tribal Leaders and attachment, "Acknowledgment" Form
   (Jan. 8, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Letter from Secretary of the Interior Dirk Kempthorne and Attorney General
   Alberto R. Gonzales to the Honorable Bryan Dorgan, Chairman,
   Senate Committee on Indian Affairs (Mar. 1, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Letter from Sue Ellen Sloca, FOIA Officer, Office of the Secretary,
   U.S. Department of the Interior and attachment Account Holders
   Distribution List (Jan. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## COURT RULES

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## TREATISES AND LAW REVIEW ARTICLES

T. Bogert, Trusts § 141 (6th ed. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

3 Alba Conte and Herbert Newberg, Newberg on Class Actions Sec. 8-15 (4th ed. 2002) . . 43, 44

Comment, *The Importance of Being Adequate: Due Process Requirements in Class Actions*
   *under Federal Rule 23,* 123 U.Pa. L. Rev. 1217 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . 44

## OTHER

Arthur Andersen, Trust Funds Management by the U.S. Department of the Interior, BIA,
   Report on Compliance and Report on Internal Controls as of Sept. 30, 1988
   (Mar. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Price Waterhouse, Report, In-Depth Review of Indian Trust Fund Management for the BIA,
   Tasks I:  Review of Trust Fund Legislative Authorization and Management
   System Documentation; II: Documentation of Current Operations and Procedures;
   III:  Investment Portfolio Management; IV: Cash Management, Accounting System
   and Control Related Issues; and, V: Summary of Recommendations
   (Sept. 1983 - May 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE CASE

### The Nature of this Action

This action seeks declaratory and other equitable relief with respect to Defendants'[1] common actions and inactions regarding hundreds of accounts that are held in trust by Defendants for Plaintiffs and over 250 other American Indian / Alaska Native Tribes.[2] Despite repeated legislative and administrative directives and efforts, Defendants' notorious inability to serve as trustee for tribal trust fund accounts is well-documented. Defendants' steadfast recalcitrance to performing even the most basic fiduciary obligations calls for judicial relief on a class-wide basis.

In addition to class certification, Plaintiffs in this action seek: 1) a declaration that Defendants have a legal fiduciary duty to provide Plaintiffs with full and complete accountings of their trust fund accounts; 2) a declaration that Defendants never have provided to Plaintiffs such accountings, and therefore that at least with respect to this fiduciary duty Defendants have been and continue to be in breach of trust, negligent, engaged in wrongful conduct, or in violation of other laws; 3) a declaration of the legal standards governing such accountings or accounting alternatives; 4) a mandatory injunction compelling Defendants to provide such accountings or alternatives; and, 5) a mandatory injunction compelling Defendants, based on the accountings or accounting alternatives, to correct

---

[1] In this Brief, the plural term "Defendants" is used solely for convenience sake, without regard to any issue of whether there are legal differences between the fiduciary obligations of Defendant Kempthorne and Defendant Paulson. *See, e.g.*, Answer to First Amended Complaint at ¶ 4 (Doc. # 28) ("Defendants deny that the Secretary of the Treasury has any obligation to provide an accounting to Plaintiffs."). This issue, if it has merit for any purpose in this action, does not affect Plaintiffs' Motion for Class Certification.

[2] Hereinafter in this Brief, the term "tribal trust fund accounts" is used to mean those accounts that are held in trust for tribes by Defendants in their official capacities. The term is not intended to mean accounts that are or may be held in trust for tribes by any other person or entity.

Plaintiffs' trust fund account balances if there are errors. *See* First Amended Complaint at PRAYER FOR RELIEF (Apr. 2, 2007) (Doc. # 27).

This relief is needed due to Defendants' horrendous trusteeship including their failure ever to provide Plaintiffs with full and complete trust fund accountings. Eleven years ago, in *Cobell v. Babbitt*, No. 96-1285-JR (D.D.C. filed June 10, 1996) (Order certifying class action issued Feb. 4, 1997) (Doc. # 27), an on-going action for an accounting and other equitable relief, this Court certified a plaintiff class of individual Indians whose trust accounts are or were held by Defendants. *See also Cobell v. Babbitt,* 188 F.R.D. 122, 123 (D.D.C. 1999) ("In 1996 [sic] this court certified a class of Native Americans, represented by the five named plaintiffs, to bring a claim against the federal government for mismanagement of trust funds.") (footnote and citation omitted). Similar proceedings are needed for the class of all American Indian and Alaska Native tribes, excluding the Pueblo of Laguna, the Jicarilla Apache Nation, the Delaware Tribe of Indians and the Delaware Trust Board, and the Navajo Nation, whose accounts Defendants hold in trust.

**The Government's Fiduciary Trusteeship of Tribal Trust Fund Accounts**

The United States has committed itself to being the fiduciary trustee for much of the land, natural resources, and other property of American Indian / Alaska Native tribes. *See generally Arizona v. California,* 460 U.S. 605, 650-51 (1983). With respect to Indian trust fund accounts, "[t]he responsibility, or trusteeship, for the holding of funds by the United States for the benefit of individual Indians and Indian Tribes" is deeply rooted in treaties, laws, and agreements." U.S. Department of the Interior, Office of the Inspector General (OIG), Statement of Assets and Trust Fund Balances at September 30, 1995, of the Trust Funds Managed by the Office of Trust Funds

Management, Bureau of Indian Affairs, Audit Rep. No. 97-I-196, at 1 (Dec. 1996), copy attached hereto as Attachment A.  The government first "adopted the policy of holding tribal funds" in trust in 1820.  *Id*. (emphasis added); *see also* H.R. Rep. No. 102-499, at 6 (1992).  Since that time Congress has "controlled and managed Tribal and individual Indian [trust] funds through legislation."  OIG Audit Rep. No. 97-I-196, at 1-2.

Congress has designated the Secretary of the Department of the Interior as being primarily responsible for the management of Indian affairs generally.  43 U.S.C. § 1457.  As such, the Secretary of the Interior is the primary trustee for tribal trust fund accounts.  *See* 25 U.S.C. § 4011. The Interior Secretary in turn has delegated his or her authority to several agencies within the Department.  Historically delegation primarily has been to the Bureau of Indian Affairs (BIA); more recently delegation also has been to the Office of the Special Trustee (OST) for American Indians. *See* 25 U.S.C. §§ 4041 - 4046.  With respect to the investment of and certain other duties regarding tribal trust fund accounts, Congress also has designated the Secretary of the Department of the Treasury as the trustee.  *See*, *e.g.,* 25 U.S.C. §§ 155 and 161a(a).

The government presently purports to hold about $2.9 billion in about 1,450 trust fund accounts for over 250 tribes.  *See* U.S. Government Accountability Office (GAO), Testimony before the Committee on Natural Resources, House of Representatives:  Department of the Interior:  Major Management Challenges, GAO-07-502T, at 10 (Feb. 2007), http://www.gao.gov/new.items/d07502t.pdf.  The government also is the trustee for hundreds of thousands of Individual Indian Money (IIM) accounts.  *See* U.S. GAO, Indian Trust Fund Q&As, GAO/AIMD/OGC-97-23R, at 3 (Dec. 10, 1996), copy attached hereto as Attachment B.  After twelve years of litigation, this Court recently ruled that Defendants' provision of full and complete

3

accountings to IIM account holders is "impossible." *Cobell v. Kempthorne,* 532 F.Supp.2d 37, 39

(D.D.C. 2008). The IIM account holder class continues to seek other equitable relief in this Court.

*Id.* The instant action does not raise any claims relating to IIM accounts that are involved in the

*Cobell* case.

Tribal trust fund accounts generally include: 1) monetary payments required by treaty or in

satisfaction of judgments against the United States (judgment funds); and, 2) income or "proceeds"

earned by tribes from land and natural resources that the government holds in trust for tribes

(hereinafter "proceeds of labor" accounts). *See* U.S. Department of the Interior, BIA, Interim

Improvement Plan for the BIA, Trust Funds Management Improvement Program, Special Report,

at 8 (July 1991), copy attached hereto as Attachment C; OIG, Independent Auditors Report on the

Financial Statements for Fiscal Years 1998 and 1997 for the OST Tribal and Other Special Trust

Funds and Individual Indian Monies Trust Funds Managed by the Office of Trust Funds

Management, Rep. No. 00-I-434, at 4-5 (May 2000), copy attached hereto as Attachment D. Tribal

trust fund accounts also include the income earned on interest earnings and investments of the funds

themselves.

About seventy percent (70 %) of tribal trust fund accounts consist of judgment funds. *See*

OIG Audit Rep. No. 97-I-196, at 3; *accord* H.R. Rep. No. 103-778, at 13 (1994). Judgment funds

generally are monetary judgments awarded by the Indian Claims Commission and the Court of

Federal Claims (and its predecessor courts) for the unlawful appropriation of Indian lands and

resources by the government. *See* 25 U.S.C. § 1401. The government holds judgment funds in trust

from the time that Congress appropriates the money to satisfy the award until such time as the funds

are validly and properly distributed to the trust beneficiaries.  *See Chippewa Cree Tribe, et al. v. United States,* 69 Fed. Cl. 639, 646-653 (Fed. Cl. 2006).

About thirty percent (30 %) of tribal trust fund accounts consist of proceeds of labor accounts.  *See* H.R. Rep. No. 103-778, at 13.  Various acts of Congress authorize the Secretary of the Interior to manage land (including rights-of-ways therethrough and thereover) and natural resources that the government holds in trust for tribes as beneficiaries, to collect income from tribal trust property, and to deposit that income in proceeds of labor accounts for the benefit of the tribal beneficiaries.  *See, e.g.,* 25 U.S.C. §§ 155 and 155b.

Other acts of Congress codify, reaffirm, or provide for fiduciary investment duties by the government of tribal trust funds.  *See* 25 U.S.C. §§ 161, 161a, 161b, and 162a; *see generally Chippewa Cree Tribe v. United States,* 69 Fed. Cl. at 656-662 (discussing tribal trust fund investment laws).  Still other acts of Congress codify, reaffirm, or provide for other fiduciary trustee duties by the government for tribal trust fund accounts, including, but not limited to, the duties to account for daily and annual balances, to provide periodic statements of performance to beneficiaries, and to cause to be conducted trust fund audits annually.  *See* 25 U.S.C. § 4011.

**The Government's Historical and Present Misaccounting for Tribal Trust Funds is Well-Documented**

Despite the government's well-established responsibilities, "[o]ver the years, countless audit reports and internal studies have detailed a litany of problems in BIA's control and oversight of [Indian trust fund] accounts."  GAO, Testimony before the U.S. Senate Select Committee on Indian Affairs, Financial Management, Status of BIA's Efforts to Resolve Long-Standing Trust Fund

5

Management Problems, GAO/T - AFMD-92-16, at 1 (Aug. 12, 1992), copy attached hereto as Attachment E. This Court has noted that "reports of Interior's defective accounting procedures [for Indian trust funds] date back to at least 1915." *Cobell v. Norton,* 283 F.Supp.2d 66, 226 (D.D.C. 2003).

The Interior Department's own OIG has issued over fifty (50) recent reports documenting Indian trust fund mismanagement. From 1982 through 1989 alone, the OIG issued thirty (30) such reports. *See* OIG, Audit Report, Selected Aspects of Indian Trust Fund Activities, BIA, Rep. No. 89-117, at 2 (Sept. 1989), copy attached hereto as Attachment F. Another twenty (20) reports have followed recently. *See* GAO, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Individual Indian Accounts, GAO-02-970T (July 2002), http://www.gao.gov/new.items/d02970t.pdf; GAO, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T (Feb. 2002), http://www.gao.gov/new.items/d02420t.pdf. At this time, Plaintiffs will not belabor the findings and recommendations of these reports since Defendants admit their existence and, as Defendants aver, the reports "speak for themselves" and "are the best evidence of their contents." Answer to First Amended Complaint at ¶s 37, 38, and 43 (Doc. # 28).

