# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Nez Perce Tribe, et al. | ) | Civil Action No. |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| v. | ) | |
| KEMPTHORNE, et al. | ) | AMY L. DUTSCHKE |
| | ) | |
| Defendants | ) | |
| | ) | |

I, Amy L. Dutschke, pursuant to 28 U.S.C. 1746 and based on my personal knowledge or upon information provided to me in my official capacity, do herby declare and state:

1.  I am the Deputy Regional Director of the Pacific Regional Office for the Bureau of Indian Affairs ("BIA"). I have held that position since June 2000 and have been employed with the Pacific Region in varying capacities since 1974. My responsibilities include serving as the line officer responsible for planning, implementing, directing, monitoring and evaluating BIA's trust responsibilities and program services within the Region. The Region provides services to 102 Tribes, including the Tule River and Yurok Tribes. The services the Region provides Tribes include the full range of Trust and Indian Services Programs managed by the following divisions: Environmental, Safety and Cultural Management; Indian Services (which is divided into three Divisions – the Division of Transportation, the Division of Indian Services and the Division of Self-Determination); the Branch of Safety Management;

1

Trust Services; the Division of Natural Resources; the Division of Real Estate Services; the Division of Land Titles and Records; and the Division of Probate and Estate Services.

2. Although the services the Region provides to each of the 102 Tribes are the same in principle, in practice the scope and range can be very different for different Tribes. The Regional staff recognize, for example, that tribal self-determination under P.L. 93-638 is a right, and the Region does not dictate how a Tribe's 638 program should be designed to meet that Tribe's stated objectives. This means that the income generated from various activities will vary from Tribe to Tribe. For example, the Tribal trust records the Pacific Region holds for the Yurok Tribe include Forestry Management Plans and Timber Sales files. The Yurok Tribe compacts their Forestry activities as of Fiscal Year 1995 and have direct pay on Tribal timber sales meaning that the proceeds of those sales do not come into trust, but go directly to the Tribe. As a result BIA must depend on documents provided by the Tribe as the contractor to verify income generated by the sale. The tribe does not compact Real Estate Services, however, and so any income generated from Real Estate Programs, such as leases is collected by BIA on behalf of the Tribe and deposited in Tribal Trust accounts with the Office of the Special Trustee (OST).

3. Like the Yurok Tribe the Tule River Tribe contracts their Forestry activities, and obtained mature contract status as of Fiscal Year 2000 and also has direct pay on Tribal timber sales. In their case BIA must also depend on documents

2

provided by the Tribe as the contractor to verify income generated from the sale. Again, the Tule River Tribe does not contact Real Estate Services and so income generated from Real Estate programs, leases, is collected by BIA on behalf of the Tribe and deposited in trust accounts with OST.

4. The Region also holds tribal trust records for the Yurok Tribe that include Fish & Wildlife Program files, Fire Management Files, Timber Trespass files, Home site or other purpose Revocable Permits/Leases, Rights of Way, and Cadastral Survey Records. This is because the Yurok Tribe works with the BIA and obtains approval of timber trespass documents, home site permits, rights of way as well as revocable permits. The Yurok Tribe has compacted a portion of the Cadastral Survey program and the Tribe works closely with both the BIA and the Bureau of Land Management (BLM) to assure the Cadastral Survey program is managed in accordance with federal requirements.

5. Another significant characteristic of the Yurok Tribe is its history with the Hoopa Valley Tribe. In 1855, President Pierce through Executive Order established the Klamath River Reservation for the benefit of Indian tribes in the general area. In 1864 the Hoopa Valley Reservation was established and in 1876 President Grant issued an order establishing the boundaries of the Hoopa Valley Reservation known as the "Square". In 1891, President Harrison issued another Executive Order enlarging that reservation to include a tract of land one mile on each side of the Klamath River extending to the Pacific Ocean known as the "Addition". Between 1891 and 1955 the

3

"Square" and the "Addition" were treated by BIA as two separate reservations for many purposes and the Yurok or Klamath Indians and the Hoopa Indians were treated as two separate tribes. In 1963 certain Indians, claiming descent from Indians allotted on the reservation but not enrolled as members of the Hoopa Valley Tribe, brought a suit against the United States in the case of Jessie Short et al. v. U.S. alleging that the government had wrongfully excluded them from per capita payments from revenues of the communal lands of the Square. In 1980, some of the plaintiffs in the Short case filed suit against the United States in the case of Puzz v. U.S. In this case, the plaintiffs challenged the right of the United States to recognize the governing body of the Hoopa Valley Tribe as the sole governing authority of the reservation entitled to manage the reservation resources. In April 1988, the court held that the reservation as extended was for communal benefit. The Court ordered the BIA to assume management of the reservation and to consult fairly with all persons having interest in the reservation. These actions led both the Hoopa Tribe as well as members of the Yurok Tribe to find other prospects to resolve the disputes. P.L. 100-580, was signed by President Regan in October 1988, to provided for the separation of the two reservations. Section 4 of the law provided for the establishment of a settlement fund to be made up of all escrow funds, which were defined as moneys derived from the joint reservation which were held in trust by the Secretary, together with accrued income. These funds were divided based on the number of enrolled Hoopa Valley tribal members and the number of individuals who chose the Yurok

4

Tribal option under the provision of the Act. P.L. 100-580. The Act also provided for the organization of the Yurok Tribe and on November 24, 1993 the certification of constitution ratification was approved by Resolution No. 93-62.

6.  The tribal trust records the Region holds for the Tule River Tribe, on the other hand, also include Range Management Plans. This is because the Tule River Reservation, which consists of approximately 55,395 acres has a significant amount of lands available for range and the management of cattle and other livestock. The majority of members who live on the reservation live in lower flat areas, leaving the mountainous areas of the reservation available for grazing. The Tule River Reservation includes approximately 34,236 acres of forested lands with an allowable annual cut of 2.6 million board feet. Unlike the Yurok Reservation, which is extremely mountainous and steep and has boundaries defined as one mile on each side of the Klamath River, the Tule River Reservation lands range from flat to in excess of 5,000 feet above sea level.

7.  Attached as exhibit A is a true and correct copy of the constitution of the Yurok Tribe. The Yurok Tribe although long-recognized by the United States did not organize until 1993, after the Hoopa-Yurok Settlement Act was passed. The Yurok Council consists of nine members, including a chairperson, vice-chairperson, both elected at large from the eligible membership and seven district council members who are elected solely from within the districts where they reside. The Yurok people were instrumental in

5

securing their fishing rights on the Klamath River as is apparent in their successful court battles in Mattz vs. U.S. Since organization, the Yurok Tribe, continues to work to meet the subsistence and ceremonial needs of their members through work with the Pacific Fisheries Management Council as well as other State and Federal agencies in securing rights to fish on the Klamath River.

8. Attached as exhibit B is a true and correct copy of the constitution of the Tule River Tribe. The Constitution of the Tule River Indian Tribe was approved on January 15, 1936. The Tule River Tribal Council is composed of nine councilmen elected by secret ballot. The Council so organized elects from its own membership a council chairman and vice-chairman; and from within or without its membership elects a secretary, a treasurer and other officers and committees as necessary. The Tule River Tribal Council has demonstrated their desire for management of their resources, one example is, their work with the Bureau of Indian Affairs to round up feral horses which began to plague the resources of the reservation in 2007. A total of 235 horses were captured in an effort to control a building population.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _14th_ day of July, 2008.


_Amy L. Dutschke_
Amy L. Dutschke

6

# DECLARATION OF

# Amy L. Detschke

# July 14, 2008

# EXHIBIT A

We, the members of the Yurok Tribe, also known historically as the Pohlik-lah, Ner-er-ner, Petch-ik-lah, or Klamath River Indians, hereby adopt this constitution and establish our tribal government.

# PREAMBLE

Our people have always lived on this sacred and wondrous land along the Pacific Coast and inland on the Klamath River, since the Spirit People, Wo-ge' made things ready for us and the Creator, Ko-won-no-ekc-on Ne-ka-nup-ceo, placed us here. From the beginning, we have followed all the laws of the Creator, which became the whole fabric of our tribal sovereignty. In times past and now Yurok people bless the deep river, the tall redwood trees, the rocks, the mounds, and the trails. We pray for the health of all the animals, and prudently harvest and manage the great salmon runs and herds of deer and elk. we never waste and use every bit of the salmon, deer, elk, sturgeon, eels, seaweed, mussels, candlefish, otters, sea lions, seals, whales, and other ocean and river animals. We also have practiced our stewardship of the land in the prairies and forests through controlled burns that improve wildlife habitat and enhance the health and growth of the tan oak acorns, hazelnuts, pepperwood nuts, berries, grasses and bushes, all of which are used and provide materials for baskets, fabrics, and utensils.

For millennia our religion and sovereignty have been pervasive throughout all of our traditional villages. Our intricate way of life requires the use of the sweathouse, extensive spiritual training, and sacrifice. Until recently there was little crime, because Yurok law is firm and requires full compensation to the family whenever there is an injury or insult. If there is not agreement as to the settlement, a mediator would resolve the dispute. Our Indian doctors, Keg-ae, have cared for our people and treated them when they became ill. In times of difficulty village headmen gather together to resolve problems affecting the Yurok Tribe.

