IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

THE NEZ PERCE TRIBE, et al.,          )
                                      )
        Plaintiffs,                   )
                                      )
        v.                            )        Case No. 06cv02239-JR
                                      )
DIRK KEMPTHORNE,                      )
Secretary of the Interior, et al.,    )
                                      )
        Defendants.                   )

## DECLARATION OF

## GALILA S. JOHNSON

I, Galila S. Johnson, pursuant to 28 U.S.C. § 1746 do hereby declare and state:

1.      I am the Superintendent of the Concho Agency for the Bureau of Indian Affairs ("BIA"). I have held that position since October 17, 1993, and I have been at the Concho Agency since that time. My responsibilities as the Superintendent include serving as the line officer responsible for planning, implementing, directing, monitoring and evaluating the BIA's trust responsibilities and program services within the Concho Agency. The Concho Agency services the Cheyenne-Arapaho Tribes of Oklahoma. The services provided by the Concho Agency include Real Estate Services, comprising Soil Conservation; Farming and Grazing & Oil and Gas Leasing Programs; Probates; Acquisition and Disposal; and Fire Management.

2.      A formal reservation of the Cheyenne-Arapaho Tribes was established by Executive Order of 1869 by President Grant. The Jerome Agreement of 1890 disestablished the boundaries of the reservation and opened up the land for white settlement, with each tribal member retaining 160-acre allotments. Presently there are

approximately 10,000 acres of tribal trust lands and 70,000 acres of individual allotments checker-boarded in northwestern Oklahoma that belong to the Tribes. The Cheyenne-Arapaho Tribes have begun to acquire lands within their jurisdiction with plans to apply to have the fee title transferred to trust status.

3.    The Tribes' first constitution was ratified by tribal members on September 18, 1937. The constitution was revised and ratified April 19, 1975. Amendment one was approved on September 10, 1993. Attached to this declaration is the current tribal constitution, which was ratified as amended April 4, 2006.

4.    The Tribes have contracted with the BIA since 1988 to provide services to their members in place of BIA. Agency staff recognizes that tribal self-determination under P.L. 93-638 is a right, and the Agency does not dictate how a Tribes' 638 program should be designed to meet that Tribes' stated objectives. In the case of the Cheyenne-Arapaho Tribes, all non-trust BIA programs are contracted for implementation by the Tribes, and trust Programs/functions are handled and operated through the Agency.

5.    The Cheyenne-Arapaho Tribes currently operate four casinos with more in the planning stage. They are located in the Oklahoma communities of Concho, Clinton, Watonga and Canton. The Canton casino opened, within the last month. Gaming along Interstate Highway 40 is highly competitive with the other tribes in the region.

6.    The proceeds of the casino (millions of dollars in gaming proceeds) are directly paid to the tribe and not handled by the United States. Separately, the Tribes receive funding of P.L. 93-638 contracts with BIA, Health & Human Services, etc. The funding is paid with certain stipulations, based on the fact that the Tribes' contracts with the Bureau have been designated "High Risk." This designation is based in part on

2

delayed Tribal submissions for yearly indirect cost proposals for certain programs for prior years (required to secure an indirect cost rate), and the Tribes have failed to keep up with the schedule for annual audits.

7.    With regard to Oil and Gas leasing of Tribal lands, the BIA conducts the lease sale auction and BLM provides mineral appraisals, which BIA provides the Tribes; the Tribes make the final decision as to whether to accept the highest bid for the lease. BIA also authorizes the successful bidder/potential lessee to negotiate lease terms with the Tribes. It is the successful bidder/potential lessee's responsibility to complete the lease and submit it to BIA for approval. BIA approves and monitors the lease during the primary term (generally three years), after which time the lease would expire on its own terms. The BIA bills the non-producing oil and gas lease revenues through the TAAMS system, while the Minerals Management Service bills producing oil and gas lease revenues. The Tribes bill some oil and gas company payors for severance taxes directly; the resulting revenues are paid to the Tribes directly, without BIA involvement. In their negotiation of lease terms, though, the Tribes include a clause that releases all non-producing formations at the end of the primary term of the leases, which means that a lease terminates if the lessee does not promptly make productive use of it. This is unique in the Southern Plains Region and has been in effect since 1981. The revenues from oil and gas leasing are ultimately managed as trust funds. However, the Tribes handle the leasing of surface lands for grazing and agriculture and the revenues from such leasing are directly paid to the Tribe and do not enter the trust system.

8.    The Cheyenne-Arapaho Tribes have significant contact with the Concho Agency concerning matters such as applications for fee-to-trust; the High Risk

3

designation for P.L. 93-638 contracting; and decisions of the Tribal District Court and Tribal Supreme Court regarding tribal government issues. Regular contacts with tribal officials include: contact with Probate staff regarding tribal enrollment two to three times weekly; and contact with Realty Farming/Grazing staff regarding wind turbine leases. The Realty Department averages contacts with the Tribes around three times a week. Contact takes place through letters, phone contacts, meetings, and office visits. Most of the inquiries are thru the Acquisitions and Disposals department, which usually involve Fee to Trust or the tribes Right of first refusal in regards to Individual Indian land sales. Most of the Contact is with the Governor and the Economic Development Department. There are no current Farming/Grazing tracts lease under this Agency for the Tribes, however, the Tribes has asked for our advice on some of their tribal leases. The Tribe has shown an interest in leasing Individual allotted tracts. The Surface Department has received inquiries about a proposed Wind Turbine project, and in Natural Resources (SMC Units and Fire Management) average at least once a week having contact with a Tribal employee and it is mainly someone from the Tribes' Economic Development Department. Natural Resources also provide Technical assistance on trust lands on-site meetings. Realty Acquisition/Disposal is beginning work on a fee-to-trust application for Tribes. Nine pending mineral leases are awaiting Agency approval; however, the Agency first is awaiting Tribal resolutions in support of these proposed leases. We are requesting updates weekly on these leases, which involve bonuses totaling 3.9 million dollars. It is foreseen that with the reconnection of the Agency to the internet, there will be considerably more contact with the Tribes, especially regarding Fee-to-Trust transactions. Taking land into trust increases the Tribes' landbase and lands for productive use.

4

9.    The Cheyenne-Arapaho Tribes of Oklahoma, with their trust lands located in the northwestern quarter of Oklahoma, have a unique geographic location. The diversity of natural resources on the reservation allows for approximately 98% of the allotted lands to be productively leased for, variously, oil and gas, grazing, and farming. The Tribes' reservation overlaps part of the Anadarko Basin, which is leased for oil and natural gas production, with productive croplands and pasture leased on the surface. In addition, beyond their Oklahoma lands, the Tribes own trust lands or interests in lands in South Dakota and Colorado which they regard as sacred.

I declare under penalty of perjury that the foregoing is true and correct.    Executed this 14th day of July, 2008.

_Galila S. Johnson_
Galila S. Johnson

# DECLARATION OF

# Galila S. Johnson

# July 14, 2008

# ATTACHMENT

# CONSTITUTION
# OF THE
# CHEYENNE AND ARAPAHO TRIBES

## PREAMBLE

We, the People of the Cheyenne and Arapaho Tribes, in order to sustain and promote our cultures, languages, and way of life, protect our religious rights, establish and promote justice for all People, promote education, establish guidance and direction for our government, respect and protect our natural environment and resources, and advance the general welfare for ourselves and our posterity, do establish this Constitution.