**The Fiduciary Obligation to Provide Full and Complete Accountings**

As the trustee, Defendants have an inherent fiduciary duty to provide full and complete accountings of trust funds to its beneficiaries. "The obligation of a trustee to provide an accounting is a fundamental principle governing the subject of trust administration." *White Mountain Apache Tribe v. United States,* 26 Cl.Ct. 446, 448 (Cl.Ct. 1992), *aff'd,* 5 F.3d 1506 (Fed. Cir. 1993), *cert.*

6

*denied,* 511 U.S. 1030 (1994) (*citing* T. Bogert, Trusts § 141, at 494 (6th ed. 1987)).  The inherent

duty to account fully and completely has been codified by Congress and recognized by this Circuit's

Court of Appeals.  *See Cobell v. Norton,* 240 F.3d 1081, 1102-1104 (D.C.Cir. 2001).

      This duty and the ramifications from the known failure of Defendants to comply with it were

emphasized in the early 1980s in two key agency reports severely criticizing governmental

accounting and management of Indian trust fund accounts.  *See* OIG, Accounting Controls Over

Tribal Trust Funds, Audit Rep. No. C-IA-BIA-24-83 (Sept. 1983), copy attached hereto as

Attachment G; GAO, Major Improvements Needed in the Bureau of Indian Affairs' Accounting

System, Audit Rep. No. GAO/AFMD-82-71 (Sept. 1982), http://archive.gao.gov/f0102/119392.pdf.

      In response to the GAO criticisms, the BIA contracted with the accounting firm of Price

Waterhouse (PW) to study its administration of Indian trust funds.  BIA Contract No.

K51C14291203 (May 1983).  PW's "study was completed early in 1984 and filled 12 volumes."

Indian Trust Fund Oversight Hearing on the Status of the Indian Trust Fund Before the Select

Committee on Indian Affairs, U.S. Senate, 99th Cong., 2nd Sess., at 1 (Sept. 12, 1986).  PW

recommended multiple and major system-wide changes in the government's accounting and

management of Indian trust fund accounts. *See* PW, Report, In-Depth Review of Indian Trust Fund

Management for the BIA, Task I:  Review of Trust Fund Legislative Authorization and Management

System Documentation (May 1984); Task II:  Documentation of Current Operations and Procedures

(Sept. 1983). Task III:  Investment Portfolio Management (May 1984); Task IV: Cash Management,

Accounting System and Control Related Issues (Dec. 1983); Task V: Summary of Recommendations (Jan. 1984).[3]

By 1987, Congress was requiring audits and reconciliations of all Indian trust fund accounts, and that the Indian beneficiaries be provided with full accountings of their fund accounts. *See* Pub. L. No. 100-202, 101 Stat. 1329 (1987). The congressional mandate was for full accountings and audits and reconciliations of all Indian trust fund accounts to the earliest possible date, *i.e.,* a reconstruction of all historical transactions for all years for all Indian trust funds. *See, e.g.,* Pub. L. No. 101-121, 103 Stat. 701 (1989). This mandate was repeated as provisos in the Interior Department's appropriations bills for seven successive fiscal years, from 1988 to 1994. *See* Pub L. No. 100-446, 102 Stat. 1774 (1988); Pub. L. No. 101-121, 103 Stat. 701 (1989); Pub. L. No. 101-512, 104 Stat. 1915 (1990); Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. No. 102-381, 106 Stat. 1374 (1992); Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499 (1994). In 1994 Congress enacted the American Indian Trust Management Reform Act, 25 U.S.C. §§ 4001 - 4061. This Act also requires the government to provide Indian beneficiaries with full and complete accountings of their trust funds, and to cause audits of all Indian trust funds to be conducted annually. 25 U.S.C. §§ 4044 and 4011(c).

---

[3] Defendants recently admitted in this Court that to this date they have chosen not to implement a single one of PW's recommendations. *Pechanga Band of Luiseno Mission Indians v. Kempthorne,* No. 06-2206-JR (D.D.C. filed Dec. 26, 2006) ("Defendants admit that Interior contracted with the Price Waterhouse accounting firm to assist in Interior's review of Indian trust fund management and investment practices, that Price Waterhouse made various recommendations to Interior in the course of performing its work under that contract, ***and that Interior has taken no steps in response to the various recommendations made by Price Waterhouse.***") Answer to First Amended Complaint, ¶ 42 (Mar. 14, 2008) (Doc. # 28) (emphasis added).

8

**The Arthur Andersen (AA) Agreed-Upon Procedures Project**

Unable to comply with these inherent fiduciary duties and congressional mandates on its own, by 1990 the BIA sought to bid out the work under a "Request for Proposals" (RFP) developed by its Central Office. *See* BIA, Specifications for Audit and Reconciliation of Tribal Trust Funds Accounts, Solicitation No. RFP BIA K51-91-200 (Feb. 1, 1991), copy attached hereto as Attachment H[4]; *see also* GAO, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63, at 2 (May 1996), http://www.gao.gov/archive/1996/ai96063.pdf. The Work Plans for this RFP described the services required as including the reconciliation of the judgment fund and proceeds of labor accounts maintained by the BIA for two hundred fifty four (254) tribes. *See, e.g.,* BIA, Office of Trust Fund Management, Work Plan Description for the Reconciliation of Tribal and Individual Indian Monies Trust Funds, at 5-7 (Jan. 23 and Jan. 25, 1991), copy attached hereto as Attachment I.

In May 1991 the accounting firm of AA (also known as "Arthur Andersen & Co." and "Arthur Andersen, LLP")[5] was awarded a single $12 million contract to reconcile "all Tribal and

---

[4] This Solicitation replaced Solicitation No. BIA-MOO-90-06 (Mar. 22, 1990), which was cancelled.

[5] In 1988 AA had been awarded a contract to conduct the first-ever audit of Indian trust fund balances. *See* Prepared Statement of Eddie F. Brown, Assistant Secretary for Indian Affairs at the Hearing Before the Environment, Energy, and Natural Resources Subcommittee, Committee on Government Operations, U.S. House of Representatives on Review of the Bureau of Indian Affairs Management of the $1.7 Billion Indian Trust Fund, at 145 (Oct. 26, 1989).

> The audits were conducted with the knowledge (both of the Bureau and of Arthur Andersen & Co.) that material weaknesses in internal accounting controls existed and that it was likely that violations of certain regulations applicable to the management of the Trust Funds had occurred and were continuing to occur. These conditions were disclosed by the Bureau in connection with its request for audit proposals . . . .

Individual Indian money (IIM) trust fund accounts."    BIA Contract No. CMK00129391[6]

(Reconciliation of the Bureau of Indian Affairs' Trust Funds, Arthur Andersen & Co., Contractor)

(May 23, 1991), copy with all 33 contract modifications attached hereto as Attachment K; *see also*

GAO / AIMD-96-63, at 2.[7]    The Acquisition Request for this contract stated that there were 2,000

tribal trust fund accounts for two hundred sixty (260) tribes.  BIA, Acquisition Request, Obligation

Authority No. K01-51/1/3400/4361 (Dec. 23, 1991), copy attached hereto as Attachment L.

One of the first modifications to the AA contract was additional funding for "data entry" by

AA for "all . . . tribal transactions."  U.S. Department of the Interior, IPDS – Individual Contract

Action Report, Contract No. CMK00129391, Contract Modification No. 3, Memorandum from Don

Gray, Team Leader, Reconciliation, Audit, and Certification Management Team to Peter Markey,

Chief, Contract and Grant Operations, U.S. Department of the Interior, BIA, OTFM (Dec. 11, 1991),

copy attached hereto as part of Attachment K; *see also* U.S. Department of the Interior, IPDS –

Individual Contract Action Report, Contract No. CMK00129391, Contract Modification No. 8,

Statement of Work (Apr. 15, 1993) ("The Contractor shall develop a database for all tribal financial

---

AA, Trust Funds Management by the U.S. Department of the Interior, BIA, Report on
Compliance and Report on Internal Controls as of Sept. 30, 1988, at i (Mar. 1989), copy attached
hereto as Attachment J.  AA found material weaknesses and other problems in the BIA's
accounting systems and internal control procedures.  "Certain of these weaknesses are so
pervasive and fundamental as to render the accounting systems unreliable."  *Id.* at iii.  AA also
found the BIA to be "not in compliance with" applicable laws and regulations governing its
management of the Trust Funds.  *Id.* at 1-2.

[6] Also known as Contract Nos. CMK00129392, CMK00129393, CMK001293394, and
CMK00129395.

[7] Less than one year into the project, the BIA concluded that "due to the level of effort
and associated cost and the potential for missing documentation, it was not feasible to reconcile .
. . ." the IIM accounts.  GAO/AIMD-96-63 at 2.  When no further action by the BIA regarding
reconciliation or accounting of IIM accounts occurred, the *Cobell* litigation was filed.

transactions made available to the Contractor (receipts, disbursements, journal vouchers, etc.) Bureau wide for Fiscal Years 1973 through 1982 equivalent to the database currently in existence for tribal accounts."), copy attached hereto as part of Attachment K.[8]  And, in one of its first major reports on the AA contract, the BIA stated that the principal requirement and goal of the contract was "100% reconstruction" of activity in all tribal trust accounts."  BIA, Trust Funds Reconciliation Project Overview Presentation, at 2 and 32  (Jan. 28, 1992), copy attached hereto as Attachment M.

Soon thereafter, however, due to AA's estimated cost and difficulty of reconciling all tribal trust fund accounts historically – from inception to present – the BIA determined that it would limit AA's requirements under the contract to performing "financial reconstruction . . . to the extent records are available, of all . . . tribal judgment award accounts and income accounts . . . for Fiscal Years 1972 - 1992."  U.S. Department of the Interior, IPDS – Individual Contract Action Report, Contract No. CMK00129391, Contract Modification No. 6 (Sept. 11, 1992), copy attached hereto as part of Attachment K; *see also* GAO/AIMD-96-63 at 1.  This severe reduction in the time period, however, did not affect the project's encompassment of all tribal trust fund accounts.  By mid-1993, the scope of work was stated as follows:

> The project entails the reconstruction of all tribal trust accounts which involves approximately 2,000 accounts and an estimated 50,000 transactions for each Fiscal Year (FY1973- FY1992).  The current approach does not distinguish between judgment and nonjudgment accounts and assumes a simultaneous work effort .
> . . .
>
> The primary objective of the reconciliation project is to reconstruct historical transactions to the extent practicable for all years where records are available for all

---

[8]  By the project's end AA's contract had been modified twenty-nine (29) times – primarily to reduce the project's scope and procedures – and its cost had escalated to $ 21 million.  *See* GAO/AIMD-96-63, at 2-3 and 6.

Tribal Trust accounts managed by the Bureau.  Currently our estimates will cover performing the reconciliation of tribal accounts for Fiscal Years 1973 through 1992.

. . .

Objectives: [1] To ensure all receipt and disbursement activity recorded in the Tribes' Tribal Trust accounts, for which documentation is available, is properly reflected and supported.  [2] To ensure all receipts and disbursements made, for which documentation is available, were properly recorded to the appropriate Tribal Trust account.