Our people have always carried on extensive trade and social relations throughout our territory and beyond. Our commerce includes a monetary system based on the use of dentalium shells, Terk-n-term and other items as currency. The Klamath River was and remains our highway, and we from time beginning utilized the river and the ocean in dugout canoes, Alth-way-och, carved from the redwood by Yurok craftsmen, masterpieces of efficiency and ingenuity and have always been sold or traded to others outside the tribe. Our people come together from many village* to perform ceremonial construction of our fish dams, Lohg-en. Our traditional ceremonies -- the Deerskin Dance, Doctor Dance, Jump Dance, Brush Dance, Kick Dance, Flower Dance and others -- have always drawn hundreds, and sometimes thousands, of Yuroks and members of neighboring tribes together for renewal, healing, and prayer. We also have always traveled to the North and East to the high mountains on our traditional trails to worship the Creator at our sacred sites, -- Doctor Rock, Chimney Rock, Thkla-mah (the stepping stones for ascent into the sky world), and many others.

This whole land, this Yurok country, stayed in balance, kept that way by our good stewardship, hard work, wise laws, and constant prayers to the Creator.

Our social and ecological balance, thousands and thousands of years old,    was shattered by the invasion of the non-Indians. We lost three-fourths or more of our people through unprovoked massacres by vigilantes and the intrusion of fatal European diseases. The introduction of alcohol weakened our social structure, as did the forced removal of our children to government boarding schools, where many were beaten, punished for speaking their language, and denied the right to practice their cultural heritage. After goldminers swarmed over our land we agreed to sign a "Treaty of Peace and Friendship" with representatives of the President of the United States in 1851, but the United States Senate failed to ratify the treaty. Then in 1855, the United States ordered us to be confined on the Klamath River Reserve, created by Executive Order, (pursuant to the Act of March 3, 1853 10 Stat. 226,238) within our own territory.

In 1864 a small part of our aboriginal land became a part of the Hoopa Valley Indian Reservation which was set apart for Yuroks and other Indians in Northern California. This became known as the 12-mile "Square." In 1891, a further small part of our aboriginal land was added when "The Extension" to the Hoopa Valley Indian Reservation was set aside by executive order authorized by the 1864 statute, which created the Hoopa Valley Indian Reservation. This statutory reservation extension extended from the mouth of the Klamath River, including the old Klamath River Reserve, about 50 miles inland and encompassed the river and its bed, along with one mile of land on both sides of the river.

But even this small remnant of our ancestral land was not to last for long. In the 1890's individual Indians received allotments from tribal land located in the Klamath River Reserve portion of the Hoopa Valley Reservation and almost all of the remainder of the Reserve was declared "surplus" and opened for homesteading by non-Indians. The forests were logged excessively and the wildlife was depleted. Even the great salmon runs went into deep decline due to overfishing and habitat destruction. In the mid 1930's the State of California attempted illegally to terminate traditional fishing by Yurok people, the river's original -- and only -- stewards from Bluff Creek to the Pacific Ocean. Our fishing rights were judicially reaffirmed in the 1970's and the 1980's after many legal and physical battles.

Throughout the first 140 years of our tribe's dealings with the United States, we never adopted a written form of government. We had not needed a formal structure and were reluctant to change. The United States had decimated the Yurok population, land base, and natural resources and our people were deeply distrustful of the federal government.

Yet we, the Yurok people, know that this is the time to exercise our inherent tribal sovereignty and formally organize under this Constitution. We do this to provide for the administration and governance of the modern Yurok Tribe that has emerged, strong and proud, from the tragedies and wrongs of the years since the arrival of the non-Indians into our land. Our sacred and vibrant traditions have survived and are now growing stronger and richer each year.

The Yurok Tribe is the largest Indian tribe in California, and while much land has been lost, the spirit of the Creator and our inherent tribal sovereignty still thrives in the hearts and minds of our people as well as in the strong currents, deep canyons, thick forests, and high mountains of our ancestral lands.

Therefore, in order to exercise the inherent sovereignty of the Yurok Tribe, we adopt this Constitution in order to:

1) Preserve forever the survival of our tribe and protect it from forces which may threaten its existence;

2) Uphold and protect our tribal sovereignty which has existed from time immemorial and which remains undiminished;

3) Reclaim the tribal land base within the Yurok Reservation and enlarge the Reservation boundaries to the maximum extent possible within the ancestral lands of our tribe and/or within any compensatory land area;

4) Preserve and promote our culture, language, and religious beliefs and practices, and pass them on to our children, our grandchildren, and to their children and grandchildren on, forever;

5) Provide for the health, education, economy, and social wellbeing of our members and future members;

6) Restore, enhance, and manage the tribal fishery, tribal water rights, tribal forests, and all other natural resources; and

7) Insure peace, harmony, and protection of individual human rights among our members and among others who may come within the jurisdiction of our tribal government.

# ARTICLE I - TERRITORY , JURISDICTION AND AUTHORITY

## SECTION 1 - Ancestral Lands

The Ancestral Lands of the Yurok Tribe extend unbroken along the Pacific Ocean coast (including usual and customary off-shore fishing areas) from Damnation Creek, its northern boundary, to the southern boundary of the Little River drainage basin, and unbroken along the Klamath River, including both sides and its bed, from its mouth upstream to and including the Bluff Creek drainage basin. Included within these lands are the drainage basin of Wilson Creek, the drainage basins of all streams entering the Klamath River from its mouth upstream to and including the Bluff Creek and Slate Creek drainage basins, including the village site at Big Bar (except for the drainage basin upstream from the junction of Pine Creek and Snow Camp Creek), and the Canyon Creek (also known as Tank Creek) drainage basin of the Trinity River, the drainage basins of streams entering the ocean or lagoons between the Klamath River and Little River (except for the portion of the Redwood Creek drainage basin beyond the McArthur Creek drainage basin, and except for the portion of the Little River drainage basin which lies six miles up from the ocean). Our Ancestral Lands include all submerged lands, and the beds, banks and waters of all the tributaries within the territory just described. Also included within the Ancestral Lands is a shared interest with other tribes in ceremonial high country sites and trails as known by the Tribe, as well as the Tribes usual and customary hunting, fishing and gathering sites. The Ancestral Lands are depicted on the "Map of Yurok Ancestral Lands", on file in the Yurok Tribal Offices.

## SECTION 2 - Territory

The territory of the Tribe consists of all Ancestral Lands, and specifically including, but not limited to, the Yurok Reservation and any lands that may hereafter be acquired by the Tribe, within or without Ancestral Lands.

## SECTION 3 - Jurisdiction

The jurisdiction of the Yurok Tribe extends to all of its member wherever located, to all persons throughout its territory, and within its territory, over all lands, waters, river beds, submerged lands, properties, air space, minerals, fish, forests, wildlife, and other resources, and any interest therein now or in the future.

## SECTION 4 - Authority of Tribal Government

This Constitution is a delegation of specific tribal authority from the Yurok People to the Tribe's governing bodies and this Constitution hereby reserves to the people all authority not delegated to

the Tribe's governing bodies. Members of the governing bodies shall have no authority to act inconsistent with the objectives enumerated in the Preamble to this Constitution.

## SECTION 5 - Tribal Offices

It shall be the goal of the Tribe to establish its primary tribal offices within our Ancestral Lands.

## ARTICLE II-Membership

### SECTION 1-Base Membership Roll

Those persons on the Settlement Roll who made or were deemed to have made an election pursuant to the Yurok Tribal Membership Option shall constitute the base membership roll of the Yurok Tribe.

### SECTION 2 - Yurok Tribal Membership Roll

After approval of the Yurok Tribal Constitution, a revised Yurok Tribal Membership Roll shall be prepared and periodically updated, that shall include all those persons on the Base Membership Roll and persons who apply for membership and meet the following criteria:

a)  Has a biological parent who is an enrolled member of the Yurok Tribe, and

b)  Possesses at least one-eighth (1/8) degree of Indian Blood. Indian Blood is defined as all U.S. Native American Indian or Alaskan Natives.

### SECTION 3 - Tribal Membership Based Upon Extraordinary Circumstances

In extraordinary circumstances, a person may be determined to be eligible for membership in the Yurok Tribe. For purposes of this subsection, "extraordinary circumstances" shall be defined to include:

a)  Applicant must possess at least one-eighth (1/8) degree of Indian Blood (as defined in Article 11, Section 2), and be

b)  A full or half sibling of an allottee of land on the Yurok Reservation with the same qualifying ancestry, and lineal descendants of such persons, or

c)  Any adopted person whose biological parents would have qualified, or would have qualified if alive for the Yurok Membership Roll, or

October 22, 1993

Ratified: November 19, 1993

Constitution of the Yurok Tribe

5

d) Allottees of the Yurok Reservation, and lineal descendants of such persons, when that applicant and lineal ancestors have not been enrolled members of another Tribe.