## ARTICLE I - BILL OF RIGHTS

Section 1. <u>Bill of Rights</u>. The government of the Tribes shall not make or enforce any law which:

(a).   infringes upon religious or cultural beliefs or prohibits the free exercise thereof including the right to possess and use peyote for religious purposes, nor any law which establishes religion;

(b).   prohibits the freedom of speech, expression, or of the press, or the right of the People peaceably to assemble, and to petition the government for redress of grievances;

(c).   violates the right of the People to be secure in the privacy of their persons, houses, papers, electronic and telecommunications information, vehicles, and effects against unreasonable searches and seizures, nor issue warrants but upon probable cause, supported by oath or affirmation signed by a Judge and particularly describing the place, person, house, or things to be searched, the object and scope of such search, and the person or thing to be seized, nor execute an arrest without probable cause;

(d).   subjects any person to search or arrest without informing them of their right to remain silent, to have access to an attorney, to be informed that anything they say can be held against them in a court of law, to have these rights explained at the time of arrest, and to ask the arrested individuals if they understand these rights;

(e).   subjects any person to criminal prosecution or punishment more than once for the same offense arising out of the same incident, nor compels any person in any criminal case to be a witness against himself or herself;

1

(f).    discharges any person from employment without due process, or takes any private property or possessory interest in private property for public use, without due process and just compensation;

(g).    discharges any person from employment or takes any other retaliation against an employee who makes public any information of misconduct by officials or employees of the Tribes;

(h).    denies to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him or her, to have compulsory process for obtaining witnesses in his or her favor, and to have the assistance of counsel for his or her defense subject to income guidelines;

(i).    denies to any person in a civil proceeding the right to a speedy and public trial;

(j).    requires excessive bail, imposes excessive fines, or inflicts cruel and unusual methods of interrogation or punishment;

(k).    denies to any person within its jurisdiction the equal protection, application, or opportunity under the law or deprive any person of liberty or property without due process of law, provided, that the Legislature shall have the power to enact Indian preference laws;

(l).    singles out an individual or group for punishment without trial, or punishes conduct after the fact through the enactment of laws or resolutions which criminalize such conduct;

(m).    denies to any person accused of an offense punishable by imprisonment the right upon request, to a trial by an impartial jury of not less than six persons, and all persons shall be presumed innocent until proven guilty in a court of law;

(n).    denies to any person the access to his or her own personal information maintained by the Tribes;

(o).    discriminates against any Person based on age, gender, religion, disability, familial status, sexual orientation, or social or economic status;

(p).    denies to any Person the right to own and use firearms subject to regulation by the Tribes by law.

Section 2. Reserved Powers. Powers not granted to the Government shall be reserved to the People.

## ARTICLE II - ORGANIZATION OF THE GOVERNMENT

Section 1. <u>Sovereignty</u>. The Tribes possesses inherent sovereign powers of government by virtue of territorial integrity and democracy. The Constitution of the Tribes shall be the supreme law of the land. All the existing laws of the Tribes shall remain in full force and effect unless such laws are contrary to the terms of this Constitution.

Section 2. <u>Branches of Government</u>. The power of the government shall be divided into four branches: Tribal Council, Legislative, Executive, and Judicial.

Section 3. <u>Separation of Powers</u>. No official of any branch of Government shall exercise any power granted in this Constitution or properly delegated by law to any other branch of Government except as expressly directed or permitted by this Constitution.

## ARTICLE III - TERRITORY AND JURISDICTION

Section 1. <u>Territory</u>. The Territory of the Tribes shall include all lands which are held by the United States for the benefit of the Tribes or the People, and any additional lands acquired by the Tribes or by the United States for the benefit of the Tribes or the People and which are held by the United States for the benefit of the Tribes or the People. The lands within the Territory shall include all water, property, airspace, surface rights, subsurface rights, natural resources, and any interests therein, notwithstanding the issuance of any patent or right-of-way in fee or otherwise, held by the governments of the United States or the Tribes, existing or in the future.

Section 2. <u>Jurisdiction</u>. The Jurisdiction of the Tribes shall extend to all persons, activities, and property within the Territory based upon inherent Sovereignty, except as prohibited by federal law. Any person who enters the Territory shall, by entering, be deemed to have consented to the Jurisdiction of the Tribes. Every license or permit issued under the authority of the Tribes shall include a provision submitting all parties and their assigns to the Jurisdiction of the Tribes. Any employee of the Tribes shall, by accepting employment, be deemed to have submitted to the Jurisdiction of the Tribes. The Legislature shall have the power to assert the Sovereignty and Jurisdiction of the Tribes by law over all matters that affect the interests of the Tribes. Nothing in this Article shall be construed to limit the ability of the Tribes to exercise its Jurisdiction based upon its inherent sovereignty as an Indian Tribe.

## ARTICLE IV - MEMBERSHIP

Section 1. <u>Requirements</u>. The Membership of the Tribes shall consist of the following persons:

    (a).     All persons whose names appear on the tribal membership roll prepared pursuant to the Act of October 31, 1967; provided that corrections may be made to the roll at any time, subject to the approval of the Secretary of the Interior.

3

(b).    Each person of 1/4, or more, degree of blood of the Cheyenne-Arapaho Tribes of Oklahoma, born after October 31, 1967, but prior to the effective date of the constitution and bylaws adopted in 1975, both of whose parents are members of the tribes.

(c).    Each person of 1/4, or more, degree of blood of the Cheyenne-Arapaho Tribes of Oklahoma, born after October 31, 1967, but prior to the effective date of the constitution and bylaws adopted in 1975, if such is admitted to membership by a majority vote of the Legislature certifying compliance with this section.

(d).    Each person of 1/4, or more, degree of blood of the Cheyenne-Arapaho Tribes of Oklahoma, born to a member of the tribes after the effective date of the constitution and bylaws adopted in 1975.

(e).    The Department of Enrollment shall keep the Membership Roll current by adding births and deleting deaths.

Section 2. <u>Other Tribes</u>. Persons who possess blood of another Indian tribe shall not be enrolled if they have shared in any land or money by virtue of having been enrolled as a member of the other tribe.

Section 3. <u>Blood Degree</u>. For purposes of determining degree of Cheyenne-Arapaho Indian blood possessed by applicants for membership, the degree of Cheyenne-Arapaho Indian blood shown on the October 31, 1967, roll shall govern. Corrections may be made in degree of Cheyenne-Arapaho Indian blood shown on the roll if a request, in writing, is received from the enrollee or one of his descendants, and approved by the Secretary of the Interior. The burden of proof in establishing a degree of Indian blood other than that shown on the roll is on the party making the request.

Section 4. <u>Future Membership</u>. The tribal council shall have the power to enact resolutions and/or ordinances, subject to the approval of the Secretary of the Interior, governing future membership and the adoption of new members.

## ARTICLE V – TRIBAL COUNCIL

Section 1. <u>Composition</u>. The Tribal Council shall be composed of all Members of the Tribes age eighteen and older.

Section 2. <u>Powers</u>.

(a).    The Tribal Council shall have the power to set policy for the Tribes and shall have all other powers and duties specifically provided by this Constitution.

(b).    The Tribal Council shall have the exclusive power to approve the annual budget

4

for the Tribes; provided that if the Tribal Council fails to approve or disapprove the annual budget within thirty days of receipt of the annual budget as approved in the Legislative Process, then the annual budget shall be deemed approved. The annual budget shall include all revenue and funds controlled by the Tribes including gaming revenue, and all revenue and funds received by the Tribes from any and all sources.

(c). The Tribal Council shall have the power to authorize the Governor to enter into treaties, compacts, or any contract.

(d). The Tribal Council shall have the power to establish its own rules of order and procedure.

Section 3. Annual Meeting and Special Meetings.

(a). An Annual Meeting of the Tribal Council shall be held on the first Saturday in October. No other meetings of the Tribes shall be held on the first Saturday in October including a Special Tribal Council meeting or a meeting of the Legislature. The Annual Meeting of the Tribal Council shall be held in Concho. The Tribes shall provide bus transportation for members of the Tribes to attend the Annual Meeting.