U.S. Department of the Interior, IPDS – Individual Contract Action Report, Contract No. CMK00129391, Contract Modification No. 9 (May 1, 1992), copy attached hereto as part of Attachment K; *accord* BIA, AA, Tribal Trust Funds Reconciliation Project Procedures / Results, at 10 (Feb. 1996), copy attached hereto as Attachment N; BIA, AA, Tribal Trust Funds Reconciliation Project, Agreed-Upon Procedures and Findings Report July 1, 1972 through Sept. 30, 1992 (SAMPLE), at 6 (Jan. 1996) (Contract objectives consisted of reconstructing "historical transactions, to the extent practicable, for all years where records were available for all Tribal Trust accounts managed by the Bureau."), copy attached hereto as Attachment O.[9]

Ultimately, even with respect to the tribal trust fund accounts reviewed for this finite period, AA determined that insufficient records were available to conduct full accountings or reconciliations. *See* GAO / AIMD-96-63, at 4-5.  Instead, the BIA agreed to seven alternative "procedures" that AA applied equally to all tribal trust fund accounts:  1) Account Statements; 2) Basic Reconciliation; 3) Investment Analysis; 4) Analytic Review; 5) Systems Reconciliation; 6) Deposit Lag Time; and, 7) Fill the Gap.  *Id.* at 16-20; see also BIA, AA, Tribal Trust Funds Reconciliation Project Procedures

_____

[9]  This remained the basic scope of the project through the project's end.  *See* BIA, AA, Tribal Trust Funds Reconciliation Project Procedures / Results, at 9 ("Project Overview" is to "Reconcile Tribal accounts to the extent practicable for all years for which records are available.").

/ Results at 7-57. Many of these alternative procedures are detailed in the ninety (90) "issue papers" approved by the BIA for the project which address changes in the scope and procedures of the project such as the calculation of transaction dates. *See* GAO / AIMD-96-63, at 6.[10]

AA completed its contract work in December 1995 with the preparation of "Agreed-Upon Procedures and Findings Reports" for all tribal trust fund accounts Fiscal Years 1973 - 1992. In its Reports, AA described the project as follows:

> The Congressional [sic] mandate for the Bureau Tribal Trust Funds Reconciliation Project (Reconciliation Project) requires an accounting to each Tribe for each of their Trust accounts. The primary objective of the Reconciliation Project, as stated in the Contract, is to reconstruct historical transactions, to the extent practicable, for all years for which records are available for all Tribal Trust accounts managed by the Bureau. Phase I of the Reconciliation Project substantiated that not all records would be available for a full accounting of such funds. Due to the unavailability of some records, the scope of the Reconciliation Project is designed to provide reasonable assurance as to the accuracy of each Tribal Trust account balance. The agreed-upon procedures performed, as required by the Contract, represent the Bureau's standard of reasonableness.

BIA, AA, Tribal Trust Funds Reconciliation Project, Agreed-Upon Procedures and Findings Report July 1, 1972 through Sept. 30, 1992 (SAMPLE), at 1. Because the American Indian Trust Fund Management Reform Act of 1994 required the Secretary of the Interior to provide tribes with reconciled account statements as of September 30, 1995, 25 U.S.C. § 4044, the BIA prepared its own

---

[10] In fiscal years 1990 - 1995, Congress mandated that any Indian trust fund audit and reconciliation work be certified by an independent third party. *See, e.g.,* Pub. L. No. 101-121, 103 Stat. 701 (1989) (the reconciliation results must be "certified by an independent party as the most complete reconciliation of such funds possible"). In September 1993, the BIA awarded a certification contract to Coopers & Lybrand, CPA. *See* GAO/AIMD-96-63 at 7. However, the BIA terminated the certification contract in November 1995 before certification could be completed. *Id.* at 7-8. Thus, Defendants never have complied with the congressional reconciliation project certification mandate.

reconciled account statements for tribal trust fund accounts for the time period fiscal years 1993 through 1995. *See* GAO / AIMD-96-63 at 5 and 16.

In 1996, the BIA provided reconciliation report packages to 301 tribes. *See* BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 11 (Dec. 1996), copy attached hereto as Attachment P; GAO / AIMD-96-63, at 5 and 16. For each tribe, a report package included the Fiscal Years 1973 - 1992 AA Report and the Fiscal Years 1993 - 1995 BIA's reconciled account statements. GAO / AIMD-96-63, at 1-2, 5-7, and 16. The BIA's presentations to tribes began with an overview of the AA project's "Global Findings." BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Feb. 1996), copy attached hereto as Attachment Q ("The following is a summary of the overall (global) findings for all tribes by Arthur Andersen LLP resulting from their performance of certain agreed upon procedures with respect to tribal trust funds administered by the Bureau of Indian Affairs during the period of July 1, 1972 through September 30, 1992."). The BIA also stated that the AA project covered 379 tribes. *Id.*[11]

**The AA Reports Are Not Full and Complete Accountings**

From the outset, the Interior Department admitted that the AA Reports were not audits made in accordance with generally accepted auditing standards. *See* Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996); *accord* BIA, AA, Tribal Trust Funds Reconciliation Project, Agreed-Upon Procedures and Findings Report July 1,

---

[11] A January 1996 version of this same report, however, stated the coverage at 363 tribes. BIA, Tribal Trust Funds Reconciliation Project Summary of Findings (Jan. 1996), copy attached hereto as Attachment R.

1972 through Sept. 30, 1992 (SAMPLE) 4 (The agreed-upon procedures "do not constitute an audit made in accordance with generally accepted auditing standards."). The Interior Department nevertheless tried to get tribes to agree that the AA Reports were "as full and complete accountings as possible" of their trust funds. *See* "Acknowledgment" form appended to Letter from Paul M. Homan, Special Trustee for American Indians and Hilda A. Manuel, Deputy Commissioner of Indian Affairs, Office of the Secretary, U.S. Department of the Interior to Tribal Leaders (Jan. 8, 1996), copy attached hereto as Attachment S.

The BIA subsequently admitted that the AA Reports were not full and complete accountings. *See* BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results, at 12, copy submitted in *Cobell v. Kempthorne* as an Attachment to Defendants' Memorandum of Points and Authorities in Response to Plaintiffs' Motion for Class Certification (Jan. 21, 1997) (Doc. # 24 )("Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds.").[12] This admission has been echoed by other federal agencies. *See, e.g.,* U.S. Department of the Interior, OST, Strategic Plan to Implement the Reforms required by the American Indian Trust Fund Management Reform Act of 1994 at Part 8, page 5 (Apr. 1997), copy attached hereto as Attachment T (the AA Basic Reconciliation effort "disclosed the types of problems which prevent a full accounting" of tribal trust funds); *accord* GAO / AIMD-96-63, at 4-7 ( the AA reports do not reflect

---

[12] The Legislative Options proposed by the BIA in response to the AA project results included "proposals for settling the disputed balances in the Tribal trust fund accounts based on the results" of the project, and "to restore funds to Tribal trust accounts that have suffered losses as a result of inadequacies in the Department's management and accounting systems." BIA's Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 2 and 4. Of course the BIA noted that "Tribes that do not settle their claims under the settlement procedure outlined . . . may wish to litigate those claims in court." *Id.* at 25.

reliable, accurate, or complete accountings of tribal trust funds because, *inter alia,* they were not conducted pursuant to generally accepted accounting principles, but instead were based on procedures defined by the BIA which imposed limitations on the scope of work to be done and made changes in methodologies over the course of the project; they were premised on the erroneous assumption that accountings could be done based on existing information from the BIA, without determining whether that information was accurate historically; and, they were based on accounts for which records and information were non-existent or could not be located); *see also* GAO, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2; GAO, Posthearing Questions: Major Management Challenges at the Department of the Interior, GAO-07-659R, at 6 (Mar. 28, 2007), http://www.gao.gov/new.items/d07502t.pdf ("we [have] reported that although Interior had made a massive attempt to reconcile tribal accounts during its reconciliation project, missing records and systems limitations made full reconciliation impossible.").

**OIG and GAO Reports Since the AA Project**

Since, and notwithstanding the AA project, the government's accounting for and management of Indian trust funds remains substandard. From 1996 - 2006 the OST's annual financial statement audits have been qualified "because of inadequacies in Interior's trust-related systems, controls, and processes, disagreements between Interior and the trust funds' beneficiaries on amounts owed, and potential claims against the government." GAO, OST, Financial Statement Audit Recommendations and the Audit Follow-up Process, at 1, GAO-07-295R (Jan. 2007), http://www.gao.gov/new.items/d07295r.pdf; *accord* U.S. Department of the Interior, OIG,

Semiannual Report to the Congress, at 9 (Oct. 1, 2006 - Mar. 31, 2007),
http://www.doioig.gov/upload/Semiannual %20April%202007.pdf.

To date tribal trust funds have not been audited, not one tribe has been provided with a full
and complete trust fund accounting, and as recently as 2003 the GAO stated that despite some
improvements, Indian trust fund "account holders have no assurance that their account balances are
accurate . . . ."  GAO, Report, Major Management Challenges and Program Risks, Department of
the Interior, Performance and Accountability Series, GAO-03-104 (Jan. 2003),
http://www.gao.gov/pas/2003/d03104.pdf.  As recently as 2005, the OIG reported that "DOI
procedures and controls were not adequate to ensure that Indian trust fund activities and balances
were recorded properly or timely."  U.S. Department of the Interior, OIG, Semiannual Report to
Congress, Rep. No. 04-S-05 (Apr. 2005), copy attached hereto as Attachment U.


**Congressional Efforts Regarding Tribal Trust Reform in addition to and since the 1994 Trust
Reform Act**

Since 1990 and to the present (eighteen successive fiscal years), in recognition of the failure
of the federal government to provide full and complete tribal trust fund accountings, Congress has
tolled the commencement of trust account and fund claims for all tribes.  *See* Pub. L. No. 101-512,
104 Stat. 1915 (1990);  Pub. L. No. 102-154, 105 Stat. 990 (1991); Pub. L. No. 102-381, 106 Stat.
1374 (1992), Pub. L. No. 103-138, 107 Stat. 1379 (1993); Pub. L. No. 103-332, 108 Stat. 2499
(1994); Pub. L. No. 104-134, 100 Stat. 1321 (1996); Pub. L. No. 104-208, 110 Stat. 3009 (1996);
Pub. L. No. 105-83, 111 Stat. 1543 (1997); Pub. L. No. 105-277, 112 Stat. 2681 (1998); Pub. L. No.
106-113, 113 Stat. 1501 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000); Pub. L. No. 107-63, 115

Stat. 414 (2001); Pub. L. No. 108-7, 117 Stat. 11 (2003); Pub. L. No. 108-108, 117 Stat. 1241 (2003); Pub. L. No. 108-447, 118 Stat. 2809 (2004); Pub. L. No. 109-54, 119 Stat. 499 (2005); Pub. L. No. 110-161, 121 Stat. 1844 (2007)  (all providing to the effect that, "notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss").

Congress also has acknowledged the common issue of claims accrual faced by all tribes in the wake of the AA reports.  *See* Pub. L. No. 107-153, 116 Stat. 79 (2002) ("To Encourage the Negotiated Settlement of Tribal Claims") (providing, *inter alia,* that, "[n]otwithstanding any other provision of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe in response to section 304 of the American Indian Trust Fund Management Report Act of 1994 (25 U.S.C. 4044) shall be deemed to have been received by the Indian tribe on December 31, 1999.").  In 2005, this legislation was amended to provide that the reports shall be deemed to have been received on December 31, 2000.  Pub. L. No. 109-158, 119 Stat. 2954 (2005).  The legislative history states that its purpose "is to address the possibility that the statute of limitations is running or has run on legal claims that Indian tribal governments may assert against the United States related to the management of tribal funds that are held in trust by the United States, as a result of reconciliation reports provided to the tribes by the Department of the Interior

in response to Section 304 of the American Indian Trust Fund Management Reform Act of 1994 .