**SECTION 4 - Limitations on Membership**

a) No person who exercised the lump sum buy-out option under 25 USC Section 13OOi,5(d) shall qualify for membership in the Yurok Tribe.

b) The Yurok Tribe does not allow "Dual Enrollment". No person who is a member of any other Federally Recognized Indian Tribe, shall qualify for membership or remain in the Yurok Tribe, unless he or she has relinquished in writing his or her membership in such other Tribe.

c) No person who is a lineal descendant of a present or former member of another Tribe and who is without a parent enrolled with the Yurok Tribe shall qualify for membership in the Yurok Tribe.

## ARTICLE III - Election of Yurok Tribal Council

**SECTION 1 - Election**

The Yurok Tribal Council shall consist of: nine (9) members: a Tribal Chairperson, a Vice-Chairperson and seven (7) Council Members. The Chairperson and the Vice-Chairperson shall be elected at-large by the eligible voters of the Tribe. The other seven (7) Council Members shall be elected by Districts, with the eligible voters in each of the seven (7) Districts electing one Council member to represent the District.

**SECTION 2 - Council Districts**

There shall be seven (7) Districts, described as follows:

WEITCHPEC DISTRICT - This includes all Ancestral Lands located upriver of Coon Creek on the Klamath River. Included within the District are the ancestral villages of Otsepor, Lo'olego, Weitspus, Pekwututl, Ertlerger, Wahsekw, Kenek, Tsetskwi, and Kenekpul.

PECWAN DISTRICT - This includes all Ancestral Lands downriver, including Coon Creek, on the Klamath River from the Weitchpec District to and including Blue Creek on the north side of the river and Ah Pah Creek and its drainage area on the south side of the river. included within the

District are the ancestral villages of Merip, Wa'asel, Kepel, Murekw, Himetl, Kohtskuls, Keihkes, Meta, Sregon, Yohter, Pekwan, Kolotep, Wohtek, Wohkero, Serper, Ayotl, Nagetl, and Erner.

REQUA DISTRICT - This includes all ancestral Lands located downriver on the Klamath River from the Pecwan District and north of the center line of the Klamath River. Included within the District are the ancestral villages Tlemekwetl, Stawen, Sa'aitl, Ho'pau, Omenok, Amenok, Tmeri, Rekwoi, and Omen.

ORICK DISTRICT - This includes all Ancestral Lands located downriver on the Klamath River from the Pecwan District and south of the center line of the Klamath River. Included within the District are the ancestral villages of Turip, Wohkel, Otwego, Wetlkwau, Osegen, Espau, Sikwets, Orek, Tsahpekw, Hergwer, Tsotskwi, Pa'ar, Oslokw, Keihkem, Ma'ats, Opyuweg, Tsurau, Sumeg and Metskwo.

NORTH DISTRICT - This includes all land north of the Ancestral Lands, east of the Pacific Ocean, west of a north-south line passing through Chimney Rock and within 60 miles of the Ancestral Lands.

EAST DISTRICT - This includes all land east of the Ancestral Lands, east of a north-south line passing through Chimney Rock, east of the generally north-south mountain ridge passing through Schoolhouse Peak, and within 60 miles of the Ancestral Lands.

SOUTH DISTRICT - This includes all land south of the Ancestral Lands, east of the Pacific Ocean, west of the generally north-south mountain ridge passing through Schoolhouse Peak, and within 60 miles of the Ancestral Lands.

## SECTION 3 - Terms of Office

A)    The terms of office for the Chairperson, vice Chairperson, and the Council Members shall be three (3) years, except that in the first election, the terms of office for Council Members shall be staggered and determined as follows:

   1)    The candidate receiving the highest percentage of votes in his/her District shall be elected for a three (3) year term;

   2)    The candidates receiving the second, third and fourth highest percentages of the votes in their respective districts shall be elected for two (2) year terms;

   3)    The remaining three (3) candidates shall be elected for one (1) year terms;

   4)    In the event of a tie among or between the candidates who, by reason of the percentage of votes received in the candidates; respective districts, would be entitled to serve an Initial term of more than one (1) year; any such tie shall be broken by the

tied candidates drawing of lots to determine which candidates shall be entitled to serve an inititial term of more than one year.

B) Each Tribal Officer and Council Member shall be inaugurated as the first order of business at the first regular Council meeting following his/her election and his/her term shall commence upon inauguration.

## SECTION 4 - Voter Registration

Each member of the Yurok Tribe, who has attained the age of eighteen (18) upon the date of election shall be eligible to vote, provided that person has registered to vote. Each eligible Voter shall choose to register in one (1) of seven Districts; provided the eligible voter is a resident of a District, he/she must register within that District or if the eligible voter is not a resident within a District, he/she shall choose to register in the North, South or East District. An eligible voter must register when they move into or out of a District, pursuant to Section 4 of this Article, within ninety (90) days before the next regularly scheduled Council election.

## SECTION 5 - General Qualifications for office

a)     No person who is a candidate for or elected to any Tribal office, or is to be or has been appointed by the Yurok Council to any position of trust shall, at the time of candidacy, election or appointment have been convicted of any violent felony or crime of moral turpitude within ten (10) years of the date of election or appointment, and every candidate for election or appointment to any Tribal office or position who ever has been convicted of any felony or crime of moral turpitude shall, upon announcement of his/her candidacy or application for appointment, fully disclose to the Yurok Council the fact and date of each such conviction, the court in which the conviction was entered, the offense for which convicted, the sentence imposed and the place and manner in which the sentence was served or otherwise discharged.

b)     Any person who, upon or subsequent to announcing his/her candidacy for election to any Tribal office or applying for any appointed position of trust, is formally charged with, but not yet convicted of, any crime of violence or moral turpitude, shall disclose to the Tribal Council and/or the Election Committee the fact of such prosecution upon becoming aware of the pendency thereof.

c)     Any person required to make disclosure of a criminal conviction or prosecution hereunder who fails to do so within thirty (30) days may be barred or removed from the office or appointed position for which the person was a candidate when the required disclosure was not made.

d)     Any elected Tribal officer or appointed Tribal official who is formally charged with a violent felony or crime of moral turpitude while in office shall be immediately suspended from

office, effective with the date of initiation of such prosecution. If said officer or official is acquitted or the prosecution is terminated without a conviction, and provided that upon such termination of prosecution the term of office to which the officer or official was elected or appointed has not yet expired, the officer or official shall be reinstated to serve the remainder of his/her term of office or appointment.

## SECTION 6 - Qualifications for Tribal Chairperson and Vice-Chairperson

The Tribal Chairperson and Vice-Chairperson must be Tribal Members of at least thirty (30) years of age upon election, and must actually reside and maintain their principle residence within 60 miles of the Tribal territory for at least one (1) year prior to election and remain in residence throughout the term of office.

## SECTION 7 - Qualifications for Council Member Representing A District

A Council Member must be a Tribal Member of at least twenty-five (25) years of age upon election, must be registered with and actually reside and maintain their principle residence within the District when elected, and must remain an actual resident of the District throughout the term of office.

## SECTION 8 - Primary election

A primary election shall be conducted in October of each year, for each office that the term is to expire. Voting shall be by secret ballot. Absentee ballots shall be available upon written request by eligible voters and mailed in a timely manner to such voters. Those running for office who receive more than 50 percent of the ballots cast for the office shall be elected.

## SECTION 9 - Run-off Elections

When positions remain unfilled after the primary election, then a run-off election shall be conducted in November following the primary election. Voting shall be by secret ballot. Absentee ballots shall be available upon written request by eligible voters and mailed in a timely manner to such voters. The run-off shall be between the two candidates receiving the most votes in the primary election. The candidate receiving the most votes in the run-off election for each position shall be elected.

## SECTION 10 - Filling of Vacant Positions

October 22, 1993

If, subsequent to his/her election, the Tribal Chairperson, Vice-Chairperson, or any member of the Tribal Council resigns, dies, or becomes permanently or indefinitely incapacitated, as determined by the Yurok Tribal Council, the Yurok Tribal Council shall declare the office vacant. If the vacancy occurs during the first year of the term to which the elected official was elected, the Yurok Tribal Council shall fill the vacancy for the unexpired portion of said term by appointing the person who received the next highest number of votes in said election, providing the candidate received at least thirty (30) percent of the total votes cast. If the elected official to be replaced was unopposed in said election, or if the candidate receiving the next highest number of votes did not receive at least thirty (30) percent of the total votes cast for that office, or if the vacancy occurs more than one (1) year prior to the expiration of the term, the vacancy shall be filled by a special election called and conducted pursuant to Section 10 of this Article.