(b). Special Meetings of the Tribal Council may be called by five members of the Legislature or by petition signed by one hundred fifty Members of the Tribes. All requests for a Special Meeting of the Tribal Council shall be submitted to the Coordinator of the Office of the Tribal Council. Upon receipt of a valid petition, the Coordinator of the Office of the Tribal Council shall call the Special Meeting. The purpose of the Special Meeting shall be indicated in the request for the Special Meeting and no other business shall be conducted at the Special Meeting.

(c). The Coordinator of the Office of Tribal Council shall provide notice of all Regular Meetings and Special Meetings of the Tribal Council at least fifteen days before such Meeting.

Section 4. Procedures.

(a). A quorum of the Tribal Council shall consist of at least seventy-five Members of the Tribal Council.

(b). At the beginning of each Tribal Council meeting, the Tribal Council shall select a Chairman to preside at the meeting and to facilitate the meeting, and a Secretary to record the decisions of the Tribal Council and publish the minutes of the meeting. The Secretary shall provide a copy of the decisions and minutes to the Coordinator.

5

(c).   All decisions of the Tribal Council shall be embodied in a written Resolution. All proposed Resolutions shall be submitted to the Office of the Tribal Council in accordance with the requirements of this Constitution. The Coordinator shall accept proposed Resolutions at least thirty days before each Annual Meeting or Special Meeting of the Tribal Council. The Coordinator shall publish all proposed Resolutions which are submitted at least thirty days before the meeting, and all such Resolutions shall be placed on the agenda of the Tribal Council Meeting. No item shall be placed on an agenda for a Tribal Council Meeting unless such item has been submitted to the Coordinator in writing at least thirty days before the Tribal Council Meeting. The Coordinator shall accept petitions seeking to repeal an enacted law or Resolution at any time and the matter shall be placed on the agenda of the next Tribal Council meeting. The Coordinator of the Office of Tribal Council shall compile all approved laws and Resolutions within ten days of passage into a code which shall be published.

Section 5. Office of the Tribal Council.

(a).   An Office of the Tribal Council is hereby established. A Coordinator for the Office of the Tribal Council shall be selected by the Tribal Council at the Annual Meeting of the Tribal Council or at a Special Meeting of the Tribal Council as needed. Members of the Tribes interested in serving in the position of Coordinator shall submit an application at least thirty days prior to the Tribal Council Meeting. All applications for Coordinator shall be published at least thirty days prior to the Tribal Council Meeting.

(b)   The Coordinator shall serve in accordance with terms and conditions established by the Tribal Council.

## ARTICLE VI – LEGISLATIVE BRANCH

Section 1. Composition. The Legislative Branch shall be comprised of one Legislature. The Legislature shall consist of four Cheyenne Districts and four Arapaho Districts. Each Cheyenne District shall have one Cheyenne Legislator and each Arapaho District shall have one Arapaho Legislator, for a total of eight District Legislators. The Legislature shall select a Speaker from among its members.

Section 2. Districts.

(a).   There shall be four Cheyenne Districts and four Arapaho Districts for purposes of voting by Members of the Tribes and representation on the Legislature.

(b).   The District boundaries shall be as follows:

(I).   Cheyenne District 1 and Arapaho District 1. The District boundary for

6

Cheyenne District 1 and Arapaho District 1, which includes Seiling, Watonga, and Longdale, shall begin at a point located at the northwest corner of Kingfisher County, thence south to the north boundary line of Canadian County, thence west to the northwest corner of Canadian County, thence north three miles, thence west eight miles, thence south three miles, thence west nine miles, more or less, to an intersection with the South Canadian River, thence northwestwardly along the course of the South Canadian River through Blaine, Custer, Dewey, and Ellis Counties, to the west boundary of the Concho Area Agency area, thence north to the northwest corner of the Concho Agency area, thence east along the north line of the Concho Agency area to the place or point of beginning.

(ii).    Cheyenne District 2 and Arapaho District 2. The District boundary of Cheyenne District 2 and Arapaho District 2, which includes Kingfisher, El Reno, and Calumet, shall begin at a point located at the northwest corner of Kingfisher County on the north boundary of the Concho Agency area, thence south to the north boundary line of Canadian County, thence west to the northwest corner of Canadian County, thence north three miles, thence west eight miles, thence south three miles, thence west nine miles, more or less, to an intersection with the South Canadian River, thence southeastwardly along the course of the South Canadian River to the to the southeast corner of the Concho Agency area, thence north along the east boundary of the Concho Agency area to an intersection with Interstate Highway 40, thence east along Interstate Highway 40 a distance of four miles, thence north a distance of five miles, thence west to the east line of the Concho Agency area, thence north along the east line of the Concho Agency area to a point three miles south of U.S. Highway 33, thence east to a point two miles east of U.S. Highway 81, thence north a distance of five miles, thence west to the east boundary of the Concho Agency area, thence north along the east border of the Concho Agency area to the north border of the Concho Agency area, thence west to the place or point of beginning.

(iii).    Cheyenne District 3 and Arapaho District 3. The District boundary for Cheyenne District 3 and Arapaho District 3, which includes Thomas, Deer Creek, Weatherford, and Clinton, shall begin at the intersection of the South Canadian River and the east line of Custer County, thence southerly along the east line of Custer and Washita Counties to the southeast corner of Washita County, thence westwardly along the south line of the Concho Agency area to a point six miles west of U.S. Highway 183, thence northerly along a line six miles west and parallel to U.S. Highway 183 to an intersection with the South Canadian River, thence eastwardly along the course of the South Canadian River to the place or point of beginning.

(iv).    Cheyenne District 4 and Arapaho District 4. The District boundary for

7

Cheyenne District 4 and Arapaho District 4, which includes Hammon and Elk City, shall begin at a point on the south line of Washita County six miles west of U.S. Highway 183, thence west along the south line of Washita and Beckham Counties to the North Fork of the Red River, thence northwestwardly along the course of the North Fork of the Red River and the Concho Agency area to the west line of the Concho Agency area, thence north along the west line of the Concho Agency area to an intersection with the South Canadian River, thence eastwardly along the course of the South Canadian River to a point six miles west of U.S. Highway 183, thence southerly along a line six miles west of and parallel to U.S. Highway 183 to the place or point of beginning.

(c).    Notwithstanding the District boundaries established by this Section 2 (b), the eligible voters in the four Cheyenne Districts shall be permitted to alter the boundaries of each of the four Cheyenne Districts to achieve an equitable distribution of Cheyenne voters among the four Cheyenne Districts. A proposal to alter the District boundaries of the Cheyenne Districts shall be initiated by petition signed by at least thirty percent of the eligible voters of the Cheyenne Districts. Upon request, the Election Commission shall prepare and issue a petition form to a Petitioner along with the names and addresses of the eligible Cheyenne voters of the Tribe listed by the Cheyenne Districts including the minimum number of signatures required for a valid petition under this Section. Members of the Tribe shall have one-hundred twenty days to collect the requisite number of signatures on the petition. A completed petition shall be submitted to the Election Commission. The Election Commission shall have thirty calendar days to rule on the validity of the signatures on the petition, and if valid, the Election Commission shall submit the proposed new boundaries of the Cheyenne Districts to a vote in a Special Election of the eligible voters of the Cheyenne Districts which shall be held within forty-five days. The majority of votes cast by the eligible voters of the Cheyenne Districts shall determine the success or failure of the proposed new boundaries of the Cheyenne Districts, and if successful, the decision shall be binding until altered by the eligible voters of the Cheyenne Districts in a subsequent Special Election.