. . .”  S. Rep. 107-138 at 1 (2002); *accord* S. Rep. 109-201 at 1 (2005).[13]

**Procedural History of this Action**

The general statute of limitations for claims against the government provides in relevant part

that civil actions against the government shall be barred unless filed within six years after the right

of action first accrues.  28 U.S.C. § 2401(a); *see also* Pub. L. No. 109-54, 119 Stat. 499 (2005)

(“notwithstanding any other provision of law, the statute of limitations shall not commence to run

on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe . .

. has been furnished with an accounting of such funds from which the beneficiary can determine

whether there has been a loss”).  This action was filed on December 28, 2006 seeking needed

resolution and relief from this Court on the critical issue of the provision of full and complete

accountings of tribal trust funds, as well as on the other matters set forth in the First Amended

---

[13]  Other efforts by Congress to resolve the government’s misaccounting for tribal trust funds have failed to pass.  *See, e.g.,* S. 1439, 109th Cong. § 6; (2005) (“the Indian Trust Reform Act”); S. 1459, 108th Cong. § 3 (2003) (“the American Indian Trust Fund Management Reform Act Amendments”).  Most recently, the Administration has requested Congress to enact legislation that, *inter alia,* “[r]elieves the government of historical accounting obligations and deems account balances accurate as of the date of enactment of legislation.”  Attachment entitled “Key Facets of Acceptable Indian Trust Reform and Settlement Legislation” to Letter from Secretary of the Interior Dirk Kempthorne and Attorney General Alberto R. Gonzales to the Honorable Bryan Dorgan, Chairman, Senate Committee on Indian Affairs (Mar. 1, 2007), copy attached hereto as Attachment V; *see also* Statement of Dirk Kempthorne, Secretary of the Interior, before the U.S. Senate Committee on Indian Affairs Oversight Hearing on Indian Trust Fund Litigation (Mar. 29, 2007), copy attached hereto as Attachment W.

19

Complaint (Apr. 2, 2007) (Doc. # 27).[14]  On May 11, 2007, Defendants filed their Answer to the First Amended Complaint (Doc. # 28 ).[15]

On June 6, 2007, the parties submitted a Joint Motion for Enlargement of Time within which to Comply with the Requirements of Local Civil Rule 16.3, and for Continuance of Initial Scheduling Conference.  (Doc. # 32).  This Joint Motion, *inter alia,* requested that the initial scheduling conference, which at that time was set for June 12, 2007, be continued to "a date and time after July 30, 2007, that the Court deems appropriate."  (Doc. # 32).

On July 2, 2007, before acting on the Joint Motion, this Court stayed temporarily this action and all other tribal trust claims actions before it pending the filing and resolution of Defendants' intended Motion to Remand and Stay Litigation.  Order of July 2, 2007 (Doc. # 33).  The July 2, 2007 Order also consolidated "those cases in which the government files such a [remand] motion . . . for the limited purpose of the remand motion . . . ."  *Id.*; *see also* Memorandum Order of December 19, 2007, at 5 ("Pursuant to Fed. R. Civ. P. 42(a), I consolidated the cases for the limited

---

[14]  In addition to this action, about seventy (70) tribes now have filed their own actions alleging misaccounting for and mismanagement of their trust fund accounts.  Of these 70 tribes, twelve (12) filed actions only in federal district courts (this one and various ones in Oklahoma).  Twenty-two (22) tribes filed actions only in the Court of Federal Claims.  Thirty-five (35) tribes filed actions in both federal district court and the Court of Federal Claims.  In many of these district court actions, as in this one, the government avers that it has "provided or has available upon request" various "financial and accounting data, documentation, and information."  *See, e.g., Ak-Chin Indian Community v. Kempthorne, et al.,* No. 06-02245-JR (D.D.C filed Dec. 29, 2006) (Answer filed Mar. 13, 2007 at ¶s 21, 30, 34, 36, 37, & 38) (Doc. #5).

[15]  Defendants' Answer in this action is virtually identical to its Answers in the many separate actions filed recently by individual tribes over their trust fund accounts.  *See, e.g., Colorado River Indian Tribes v. Kempthorne, et al.,* No. 06-2212-JR (D.D.C filed Dec. 27, 2006) (Answer filed Mar. 14, 2008) (Doc. # 30).  The fact that Defendants provide the same answers and raise the same affirmative defenses to these claims of various tribes underscores the commonality of at least the threshold issues raised in the tribal cases.

purpose of resolving the remand motion.") (Doc. # 43). Defendants' filed their Remand Motion on August 10, 2007. (Doc. # 37). In light of the consolidation, this Court further ordered that with respect to the unanimous opposition by Tribes to the remand motion, "[a] principal [opposition] brief need be filed only in one of the pending 37 cases and will be deemed filed in all of them." Order of August 23, 2007 (Doc. # 39). On December 19, 2007, this Court denied the Remand Motion and lifted the temporary stays of this and all other tribal trust claim actions pending before this Court. Order of December 19, 2007 (Doc. # 43).

The December 19, 2007 Order also required the plaintiff tribes in these actions to file status reports within thirty days "setting forth proposals for further proceedings and a proposed schedule." (Doc. # 43). On January 18, 2008, Plaintiffs filed their status report setting forth a proposal for further proceedings and a proposed schedule in this action. (Doc. # 44). Following a telephonic Meet and Confer Conference on February 21, 2008, on March 6, 2008, the parties filed their Joint Report Pursuant to Fed. R. Civ. P. 26(f) and LCvR 16.3. (Doc. # 45).

On April 29, 2008, Plaintiffs in four other tribal trust cases pending before this Court filed Motions for Trust Records Preservation Orders. *Ak-Chin Indian Community v. Kempthorne,* No. 06-2245 (Doc. # 37); *Passamaquoddy Tribe v. Kempthorne, et al.,* No. 06-2240-JR (D.D.C. filed Dec. 29, 2006) (Doc. # 31); *Salt River Pima-Maricopa Indian Community v. Kempthorne, et al.,* No. 06-2441-JR (D.D.C. filed Dec. 29, 2006) (Doc. # 31); and, *Tohono O'Odham Nation v. Kempthorne, et al.,* No. 06-2236-JR (D.D.C. filed Dec. 28, 2006) (Doc. # 31). On May 1, 2008, Plaintiffs here filed a Motion for an Order Deeming the Motions for Trust Preservation Records Filed in those Cases to be Filed in this Case and Joining the Plaintiffs here in those Motions. (Doc. # 46). On May

21

6, 2008, during a Scheduling Conference this Court granted Plaintiffs' Motion. *See also* Minute Order of May 7, 2008.

During the May 6, 2008 Scheduling Conference, and as set forth in subsequent Orders and Notices, this Court has established the following schedule for briefing and oral argument on Plaintiffs' class certification motion: Opening Brief due June 5, 2008; Response due June 26, 2008; Reply due July 10, 2008; and, oral argument July 24, 2008. Order of May 6, 2008 (Doc. # 47); Notice to Counsel of May 7, 2008 (Doc. # 48); and Order of May 13, 2008 (Doc. # 50). Pursuant to that schedule, Plaintiffs file their Motion for Class Certification.[16]

**General Facts About the Twelve Named Plaintiffs**

The twelve named Plaintiffs are the Nez Perce Tribe; the Mescalero Apache Tribe; the Tule River Indian Tribe; the Hualapai Tribe; the Yakama Nation; the Klamath Tribes; the Yurok Tribe; the Cheyenne-Arapaho Tribe; the Pawnee Nation of Oklahoma; the Sac and Fox Nation; the Santee Sioux Tribe of Nebraska; and, the Tlingit and Haida Tribes of Alaska. *See* First Amended Complaint at ¶s 9 -20. Each and every named Plaintiff is the beneficiary of at least one tribal trust fund account. *See* Declaration of Samuel N. Penney (Nez Perce Tribe) (May 19, 2008), attached hereto as Attachment X; Declaration of Carleton Naiche-Palmer (Mescalero Apache Tribe) (May

---

[16] This schedule also applied to Defendants' anticipated Motion to Dismiss. Order of May 6, 2008 (Doc. # 47); Notice to Counsel of May 7, 2008 (Doc. # 48); and Order of May 13, 2008 (Doc. # 50), but the briefing schedule for that Motion has since been altered during the Court's Telephone Status Conference with Counsel of May 30, 2008, although the oral argument on the Dismissal Motion remains July 24, 2008. The briefing schedule for the other motion pending before this Court, the Records Preservation Motion, also has been altered slightly since the May 6, 2008 Scheduling Conference, although the oral argument on that Motion will also be July 24, 2008. Order of May 13, 2008 (Doc. # 50).

29, 2008), attached hereto as Attachment Y; Declaration of Neil Payron (Tule River Indian Tribe) (May 19, 2008), attached hereto as Attachment Z; Declaration of Sherry Counts (Hualapai Tribe) (May 20, 2008), attached hereto as Attachment AA; Declaration of Ralph R. Sampson, Jr. (Yakama Nation) (May 30, 2008), attached hereto as Attachment BB; Declaration of Joseph Kirk (Klamath Tribes) (May 21, 2008), attached hereto as Attachment CC; Declaration of Maria Tripp (Yurok Tribe) (May 22, 2008), attached hereto as Attachment DD; Declaration of Darrell Flyingman (Cheyenne-Arapaho Tribe) (June 3, 2008), attached hereto as Attachment EE; Declaration of George E. Howell (Pawnee Nation) (May 28, 2008), attached hereto as Attachment FF; Declaration of George Thurman (Sac and Fox Nation) (May 27, 2008), attached hereto as Attachment GG; Declaration of Roger Trudell (Santee Sioux Tribe) (May 19, 2008), attached hereto as Attachment HH; Declaration of William E. Martin (Tlingit & Haida Tribes) (June 3, 2008), attached hereto as Attachment II.

Each and every Plaintiff received a BIA - AA Agreed-Upon Procedures Project Report in 1996 or 1997. *See* Tribal Declarations (Attachments X - II). The AA Reports of Plaintiffs and the tribal trust fund account transactions that the Reports discuss are typical of the AA Reports produced under the Project and representative of the tribal trust account transactions under the government's trusteeship that the Project examined. *See generally* Declaration of Kevin W. Nunes (June 5, 2008), attached hereto as Attachment JJ. Plaintiffs' collective experience in federal court litigation includes well over 50 cases in the last 40 years; half (6) of the Plaintiffs have been involved in litigation against the United States; and, four (4) have been parties to cases that were decided on the merits by the U.S. Supreme Court. *See* Tribal Declarations (Attachments X - II). All Plaintiffs have been and

are involved in some aspect of national, regional, state-wide, or local membership or inter-governmental organizations and several have held positions of leadership in these organizations. *Id.*

## SUMMARY OF ARGUMENT

This is an action by trust beneficiaries against a trustee for trust accountings and declaratory and other equitable relief.  As such, it is a textbook example of a case worthy of class certification – multiple plaintiffs with common claims against a common trustee.  That is true in the area of  trust law generally, and in the growing body of cases brought by Indians against the federal government to declare and enforce fiduciary trust duties, many of which are class actions.