## ARTICLE IV -DUTIES AND POWERS OF THE YUROK COUNCIL

### SECTION 1-Tribal Chairperson

The Chairperson shall be the chief executive officer of the Tribe, and in that capacity shall have the following authority and duties:

a)  To preside over all meetings of the Yurok Tribal Council and the Tribal Voting Membership, and to vote only in case of a tie;

b)  To call special meetings of the Yurok Tribal Council or the Tribal Voting Membership as necessary with the request of Council members or Tribal members as provided in this Constitution;

c)  To faithfully implement and enforce the legislative enactments and policies of the Yurok Tribe;

d)  To execute such contracts, agreements, and other documents on behalf of the Yurok Tribe as have been duly authorized by the Yurok Tribal Council in the exercise of authority delegated by this Constitution, or by the Tribal Voting Membership;

e)  To act as the principal spokesperson and representative for the Yurok Tribe in its dealings with all other governmental and non-governmental entities, or to delegate such duties to other Tribal officers or officials as may be authorized by the Yurok Tribal Council;

f)  To appoint persons to serve in unelected positions within the executive or judicial branches of the Tribal government and to advisory committees that have been created by the Yurok Tribal Council, with the advice and consent of the Yurok Tribal Council, and otherwise to implement such personnel policies and procedures as may be established by the Yurok Tribal Council. Efforts will be made to balance representation of the Advisory Committees between on and off Reservation.

g)    To take such actions, including removal and/or barring of persons from Tribal lands, as may be necessary to safeguard the health and/or safety of the Yurok Tribe or its natural resources from imminent danger pending action by the Yurok Tribal Council, provided, however, that the Chairperson first shall have attempted to convene a special meeting of the Yurok Tribal Council on the issue. If such emergency action was not preceded by a meeting of the Yurok Tribal Council authorizing such action, the Tribal Chairperson shall, within forty-eight (48) hours after taking such action, convene a special meeting of the Yurok Tribal Council at which the only item of business shall be responding to the emergency. If the Yurok Tribal Council declines to ratify the Chairperson's emergency action, or if no meeting is held within the time allowed therefore, said action shall cease to have any force or effect upon the earlier of the Yurok Tribal Council's vote not to ratify such action or the expiration of forty-eight (48) hours after the action.

h)    To prepare and present to the Yurok Tribal Council for approval, no later than one hundred and twenty (120) days prior to the beginning of each fiscal year, a proposed annual Tribal financial plan that sets forth in detail the then current assets of the Yurok Tribe, the sources and amounts of all anticipated Tribal revenues for the year, and a Tribal budget for said year.

## SECTION 2 - Vice-Chairperson

The Vice-Chairperson shall have the following authority and duties:

a)    To preside over meetings of the Yurok Tribal Council or Tribal Voting Membership in the absence of the Chairperson;

b)    To act in place of the Chairperson as the spokesperson or representative of the Yurok Tribe upon written delegation by the Chairperson or the Yurok Tribal Council;

c)    To assume the office and duties of the Chairperson upon the Chairperson's death, resignation, or removal, or a determination by a two-thirds (2/3) majority vote of a quorum of the Yurok Tribal Council that the Chairperson has become permanently or indefinitely incapacitated to an extent that prevents the Chairperson from fulfilling the obligations of the office.

## SECTION 3 - Other Tribal Officers

The Tribal Secretary shall be elected by the Yurok Tribal Council from among its duly-elected members at the first regular Tribal Council meeting following each annual election, and shall have the following duties and authorities:

a)   To faithfully prepare and maintain the official records of the proceedings of all meetings of the Tribal Voting Membership and the Yurok Tribal Council;

b)   To certify and maintain custody of all resolutions, legislative enactments, and other official actions of the Yurok Tribal Council and the Tribal Voting Membership;

c)   To send and receive and maintain custody of all official correspondence and documents of the Yurok Tribe;

d)   To act as the custodian and keeper of the seal of the Yurok Tribe.

## SECTION 4 - Miscellaneous Other Officers

At its first regular meeting following each annual election, an from time to time thereafter as it may deem appropriate, the Yurok Tribal Council may elect from its members such other officers as it may deem necessary to effectively fulfill its obligations and exercise its authority.

## SECTION 5 - Yurok Tribal Council

a)   Except as otherwise reserved to the Tribal Voting Membership by this Constitution, the legislative power of the Yurok Tribe hereby is delegated by the Tribal Voting Membership to the Yurok Tribal Council, and in the exercise thereof the Yurok Tribal Council shall have the authority to enact legislation, rules and regulations not inconsistent with this Constitution to further the objectives of the Yurok Tribe as reflected in the Preamble to this Constitution; administer and regulate affairs, persons and transactions within Tribal Territory; enact civil and criminal laws; promulgate policies regarding elected Tribal officials' and Tribal employees' use, possession or sale of illegal drugs, and the unlawful use or abuse of legal drugs and controlled substances; manage Tribal lands and assets and appropriate and authorize the expenditure of funds owned by or available to the Yurok Tribe; charter and regulate corporations and entities of all kinds; provide for the exclusion of persons and/or entities from Tribal affairs and/or Tribal Territory under appropriate circumstances; and obtain and generate revenue for Tribal purposes through taxation and fees upon income, property, transactions and sales within Tribal Territory; provided however, that laws that affect the fundamental rights of Tribal members, such as taxation of Tribal members, and the Waiver of claims issue shall not be effective until approved in a referendum among the Tribal Voting Membership pursuant to Article XI of this Constitution.  Settlement Account Trust Funds, including earned interests, from the Hoopa-Yurok Settlement Act of 1988, shall not be used until the Tribal Council has prepared a proposal for its intended use and received a majority vote of approval from the Tribal Voting Membership.

b)    The Yurok Tribal Council shall fix and prescribe salaries and allowances for all appointed officials and the employees of the Yurok Tribe.

c)    The Yurok Tribal Council shall prescribe salaries and allowances, if any, for all elected officials of the Tribe. No setting or adjustment of salaries and allowances shall be done without at least thirty (30) days notice that it will be on the Tribal Council agenda. No increase in compensation shall be effective until one (1) year from the date of approval has passed.

d)    The Yurok Tribal Council shall by ordinance provide a system for assuring the reasonable and appropriate access by tribal members to tribal records and meetings.

e)    The Yurok Tribal Council shall by ordinance within 90 days of the election of the first Yurok Tribal Council under this Constitution, prescribe enrollment procedures and establish an Enrollment Committee whose members shall be appointed by the Chairperson with the advice and consent of the Yurok Tribal Council.

f)    The Yurok Tribal Council shall by ordinance prescribe election procedures for Tribal elections. The Yurok Tribal Council shall by Ordinance establish an Election Board whose members shall be appointed by the Chairperson with the advice and consent of the Yurok Tribal Council.

g)    The Yurok Tribal Council shall act upon all appointments requiring its confirmation within thirty (30) days.

h)    The Yurok Tribal Council shall have the authority to act on behalf of the Tribe to acquire, lease, assign, and manage all tribal property, but shall not sell any tribal land, nor lease tribal land for a period of 20 years or more, unless approved by a referendum submitted to the voting membership pursuant to Article XI.

i)    The Yurok Tribal Council shall by ordinances- prescribe a Drug Testing policy for Council Members, a Conflict of Interest policy, and a Mandated Meeting policy for operation of Council business. These ordinances shall be adopted within one (1) year of installation of the Tribal officials elected in the initial Tribal election.

j)    No legislation, ordinance, or other major action shall be enacted unless approved by at least five (5) members of the Yurok Tribal Council, including a vote by the Tribal Chairperson if needed.

k)    The Yurok Tribal council district representatives shall conduct quarterly meetings within their respective districts.

## ARTICLE V - YUROK TRIBAL COUNCIL MEETINGS

**SECTION 1 - Frequency**

The Yurok Tribal Council shall meet at least once a month.  Each meeting will begin and end with a traditional prayer.

## SECTION 2 - Quorum

Six (6) members of the Yurok Tribal Council, or 2/3 of the members if there are vacancies, must be present to constitute a quorum. The Chairperson shall be counted for purposes of constituting a quorum.

## SECTION 3 - Special Meetings

The Tribal Chairperson and three (3) Yurok Tribal Council members, may call a special meeting of the Yurok Tribal Council at any time they deem necessary by notifying each Council Member in any expedient way at least twenty-four (24) hours in advance of the meeting. Inability to notify all members after reasonable efforts shall not prevent such special meeting from occurring provided a quorum is present.

## SECTION 4 - Public Meetings

All regular and special meetings of the Yurok Tribal Council shall be open to the members of the Yurok Tribe. The Yurok Tribal Council shall provide an opportunity for public comment by Tribal members at each Yurok Tribal Council meeting. The Yurok Tribal Council may meet in executive session upon determination by the Chairperson or an affirmative vote of a majority of the Council Members present that protection of the Yurok Tribe's legal rights, commercial interests and/or privileges against compelled disclosure or the privacy of specific persons requires that specific matters be discussed or voted upon in confidence. All votes, including votes on matters discussed in executive session and the subject of which must remain confidential, shall be by roll call in open session, and all votes shall be a matter of public record.

## SECTION 5 - Roll Call Voting

Roll call votes showing how each member of the Yurok Tribal Council voted on all motions shall be recorded in the minutes of the Council. Motions that die of a lack of a second will also be recorded.

## SECTION 6 - Consensus

In accordance with Tribal tradition, the Yurok Tribal Council shall attempt to conduct business by consensus whenever possible.

October 22, 1993

# ARTICLE VI- ANNUAL MEMBERSHIP MEETING

## SECTION 1-Annual Membership Meeting

An annual meeting of the Tribal membership shall be held on a Saturday in July or August designated by the Yurok Tribal Council, unless the Yurok Tribal Council directs the Chairperson to give notice of a different date at least sixty (60) days in advance of the alternative meeting date. In addition, the Tribal Chairperson with the consent of the Yurok Tribal Council may call special meetings of the membership with ten (10) days notice when there is a matter of great urgency that requires a meeting of the membership.