(d).    Notwithstanding the District boundaries established by this Section 2 (b), the eligible voters in the four Arapaho Districts shall be permitted to alter the boundaries of each of the four Arapaho Districts to achieve an equitable distribution of Arapaho voters among the four Arapaho Districts. A proposal to alter the District boundaries of the Arapaho Districts shall be initiated by petition signed by at least thirty percent of the eligible voters of the Arapaho Districts. Upon request, the Election Commission shall prepare and issue a petition form to a Petitioner along with the names and addresses of the eligible Arapaho voters of the Tribe listed by the Arapaho Districts including the minimum number of signatures required for a valid petition under this Section. Members of the Tribe shall have one-hundred twenty days to collect the requisite number of signatures

8

on the petition. A completed petition shall be submitted to the Election Commission. The Election Commission shall have thirty calendar days to rule on the validity of the signatures on the petition, and if valid, the Election Commission shall submit the proposed new boundaries of the Arapaho Districts to a vote in a Special Election of the eligible voters of the Arapaho Districts which shall be held within forty-five days. The majority of votes cast by the eligible voters of the Arapaho Districts shall determine the success or failure of the proposed new boundaries of the Arapaho Districts, and if successful, the decision shall be binding until altered by the eligible voters of the Arapaho Districts in a subsequent Special Election.

Section 3. <u>Terms</u>. District Legislators shall serve four year staggered terms of office. A Legislator shall be eligible to serve three consecutive terms under this Constitution. Upon the completion of the third consecutive term, the Legislator shall not be eligible to serve on the Legislature until a period of two years has elapsed. A partial term shall be considered a term.

Section 4. <u>Qualifications</u>.

(a).    Each District Legislator shall be an enrolled Member of the Tribes, age 25 or older, and shall possess a High School degree or its equivalent.

(b).    No person convicted of a felony within the last ten years shall serve as a District Legislator unless pardoned.

(c).    At time of filing a nomination petition, a candidate for District Legislator shall physically reside in such District. Each District Legislator shall reside in the District from which they are elected for the duration of their term. Each District Legislator shall be a registered voter in the District from which they are elected.

(d).    A candidate for the Office of District Legislator cannot owe any money or owe any debts to the Tribes.

(e).    No Legislator shall be otherwise employed in any governmental capacity.

Section 5. <u>Powers</u>.

(a).    Legislative power shall be vested in the Legislature. The Legislature shall have the power to make laws and resolutions in accordance with the Constitution which are necessary and proper for the good of the Tribes. All actions by the Legislature shall be embodied in a written law or resolution. All actions by the Legislature shall be made by a majority vote of the Legislators present unless otherwise specifically indicated by this Constitution. Tie votes in the Legislature shall be decided by the Governor. Laws and resolutions which have been enacted shall remain valid until amended or repealed.

9

(b). The Legislature shall have the power to override an Executive veto by a vote of at least six Legislators.

(c). The Legislature shall have the power to set its own procedures consistent with this Constitution. During an official session of the Legislature, a quorum shall not be required to pass bills pursuant to the Legislative Process. The Legislature shall have the power to employ Legislative staff and establish Legislative Committees comprised exclusively of Legislators.

(d). The Legislature shall enact an annual budget by law which shall include an appropriation of operating funds for the Tribal Council, the Executive Branch, and the Judicial Branch. The annual budget shall include all revenue and funds controlled by the Tribes including gaming revenue, and all revenue and funds received by the Tribes from any and all sources. The Legislature shall conduct one semi-annual budget assessment and shall have the authority to make appropriate modifications by law. The Tribes shall operate on a fiscal year of January 1st to December 31st. The Legislature shall have the power to raise revenue and appropriate funds for expenditure. Every funding item in the annual budget must have been previously authorized by law. No monies shall be drawn from the Treasury except by signature of the Governor and except upon authorization and appropriation by law.

(e). The Legislature shall have the authority to authorize and appropriate per capita payments to Members of the Tribes by law.

(f). Legislators shall file a detailed written travel report including expenses with the Office of Records Management for all official travel funded in whole or in part by the Tribes within thirty days of return from travel.

(g). The Legislature shall have the power to create Regulatory Commissions by law. Any Commission created by the Legislature shall be located in the Executive Branch of government. No Member of the Legislature may also be a member of any Commission created by the Legislature. All Commissions shall be subject to the laws of the Tribes. Any Commission created by the Legislature shall have the authority to promulgate written regulations permitted by law and in accordance with legislative due process. Members of all Commissions shall be selected by nomination by the Governor, subject to confirmation by the Legislature.

(h). The Legislature shall have the power to create Executive Boards by law. Any Board created by the Legislature shall be located in the Executive Branch of government, shall be subject to the powers of the Executive Branch, and shall carry out and execute the duties called for in the laws. All Boards shall be subject to the laws of the Tribes. No Member of the Legislature may also be a member of any Board created by the Legislature. Members of all Boards shall be selected by election as required by law, or by nomination by the Governor, subject to

confirmation of the Legislature.

Section 6. Sessions.

(a).    The Legislature shall convene in Concho for twelve Regular Sessions of up to two
        consecutive days beginning on the second Saturday of each month beginning at
        9:00 am. Legislative Committees may convene at any time.

(b).    The Governor may call Special Sessions of the Legislature. All Special Sessions
        of the Legislature shall be held within a voting District. The purposes of the
        Special Session shall be stated in a notice published not less than five days prior
        to the Special Session, and the Legislature shall not consider any other subject not
        within such purposes.

(c).    A Special Session of the Legislature shall be held annually in March. The
        purpose of the Special Session shall be to meet and counsel with all Chiefs and
        Headsmen regarding the needs and welfare of the Tribes and its Members. Each
        Chief and Headsmen shall receive an invitation to the Special Session.

Section 7. Legislative Process.

(a).    The Legislature shall adopt and follow a public legislative process for enacting all
        laws and resolutions which shall include the following:

        (i).     All legislative proposals shall be formally introduced as written Bills. All
                 Bills shall include a statement identifying the specific law, if any, to be
                 superceded, repealed, or amended.

        (ii).    All Bills shall be read into the Legislative Record. All Bills shall be
                 published in a Legislative Calendar for at least thirty days prior to action
                 on the Bill. All Bills shall be made the subject of a public legislative
                 hearing prior to action on the Bill.

        (iii).   All decisions of the Legislature shall be made by a majority vote of the
                 Legislators present unless otherwise specified in this Constitution. The
                 Legislature shall vote on each individual Bill separately by roll call vote.
                 The names and votes of each Legislator shall be recorded and published.
                 Proxy voting shall be prohibited.

        (iv).    All Bills passed by the Legislature shall be presented to the Governor for
                 signature or veto. All laws shall take effect thirty days after signature by
                 the Governor or veto override by the Legislature unless any Member of
                 the Tribes submits to the Coordinator of the Office of Tribal Council a
                 petition signed by at least one hundred fifty Members of the Tribal
                 Council seeking to repeal the law or resolution at the next Tribal Council

11

meeting. If the Tribal Council fails to repeal such law or resolution at the next Tribal Council where the matter has been properly placed on the agenda for the Tribal Council meeting, such law or resolution shall become effective immediately.

(v).    The Office of Records Management shall compile all laws and Resolutions into a comprehensive Code in an orderly manner that shall be published annually.

(vi).    Any action by the Legislature which does not follow the Legislative Process shall be deemed void and shall not be implemented or enforced by the government, Governor, or any official or employee.

## ARTICLE VII – EXECUTIVE BRANCH

Section 1. Composition.

(a).    The Executive Branch shall be comprised of a Governor and Lieutenant Governor. The Lieutenant Governor shall be subordinate to the Governor.

(b).    The Governor and Lieutenant Governor shall be elected by the eligible voters of the Tribes. Candidates for Governor and Lieutenant Governor shall seek office as a team and both their names shall appear on the ballot together.