The twelve named Plaintiffs here are American Indian and Alaska Native tribes that are representative of the over 250 tribes with trust fund accounts for which Defendants are the trustee. While some tribes have filed their own legal actions alleging various claims and seeking various types of relief from Defendants regarding their trust fund accounts, many tribes have not done so. A class action thus  is necessary and appropriate to address the claims of those tribes with trust fund accounts under Defendants' trusteeship who have not filed their own separate actions regarding the equitable claims raised.

By their own admission Defendants are the trustee for the trust fund accounts of the named Plaintiffs.  *See* Answer to First Amended Complaint at ¶s 2, 21, & 22.  Defendants likewise are the trustee for the trust fund accounts of all putative class members.  Various federal laws, including multiple general acts of Congress, establish Defendants' fiduciary obligations uniformly regarding these tribal trust fund accounts.  By their consonant and systemic actions, whether in failed

24

implementation or in ignorance of these laws, Defendants have affected adversely the tribal trust fund accounts equally with respect to the claims raised in this action.

Most notably, in a woefully inadequate effort to comply with their fiduciary obligation to provide their beneficiaries with "full and complete accountings," Defendants, in a single general contract executed in 1991, sought to have AA "reconcile" all tribal trust fund accounts. Pursuant to this contract, Defendants sent reports prepared by AA to all tribal trust fund account holders in 1996-97. Defendants also have prepared and sent "summary" and "periodic" reports on tribal trust fund accounts to tribes. The threshold merits question raised in this action is whether these reports by AA and Defendants constitute the full and complete accountings required by law. If they do not constitute such accountings, then what are the standards governing the accountings or accounting alternatives that Defendants must provide.

All four Rule 23(a) class certification prerequisites – numerosity; commonality; typicality; and, adequacy – are readily met here. The putative class – over two hundred tribes across the country with identical equitable claims – has been identified already, but the members cannot practicably be joined. There are common questions of law and fact regarding both the claims asserted by the class and the principal defenses raised by Defendants. The claims of the twelve named Plaintiffs are typical of those of the class members, and the named Plaintiffs will fully and effectively pursue those claims on behalf of the class.

Although Plaintiffs here also meet each of the three Rule 23(b) tests, class certification in this case is most appropriate under Rule23(b)(2) because of the final injunctive and declaratory relief sought on threshold issues driven by Defendants' common conduct with respect to tribal trust fund accounts including:

25

1) Whether Defendants as a matter of law have a legal fiduciary duty to provide the named Plaintiff tribes and putative class members with "full and complete accountings" of their trust fund accounts;

2) Whether Defendants as a matter of law and in fact have provided the named Plaintiff tribes and putative class members with full and complete accountings of their trust fund accounts by way of the AA reports or by any other action that Defendants have taken generally with respect to the fund accounts, including but not limited to "Summary and Detail of Trust Fund Statements" reports and "periodic statements of accounts or performance;"

3) What, as a matter of law, are the standards governing full and complete accountings or accounting alternatives that Defendants must provide regarding the trust fund accounts of the named Plaintiff tribes and of all putative class members; and

4) Based on the accountings or accounting alternatives, whether and how Defendants must correct the balances generally of the trust fund accounts of the named Plaintiff tribes and of each and every putative class member.

To address these common issues, subject to the exclusion of the Pueblo of Laguna, the Jicarilla Apache Nation, the Delaware Tribe of Indians, and the Navajo Nation, this Court should certify under Fed. R. Civ. P. 23(b)(2) a Plaintiff class consisting of the twelve named Plaintiff tribes and all other similarly situated American Indian and Alaska Native tribes which have or which have had trust fund accounts that are or were administered by Defendants and which do not have actions pending as of December 31, 2006 seeking full and complete accountings of their trust funds. And, because the putative class members are sovereign tribes, the Rule 23(d)(2) discretionary notice and opt-out procedures should be available to the class certified under Rule 23(b)(2).

Finally, with respect to other matters encompassed in Plaintiffs' Class Certification Motion, this Court should designate the twelve named Plaintiffs as class representatives of this class; appoint the Native American Rights Fund as class counsel; and, approve the Proposed Notice to potential class members.

**ARGUMENT**

**THIS ACTION SATISFIES THIS COURT'S TEST FOR CLASS CERTIFICATION UNDER RULE 23**

> **A.    This Court has Broad Discretion under Rule 23 to Certify a Class**

This action was filed as a class action. Federal Rule of Civil Procedure 23(c) provides, in relevant part, that in such instances "the court must – at an early practicable time – determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).

> In determining whether to certify a class, the Court does not consider the underlying merits of the plaintiff's claims, and accepts as true the allegations set forth in the complaint. To obtain certification under Rule 23, the proposed class must comply with all four prerequisites of Rule 23(a) and one of the three subsections of Rule 23(b). The plaintiffs bear the burden of showing that these requirements have been satisfied.

*In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 21 (D.D.C. 2001), *review denied*, 289 F.3d 98 (D.C.Cir. 2002) (citations omitted). Thus, class certification determinations are made primarily on the basis of the allegations in the complaint, as well as declarations in support of any fact-based issues such as adequacy of representation. *Id.* at 21-31.

The four prerequisites of Rule 23(a) for maintaining a class action are as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses

27

of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These four requirements are known as: 1) numerosity; 2) commonality; 3) typicality; and, 4) adequacy.  *Johnson v. District of Columbia,* 248 F.R.D. 46, 51 (D.D.C. 2008).

The three subsections of Rule 23(b), only one of which must be met for class action maintenance, are as follows:

> (1) prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:  (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  "The three [Rule 23(b)] categories are not mutually exclusive, and a class may be certified under more than one category."  *Eubanks v. Billington,* 110 F.3d 87, 91 (D.C.Cir. 1997) (citations omitted).

This Court has justified class action litigation generally as follows:

It is, of course, well established that a principal purpose of the class-action mechanism is to advance the efficiency and economy of multi-party litigation. *McCarthy v. Kleindienst,* 741 F.2d 1406, 1410 (D.C.Cir. 1984).  While certification of a class action pursuant to Fed. R. Civ. P. 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," class

> actions are "peculiarly appropriate " when the "issues involved are common to the
> class as a whole" and when they "turn on questions of law applicable in the same
> manner to each member of the class."  For in such cases, "the class-action device
> saves the resources of both the courts and the parties by permitting an issue
> potentially affecting every class member to be litigated in an economical fashion
> under Rule 23."

 *Chang v. United States,* 217 F.R.D. 262, 268 (D.D.C. 2003) (citation in original) (*citing General*

*Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982)(citations omitted).

"[T]he Court has broad discretion in determining whether a particular class is worthy of

certification." *Chang v. United States,* 217 F.R.D. at 268 (*citing McCarthy v. Kleindienst,* 741 F.2d

1406, 1410 (D.C.Cir. 1984)).

> In deciding a motion for class certification, the "inquiry does not extend to an
> examination of the merits of the case.  Instead, the legal standard is whether the
> evidence presented by plaintiffs establishes a 'reasonable basis for crediting
> [plaintiffs'] assertions.'"

*Johnson v. District of Columbia,* 248 F.R.D at 51 (citations omitted).  Not only must the court accept

as true the allegations set forth in the complaint, it must resolve uncertainties "in favor of certifying

the class." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 22 (*citing, inter alia,*

*Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied,* 394 U.S. 928 (1969)) ("If there is

to be an error made, let it be in favor and not against the maintenance of the class action, for it is

always subject to modification should later developments during the course of the trial so require.");

*accord Merit Motors, Inc. v. Chrysler Corp.*, 1972 WL 603, at *1 (D.D.C. July 11, 1972).

**B.  The Proposed Class As Defined In This Action Exists**

In *Keepseagle v. Veneman,* 2001 WL 34676944 (D.D.C. Dec. 12, 2001), this Court explained

that

29

>    While Rule 23 does not formally require plaintiffs to prove the existence of a class,
>    some courts have found that 'this is a common-sense requirement and . . . routinely
>    require it.'  Neither the D.C. Circuit nor the Supreme Court has engaged in this
>    additional step of the class certification analysis.  Nevertheless, the Court is
>    persuaded that some initial review of the proposed class is appropriate to ascertain
>    whether 'the general outlines of the membership of the class are determinable at the
>    outset of the litigation.'  This inquiry is one concerned with the court's ability to
>    clearly identify and manage the class, and this does not involve a 'particularly
>    stringent test.'

*Keepseagle v. Veneman,* 2001 WL 34676944, at 4 (citations omitted).

Plaintiffs here "easily satisfy this threshold requirement, as the contours of the class they seek to certify are easily ascertained . . . ." *Chang v. United States,* 217 F.R.D. at 269.  Indeed, the proposed class already has been defined by Defendants.  Attached to this Brief as Attachment KK is a letter to Plaintiffs' counsel from Sue Ellen Sloca, FOIA Officer, Office of the Secretary, U.S. Department of the Interior (Jan. 16, 2007).  Attachment A to this letter is an "Account Holders Distribution List" which contains the names of 310 American Indian / Alaska Native tribes.  As the letter explains, this list includes "[t]he names of Indian tribes with tribal trust fund accounts at the Department of the Interior who received "Arthur Andersen" reconciliation reports in 1996 and 1997."  Sloca Letter p. 1.  This official list proves the existence of an identifiable proposed class. *See Covelo Indian Cmty v. Watt,* 551 F.Supp. 366, 376 (D.D.C. 1982), *aff'd as modified and vacated as moot,* No. 83-2377 (D.C.Cir. Feb. 1, 1983) (finding a definitive class by "defendants own conduct" where "members of that class can easily be ascertained from BIA records . . . ."); *see also Does I through III v. District of Columbia,* 232 F.R.D. 18, 25  (D.D.C. 2005), *rev'd in part on other grounds and vacated in part,* 489 F.3d 376 (D.C.Cir. 2007) (where official records sufficiently identify class members as having "specific and immutable" characteristics, existence of class

requirement is met). All twelve named Plaintiffs are on this list and thus are members of the proposed class.

Of this possible proposed class, Plaintiffs do not seek to include those tribes that have filed their own separate actions in federal district court for full and complete accountings. *See* First Amended Complaint ¶ 59. To the best of Plaintiffs' knowledge, the following 46 tribes have done so: 1) Ak-Chin Indian Community; 2) Alabama-Quassarte Tribal Town; 3) Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation; 4) Cheyenne River Sioux Tribe; 5) Chickasaw Nation; 6) Chippewa Cree Tribe of the Rocky Boy's Reservation; 7) Choctaw Nation; 8) Couer D'Alene Tribe; 9) Colorado River Indian Tribes; 10) Confederated Tribes of the Colville Reservation; 11) Confederated Tribes of the Goshute Reservation; 12) Crow Creek Sioux Tribe; 13) Eastern Shawnee Tribe; 14) Gila River Indian Community; 15) Haudenosaunee, Onondaga Nation; 16) Iowa Tribe of Kansas and Nebraska; 17) Kaw Nation; 18) Lower Brule Sioux Tribe; 19) Miami Tribe of Oklahoma; 20) Muskogee (Creek) Nation; 21)Northern Cheyenne Tribe; 22) Northwestern Band of Shoshone Indians; 23) Oglala Sioux Tribe; 24) Omaha Tribe; 25) Osage Tribe; 26) Otoe-Missouria Tribe; 27) Passamaquoddy Tribe; 28) Pechanga Band of Luiseno Mission Indians; 29) Ponca Tribe; 30) Prairie Band of Potawatomi Nation; 31) Red Cliff Band of Lake Superior Indians; 32) Rosebud Sioux Tribe; 33) Salt River Pima-Maricopa Indian Community; 34) Seminole Nation of Oklahoma; 35) Shoshone-Bannock Tribes; 36) Sokaogon Chippewa Community; 37) Standing Rock Sioux Tribe; 38) Stillaguamish Tribe; 39) Te-Moak Tribe of Western Shoshone Indians;[17] 40) Three

---

[17] While the Te-Moak Tribe filed its case as a class action, *see Te-Moak Tribe of Western Shoshone Indians v. Kempthorne,* No. 05-2500-JR (D.D.C. filed Dec. 30, 2005), it since has decided not to pursue class certification in light of this case. *See* Declaration of Stuart S. Mermelstein at ¶ 7 (May 22, 2008), attached hereto as Attachment LL.