## SECTION 2 - Powers

The Yurok Tribal Council shall preside over the Annual Membership Meeting and all special meetings. There shall be no binding tribal laws adopted by the membership at the meeting, but the membership, if 20% of the eligible voters are present, may, by majority vote, adopt resolutions setting out goals expressing the sense of the tribal membership. In addition, if 20% of the eligible voters are present, the members may by majority vote propose initiatives that shall be voted upon by the Tribal Voting Membership under the voting provisions of Article XI.

# ARTICLE VII - TRIBAL JUSTICE SYSTEM

The judicial power of the Yurok Tribe shall be vested in such Tribal court(s) as may from time to time be established by ordinances) enacted for that purpose. Said ordinances) shall ensure the impartiality and independence of the Judiciary by specifying causes and procedures for removal and prescribing reductions in rates of compensation greater than those that may be applied to the Yurok Tribal Council and/or the Tribal Chairperson; define the jurisdiction of each court created thereunder; specify the manner of selection, term of office and qualifications of judges; and provide for the adoption of the procedures under which each such court shall function. In special circumstances as defined by appropriate ordinance, the Yurok Tribal Council shall sit as a Tribal trial or appellate court. The Tribal judicial system, whenever possible, shall give full recognition and weight to Tribal customs, including traditional methods of mediation and dispute resolution.

# ARTICLE VIII - OATH OF OFFICE

All elected and appointed officials shall take the following oath:

"I,_____, do solemnly swear (or affirm) that I will uphold and defend the Constitution, sovereignty and traditions of the Yurok Tribe, and I will perform the duties of my office with honesty and fidelity.

I further swear ( or affirm) that I will devote my best efforts to help the Yurok Tribe achieve its objectives as stated in the Preamble of its Constitution."

## ARTICLE IX - BILL OF RIGHTS

In the exercise of its powers of self-government, consistent with its culture and tradition, the Tribe shall not deprive any person within its jurisdiction of the rights reflected in the Indian Civil Rights Act, 25 USC SECTION 1301 et seq.

In addition, the Tribe shall not take any action that would abridge any tribal religious or traditional practices.

## ARTICLE X - RECALL OF OFFICIALS

### SECTION 1 - Grounds for Recall

Any elected official of the Yurok Tribe shall be subject to recall for willful neglect of duty, corruption in office, habitual drunkenness or use of illegal drugs, incompetency, incapability of performing his/her duties or committing any offense involving moral turpitude, or conduct seriously detrimental to the sovereignty or traditions of the Yurok Tribe while in office.

### SECTION 2 - Recall Election

Upon written petition of at least thirty (30) percent of the eligible voters of the Yurok Tribe, presented to and verified by the Election Board (or Yurok Tribal Council until an Election Board is established), a special Tribal Voting Membership election shall be called to consider the recall of the elected official named in the petition. In the case of a Yurok Tribal Council Member serving from a district, the petition requirement shall be at least thirty (30) percent of the eligible voters from the district represented by a Yurok Tribal Council member. A special district membership election shall be called by the Yurok Tribe to consider the recall of the elected official named in the petition. Voting shall be by secret ballot. Absentee ballots shall be available upon written request by eligible voters and mailed in a timely manner to such voters. The election shall be held within sixty (60) days from the date the petition is verified; provided, that any petition

submitted within four (4) months of the next annual election shall be placed on the ballot of the annual election. The position occupied by the official shall be declared vacant if at least two-thirds (2/3) of those voting (all Yurok voters in the case of the Tribal Chairperson or Vice-Chairperson, or all district voters in the case of Tribal Council Members) support the recall. Vacant positions shall be filled in accordance with ARTICLE III, Section 10.

### SECTION 3 - Limits on Recall

No more than one (1) recall election shall be held in any one calendar year with respect to any specific tribal official.

## ARTICLE XI-INITIATIVE AND REFERENDUM

### SECTION 1-Initiative

The Tribal Voting Membership shall have the right to propose any legislative measure by a petition signed by at least twenty (20) percent of the eligible voters. Each such petition shall be filed with the Election Board (or Yurok Tribal Council until an Election Board is established) at least sixty (60) days prior to the next annual election at which time it shall be placed on the ballot. Voting shall be by secret ballot. Absentee ballots shall be available upon written request by eligible voters and mailed in a timely manner to such voters. If approved by a majority of those participating in the election, the petition shall be in full force and effect immediately.

### SECTION 2 - Referendum

The Yurok Tribal Council by approval of at least five (5) members may refer any legislative measure to the Tribal Voting Membership by directing at least thirty (30) days in advance that said measure be placed on the ballot at the next annual election or by calling for a special election. Voting shall be by secret ballot. Absentee ballots shall be available upon written request by eligible voters and mailed in a timely manner to such voters. If approved by a majority of those participating in the election, the referendum shall be in full force and effect immediately

## ARTICLE XII - AMENDMENT

### SECTION 1 - Amendment Proposed

Amendments to this Constitution may be proposed by the Yurok Tribal Council and shall require at least five (5) affirmative votes, or by a petition containing the entire text of the amendment and signed by not less than twenty (20) percent of the Tribal Voting Membership.

**SECTION 2 - Adoption**

Adoption by not less than two-thirds (2/3) of those voting shall be required to amend this Constitution. Amendments shall be effective upon certification of the election results by the Election Board (or Yurok Tribal Council until an Election Board is established).

## ARTICLE XIII - SEVERABILITY CLAUSE

In the event that any Article, section or provision of this Constitution is held invalid, it is the intent of the Yurok Tribe that the remaining Articles, sections and provisions of this Constitution shall continue in full force and effect.

## ARTICLE XIV - EFFECTIVE DATE AND INITIAL ELECTION

This Constitution shall become effective when approved by an election of the Tribal Voting Membership of the Tribe, conducted by the Secretary of the Interior and/or the Yurok Interim Council. The initial election for Tribal Chairperson, ViceChairperson, and Yurok Tribal Council Members shall occur within one-hundred and twenty days (120) of the ratification of this Constitution. A run-off election, if necessary, shall occur within thirty (30) days of the initial election. The Chairperson, Vice-Chairperson, and the Yurok Tribal Council Members shall take office upon certification of the election by the Election Board.

The Yurok Interim Council. shall provide for an independent Election Board for the primary and run-off election, shall notify Tribal Members of the date to file for candidacy and dates of initial and run-off elections, and shall conduct the election in accordance with ARTICLE III, SECTIONS 1-10, of this Constitution, and shall remain in office until the installation of the tribal officials elected in this tribal election.

### ****C E R T I F I C A T I O N ****

This is to certify that the Constitutional Amendment CA001 was amended to the Yurok Constitution to Article IV, Section 5 – Duties and Powers of the Yurok Tribal Council. Shall there be an addition of the sentence at the end of the paragraph, "Settlement Account Trust Funds, including earned interest, from the Hoopa Yurok Settlement Act of 1988, shall not be used until the Tribal Council has prepared a proposal for its intended use and received a majority vote of approval from the Tribal Voting Membership." This amendment was placed on the ballot by an affirmative vote of the Tribal Council and was adopted by a 2/3 vote of the majority in a General Election held on October 11, 2000. The Tribal Member vote was 751 Yes, 111 No which is 87.12% of the 862 voting Tribal Members.

_____
Susan Masten, Chairperson
Yurok Tribal Council

October 22, 1993

Ratified: November 19, 1993

Constitution of the Yurok Tribe

19

ATTEST: _____
      Lori Hodge, Executive Assistant
      Yurok Tribal Council

October 22, 1993

RESOLUTION
OF THE
YUROK TRIBE INTERIM COUNCIL

Resolution No.:    93-62

**Date Approved:**    November 24, 1993
**Subject:**    Certification of Constitution Ratification Election

**WHEREAS:**  The Yurok Interim Council is the governing body of Yurok Tribe as authorized by the Hoopa-Yurok Settlement Act (Public Law 100-580) as amended, and

**WHEREAS:**  A draft of a Constitution for the Yurok Tribe, dated October 22, 1993 has been presented to the membership for ratification on October 23, 1993, and

**WHEREAS:**  The Certified Public Accounting Firm of Anderson, Somerville, Borges and Kerrigan was retained to conduct said ratification election and certify the result, and

**WHEREAS:**  The aforementioned election has been conducted with the ballots to be postmarked not later than November 10, 1993; and a majority of Yurok Tribal members have approved the Constitution of the Yurok Tribe by a vote of seven hundred and twenty two (722) in favor of adoption and five hundred and forty five (545) against adoption, and

**WHEREAS:**  Said election result represents 57% of the voting majority in support of adoption of the Constitution for the Yurok Tribe dated October 22, 1993, now

**THEREFORE BE IT RESOLVED:**

The results of the Constitution Ratification election have been certified by the Certified Public Accounting firm of Anderson, Somerville, Borges and Kerrigan and that said certification is hereby accepted and approved by the Yurok Interim Tribal Council, and

**BE IT FURTHER RESOLVED:**

That the Yurok Interim Council, on behalf of the Yurok Tribe, hereby certifies that the Constitution for the Yurok Tribe dated October 22, 1993 is adopted and is now in effect.