(c).    The Executive Branch shall be comprised of Departments created by law which shall include at a minimum a Department of Housing, a Department of Justice, a Department of Law Enforcement, a Department of Enrollment, a Department of Health, a Department of Education, a Department of Social Services, a Department of Treasury which shall include an Office of Internal Auditor, a Budget Office, and a Finance Office, and any additional Departments created by law subject to the approval of the Tribal Council. The Executive Branch shall also be comprised of a Department of Administration which shall include an Office of Records Management, an Office of Personnel, a Property and Supply Office, a Procurement, Grants, and Contracts Office, and a Planning and Development Office. Each Department shall have one Executive Director.

(d).    The Office of Records Management within the Department of Administration shall be located at the government headquarters in Concho. The Office of Records Management shall secure and maintain at a minimum the following Records of the Tribes: treaties, compacts, contracts, constitution, codes, resolutions, laws, ordinances, court opinions, elections, executive orders, memos, letters, rules, regulations, policies, bills, financial records, audits, audit letters and reports, budgets, salaries, travel records, grant proposals, grant awards, grant reports, maps, land records, newspapers, reports, studies, and any other

12

documentary, audio, or written records. The Office of Records Management shall develop systems to index and access all Records maintained in the Office of Records Management or any other office. The public shall have the right to inspect any Record and shall have the right to obtain copies of any Record for a reasonable fee as may be set by law.

Section 2. <u>Terms</u>. The Governor and Lieutenant Governor shall serve four year terms or until a successor has been sworn into office. The Governor and Lieutenant Governor may serve as many terms in succession or otherwise as decided by the voters.

Section 3. <u>Qualifications</u>.

(a).     The Governor and Lieutenant Governor shall be at least thirty-five years old, enrolled members of the Tribes, and each possess at least a Bachelors degree from an accredited school.

(b).     No person convicted of a felony within the last ten years shall serve as Governor or Lieutenant Governor unless pardoned.

(c).     At time of filing a nomination petition, a candidate for Governor or Lieutenant Governor shall physically reside in a voting District. The Governor and Lieutenant Governor shall be residents of a voting District for the duration of their terms.

(d).     A candidate for the Office of Governor and Lieutenant Governor shall submit copies of his or her Federal income tax returns for the previous five years and provide a written list of all of his or her personal and real property.

(e).     A candidate for the Office of Governor and Lieutenant Governor cannot owe any money or owe any debts to the Tribes.

Section 4. <u>Powers</u>.

(a).     The Executive power of the Tribes shall be vested in the Governor. The Governor shall execute, administer, and enforce the laws. The Governor shall enforce court orders.

(b).     The Governor shall make projections of annual revenues and shall propose an annual budget to the Legislature no later than June 1st of each year. The annual budget shall include all revenue and funds controlled by the Tribes including gaming revenue, and all revenue and funds received by the Tribes from any and all sources. Monies which have been appropriated by law shall not be drawn from the Treasury except by signature of the Governor. Spending government revenues or drawing monies from the Treasury without authorization and appropriation by law and without a signature by the Governor shall constitute

13

embezzlement and fraud against the Tribes and which shall be punishable by a jail term of up to one year and a fine of up to five thousand dollars per offense.

(c).    The Governor shall have the power to negotiate and sign a treaty, compact, or gaming management contract which has been previously and specifically authorized by the Tribal Council. No treaty, compact, or gaming management contract shall be valid which has not been previously authorized by the Tribal Council. Any treaty, compact, or gaming management contract signed by the Governor shall be subject to ratification by the Legislature.

(d).    The Governor shall have the power to negotiate and sign a contract, other than a gaming management contract, which has been previously authorized by the Tribal Council or Legislature. No contract shall be valid which has not been previously authorized by the Tribal Council or Legislature. In the event of a conflict between the acts of the Tribal Council and the Legislature regarding the authorization to contract, the act of the Tribal Council shall govern.

(e).    The Executive Director of the Department of Treasury shall be called the Treasurer. The Treasurer shall safeguard and be responsible for the financial assets and practices of the Tribes. The Treasurer shall be bonded in a sufficient amount to protect the financial assets of the Tribes.

(f).    The Governor shall ensure that an annual audit of the Tribes is conducted by a reputable accounting firm or certified public accountant.

(g).    The Governor shall have the power to sign any enactment passed by the Legislature into law or to veto any enactment passed by the Legislature within ten days of passage with a written explanation of any objections; and if the Governor takes no action within ten days, then the enactment shall become law in accordance with this Constitution.

(h).    The Governor shall have the power to nominate an Executive Director for each Department subject to confirmation by the Legislature, provided that if no confirmation vote is taken by the Legislature within ninety days of nomination, the nominee shall be deemed confirmed.

(i)..   The Governor and Lieutenant Governor shall not serve on any Commissions or Boards created by the Legislature.

Section 5. Compensation. The Governor and Lieutenant Governor shall receive reasonable compensation as established by law. No increase or decrease in compensation for the Governor or Lieutenant Governor shall take effect until after the next General Election except for generally applicable cost of living increases.

14

# ARTICLE VIII - JUDICIAL BRANCH

Section 1. Composition.

    (a).      The Judicial Branch shall be comprised of one Supreme Court, one Trial Court, such other lower courts of special jurisdiction as deemed necessary by the Legislature by law, and other forums of special jurisdiction for traditional dispute resolution as deemed necessary by the Legislature by law.

    (b).      The Supreme Court shall be comprised of one Chief Justice and four Associate Justices.

    (c).      The Trial Court shall be comprised of one Chief Judge, one Associate Judge, and other Associate Judges as deemed necessary by the Legislature by law.

Section 2. Selection.   Each Judge and Justice shall be selected upon nomination by the Governor, subject to confirmation by the Legislature and approval by the Tribal Council, provided that, if the Legislature fails to approve or disapprove a nominee for Judge or Justice within thirty days of nomination by the Governor, then the nominee shall be deemed confirmed by the Legislature, provided, further that, if the Tribal Council fails to approve or disapprove a nominee who has been confirmed by the Legislature, or who has been deemed confirmed by the Legislature, within sixty days of confirmation by the Legislature, then the Judge or Justice shall be deemed approved by the Tribal Council.

Section 3. Terms.

    (a).      The Chief Justice and each Associate Justice of the Supreme Court shall serve four year staggered terms or until a successor is sworn into office.

    (b).      The Chief Judge of the Trial Court shall serve a four year term of office. The Associate Judge of the Trial Court shall serve a four year term of office. Any other Associate Judges of the Trial Court shall serve a four year term of office.

Section 4. Qualifications.

    (a).      The Chief Justice and Chief Judge shall be at least thirty-five years.

    (b).      The Chief Justice and Chief Judge shall each possess a law degree and be members of a Bar Association.

    (c).      The Chief Justice and Chief Judge shall not serve as a Judge or Justice on any other Court during his or her term of office.

    (d).      The Chief Justice and Chief Judge shall reside within the Territory during his or her term of office.

15

      (e).      No person convicted of a felony shall serve as a Justice or Judge.

Section 5. Jurisdiction.

      (a).      The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, and customs of the Tribes, including cases in which the Tribes or its officials and employees shall be a party. Any such case or controversy arising within the jurisdiction of the Tribes shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction shall not be construed to be a waiver of the Sovereign Immunity of the Tribes.

      (b).      The Supreme Court shall have appellate jurisdiction over any case on appeal from the Trial Court. The Supreme Court shall have original and exclusive jurisdiction over any final determination by the Election Commission on a protest or challenge of the results of an election, and such jurisdiction shall include the power to make findings of fact and conclusions of law, and to issue all remedies in law and equity.

      (c).      The Trial Court and the Supreme Court shall not have jurisdiction over traditional religious matters such as the conduct of ceremonies or the possession of sacred objects.

Section 6. Powers and Duties.

      (a).      The Trial Court shall have the power to make findings of fact, to interpret the Constitution and laws of the Tribes, and to make conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity.