Affiliated Tribes of the Fort Berthold Reservation; 41) Tohono O'Odham Nation; 42) Tonkawa

Tribe; 43) Winnebago Tribe; 44) Wyandot Nation; 45) United Keetoowah Band of Cherokee

Indians; and, 46) Yankton Sioux Tribe.  *See* Answer to First Amended Complaint Exhibit 1 at 2-5.

In addition, Plaintiffs do not seek to include in the proposed class in this action four tribes who

through their legal counsel have notified Plaintiffs that they do not wish to be included: 1) Pueblo

of Laguna; 2) Jicarilla Apache Nation; 3) Delaware Tribe of Indians; and, 4) Navajo Nation.  *See*

First Amended Complaint at ¶ 60.

### C.  All Requirements Of Rule 23(a)[18] And (b) Are Satisfied Here

#### 1.    Numerosity

Based on the above definition, the proposed class in this action, including the named

Plaintiffs, consists of 260 American Indian / Alaska Native tribes.  This number of plaintiffs meets

Rule 23(a)'s requirement of numerosity which requires

> that the putative class be so large that joinder of all class members would be
> impracticable.  There is no specific threshold that must be surpassed in order to
> satisfy the numerosity requirement; rather, each decision turns on the particularized
> circumstances of the case.  That said, courts in this jurisdiction have observed that
> a class of at least forty members is sufficiently large to meet this requirement.

*Does I through III v. District of Columbia*, 232 F.R.D. at 25 (citations omitted); *see also Franklin*

*v. Barry,* 909 F.Supp. 21, 30 (D.D.C. 1995) (proposed class size of 200 satisfies numerosity

requirement). Numerosity here also is met by virtue of the fact that, according to the Account

---

[18]  Defendants in *Cobell* conceded generally that Plaintiffs there had satisfied "the
prerequisites under Rule 23(a) . . ."  *See* Defendants' Memorandum of Points and Authorities in
Response to Plaintiffs' Motion for Class Certification 28 (filed Jan. 21, 1997) (Doc. # 24).  "The
class certification determinations in this case are highly similar to those faced as to the class" in a
case where a class was certified previously.  *See Barnes v. District of Columbia,* 242 F.R.D. 113,
120 (D.D.C. 2007).

Holders Distribution List, these 260 tribes are located around the country in over 30 states.  *See*

*Lewis v. National Football League,* 146 F.R.D. 5, 8-9 (D.D.C. 1992) (numerosity requirement

satisfied where approximately 250 players were members of the class and geographical dispersion

of potential class members rendered joinder "clearly impracticable."); *accord Stewart v. Rubin,* 948

F.Supp. 1077, 1088 (D.D.C. 1996), *aff'd,* 124 F.3d 1309 (D.C.Cir. 1997) (245-member class spread

throughout the country satisfies numerosity requirement).  Despite their geographic dispersion, the

class nevertheless is quite manageable because Defendants already have identified each class

members' mailing address.  *See* Account Holders Distribution List, at 1-52.

## 2.    Commonality

This Court recently stated that

> Rule 23(a)(2) requires that there be questions of fact or law common to the class.
> This rule does not require commonality on every fact or on each issue of law.  Rather,
> "[t]he commonality test is met when there is at least one issue, the resolution of
> which will affect all or a significant number of the putative class members."  Because
> the commonality requirement may be satisfied by a single common issue, courts have
> noted that it is "often easily met."

*Does I through III v. District of Columbia,* 232 F.R.D. at 26 (citations omitted).  Indeed, "it is

commonly understood that class actions seeking injunctive and declaratory relief, as here, "by their

very nature" present common questions of law and fact."  *Id.* at 27 (citations omitted).

Commonality is present here by the numerous universal legal issues raised, the resolution of

which through declaratory and injunctive relief will affect the entire class.  These issues include:

the existence, nature, and scope of the fiduciary accounting duty owed by Defendants to Plaintiffs;

whether Defendants have met that duty by the AA reports or otherwise;  what standards govern

Defendants' fiduciary accounting or accounting-alternative duty; and whether and how generally the

trust fund accounts of Plaintiffs must be corrected.  *See* First Amended Complaint at ¶s 70-80; *see also Cobell v. Babbitt,* No. 96-1285 (D.D.C. Feb. 4, 1997) (Doc. # 27) (order certifying class action) (finding that "there are questions of law and fact common to the claims of all members of the Class against defendants with respect to the matters set forth in the Complaint").  Here, as in *Cobell,* the named Plaintiffs and putative class members have a single overriding objective: to show that Defendants are in breach of trust and that they have suffered equally from that breach or those breaches.  *See Meyer v. Citizens and S. Nat'l Bank,* 106 F.R.D. 356, 360-61 (M.D.Ga. 1985).

As the trustee for tribal trust fund accounts, Defendants' fiduciary duties extend equally to their tribal beneficiaries.  *See Cobell v. Norton,* 225 F.R.D. 41, 49 (D.D.C. 2004).  Indeed, breach of trust claims by beneficiaries in particular generally raise common legal and factual issues worthy of class certification.  *See, e.g., Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all . . . beneficiaries.") (citation omitted); *Lively v. Dynegy, Inc.,* 2007 WL 685861, at *8 (S.D.Ill Mar. 2, 2007) (whether ERISA defendants breached fiduciary duties owed beneficiaries; whether beneficiaries were injured by such breaches; and, whether defendants must make beneficiaries whole for their losses are common issues of law and fact that satisfy commonality requirement).

This rule has been routinely followed by this and other courts in Indian breach of trust cases involving multiple beneficiaries.  *See Cobell v. Norton,* 240 F.3d at 1092-93;  *Littlewolf v. Hodel,* 681 F.Supp. 929, 935 (D.D.C. 1988), *aff'd,* 877 F.2d 1058 (D.C.Cir. 1989), *cert. denied,* 493 U.S. 1043 (1990); *Covello Indian Cmty v. Watt*, 551 F.Supp. at 368; *United States v. Mitchell,* 463 U.S. 206 (1983); *LeBeau v. United States,* 334 F.Supp.2d 1200 (D.S.D. 2004), *rev'd on other grounds,*

474 F.3d 1334 (Fed. Cir. 2007); *Loudner v. United States,* 200 F.Supp.2d 1146 (D.S.D. 2002);

*Loudner v. United States,* 108 F.3d 896 (8th Cir. 1997); *Rogers v. United States,* 877 F.2d 1550

(Fed.Cir. 1989); *Angle v. United States,* 709 F.2d 570 (9th Cir. 1983); *Moose v. United States,* 674

F.2d 1277 (9th Cir. 1982); *Whiskers v. United States,* 600 F.2d 1332 (10th Cir. 1979), *cert. denied,*

444 U.S. 1078 (1980); *see also Shoshone-Bannock Tribes v. Norton,* 2005 WL 2387595, at * 4-5

(D.Idaho Sept. 28, 2005) (certifying class of Indian trust fund beneficiaries because, as the court

states throughout its opinion, the critical question of whether Defendants breached a duty of trust is

clearly common to all potential class members; because class resolution of this issue "is superior to

other available methods for the fair and efficient adjudication of the controversy"); *cf. Short v.

United States,* 50 F.3d 994 (Fed.Cir. 1995) (describing thirty-two years of various class action

litigation over a tribal trust fund).

      The scant proceedings in this action already have demonstrated significant commonality.

Last year this Court consolidated this and all other  pending tribal trust claims for purposes of

resolving Defendants' Motion to Remand. *See, e.g., Ak-Chin Indian Community v. Kempthorne,* No.

06-2245, Order of July 2, 2007, at 4 ("those cases in which the government files such a [remand]

motion will be consolidated for the limited purpose of the remand motion . . . .") (Doc. # 16); *id.*

Memorandum Order of December 19, 2007, at 5 ("Pursuant to Fed. R. Civ. P. 42(a), I consolidated

the cases for the limited purpose of resolving the remand motion.") (Doc. # 26).  This year the Court

similarly will deal with Defendants' Motion to Dismiss this and other tribal trust actions and with

Trust Record Preservation Motions by Plaintiffs in this and other tribal trust actions.  *See* Order of

May 6, 2008 (Doc. # 47); Notice to Counsel of May 7, 2008 (Doc. # 48); Order of May 13, 2008

(Doc. # 50).

### 3.    Typicality

As this Court has explained,

> The third requirement under Rule 23(a) is that plaintiffs establish that the claims of the class representatives are typical of those of their class.  This requirement is intended to ensure that "the class representatives have suffered injuries in the same general fashion as absent class members."  It is satisfied if "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability."  Courts have liberally construed this requirement.

*Does I through III v. District of Columbia,* 232 F.R.D. at 27 (citations omitted).

Typicality is met here because the named Plaintiffs' claims and putative class members' claims arise from the same acts of Congress and the same actions of Defendants.[19]  *See Littlewolf v. Hodel,* 681 F.Supp. at 935 ("When, as here [in seeking to force the United States to carry out certain trust duties to Indians], the representatives and the absent class members would proceed on the same legal theory and would raise claims arising from the same event or course of conduct, the class members are deemed to be raising claims 'typical' of those of the class as a whole.').  In *Klamberg v. Roth,* 473 F.Supp. 544 (S.D.N.Y. 1979), the court aptly stated that, "Proof of conduct constituting a breach of fiduciary duty or a breach of the Trust Agreement is likely to be the same for all beneficiaries' claims."  473 F.Supp. at 558.  As in *Klamberg v. Roth,* Plaintiffs' claims here "arise solely from the acts of the defendants directed towards all of the beneficiaries, and are not merely typical of the claims of other beneficiaries but are the same."  *Id.*

---

[19]  There are no tribe-specific statutes with respect to the government's tribal trust fund fiduciary accounting duties.  The very small handful of trust statutes which are tribe-specific in other respects, *e.g.,* Act of Aug. 21, 1916, 39 Stat. 519 (Northern Arapaho and Eastern Shoshone Tribes); Act of June 28, 1906, 34 Stat. 536 (Osage Tribe) are not relevant to the claims in this action for which class certification is sought.

Defendants themselves last year described their treatment of tribal trust fund accounts as being generally uniform with respect to transaction processing and reporting. *See* Defendants' Memorandum in Support of Defendants' Motion for Remand and Stay of Litigation at 3-6, 12-15, and 31 (filed Aug. 11, 2007) (Doc. # 38). Defendants also described their standardized treatment of tribal trust fund accounts in the AA Agreed-Upon Procedures Project. *Id.* at 6-12. And, Defendants readily acknowledged that Congress treats tribal trust fund accounts alike at least for purposes of the claims raised in this action. *Id.* at 11-12, 31-32, and 35-36; *see also* Declaration of Kevin W. Nunes at ¶ 10 (attesting to Defendants' uniform treatment of tribal trust fund account transactions in their manuals, processing, reporting, and contracting).