**CERTIFICATION**

This is to certify that this Resolution was approved at a duly called Special Meeting of the Yurok Tribe Interim Council on November 24, 1993, at which a quorum was present and that this Resolution (#93-62) was adopted by a vote of 3 FOR and 0 AGAINST with no abstentions. This Resolution has not been rescinded or amended in any way.


Susie L. Long, Chair
Yurok Tribe Interim Council


ATTEST:

Maria Tripp, Council Member
Yurok Tribe Interim Council


Susan Masten, Council Member
Yurok Tribe Interim Council


October 22, 1993

# DECLARATION OF

# Amy L. Detschke

# July 14, 2008

# EXHIBIT B

f

UNITED STATES

DEPARTMENT OF THE INTERIOR

OFFICE OF INDIAN AFFAIRS

# CONSTITUTION AND BYLAWS

# OF THE TULE RIVER

# INDIAN TRIBE

## CALIFORNIA

**APPROVED JANUARY 15, 1936**

UNITED STATES

GOVERNMENT PRINTING OFFICE

WASHINGTON : 1936

# CONSTITUTION AND BYLAWS OF THE TULE RIVER INDIAN TRIBE OF CALIFORNIA

## PREAMBLE

We, the members of the Tule River Bands of the Tule River Indian Reservation in the State of California, in order to establish our tribal organization, to conserve our tribal property, to develop our community resources, to administer justice, and to promote the welfare of ourselves and our descendants, do hereby ordain and establish this constitution and bylaws of the Tule River Indian Tribe, to serve as a guide for the deliberations of our tribal council in its administration of tribal affairs.

## ARTICLE I-TERRITORY

The jurisdiction of the Tule River Indian Tribe shall extend to the territory within the confines of the Tule River Indian Reservation, situated in Tulare County, State of California, as established by Executive orders of January 9 and October 3, 1873, and of August 3, 1878, to all lands claimed by the tribe and to which title in the tribe may hereafter be established; and to such other lands as may hereafter be added thereto under any law of the United States, except as otherwise provided by law.

## ARTICLE II-MEMBERSHIP

SECTION 1. The membership of the Tule River Tribe shall consist of the following:

> (a) All persons of Indian blood whose names a pear on the official census rolls of the Tule River Indian Reservation as of January 1, 1935;

> (b) All children born to any member of the Tule River Tribe, who is a resident of the reservation at the time of the birth of said children.

SEC. 2. The council shall have the power to propose ordinances, subject to review by the Secretary of the Interior, governing future membership, and the adoption of members by the tribe, provided that property rights shall not be changed by any action under this section.

## ARTICLE III-GOVERNING BODY

SECTION 1. The governing body of the Tule River Tribe shall consist of a council, known as the Tule River Tribal Council.

SEC. 2. The Tule River Tribal Council shall be composed of nine councilmen elected by secret ballot.

SEC. 3. The Tule River Tribal Council, so organized, shall elect from its own membership, a council chairman and vice-chairman; and from within or without its own membership, a secretary, a treasurer, and such other officers and committees as may be deemed necessary.

SEC. 4. Councilmen shall hold office for a term of two years, or until their successors are elected.

## ARTICLE IV-NOMINATIONS AND ELECTIONS

SECTION 1. The first election of a tribal council under this constitution shall be called, held, and supervised by the present tribal council, within thirty days after the ratification and approval of this constitution; and thereafter elections shall be held every two years on the third Saturday in January.

SEC. 2. Any qualified member of the tribe may announce his or her candidacy for the tribal council by notifying the secretary of the tribal council, in writing, of his or her candidacy, at least fifteen days prior to the election. To be eligible for membership on the tribal council a candidate must have reached his or her twenty-fifth birthday and be a regularly qualified voter of the Tule River Indian Tribe. It shall be the duty of the secretary to post the names of all candidates who have met these requirements, at least ten days before the election.

SEC. 3. The tribal council, or a board appointed by the tribal council, shall determine rules and regulations governing elections and shall certify to the election of members of the tribal council, within one day after the election returns.

SEC. 4. Any member of the Tule River Indian Tribe, who is twenty-one years of age or over, on the date of election, and who has maintained legal residence for at least one year on the Tule River Reservation, shall be entitled to vote.

## ARTICLE V-VACANCIES AND REMOVAL FROM OFFICE

SECTION 1. If a councilman, or other official, shall die, resign, permanently leave the reservation, or be removed from office for cause, the tribal council shall declare the office vacant and appoint a successor to fill the unexpired term.

SEC. 2. Any councilman who is proven guilty of improper conduct, or gross neglect of duty, may be expelled from the tribal council by a two-thirds vote of the council members, provided that the accused member shall be given full opportunity to reply to any and all charges, at a designated tribal council meeting; and provided further that the accused member shall have been given a written statement of the charges against him, at least five days before the meeting at which he is to be given opportunity to reply.

## ARTICLE VI-POWERS AND DUTIES OF THE TRIBAL COUNCIL

SECTION 1. The Tule River Tribal Council, subject to any limitations imposed by the statutes or the Constitution of the United States, and subject to all express restrictions upon such powers as are set forth in this constitution and bylaws, shall have the following powers, vested in the tribe by existing law or conferred upon the tribe by the act of June 18, 1934 (48 Stat. 984), and acts amendatory thereof or supplemental thereto:

(a) To enter into negotiations with the Federal, State, and local governments on behalf of the Tule River Indian Tribe.

(b) To present and prosecute any claims or demands of the Tule River Indian Tribe; to assist members of the tribe in presenting their claims or grievances at any court or agency of the Government; and to employ local talent or representatives for such services, the choice of council and fixing of fees to be subject to the approval of the Secretary of the Interior.

(c) To approve or to veto any sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets which may be authorized or executed by the Secretary of the Interior, the Commissioner of Indian Affairs, or any other official of the

Government, provided that no tribal lands shall ever be leased for a period exceeding five years, encumbered or sold.

(d) To confer with the Secretary of the Interior upon all appropriation estimates, or Federal projects, for the benefit of the tribe, prior to the submission of such estimates to the Bureau of the Budget and Congress.

(e) To make assignments of tribal land to members of the Tule River Indian Tribe in conformity with article VII of this constitution.

(f) To administer any funds or property within the control of the tribe; to make expenditures from available funds for public purposes, including salaries or other remuneration of tribal officials or employees, such salaries or remuneration to be paid only for services actually authorized in a regular and legal manner and actually rendered. All expenditures from the tribal council funds shall be by resolution, duly approved by a majority vote of the council, and the amounts so expended shall be a matter of public record at all times.

(g) To require individual members of the tribe, or other residents upon the reservation, to assist with community labor, when just cause or extreme emergency exists.

(h) To create and maintain a tribal fund by accepting grants or donations from any person, State, or the United States, or by levying assessments of not less than ten cents or more than one dollar per year, per capita on the qualified voters of the Tule River Indian Tribe, and to require the performance of community labor in lieu thereof, or by levying taxes and license fees subject to review by the Secretary of the Interior, upon persons doing business within the reservation.

(i) To provide by ordinance, subject to review by the Secretary of the Interior, for removal or exclusion from the reservation of any non-members whose presence may be injurious to the members of the tribe.

(j) To promulgate ordinances for the purpose of safeguarding the peace and safety of residents of the reservation, and to establish courts for the adjudication of claims or disputes arising among the members of the tribe, and for the trial and penalizing of members of the tribe charged with the commission of offenses set forth in such ordinances.

(k) To regulate the inheritance of property, within the reservation, subject to review by the Secretary of the Interior.

(l) To provide by ordinance for the appointment of guardians for minors and mental incompetents, subject to the approval of the Secretary of the Interior.

(m) To adopt resolutions regulating the procedure of the tribal council itself, and of other tribal agencies and tribal officials of the reservation.

   SEC. 2. Any resolution or ordinance which, by the terms of this constitution, is subject to review by the Secretary of the Interior, shall be presented to the superintendent in charge of the reservation, who shall, within ten days thereafter, approve or disapprove the same.

   If the superintendent shall approve any ordinance or resolution, it shall thereupon become effective,

but the superintendent shall transmit a copy bearing his endorsement, to the Secretary of the Interior who may, within ninety days from the date of enactment, rescind the ordinance or resolution by notifying the tribal council of such action.

If the superintendent shall refuse to approve any resolution or ordinance submitted to him, within ten days from its enactment, he shall advise the tribal council of his reasons therefor. If these reasons appear to the council insufficient it may, by a majority vote, refer the ordinance or resolution to the Secretary of the Interior, who may, within ninety days from the date of its enactment, approve the same in writing, whereupon the said ordinance becomes effective.

SEC. 3. The council of the Tule River Indian Reservation may exercise such further powers as may in the future be delegated to the council by the Secretary of the Interior, or by any other duly authorized official or agency of Government.

SEC. 4. Any rights and powers heretofore vested in the tribe of the Tule River Indian Reservation but not expressly referred to in this constitution shall not be abridged by this article, but may be exercised by the people of the Tule River Indian Reservation through the adoption of appropriate bylaws and constitutional amendments.