      (b).      The Trial Court shall have the power to declare the laws of the Tribes void if such laws are not in agreement with this Constitution.

      (c).      The Supreme Court shall have the power to interpret the Constitution and laws of the Tribes and to make conclusions of law. The Supreme Court shall have the power to issue all remedies in law and in equity. Decisions of the Supreme Court shall be final. The Supreme Court shall convene at least once every three months.

      (d).      The Supreme Court shall have the power to declare the laws of the Tribes void if such laws are not in agreement with this Constitution.

      (e).      All orders, opinions, and decisions of the Supreme Court shall be written and published.

      (f).      The Courts shall render a final disposition in all cases properly filed.

(g).    The Judicial Branch shall have the power to administer funds appropriated by law for the Judicial Branch.

(h).    The Chief Justice shall establish rules for the Judicial Branch subject to the power of the Judicial Commission to modify such rules. The Legislature shall have the power to establish rules for the Judicial Branch by law notwithstanding the power of the Chief Justice or Judicial Commission to establish rules.

Section 7. <u>Right to Appeal</u>. Any party to a civil action, or a defendant in a criminal action, who is dissatisfied with the judgment or verdict may appeal to the Supreme Court. All appeals that are accepted for review by the Supreme Court shall be heard by the full court.

Section 8. <u>Compensation</u>. Justices and Judges shall receive reasonable compensation as established by law. No increase or decrease in compensation for Justices and Judges shall take effect until after the next General Election except for generally applicable cost of living increases.

Section 9. <u>Judicial Commission</u>.

(a).    There shall be a Judicial Commission comprised of five Members of the Tribes nominated by the Governor subject to confirmation by the Legislature. No person who has been convicted of a felony may serve as a Judicial Commission Member. Judicial Commission Members shall serve four year staggered terms.

(b).    The Judicial Commission shall adopt a Code of Ethics for the Judges, Justices, attorneys, and advocates. The Judicial Commission shall hear any complaints regarding Judges, Justices, attorneys, and advocates. The Judicial Commission shall have the power to make recommendations to the Chief Justice to discipline an Associate Justice, Associate Judge, or Special Judge. The Judicial Commission shall have the power to make recommendations to the Chief Justice to discipline or remove any Court clerk or other Court staff. The Judicial Commission shall have the power to make recommendations to the Legislature to remove a Judge or Justice in accordance with this Constitution. The Judicial Commission shall provide each person subject to discipline or removal with due process.

(c).    The Judicial Commission shall have the power to regulate the conduct of lawyers and advocates licensed to practice in the Courts. A denial or revocation of a license to practice in the Courts may be appealed to the Judicial Commission provided that any decision by the Judicial Commission regarding such license may be appealed to the Chief Justice who shall make a final decision in writing.

## ARTICLE IX - ELECTIONS

**Section 1.** Voters. Members of the Tribes age eighteen or older shall be eligible to vote in an election.

**Section 2.** Voter Registration.

(a). Cheyenne voters shall register to vote in the Cheyenne District in which they reside. Cheyenne voters who do not reside within a Cheyenne District shall register to vote in any Cheyenne District; provided that once registered in such District, the voter shall not be permitted to change Districts unless he or she establishes residency in another Cheyenne District.

(b). Arapaho voters shall register to vote in the Arapaho District in which they reside. Arapaho voters who do not reside within an Arapaho District shall register to vote in any Arapaho District; provided that once registered in such District, the voter shall not be permitted to change Districts unless he or she establishes residency in another Arapaho District.

(c). A Member of the Tribes who possesses both Cheyenne and Arapaho blood shall register to vote in either a Cheyenne District or an Arapaho District, provided that such Member may only change from a Cheyenne District to an Arapaho District, or from an Arapaho District to a Cheyenne District, once.

(d). A Member who is properly registered to vote in a District shall not be required to re-register to vote unless the Member establishes residency in another District or fails to vote in two consecutive elections.

**Section 3.** Election Commission.

(a). There shall be an Election Commission to conduct all elections in a fair and impartial manner in accordance with laws of the Tribes. The Election Commission shall select one of its members to serve as the Chairman of the Election Commission. The Legislature shall not have Executive or administrative authority over the Election Commission.

(b). The Election Commission shall consist of eight Members with one Cheyenne Member and one Arapaho Member from each District. The Members of the Election Commission shall be elected from their respective Districts to serve a term of four years. Elected officials of the Tribes shall not be eligible to serve on the Election Commission.

(c). Each Member of the Election Commission shall possess at a minimum a High School degree or its equivalent. No person convicted of a felony shall serve as an Election Commission Member.

(d). Members of the Election Commission who are convicted of a violation of the

18

Election laws or who have violated the Election laws as determined by the
Judicial Branch shall not be eligible to serve on the Election Commission, and
such conviction or violation shall be punishable by a jail term of up to one year
and a fine of up to five thousand dollars per offense.

Section 4. <u>Nominations</u>. Each candidate for elective office shall file a nomination petition with
the Election Commission. Each nomination petition shall contain at least ten signatures of
Members of the Tribes who are qualified to vote.

Section 5. <u>Candidates</u>. Any employee of the Tribes who is a candidate for elective office in a
Primary Election or General Election, except incumbents, shall be granted leave without pay for
ten working days prior to any Primary Election or General Election, unless they are elected in
which case they shall receive four weeks back pay.

Section 6. <u>Polling Sites</u>. All votes shall be cast at a District polling site. There shall be at least
one but no more than three polling sites in each District. Polling sites located outside a District
shall be prohibited.

Section 7. <u>Ballots</u>.

   (a).    All elections shall be conducted by secret written ballots.

   (b).    Absentee voting shall be permitted for eligible voters who do not reside in a
           District or who are unable to vote at the polls for reasons established by law.

   (c).    The Election Commission shall properly account for all official ballots and shall
           utilize a bar code or equivalent system to ensure the integrity of the official
           ballots.

Section 8. <u>Procedures</u>.

   (a).    Beginning on May 1st of an election year, nominations for elective office shall be
           open to qualified candidates. Nominations shall close on June 1st. The Election
           Commission shall make all determinations regarding the eligibility of candidates
           to seek elective office and shall publish a preliminary list of qualified candidates
           no later than June 15th. Any Member of the Tribes may challenge a name on, or
           the omission of a name from, the preliminary list of candidates by filing a written
           protest with the Election Commission by July 15th. The Election Commission
           shall decide all written protests to the preliminary list of candidates no later than
           August 1st. The Election Commission shall publish a final list of candidates no
           later than August 15th.

   (b).    The Election Commission shall publish a preliminary list of eligible voters no
           later than June 15th of an election year. The Enrollment Department and the
           Election Commission shall cooperate in the development of the preliminary list of

19

eligible voters. Any Member of the Tribes may challenge a name on, or the omission of name from, the preliminary list of eligible voters by filing a written protest with the Election Commission by July 15th. The Election Commission shall decide all written protests to the preliminary list of eligible voters no later than August 1st. The Election Commission shall publish a final list of eligible voters by August 15th.

(c).    On election day, the Election Commission shall ensure that all ballot boxes are properly secured and sealed to ensure the integrity of the ballots.

(d).    The candidate or issue receiving the greatest number of votes cast shall prevail.

(e).    For purposes of enforcement of the election laws of the Tribes, the Election Commission shall be subject to suit for non-monetary, equitable relief exclusively in the Judicial Branch.

Section 9. Primary Election. A Primary Election for Governor and Lieutenant Governor, and Legislators shall be held on the first Tuesday following the first Monday in October in odd numbered years. The candidates receiving the two highest number of votes in the Primary Election shall proceed to the General Election.

Section 10. General Election. A General Election for Governor and Lieutenant Governor, and Legislators shall be held on the first Tuesday following the first Monday in November in odd numbered years. The candidates receiving the highest number of votes in the General Election shall be seated.