The legal and remedial theories behind the named Plaintiffs' claims and those of the putative class are identical. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 27; *Keepseagle v. Veneman,* 2001 WL 34676944 at *9; *see also Lively v. Dynegy, Inc.,* 2007 WL 685861, at * 9 (finding typicality where plaintiffs claims arise from the same course of conduct of a fiduciary, are premised on the same legal theory ( breach of ERISA fiduciary duties), and where the same breaches of fiduciary duties allegedly resulted in harm to the proposed class). In short, the same historical, systemic, and continuing actions of Defendants have affected the representatives and the class members equally. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 27; *In re Baan Co. Sec. Litig.,* 2002 WL 32307825 at * 5 (D.D.C. July 19, 2002). The representatives' interests thus are aligned with the class members such that the action can and should be maintained as a class action. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. at 27.

### 4.    Adequacy

According to this Court,

> The final prerequisite under Rule 23(a) is that the named representatives must "fairly and adequately represent the interests of the class." The prerequisite necessitates an inquiry into the adequacy of representation, including the quality of counsel, any disparity of interest between class representatives and members of the class, communication between class counsel and the class, and the overall context of the litigation."

*Does I through III v. District of Columbia,* 232 F.R.D. at 27 (citations omitted). Thus, [a]dequacy

of representation refers to both legal counsel and class representatives." *Keepseagle v. Veneman,*

2001 WL 34676944, at *9.

Based on their extensive experience representing Indian tribes in complex federal Indian law

litigation as well as class actions, including Indian trust accounts breach of trust actions, the legal

counsel retained by Plaintiffs are well-qualified to represent the class. *See* First Amended Complaint

at ¶ 66 (*citing Cobell v. Kempthorne; Chippewa Cree Tribe v. United States*); *see also* Declaration

of Melody L. McCoy submitted herewith as Attachment MM. Plaintiffs' counsel have litigated

numerous successful cutting-edge federal Indian law cases, including class actions in this Court. *See*

First Amended Complaint at ¶ 66. (*citing Cobell v. Kempthorne; Covelo Indian Cmty v. Watt*). As

in these and other cases, Plaintiffs' counsel are fully able to prosecute this action vigorously on

behalf of the class. *See Cobell v. Babbitt*, No. 96-1285 (D.D.C. Feb. 4, 1997) (order certifying class

action, finding that the "Representative Plaintiffs have retained counsel qualified to prosecute this

lawsuit on behalf of the Class. . . .") (Doc. # 27). By the well-drafted Complaint in this action

Plaintiffs' counsel have shown that they have identified and investigated the claims raised herein,

that they are knowledgeable of the applicable law, and that they are willing to commit the necessary

resources to this case. There is every reason to believe that they will continue to do so.[20]

---

[20] In addition to Rule 23(a)(4), an inquiry into adequacy of counsel is governed by Fed. R. Civ. P. 23(g).

38

The named Plaintiffs here – twelve American Indian / Alaska Native tribes – are part of the class and they have suffered the same injury as the putative class members. *See In re Baan Co. Sec. Litig.,* 2002 WL 32307825, at * 5.[21]  With respect to the claims raised in this action, the pertinent facts related to the trust fund account transactions of the named Plaintiffs are the same as the facts related to the trust fund account transactions of all class members.  *See generally* Declaration of Kevin W. Nunes at ¶ 11.  The overriding interests of the named Plaintiffs and the interests of the putative class in this action are the same; both seek to prove the existence and scope of Defendants' fiduciary accounting duties, whether those duties have been met by the AA reports or otherwise, and if they have not been met then what standards govern Defendants' fiduciary accounting or accounting-alternative duties; and whether and how generally the trust fund accounts of Plaintiffs must be corrected.[22]  As to these general issues there is no antagonism and there are no conflicts of

---

[21]  While the specific details of each named plaintiff should not necessarily be determinative of class certification, the various situations and interests presented collectively by named plaintiffs as a group can bear on fair and adequate representation.  *See Keepseagle v. Veneman,* 2001 WL 34676944 at *9.  To this end, Plaintiffs summarize several key points about their collective backgrounds: 1)  their populations range from about 1,500 to about 26,000, *see* Declarations of Neil Peyron at ¶ 3 (Tule River) and William E. Martin at ¶ 2 (Tlingit & Haida), 2) their trust acreage ranges from less than 800 acres to almost 1 million acres; *see* Declarations of Joseph Kirk at ¶ 2 (Klamath Tribes) and Ralph R. Sampson, Jr. at ¶ 2(Yakama Nation); 3) the number of transactions in their AA CD-ROM account databases ranges from 722 (Pawnee) to 24,199 (Yakama), *see* Declaration of Kevin W. Nunes at ¶ 11; 4) the amounts of the transactions in their AA CD-ROM account databases ranges from pennies to millions of dollars, *id.;* and, 5) their Proceeds of Labor accounts represent a wide variety of underlying resources, including oil and gas, timber, mining, gravel, and various surface leases, *id.*  Among other putative class members, one would be hard pressed to find a tribe that did not have at least one situation similar to at least one named Plaintiff.

[22]  In the instances in which the AA Project affected a few individual tribes differently, the government made clear that these individual tribal differences were *in addition to* the Project's general and identical impact on all tribes.  *See, e.g.* U.S. Department of the Interior, BIA, Special Projects Team, Letter from Special Project Officer Director to Chairman, Yakima Nation (July 16, 1993) (confirming special agreed upon procedures requested by the Tribe and

interest between the named Plaintiffs and the members of the putative class. *See In re Baan Co. Sec. Litig.,* 2002 WL 32307825 at * 5. "Accordingly, . . . the interests of the plaintiffs and the interests of the putative class members are aligned." *Does I through III v. District of Columbia,* 232 F.R.D. at 28.

### 5. Risk of Separate Actions

Although Plaintiffs here seek class certification under Rule 23(b)(2), since class actions seeking trust accountings often are certified under Rule 23(b)(1), Plaintiffs show next that they meet the (b)(1) requirements.

Rule 23(b)(1) requirements are met where "maintaining separate actions would 'create a risk of inconsistent adjudications, thus establishing incompatible standards of conduct' . . . [or,] separate actions by individual class members would 'as a practical matter . . . substantially impede their ability to protect their interests' because resolution of issues . . . in one case may have a preclusive effect on other class members' future claims." *Chang v. United States,* 217 F.R.D at 273 n.5 (citations omitted).

Class certification under Rule 23(b)(1) is appropriate "where an accounting or similar measures are needed to restore the subject of a trust." *Nelson v. IPALCO Ent., Inc.,* 2003 WL 23101792, at *10 (S.D.Ind. Sept. 30, 2003); *accord Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.,* 140 F.R.D. 474, 478-79 (S.D.Ga. 1991) (citations omitted). Such actions

---

stating that, "The Special Procedures requested by the Yakima Tribe are in addition to the standard review procedures which will be performed by Arthur Andersen & Co. in the reconciliation of the Tribe's trust accounts . . . . in accordance with the requirements of the reconciliation contract as modified." Contract # CMKD0129393, Contract Modification No. 12 (Sept. 19, 1993), copy attached hereto as part of Attachment K. Thus, these differences have no bearing on the ability of a named Plaintiff to fairly and adequately represent other tribal account holders.

are classic examples of situations where individual adjudications would likely substantially impair or impede the ability of absent party class members to protect their interests. *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 833-34 (1999). Here, the named Plaintiffs and putative class members have a shared interest in the existence, nature, and scope of Defendants' fiduciary accounting duties; whether those duties have been met; and whether and how Defendants must rectify their failure to meet those duties.

Beneficiary classes certified in breach of trust cases under Rule 23(b)(1) include *In re Enron Corp.*, 2006 WL 1662596, at *14 (S.D.Tex. June 7, 2006) (granting class certification under Rule 23(b)(1) in light of the fact that, because actions for breach of fiduciary duty are derivative in nature, an adjudication regarding the rights of any single class member was likely to be dispositive as to the rights of all class members); *Banyai v. Mazur,* 205 F.R.D. at 165; *Montgomery v. Aetna Plywood, Inc.,* 1996 WL 189347, at *5 (N.D.Ill Apr. 16, 1996); *see also Cobell v. Babbitt,* No. 96-1285 (D.D.C. Feb. 4, 1997) (order certifying class action in part under 23(b)(1)) (Doc. # 27). Significantly, Defendants in *Cobell* made it abundantly clear that they did not oppose class certification under Rule 23(b)(1) with respect to the prospective relief sought there. *See* Defendants' Memorandum of Points and Authorities in Response to Plaintiffs' Motion for Class Certification at 1, 10-11, 27-28, and 29-30 (filed Jan. 21, 1997) (Doc. # 21). The same conclusion is appropriate here.

### 6. Defendants' Common Actions

Plaintiffs submit that for various reason class certification in this action is most appropriate under Rule 23(b)(2). In this jurisdiction,

41

In order to satisfy Rule 23(b)(2), plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." There are two basic factors that must be present in order to certify a class under Rule 23(b)(2): (1) the defendant's action or refusal to act must be "generally applicable to the class"; and (2) plaintiffs must seek final injunctive relief on behalf of the class.

*Does I through III v. District of Columbia,* 232 F.R.D. at 28 (citations omitted).

As in *Does I through III v. District of Columbia,* "Plaintiffs have satisfied both factors . . . ." here. Exactly one year ago, Defendants' admitted as much before this Court. "There are certainly core issues as to what accounting tribes are entitled to that would have application to many of the cases pending before the court brought by Indian tribes." Statement of John H. Martin, Counsel for Defendants in *Tohono O'Odham Nation v. Kempthorne, et al.,* No. 06-2236-JR, Hearing Transcript at page 45, lines 14-17 (June 6, 2007). Subsequently, in seeking a blanket remand of all tribal trust fund cases pending before this Court to the Interior Department to allow the Department an opportunity to develop a general tribal trust fund accounting plan, Defendants acknowledged that "the central focus of all these cases will necessarily be on providing historical trust accountings . . . for all tribes . . . ." Defendants' Memorandum in Support of Defendants' Motion for Remand and Stay of Litigation at 1 (filed Aug. 11, 2007) (Doc. # 38).

Defendants' principal action at issue here – failure to provide Plaintiffs with full and complete accountings of their trust fund accounts – is "an action 'generally applicable to the class.'" *Does I through III v. District of Columbia,* 232 F.R.D at 28 (footnote omitted).[23] As in other cases

_____

[23] An inquiry under Rule 23(b)(2) into whether a defendant acted on grounds generally applicable to the class "is often considered to be encompassed by the commonality requirement of Rule 23(a) which presumably already has been met. *Does I through III v. District of Columbia,* 232 F.R.D. at 28 n.12 (citations omitted).

of classes certified under Rule 23(b)(2), Plaintiffs here allege historical and continuing well-delineated and systemic breaches of trust, negligence, wrongdoing, and other legal violations by Defendants. The allegations "represent part of a consistent pattern of activity on the part of defendant[s]." *See, e.g., Barnes v. District of Columbia,* 242 F.R.D. at 123 (citations omitted). "The policies and practices challenged here are conduct generally applicable to the class." *Id.*

The second requirement for Rule 23(b)(2) certification is met as well, because Plaintiffs seek uniform declaratory and injunctive relief. *See* First Amended Complaint at ¶s 60-80. Indeed, "declaratory and injunctive relief applicable to a class as a whole" is the "defining characteristic" of a Rule 23(b)(2) class. *Chang v. United States,* 217 F.R.D. at 273 (citation omitted). Accordingly, "certification under Rule 23(b)(2) is appropriate for purposes of determining [the] injunctive and declaratory relief" sought. *Does I through III v. District of Columbia,* 232 F.R.D at 29; *see also Cobell v. Babbitt,* No. 96-1285 (D.D.C. Feb. 4, 1997) (order certifying class action, finding that "The defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole") (Doc. # 27).