## ARTICLE VII-TRIBAL LANDS

SECTION l. The unallotted lands of the Tule River Reservation and all lands which may be acquired hereafter by the Tule River Tribe, or by the United States in trust for the Tule River Tribe, shall be held as tribal lands and no part of such land shall be mortgaged or sold. Tribal lands shall not be allotted to individual Indians but may be assigned to members of the Tule River Indian Tribe, or leased, or otherwise used by the tribe, as hereinafter provided.

SEC. 2. Tribal lands may be leased by the tribal council with the approval of the Secretary of the Interior, for such periods of time as are permitted by law.

In the leasing of tribal lands preference shall be given, first, to Indian cooperative associations; and, secondly, to individual Indians who are members of the Tule River Tribe. No lease of tribal land to a non-member shall be made by the tribal council unless it shall appear that no Indian cooperative association or individual member of the tribe is able and willing to use the land and to pay a reasonable fee for such use.

Grazing permits covering tribal land may be issued by the tribal council, with the approval of the Secretary of the Interior, in the same manner and upon the same terms as leases.

SEC. 3. In any assignments of tribal lands which are now owned by the tribe, or which hereafter may be acquired for the tribe by the United States, or purchased by the tribe out of tribal funds, preference shall be given, first, to heads of families which are entirely landless; and, secondly, to heads of families which have already received assignments consisting of less than an economic unit of agricultural land, or other land, or interests in land of equal value.

The tribal council may, if it sees fit, charge a fee of not to exceed five dollars on the approval of an assignment made under this section.

SEC. 4. If any member of the tribe holding an assignment of land shall, for a period of one year, fail to use the land so assigned, or shall use the land for any unlawful purpose, or detriment to the

community, his assignment may be canceled by the tribal council after due notice and opportunity to be heard. Such land may then be available for reassignment.

Upon the death of any Indian holding an assignment his heirs or other individuals designated by him, by will or written request, shall have a preference in the reassignment of the land, provided such persons are members of the Tule River Indian Tribe who would be eligible to receive an assignment. If there are no heirs or individuals designated by him, the assignment shall automatically revert back to the tribe and then be available for reassignment.

SEC. 5. Improvements of any character made upon assigned land may be willed to and inherited by members of the Tule River Indian Tribe. When improvements are not possible of fair division, the tribal council shall dispose of them under such regulations as it may provide. No permanent improvements may be removed from any land without the consent of the tribal council.

SEC. 6. Applications for assignment shall be filed with the secretary of the tribal council and shall be in writing, setting forth the name of the person or persons applying for the land and as accurate a description of the land desired as the circumstances will permit. Notices of all applications received by the secretary shall be posted by him in the agency office and in at least three conspicuous places on the reservation for not less than twenty days before action is taken by the tribal council. Any member of the Tule River Indian Tribe wishing to oppose the granting of an assignment shall do so in writing, setting forth his objections, to be filed with the secretary of the council, and may, if he so desires, appear before the tribal council to present evidence. The secretary of the tribal council shall furnish the superintendent, or other officers in charge of the agency, a complete record of all action taken by the tribal council on applications for the assignment of land, and a complete record of assignments shall be kept in the agency office and shall be open for inspection by members of the tribe.

## ARTICLE VIII-AMENDMENTS

SECTION 1. This constitution and bylaws may be amended by a majority vote of the qualified voters of the tribe voting at an election called for that purpose by the Secretary of the Interior, provided that at least 30 percent of those entitled to vote shall vote in such election; but no amendment shall become effective until it shall have been approved by the Secretary of the Interior. It shall be the duty of the Secretary of the Interior to call an election on any proposed amendment, at the request of the tribal council, or upon presentation of a petition signed by one-third (1/3) of the qualified voters, members of the tribe.

# BYLAWS OF THE TULE RIVER INDIAN TRIBE OF CALIFORNIA

## ARTICLE I-DUTIES OF OFFICERS

SECTION 1. It shall be the duty of the chairman to preside at all meetings of the council.

SEC. 2. In the absence of the regular chairman, the vice-chairman shall preside and he shall have all powers, privileges, and duties of the regular chairman.

SEC. 3. It shall be the duty of the tribal secretary to keep a true and accurate record of all matters affecting the tribal records, to render a proper accounting of such records at all meetings of the council, and to keep an accurate record of all council proceedings, including the minutes of each special and regular meeting. Minutes of all special or regular meetings shall be in triplicate, the original copy to be presented to the superintendent, and one copy to be transmitted to the Commissioner of Indian Affairs.

SEC. 4. The duties of the treasurer of the tribal council shall be as follows: He shall accept, receive, receipt for, preserve, and safeguard all funds in the custody of the council, whether same be tribal funds or special funds for which the council is acting as trustee or custodian. He shall deposit all such funds in such bank or elsewhere, as directed by the council, and he shall keep an accurate record, filing same in the tribal council's office, and he shall report in writing all receipts and expenditures and accounts and the nature of all funds in his possession, or custody, once every six months to the tribal council, or at any time he is requested to do so by the tribal council.

(a) He shall not disburse any funds in his custody belonging to the council except when authorized by a motion duly passed and properly recorded by the council.

(b) The treasurer shall be requested to furnish a bond satisfactory to the council, and to the Commissioner of Indian Affairs, except that until he has been bonded, the council may make such provision for the custody and disbursements of funds as shall guarantee their safety and proper disbursement and use.

(c) The books and records of the treasurer shall be audited at least once each year by a competent auditor employed by the tribal council or under the direction of the Commissioner of Indian Affairs.

## ARTICLE II-QUALIFICATIONS FOR OFFICE

Any person to be elected as an officer or councilman must be a Tule River Indian, enrolled on the Tule River Reservation, and over twenty-five (25) years of age at the time of his or her election. The tribal council shall be the sole judge of the qualifications of its own members.

## ARTICLE III-CONDUCT OF ELECTION AND CERTIFICATION

SECTION 1. It shall be the duty of the council to see that each nomination for tribal office, including membership in the council, shall be made in strict accord with the provisions of the constitution, and shall certify as to the legality of such nomination, otherwise it shall be considered illegal and ineffective by the council.

SEC. 2. All tribal elections for officers shall be canvassed and certified by the council or by a board appointed by it within one day after such elections. No candidate shall be considered legally elected nor shall he hold office until such canvas and certification shall have been made by the council.

SEC. 3. All necessary details concerning tribal nominations and elections not specifically covered by these bylaws or in the constitution shall be more fully set forth in ordinances to be hereafter established by the council.

## ARTICLE IV-MEETINGS AND PROCEDURES

SECTION 1. Immediately after the election of members of the tribal council and when the elected members are duly certified as provided for in article IV of this constitution, the members shall assemble and organize for business.

SEC. 2. The council shall meet quarterly on the first Saturday of the month, in May, August, November, and February.

SEC. 3. Special meetings of the council shall be held at such times as are designated by the chairman who shall notify members at least twenty-four hours before the date of such meeting.

SEC. 4. At any special or regular meeting of the tribal council two-thirds of the council members shall constitute a quorum and without such a quorum the chairman shall adjourn the meeting.

SEC. 5. Special meetings of the council shall be held upon written request of three members of the council or by petition signed by one-third of the legal voters of the tribe, such written request to be filed with the chairman or secretary of the council who shall notify the council members twenty-four hours before the date of such council meeting.

SEC. 6. All meetings of the council (except executive meetings) shall be open to all members of the tribe. Balloting at all meetings shall be by roll call, or by a rising or viva voce vote. The council may, upon motion duly passed, go into executive sessions. At such executive session all persons not directly concerned with the matter under discussion shall be excluded from the council chambers, and any such person whose presence shall be required before the council shall be designated by the chairman and no other persons shall be allowed to be present other than the members of the council, the secretary, the treasurer, and the sergeant at arms, but no final action on any matter shall be taken in executive session.

SEC. 7. The order of business at any regular or special meeting of the tribal council shall be as follows:

(a) Council called to order.

(b) Roll call.

(c) Reading of minutes of previous meeting.

(d) Reports of standing committees.

(e) Reports of council treasurer.

(f) Reports of special committees.

(g) Reading of communications and reports.

(h) Unfinished business.

(i) New business.

(j) Adjournment.

SEC. 8. It shall be the duty of the council to exercise care and caution to the end that a complete record is preserved of all acts of the council and of all committees appointed therefrom. Accurate copies of all records shall be preserved in the files of the council and accurate copies of all necessary records shall be transmitted to such bureaus, departments, or elsewhere as may be required.

SEC. 9. All records of the council and its committees or delegates shall at all times be a matter of public record, and any member of the Tule River Tribe or his authorized representative, or any properly authorized officer or employee of any Government department shall have full access to same during

business hours. However, it is provided that matters before the council while in executive session shall be, at the option of the council, withheld from the public or from individuals or their representatives, until after same shall have been acted upon or otherwise quietly disposed of.

SEC. 10. Copies of all leases, contracts, deeds, or assignments and all other papers and documents pertaining to lands of any nature on the reservation shall be carefully preserved by the council, and insofar as it is possible, all other documents affecting the rights and equities of the tribe as a whole, or the individual members thereof, shall be kept and preserved in order that such information shall be available to the council and to the individual members of the tribe; and duplicates of all such documents shall be deposited in the files of the agency.