Section 11. Special Election. A Special Election shall be held when called for by the Legislature by law or by this Constitution.

Section 12. Certification of Election Results. The Election Commission shall certify all election results within twenty-four hours of the election. A tie vote in a General Election shall be decided in a Special Election.

Section 13. Election Challenges. All protests and challenges to the results of an election shall be initially filed with the Election Commission. The Election Commission shall render a final determination on any protest or challenge within forty-eight hours setting forth in writing separate findings of fact and conclusions of law. If the Election Commission fails to render a final determination on an election protect or challenge within forty-eight hours, the original certification of the election results shall be deemed final for purposes of judicial review. An appeal of a final determination made by the Election Commission on any protest or challenge to the results of the election may be filed directly with the Supreme Court. The Supreme Court shall hear and decide all election appeals within twenty days, provided that, if the Supreme Court fails to decide such appeals within twenty days, then the decision of the Election Commission shall be final and no subsequent judicial review shall be permitted.

Section 14. <u>Oath of Office.</u> A Justice of the Supreme Court shall administer the Oath of Office for all newly elected officials of the Tribes on the first Saturday in January following an election. The Oath of Office shall require all elected officials to swear an oath and allegiance to serve all the People of the Tribes, to refuse all gifts or favors in exchange for official action, or to refrain from providing any gifts, favors, or money in exchange for political gain, and to uphold the Constitution of the Tribes.

Section 15. <u>First Elections.</u>

      (a).     Following the adoption of this Constitution, Business Committee Members whose terms began under the terms of the Constitution and Bylaws of the Cheyenne-Arapaho Tribes dated 1975, as amended, shall be considered a District Legislator under this Constitution.

      (b).     In the 2007 election, a Primary Election and a General Election shall be held in accordance with the terms of this Constitution. In the 2007 elections, the seat for the C-1 District Legislator and the seat for the C-3 District Legislator shall be filled. In the 2007 election, the seat of the A-1 District Legislator whose term expires in the 2007 shall be re-designated as the new A-3 District Legislator seat, and such seat shall be filled in the 2007 election. In the 2007 election, the seat of the A-2 District Legislator whose term expires in the 2007 shall be re-designated as the new A-4 District Legislator seat, and such seat shall be filled in the 2007 election. Persons elected in 2007 to serve as Legislators in the C-1, C-3, A-3, and A-4 seats shall serve four year terms.

      (c).     Following the adoption of this Constitution, a Special Election shall be held to fill the Offices of Governor and Lieutenant Governor. The Special Election shall include a Primary Election to be held within thirty days after the adoption of this Constitution, and a General Election to be held thirty days after the Primary Election. Article IX of this Constitution shall not apply to the Special Election. The existing Election Board in office as of the date of the adoption of this Constitution shall conduct the Special Election. The Election Board shall provide reasonable notice of the Special Election including adequate time for candidates to file their candidacies, and shall conduct the Special Election in a fair and impartial manner. All eligible voters of the Tribes as of the date of the adoption of this Constitution shall be entitled to vote in the Special Election. The teams of Governor/Lieutenant Governor candidates who receive the two highest numbers of votes in the Primary Election shall proceed to the General Election, and the team of Governor/Lieutenant Governor candidates who receive the highest number of votes in the General Election shall be declared the winner. The persons elected together as the Governor and Lieutenant Governor shall serve until replaced or until re-elected in the 2009 elections. The Election Board shall administer the Oath of Office to the winners of the seats of Governor and Lieutenant Governor within three days of the certification of the results of the Special Election.

(d).     In the 2007 election, the eight seats on the Election Commission shall be filled. The election of Election Commission Members shall be held on the date of the General Election in 2007. The person receiving the highest number of votes per District for the position of Election Commission Member shall be seated, provided, that any tie votes shall be decided in a Special Election. Until the 2007 election, the Tribal Council may continue to select and employ Election Board Members who shall serve until replaced in the 2007 election. The existing Election Board in office as of the date of the adoption of this Constitution shall remain in office until properly replaced. No Member of the Election Board may be a candidate for Election Commission Member in the 2007 election. Until an Election Commission is elected in the 2007, the Election Board shall have all the duties and responsibilities as the Election Commission as indicated in this Constitution.

(e).     Following the adoption of this Constitution, the incumbent Chief Judge of the Tribal Court, and the three most recent Justices of the Supreme Court, shall remain in office with the full judicial authority to act in accordance with this Constitution until such time as replaced or reappointed in accordance with this Constitution.

## ARTICLE X – SOVEREIGN IMMUNITY

Section 1. Sovereign Immunity. The Tribes shall possess Sovereign Immunity. Nothing in this Constitution shall be deemed to waive Sovereign Immunity from suit. Only the Legislature and the Tribal Council may authorize a waiver of Sovereign Immunity by law. Any authorization by the Legislature to waive Sovereign Immunity shall be specific, for a limited scope and duration, in writing, and shall be limited to a maximum of one hundred thousand dollars per party. Any authorization by the Tribal Council to waive Sovereign Immunity shall be specific, for a limited scope and duration, and in writing.

Section 2. Immunity from Suit by Parties Outside the Jurisdiction of the Tribes. The Tribes and its Officials and Employees acting in their official capacity or within the scope of their authority shall be immune from suit brought by any party not subject to the Jurisdiction of the Tribes except to the extent waived in accordance with law.

Section 3. Immunity from Suit by Parties Within the Jurisdiction of the Tribes. The Tribes and its Officials and Employees acting in their official capacity or within the scope of their authority shall be immune from suit except for suits in equity filed exclusively in the Courts of the Tribes by any party subject to the Jurisdiction of the Tribes to enforce rights and duties established by law or this Constitution. Any Member of the Tribes may bring a suit exclusively in the Judicial Branch to enforce the terms of this Constitution. Sovereign Immunity shall not extend to Officials and Employees acting outside their official capacity or beyond the scope of their authority.

22

Section 4. <u>Suits Against the Legislature and Legislators</u>. Because the Legislature has no authority to take executive actions except those specifically authorized by this Constitution in accordance with this Constitution, the Legislature and individual Legislators acting in their official capacity shall be immune from suit in law and equity. When the Legislature is exercising an Executive function specifically authorized by this Constitution, the Legislature shall not be immune from suit in equity filed exclusively in the Judicial Branch by any party subject to the Jurisdiction of the Tribes.

Section 5. <u>Suits Against Judges</u>. Judges and Justices shall be immune from suit in law and equity for actions taken in their official capacity.

## ARTICLE XI – REFERENDUM

Section 1. <u>Referendum</u>. Members of the Tribes retain the right to require a Tribal Council vote or popular vote on any law by binding Referendum. Upon receipt of a petition signed by at least two-hundred fifty eligible voters, any enacted law shall be submitted to the voters in a Special Election.

Section 2. <u>Procedures</u>.

(a). All petitions seeking a Referendum vote on a law shall be submitted to the Election Commission. Upon request, the Election Commission shall prepare and issue a petition form to a Petitioner along with the names and addresses of the eligible voters of the Tribes listed by District including the minimum number of signatures required for a valid Referendum petition. Members of the Tribes shall have one-hundred twenty days to collect the requisite number of signatures on the Referendum petition.

(b). Any Member of the Tribes may submit a Referendum petition to the Election Commission. The Election Commission shall have thirty calendar days to rule on the validity of the signatures on the petition, and if valid, the Election Commission shall submit the law to a popular vote in a Special Election which shall be held within forty-five days.

(c). The majority of votes cast by the voters in the Special Election shall determine the success or failure of the Referendum, and if successful, the decision shall be binding upon the Tribes.

Section 3. <u>Referendum by the Legislature</u>. The Legislature shall have the power to call a Referendum under this Article by a two-thirds majority vote.