This and other jurisdictions have recognized that Rule 23(b)(2) certification need not be mandatory. *Eubanks v. Billington,* 110 F.3d at 96; *In re Monumental Life Ins. Co.,* 365 F.3d 408, 417 (5th Cir. 2004), *cert. denied,* 543 U.S. 870 (2004); *Molski v. Gleich,* 318 F.3d 937, 951 n.16 (9th Cir. 2003); *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 166 (2nd Cir. 2001), *cert. denied,* 535 U.S. 951 (2002); *Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894, 898 (7th Cir. 1999); *Kyriazi v. W. Elec. Co.,* 647 F.2d 388, 392-95 (3rd. Cir. 1981). While members of a (b)(2) class have no absolute right to notice and opt-out, *see* 3 Alba Conte and Herbert Newberg, Newberg on Class

Actions § 8:15 (4th ed. 2002), this Court's inherent discretionary power under Rule 23(d)(2) to allow

notice and opt-out rights under Rule (b)(2) to protect the interests of absent class members is "well-

established." *Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1189 (9th Cir. 2007). "Basically, notice under

subdivision (d)(2) serves as a management tool throughout the litigation, as well as a means for

bolstering due process for absent class members, in appropriate circumstances." 3 Alba Conte and

Herbert Newberg, Newberg on Class Actions at § 8:15 (footnote omitted); *see also* Comment, *The*

*Importance of Being Adequate: Due Process Requirements in Class Actions under Federal Rule*

*23,*123 U.Pa. L. Rev. 1217, 1241 n.103 (1975) (discretionary notice "does help the court in assuring

that there is adequate representation of the class.").

In this case notice and opt-out should be made available to putative class members because

they are sovereign tribes. *See Cobell v. Norton,* 283 F.Supp.2d 66, 273-75 (D.D.C. 2003); *Cherokee*

*Nation v. Babbitt,* 944 F.Supp. 974, 980 (D.D.C. 1996), *rev'd on other grounds,* 117 F.3d 1489

(D.C.Cir. 1997).  This sovereignty compels opt-out rights so that tribes can choose to have their

claims addressed outside the context of this litigation.  For example, as Defendants point out, many

tribes have elected to forego actions for trust fund accountings and simply have filed actions for

money damages in the Court of Federal Claims.  *See* Defendants' Memorandum in Support of

Defendants' Motion for Remand and Stay of Litigation at 19 (filed Aug. 11, 2007) (Doc. # 38).

Some tribes want to pursue negotiated settlements of their claims through ADR or other processes.

*See* Defendants' Memorandum of Points and Authorities in Reply to Plaintiffs' Memoranda in

Opposition to Defendants' Motion for Remand and Temporary Stay of Litigation at 13-14 (filed

Nov. 21, 2007 (Doc. # 41).  Also, since some tribes have filed their own accounting actions already,

allowing opt-out in this case makes sense – many would-be-but-non-class members are pursuing

their own litigation.  *See Newsome v. Up-To-Date Laundry, Inc.* 219 F.R.D. 356, 364, (D.Md 2004) (in case seeking injunctive and declaratory relief, court has discretion to order that notice and opt-out rights be given to a (b)(2) class to ensure that judgment is final as to those class members who do not opt-out and to give class members the opportunity to appear through their own counsel or remove themselves from the action entirely.").

With their Motion for Class Certification, Plaintiffs submit a Proposed Notice for the Court's approval.  *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 171 (1989).  The Proposed Notice informs class members about the action and the procedures they should follow to remain in or opt-out of the class.  Given that all potential class members in the instant action are readily identifiable, Plaintiffs propose that their Class Counsel simply send copies of the Notice by regular mail and by email where readily available individually to all account holders as listed in the Account Holders Distribution List provided by Defendants within fourteen days of an Order by this Court granting class certification.  Plaintiffs will bear the cost of this initial mailing.

Plaintiffs' Proposed Notice contains an Exclusion Request Form and provides that Exclusion Requests must be made within 90 days of the Court's class certification Order.  Plaintiffs will establish a dedicated Post Office Box to receive Exclusion Requests and other class-related correspondence, and Plaintiffs will be responsible for filing Exclusion Requests with the Court. Plaintiffs also will establish a designated toll-free telephone number for class related inquiries. Plaintiffs already have established a dedicated website for this lawsuit, www.tribaltrust.com.

"[D]ue process [for Rule 23(b)(2) class members] is satisfied if the [ notice] procedure adopted 'fairly insures the protection of the interests of absent parties who are to be bound by it.'" *Pate v. United States,* 328 F.Supp.2d 62, 73 (D.D.C. 2004) (citation omitted); *see also Harris v.*

45

*Graddick,* 615 F.Supp. 239, 244 (M.D.Ala. 1985) ("in a Rule 23(b)(2) class action, mechanics of the notice process are left to the discretion of the district court subject only to the broad 'reasonableness' standard imposed by due process.") (citations omitted).  Plaintiffs' Proposed Notice here will notify the class fairly and adequately and thus is reasonable and should be approved.  *See Doe v. First City Bancorp.,* 81 F.R.D. 562, 571 (S.D.Tex. 1978).

Plaintiffs here emphasize that the relief sought in this action even in terms of the correction of account balances is not damages; it is exclusively declaratory and injunctive; hence their request for opt-out is not in any way based on the nature of the relief sought.  *See Eubanks v. Billington,* 110 F.3d at 50.  Defendants nevertheless undoubtedly will argue to the contrary in this case as they have in *Cobell* and therefore that class certification (as well as this Court's jurisdiction) at least under Rule 23(b)(2) is not appropriate.[24]  Plaintiffs reiterate that any monetary relief sought here is "equitable in nature because it seeks restitution . . . ."  *Lightfoot v. District of Columbia,* 246 F.R.D. 326, 344 (D.D.C. 2007), and in any event such relief does not predominate over the critical and multiple non-monetary threshold issues.  The opt-out request is based on recognition of and respect for tribal sovereignty.

---

[24]  To the extent that there is any question about the nature or predominance of the relief sought in connection with the correction of account balances, such matters can be "addressed by certifying this as a hybrid 23(b)(2) and (b)(3) class."  *Barnes v. District of Columbia,* 242 F.R.D. at 123.  Alternatively, the Court can certify the entire class initially under Rule 23(b)(2) for liability purposes and certain requested relief, and reconsider the class certification category at a later stage.  *Disability Rights Council of Greater Washington v. Washington Metro. Area Transit Auth.,* 239 F.R.D. 9, 29 (D.D.C. 2006).  "This approach will allow the litigation to move forward efficiently . . . ."  *Id.*

46

### 7. Predominance and Superiority

As set forth *supra*, Plaintiffs meet the requirements for class certification under Rule 23(b)(2). As such, this Court need not reach the requirements for certification under Rule 23(b)(3). Indeed,

> certification under Rule 23(b)(3) is only appropriate if the class cannot be certified under either Rule 23(b)(1) or 23(b)(2). "When a particular action qualifies under another portion of Rule 23(b) as well as Rule 23(b)(3), it should be treated as if it had been brought exclusively under the other provision."

*Does I through III v. District of Columbia*, 232 F.R.D at 29 n15 (citations omitted). Nevertheless, as an additional and alternative basis for class certification, Plaintiffs here also meet the requirements of Rule 23(b)(3).

 "[A] class should be certified pursuant to . . . Rule 23(b)(3) when questions of law or fact common to the class predominate over questions affecting individual members, and when a class action is the superior method of litigating the controversy." *In re Baan Sec. Litig.,* 2002 WL 32307825, at *7; *accord Johnson v. District of Columbia,* 248 F.R.D. at 56-58 (certifying a class under Rule 23(b)(3) where class-wide issues predominate and a class action is superior to other available methods to the fair and efficient adjudication of the controversy). "These requirements are referred to as predominance and superiority" and both are met here. *Meijer, Inc. v. Warner Chilcott Holdings, Co. III,* 246 F.R.D. 293, 299 (D.D.C. 2007).

### a. Predominance of Common Questions of Law

This Court has explained that

> In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, ... predominate over those issues that are subject

only to individualized proof. The predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a).

*Johnson v. District of Columbia,* 248 F.R.D. at 56 (citations omitted). "There is, of course, no bright

line test for determining whether common questions of law or fact predominate." *In re Nifedipine*

*Antitrust Litig.,* 246 F.R.D. 365, 369 (D.D.C 2007 ) (citations omitted).

The threshold legal issues that Plaintiffs here present on behalf of the entire class – existence

and scope of Defendants' fiduciary duties to fully and completely account; whether Defendants' have

complied with those duties; what are the alternatives to full and complete accountings if such

accountings are impossible; and, whether Defendants must correct the balances of Plaintiffs' trust

fund accounts – are issues "subject to generalized proof." *Johnson v. District of Columbia,* 248

F.R.D. at 57. They do not require individualized proof by class members. Hence they are

exclusively, let alone predominately, common questions of law.

**b. Superiority of Class Action**

"The superiority requirement ensures that resolution by class action will 'achieve economies

of time, effort, and expense, and promote . . . uniformity of decision as to person similarly situated,

without sacrificing procedural fairness or brining about other undesirable consequences.'" *Meijer,*

*Inc. v. Warner Chilcott Holding Co. III,* 246 F.R.D. at 313 (citation omitted). With respect to

superiority, Rule 23(b)(3) instructs a court to take into account "(A) the interest of the members of

the class in individually controlling the prosecution or defense of separate actions; (B) the extent and

nature of any litigation concerning the controversy already commenced by or against members of the

class; (C) the desirability or undesirability of concentrating the litigation of the claims in the

48

particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." *In re Baan Sec. Litig.,* 2002 WL 32307825, at *7 n15.

It is well-established that class actions are the superior method of adjudicating controversies involving large numbers of plaintiffs who allege liability on the part of and injury from a single entity such as a corporation in securities fraud and antitrust actions. *See In re Baan Sec. Litig.,* 2002 WL 32307825, at *7; *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D at 29. Such actions are instructive here, where there similarly "exits generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Id.* As in the securities fraud and antitrust actions, the alleged breaches of trust, negligence, wrongdoing, and other legal violations here relate solely to the conduct of Defendants, and proof for these issues will not vary among class members. *Id.* (citations omitted). The impact of Defendants' actions is also common to the class.

Additionally, as in *Chang v. United States,* "the conclusion here that the class action is superior cannot seriously be questioned" given the number of potential class members, their dispersal throughout the nation, the likelihood that many if not all of the potential class members do not have the resources necessary to bring their own separate claims and thus would be deprived of their day in court, and the fact that over 200 separate trials would certainly be a waste of judicial resources. 217 F.R.D. at 273. "Class certification thus provides the opportunity for an efficient resolution of a multitude of common issues for the entire class in a single forum." *In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D at 31.

The class requested here is quite manageable. Not only are all of the members all known, their whereabouts are known as well. *See* Account Holders Distribution List, at 1-52. Notice to

class members can be achieved easily through direct mailings.  *See Barnes v. District of Columbia*, 242 F.R.D. at 124.

## CONCLUSION

For the above stated reasons, Plaintiffs' Motion for Class Certification under Fed. R. Civ. P. 23(b)(2) should be granted, and this Court should designate the twelve named Plaintiffs as class representatives; appoint the Native American Rights Fund as Plaintiffs' class counsel; and, approve the Proposed Notice to the Class which permits opt-out under Rule 23(d)(2).

DATED this 5th day of June, 2008

Respectfully submitted,

*/s/     Melody L. McCoy*
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

50