## ARTICLE V-TRIBAL COURT (JUDICIAL CODE)

SECTION 1. (a) It shall be the duty of the council to provide through the necessary bylaws or ordinances, for the establishment of a tribal court upon the reservation.

(b) This court shall have jurisdiction over all such offenses as may be provided in the ordinances of the council, unless they fall within the exclusive jurisdiction of Federal or State courts.

(c) This court shall have jurisdiction over all Indians upon the reservation and over such disputes or lawsuits as shall occur between Indians on the reservation or between Indians and non-Indians where such cases are brought before it by stipulation of both parties.

(d) The duties and jurisdiction of this court shall be more fully prescribed by appropriate bylaws or ordinances.

SEC. 2. It shall be the duty of the council to establish by ordinance a tribal police force which shall have full jurisdiction upon the reservation. The authorities and duties under which it will function may be outlined by the council, such police to be employees of the council, and the police force shall be an agency of the tribal court.

## ARTICLE VI-PROPERTY REGULATIONS

SECTION 1. It shall be the duty of the council to pass rues and regulations to prevent unauthorized prospecting or mining of any kind upon the reservation and to see that such rules and regulations are properly enforced.

SEC. 2. The council shall pass ordinances for the control of hunting and fishing upon the reservation, such ordinances not to be in conflict with any of the Federal game laws. The council shall enforce ordinances and cooperate with Federal authorities in the protection of game on the reservation. The council may issue licenses for hunting and fishing and prohibit hunting and fishing without such licenses.

## ARTICLE VII-PUBLIC WELFARE

SECTION 1. Community welfare.

(a) The council shall determine in careful manner what constitutes just cause for aid or assistance to the indigent members of the tribe, and shall make proper provisions for recommendation to proper agencies of individuals needing relief.

(b) The council shall designate persons who shall administer welfare work on the reservation, and the solicitation and expenditure of welfare funds shall be conducted in a systematic manner so that the right to do so may not be abused. The council shall thereby render assistance or aid to the aged, the physically handicapped, and all others in actual need of assistance.

(c) The council shall at all times endeavor to eliminate the causes for indigency, exercising wise and judicious supervision and management of tribal affairs and finances and, in so far as is possible, of the affairs and finances of individual members of the tribe, to the end that need, privation, and financial distress may be entirely eliminated among the members of the tribe.

SEC. 2. Education.

(a) The council shall pass necessary ordinances to promote and increase learning and education among the members of the tribe, studying present school systems, and recommending plans for improving them to the proper bureaus or departments.

(b) The council shall enter into negotiations with non-reservation schools and procure for the members of the tribe the highest type of educational facilities, to the end that younger members of the tribe shall have every possible economic, social, and cultural advantage.

(c) The council shall encourage and promote among the residents of the reservation by every practical means a proper system of education for members of all ages in such subjects as home economics, hygiene, child care and training, agronomy, farm mechanics, etc., cooperating with State and Federal departments and agencies which seek to promote such work.

## ARTICLE VIII-LOANS

The tribal council shall act upon all applications for loans under the revolving fund and shall have the right to make recommendations to the appropriate committees concerning loans under the reimbursable regulation for the purchase of property, stock, or equipment and loans to Indians for the payment of tuition for higher education or trade schools.

## ARTICLE IX-APPLICATION FOP FUNDS

The tribal council shall act in an advisory capacity upon all applications to the superintendent for the withdrawal from the United States Treasury of trust funds or any other tribal funds, may adopt rules and regulations not in conflict with law, subject to the approval of the superintendent, governing withdrawal of individual Indian moneys.

## ARTICLE X-TRIBAL CLAIMS

The tribal council shall make a thorough survey, research, investigation, and study of the history and title of all lands which were tribal in character in times past and shall endeavor to reestablish the tribal equity, if any, in such lands so as to obtain through proper channels just compensation for such lands as it shall find to have been unlawfully removed from the jurisdiction of the tribe without just compensation.

## ARTICLE XI-GUARDIANSHIP

The tribal council shall pass all necessary ordinances whereby the rights of minors and incompetents

shall be properly safeguarded and shall see that the administration of their funds and other assets, by guardians responsible to the council, shall be for the exclusive benefit of such minors or incompetents. It shall be the duty of the council to make semi-annual reports concerning all such guardianship funds or assets, and such reports shall be matters of public record.

## ARTICLE XII-ORDINANCES AND RESOLUTIONS

SECTION 1. All final decisions of the council on matters of general and permanent interest to the members of the tribe shall be embodied in ordinances. Such ordinances shall be collected and published from time to time for the information and education of the members of the tribe.

SEC. 2. All final decisions of the council on matters of temporary interest (such as action on the tribal budget for a single year, or petitions to Congress or the Secretary of the Interior) or relating especially to particular individuals or officials (such as adoptions of members, instructions for colony employees, or rules of order for the council) shall be embodied in resolutions. Such resolutions shall be recorded in a special book which shall be open to public inspection.

SEC. 3. All questions of procedure (such as acceptance of committee reports or invitations to outsiders to speak) shall be decided by action of the council or by the ruling of the chairman if no objection is heard. In all ordinances, resolutions, or motions the council may act by majority vote, but all matters of importance shall be fully discussed and a reasonable attempt shall be made to secure unanimous agreement.

SEC. 4. Every resolution shall begin with the words: "Be it resolved by the council of the Tule River Tribe ---."

SEC. 5. Every ordinance or resolution shall contain a recital of the laws of the United States and the provisions of this constitution under which authority for the said ordinance or resolution is found.

## ARTICLE XIII

This constitution and bylaws, when ratified by a majority vote of the qualified voters of the Tule River Reservation voting at an election called for the purpose by the Secretary of the Interior provided that at least thirty (30) percent of those entitled to vote shall vote in such election, shall be submitted to the Secretary of the Interior and, if approved, shall be effective from the date of approval.

## CERTIFICATION OF ADOPTION

Pursuant to an order, approved November 16, 1935, by the Secretary of the Interior, the attached constitution and bylaws was submitted for ratification to the members of the Tule River Bands of the Tule River Reservation and was on December 7, 1935, duly adopted by a vote of 43 for and 2 against, in an election in which over 30 percent of those entitled to vote cast their ballots, in accordance with section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the act of June 15, 1935 (Pub., No. 147, 74th Cong.).

**BRIGIDO**

**JARINNIO,**

*Chairman of Election Board.*

**MARCUS**

**HUNTER,**

*Secretary of the Election Board.*

**ROY NASH,**
*Superintendent in Charge of the Reservation.*

I, Harold L. Ickes, the Secretary of the Interior of the United States of America, by virtue of the authority granted me by the act of June 18, 1934 (48 Stat. 984), as amended, do hereby approve the attached constitution and bylaws of the Tule River Bands of the Tule River Reservation.

All rules and regulations heretofore promulgated by the Interior Department or by the Office of Indian Affairs, so far as they may be incompatible with any of the provisions of the said constitution and bylaws are hereby declared inapplicable to these Indians.

All officers and employees of the Interior Department are ordered to abide by the provisions of the said constitution and bylaws.

Approval recommended January 7, 1936.

**WILLIAM ZIMMERMAN, Jr.,**
*Assistant Commissioner of Indian Affairs.*

**HAROLD L. ICKES,**

*Secretary of the Interior.*

[SEAL]

**WASHINGTON, D. C.,** *January 15, 1936.*

## AMENDMENTS-CONSTITUTION AND BY-LAWS OF THE TULE RIVER INDIAN TRIBE

### AMENDMENT I.

1. Add to Article III, Section 4, of the Constitution, the following:

"except as hereinafter provided."

### AMENDMENT II.

2. Substitute the following for Article IV, section 1, of the Constitution:

"SECTION 1. The five members of the Council receiving the highest vote at the 1942 election shall hold office for two years; the four receiving the lowest vote shall hold office for a period of one year; thereafter, vacancies shall be filled at annual elections for two-year

terms, on the third Saturday in January."

## CERTIFICATION OF ADOPTION

Pursuant to an order, approved April 13, 1940, by the Assistant Secretary of the Interior, the attached Amendments to the Constitution and By-laws of the Tule River Indian Tribe, were submitted for ratification to the qualified voters of the Tribe, and on May 24, 1940, Amendment I was adopted by a vote of 15 for, and 1 against, and Amendment II was adopted by a vote of 15 for, and 1 against in an election in which more than 30 per cent of those entitled to vote cast their ballots in accordance with section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended by the Act of June 15, 1935 (49 Stat. 378).

**ROSS**

**ELLIS,**

*Chairman, Tule River Tribal Council.*

**ROY NASH,**
*Superintendent, Sacramento Agency.*

I, Oscar L. Chapman, the Assistant Secretary of the Interior of the United States of America, by virtue of the authority granted me by the Act of June 18, 1934 (48 Stat. 984), as amended, do hereby approve the attached Amendments to the Constitution and By-laws of the Tule River Indian Tribe.

Approval recommended: July 10, 1940.

**F. H. DAIKER,**
*Assistant to the Commissioner.*

**OSCAR L.**

**CHAPMAN,**

*Assistant Secretary.*

[SEAL]

**WASHINGTON, D. C.,** *July 12, 1940.*

U. S. GOVERNMENT PRINTING OFFICE : 1941