## ARTICLE XII – REMOVAL, RECALL, AND VACANCIES

23

**Section 1. Removal of Legislators by Referral to a Recall Election.** The Legislature shall have the power to seek the removal of a Legislator for good cause by a unanimous vote of the remaining seven Members of the Legislature. Upon a decision by the Legislature to seek the removal of a Legislator, such Legislator shall stand for re-election within forty-five days of such decision. The Legislature shall have the burden of proving good cause beyond a reasonable doubt. A Legislator subject to removal by referral to a Special Election shall be provided with adequate notice, be informed of the charges in writing, be given an opportunity to address the Legislature in a public hearing, and be given an opportunity to contest the charges, and prepare and present a defense including presenting witnesses and other evidence. The process to seek the removal of Legislator shall not extend beyond ninety days. No more than one Legislator shall be subject to removal by referral to a Special Election at the same time. No more than one attempt to remove a Legislator by referral to a Special Election shall be permitted during a term.

**Section 2. Impeachment and Removal of a Governor or Lieutenant Governor.** The Legislature shall have the power to impeach and remove a Governor or Lieutenant Governor for good cause by a unanimous vote of the Legislature. The Legislature shall have the burden of proving good cause beyond a reasonable doubt. A Governor or Lieutenant Governor subject to removal shall be provided with adequate notice, be informed of the charges in writing, be given an opportunity to address the Legislature in a public hearing, and be given an opportunity to contest the charges, and prepare and present a defense including presenting witnesses and other evidence. The process to seek the impeachment and removal of the Governor or Lieutenant Governor shall not extend beyond ninety days. The Governor and Lieutenant Governor shall not be subject to impeachment and removal at the same time.

**Section 3. Impeachment and Removal of a Judge or Justice.** The Legislature shall have the power to impeach and remove a Judge or Justice for good cause by a unanimous vote of the Legislature. The Legislature shall have the burden of proving good cause beyond a reasonable doubt. A Judge or Justice subject to impeachment and removal shall be provided with adequate notice, be informed of the charges in writing, be given an opportunity to address the Legislature in a public hearing, and be given an opportunity to contest the charges, and prepare and present a defense including presenting witnesses and other evidence. The process to seek the impeachment and removal of the Judge or Justice shall not extend beyond ninety days. No more than one Judge or Justice shall be subject to impeachment and removal at the same time.

**Section 4. Removal for Felony Conviction while in Office.** Any person serving as Governor, Lieutenant Governor, Legislator, Judge, Justice, or Election Commission Member who is convicted of a felony while in office shall be removed from office, provided, that a person who is appealing a conviction shall be suspended from office without pay pending the outcome of the final appeal.

**Section 5. Removal and Vacancy.** Upon the removal of an official under this Article, the Election Commission shall declare such seat vacant.

24

07/10/2008 19:33 FAX    14852623140    BIA CONCHO    ☑030/032

**Section 6.** Recall.

    (a).    A Legislator shall be subject to a recall vote in a Special Election called by petition of at least thirty percent of the number of registered voters in their respective District.

    (b).    A Governor or Lieutenant Governor shall be removable by recall vote in a Special Election called by petition of at least thirty percent of the number of registered voters in the Tribes.

    (c).    Petitions seeking the recall of a Legislator, Governor, or Lieutenant Governor shall be submitted to the Election Commission. Upon request, the Election Commission shall prepare and issue a petition form to a Petitioner along with the names and addresses of eligible voters of the Tribes including the minimum number of signatures required for a valid Recall petition. Members of the Tribes shall have one-hundred twenty days to collect the requisite number of signatures on the Recall petition. A separate petition shall be required for each person subject to recall. The Governor and Lieutenant Governor shall not be subject to Recall at the same time.

    (d).    Upon receipt of a Recall petition, the Election Commission shall verify the validity of the signatures on the petition within twenty days. If the petition is valid, the Election Commission shall hold a Recall election within sixty days.

    (e).    A majority of the votes cast in the Recall election shall determine the success or failure of the Recall election, provided that, the official must be recalled by at least number of votes which elected such person to office. Upon a successful recall, the Election Commission shall declare the seat vacant.

**Section 7.** Recall Limits.

    (a).    A person who is successfully recalled from office shall not be eligible to serve in an elective office until a period of six years has elapsed.

    (b).    No Recall petition shall be initiated against any elected official until six months has elapsed from their inauguration into office.

**Section 8.** Vacancy in the Office of Legislator. Any vacancy in the Office of Legislator shall be filled as follows:

    (a).    If less than three months remain in the term, then the office shall remain vacant;

    (b).    If more than three months remain in the term, then the Election Commission shall hold a Special Election to fill the vacancy. The Special Election shall be held within forty five days of the vacancy. A person elected to fill the vacancy shall

serve for the remainder of the unexpired term.

Section 9. <u>Vacancy in the Office of Governor</u>. Any vacancy in the Office of Governor shall be filled by the Lieutenant Governor who shall serve for the remainder of the unexpired term.

Section 10. <u>Vacancy in the Office of Lieutenant Governor</u>. Any vacancy in the Office of Lieutenant Governor shall be filled by appointment by the Governor.

Section 11. <u>Vacancies in the Judicial Branch</u>. Any vacancy in the Office of Judge or Justice shall be filled in accordance with the terms of this Constitution.

Section 12. <u>Vacancies on the Election Commission</u>.

    (a).    A vacancy on the Election Commission shall be filled upon nomination of the Governor subject to confirmation by the Legislature. If the Legislature neither confirms nor denies the nominee within thirty days of nomination by the Governor, then the nominee shall be deemed confirmed.

    (b).    Prior to nomination, the Governor shall publish a notice announcing a vacancy on the Election Commission. The Governor shall allow thirty days for Members of the Tribes to submit a letter of interest to the Governor seeking an appointment to the Election Commission.

## ARTICLE XIII – AMENDMENTS

Section 1. <u>Request for an Election</u>.

    (a).    The Tribal Council may initiate the process to amend the Constitution by calling a Special Election. The Legislature may initiate the process to amend the Constitution by calling a Special Election by law. The Election Commission shall call and hold a Special Election to amend the Constitution within ninety days of an official request from the Tribal Council or enactment of a law by the Legislature.

    (b).    The voters shall have the right to request a Special Election to amend the Constitution by submitting a petition to the Election Commission signed by at least thirty percent of the Members of the Tribes age eighteen or older. The Election Commission shall call and hold a Special Election to amend the Constitution within ninety days of receipt of a valid petition.

Section 2. <u>Requirements</u>. The Constitution may be amended by a majority vote of the voters who vote in the Special Election, provided, that at least thirty percent of the registered voters cast a vote in the Special Election. Amendments approved by the voters shall become effective immediately unless otherwise indicated in the amendment.

26

# CHEYENNE-ARAPAHO TRIBES OF OKLAHOMA
## CERTIFICATION
### SECRETARIAL ELECTION
April 4, 2006

## QUESTION

| | |
|---|---|
| YES | 608 |
| NO | 201 |

## CERTIFICATE

Pursuant to a Secretarial election authorized by Mike Olsen, Acting Principal Deputy Assistant Secretary - Indian Affairs on January 6, 2006, the attached Constitution, was submitted to the qualified voters of the Cheyenne-Arapaho Tribe and on April 4, 2006, was duly adopted by a vote of 608 for and 201 against and 2 cast ballots found spoiled or mutilated in an election in which at least 30 percent of the 1,544 members entitled to vote, cast their ballots in accordance with the Act of June 26, 1936, 49 Stat. 1967 (Oklahoma Indian Welfare Act.).

_____
CHAIRPERSON

_____
MEMBER

_____
MEMBER

_____
MEMBER

_____
MEMBER

_____
MEMBER