IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE NEZ PERCE TRIBE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 06cv02239-JR |
| ) | |
| DIRK KEMPTHORNE, ) | |
| Secretary of the Interior, et al., ) | |
| ) | |
| Defendants. ) | |

# DECLARATION OF GUY ROBBINS

I, Guy Lester Robbins, III, pursuant to 28 U.S.C. §1746 do hereby declare and state:

1. I am the Superintendent of the Yakama Agency for the Bureau of Indian Affairs ("BIA"). I have held that position since May 13, 2007, and I have been at the Yakama Agency since that time. My responsibilities as Superintendent include serving as the line officer responsible for the Planning, implementing, directing, monitoring and evaluating the BIA's trust responsibilities and program services within the Agency. The Yakama Agency services the Yakama Nation. The services provided by the Agency include the areas of Forestry, Natural Resources, Social Services, and Roads.

2. The 14 Confederated Tribes and Bands of the Yakama Nation is a Federally recognized sovereign nation pursuant to the Treaty of June 9, 1855 (12 Stat. 951), made with the United States of America (copy of Treaty attached). It is a

General Council Tribe operated and administered by a 14 member Tribal Council and eight standing committees and several (currently five) special committees composed of elected officials of the Councils (copy of Resolution T-046-08 setting forth current Council Officials composition attached). The Yakama Nation does not have a constitution.

3. The Yakama Nation is under forty (40) self-determination contracts (see attached summary describing the contracts by name and by contract number) with the BIA.

4. The Yakama Nation and the BIA at the Yakama Agency have somewhat of a unique relationship as a result of the Treaty referenced above. Most of the other Tribes within the Northwest Region are not Treaty Tribes. Although all agencies follow the same federal rules and regulations, the Yakama Nation is one of the few tribes authorized by Congress to sell its Tribal lands.

5. The 1,377,003 acre Yakama Reservation contains 1,138,082 acres of Tribal and Individual Indian trust lands and 238,921 acres held in fee. The Wapato Irrigation Project (WIP) located entirely on the Yakama Reservation, is the largest Federal irrigation project operated and maintained by the BIA. WIP provides water to over 150,000 acres of agricultural land and serves more than 3,000 water users. Over 35 different crops are grown on WIP and generated nearly 233 million dollars in 2007. In addition, the Yakama Nation's jurisdiction extends to the nearly 2,000 acres of public domain allotments located in close proximity to the Yakama Reservation. Monies generated from trust lands whether from timber revenues (from 517,924 forest acres), range permits, home site leases, business leases, or agricultural leases go into the Department of Interior lockbox system administered by Office of the Special Trustee for American Indians (OST) and

Declaration of Guy Robbins    July 14, 2008    page 2 of 3 pages
Case # 06cv02239-JR

then into individual accounts or tribal PL accounts. No direct pay to the Yakama Nation from tenants of trust lands occurs. Monies generated by non-trust programs including income generated from tribally owned real estate held in fee, tribal enterprises, and gaming goes into a tribal account and is not handled, nor accounted for by the BIA. Trust land contracts are standard approved federal government documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of July, 2008

*Guy Lester Robbins III*
Guy Lester Robbins, III

# DECLARATION OF

# Guy Robbins

# July 14, 2008

# ATTACHMENT 1

# Treaty with the Yakamas, June 9, 1855

**JAMES BUCHANAN, President of the United States of America, To all and singular to whom these presents shall come, Greeting:**

WHEREAS a treaty was made and concluded at the Treaty Ground, Camp Stevens, Walla-Walla Valley on the ninth day of June, the year of one thousand eight hundred and fifty-five, between Isaac I. Stevens, governor, and superintendent of Indian affairs, for the Territory of Washington, on the part of the United States, and the hereinafter named head chief, chiefs, headmen, and delegates of the Yakama, Palouse, Pisquouse, Wenatshapam, Klikatat, Klin-quit, Kow-was-say-ee, Li-ay-was, Skin-pah, Wish-ham, Shyiks, Oche-chotes, Kah-milt-pah, and Se-ap-cat, confederate tribes and bands of Indians, occupying lands lying in Washington territory who, for purposes of this treaty, are to be considered as one nation, under the name of "Yakama", with Kamaiakun as its Head Chief, on behalf of the acting for said bands and tribes, and duly authorized thereto by them; which treaty is in the words and figures following, to wit:

Articles of agreement and convention made and concluded at the Treaty Ground, Camp Stevens, Walla Walla Valley this Ninth day of June in the year one thousand eight hundred and fifty five, by and between Isaac I. Stevens, Governor and Superintendent of Indian Affairs for the Territory of Washington, on the part of the United States, and the undersigned head chief, chiefs, headmen and delegates of the Yakama, Palouse, Pisquose, Wenatchapam, Klikatat, Klinquit, Kow-was-say-ee, Li-ay-was, Skinpah, Wishham, Shyiks, Oche-chotes, Kah-milt-pah, and Se-ap-cat, confederate tribes and bands of Indians, occupying lands hereinafter bounded and described and lying in Washington Territory, who for the purposes of this treaty are to be considered as one nation, under the name of "Yakama" with Kamiakun as its head chief, on behalf of and acting for said tribes and bands, and being duly authorized thereto by them.

## Cession Of Lands

Article 1.    The aforesaid confederated tribes and bands of Indians hereby cede, relinquish, and convey to the United States all their right, title, and interest in and to the lands and country occupied and claimed by them, and bounded and described as follows, to wit:

## Boundaries

Commencing at Mount Rainier, thence Northerly along the main ridge of the Cascade Mountains to the point where the Northern tributarie of Lake Che-lan and the Southern Tributaries of the Methow River have their rise, thence Southeasterly on the divide between the waters of Lake Che-lan and the Methow River to the Columbia River; thence, crossing the Columbia on a true East course, to a point whose longitude is one hundred and nineteen degrees and ten minutes (119° 10',) which two latter lines separate the above confederated tribes and bands from the Oakinakane tribe of Indians; thence in a true South course to the Forty seventh (47°) parallel of latitude; thence East on said parallel to the main Palouse River, which two latter lines of boundary separate the above confederated tribes and bands from the Spokanes; thence down the Palouse River to its junction with the Moh-hah-ne-she, or southern tributary of the same; thence in a southeasterly direction, to the Snake River at the mouth of the Tucannon River, separating the above confederated tribes from the Nez Perce tribe of Indians; thence down the Snake River to it junction with the Columbia River; thence up the Columbia River to the "White Banks", below the Priest's rapids; thence westerly to a lake called "La Lac," thence southerly to a point on the Yakama River called Toh-mah-luke; thence, in southwesterly direction, to the Columbia River at the western extremity of the "Big Island" between the mouths of the Umatilla River and Butler Creek; all of which latter boundaries separate the above confederated tribes and bands from the Walla-Walla, Cayuse, and Umatilla tribes and bands of Indians; thence down the Columbia River to midway between the mouths of White Salmon and Wind Rivers; thence along the divide between said rivers to the main ridge of the Cascade Mountains; and thence along said ridge to the place of beginning.

1

## Reservation

Article 2.　　　There is, however, reserved from the lands above ceded for the use and occupation of the aforesaid confederated tribes and bands of Indians, the tract of land included within the following boundaries to wit:

## Boundaries

Commencing on the Yakama River, at the mouth of the Attah-nam River; thence Westerly along said Attah-num River to the forks; thence along the Southern Tributary to the Cascade Mountains; thence southerly along the main ridge of said mountains, passing south and east of Mt. Adams, to the spur whence flows the waters of the Klickatat and Pisco rivers; thence down said spur to the divide between the waters of said rivers; thence along said divide to the divide separating the waters of the Satass River from those flowing into the Columbia River; thence along said divide to the main Yakama, eight miles below the mouth of the Satass River; and thence up the Yakama River to the place of beginning.

All of which tract shall be set apart, and, so far as necessary, surveyed and marked out, for the exclusive use and benefit of said confederated tribes and bands of Indians, as an Indian reservation; nor shall any white man, excepting those in the employment of the Indian Department, be permitted to reside upon the said reservation without permission of the tribe and the Superintendent and agent. And the said confederated tribes and bands agree to remove to and settle upon, the same within one year after the ratification of this treaty. In the meantime it shall be lawful for them to reside upon any ground not in the actual claim and occupation of citizens of the United States; and upon any ground claimed or occupied, if with the permission of the owner or claimant.

Guaranteeing, however, the right to all citizens of the United States, to enter upon and occupy as settlers any lands not actually occupied and cultivated by said Indians at this time, and not included in the reservation above named.

And provided, That any substantial improvements heretofore made by any Indians, such as fields enclosed and cultivated, and houses erected upon the lands hereby ceded, and which he may be compelled to abandon in consequence of this treaty, shall be valued under the direction of the President of the United States and payment made therefor in money; or improvements of an equal value made for said Indian upon the reservation. And no Indian will be required to abandon the improvements aforesaid, now occupied by him, until their value in money, or improvements of an equal value shall be furnished him as aforesaid.

Article 3.　　　And provided, That, if necessary for the public convenience, roads may be run through said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right, in common with citizens of the United States, to travel upon all public highways.

## Privileges Secured to Indians

The exclusive right of taking fish in all the streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with citizens of the Territory, and of erecting temporary buildings for curing them; together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land.

Payments by the United States

Article 4.　　　In consideration of the above cession, the United States agree to pay to the said confederated tribes and bands of Indians, in addition to the goods and provisions distributed to them at the time of signing this treaty, the sum of two hundred thousand dollars, in the following manner, that is to say: sixty thousand, to be expended under the direction of the President of the United States, the first year after the ratification of this treaty, in providing for their removal to the reservation, breaking up and fencing farms, building houses for them, supplying them with provisions and a suitable outfit, and for such other objects as he may deem necessary, and the remainder in annuities, as follows: for the first five years after the ratification of the treaty ten thousand dollars each year, commencing September first, 1856: for the next five years, eight thousand dollars each year; for the next five years, six thousand dollars per year; and for the next five years four thousand per year.

2

All which sums of money shall be applied to the use and benefit of said Indians, under the direction of the President of the United States, who may from time to time determine, at his discretion, upon what beneficial objects to expend the same for them. And the superintendent of Indian affairs or other proper office, shall each year inform the President of the wishes of the Indians in relation thereto.

## United States to Establish Schools

Article 5. The United States further agree to establish at suitable points within said reservation within one year after the ratification hereof, two schools, erecting the necessary buildings, keeping them in repair, and providing them with furniture, books, and stationery, one of which shall be an agricultural and industrial school, to be located at the agency, and to be free to the children of the said confederated tribes and bands of Indians, and to employ one superintendent of teaching and two teachers; to build two blacksmith's shops, to one of which shall be attached a tin shop, and to he other a gunsmith's shop; one carpenters shop, one wagon and ploughmaker's shop, and to keep the same in repair and furnished with the necessary tools; to employ one superintendent of farming and two farmers, two blacksmiths, one tinner; one gunsmith, one carpenter; one wagon and plough maker, for the instruction of the Indians in trades and to assist them in the same; to erect one sawmill and one flouring-mill, keeping the same in repair and furnished with the necessary tools and fixtures; to erect a hospital, keeping the same in repair and provided with the necessary medicines and furniture, and to employ a physician; and to erect, keep in repair and provided with the necessary furniture, the buildings required for the accommodation of the said employees. The said buildings and establishments to be maintained and kept in repair as aforesaid, and the employees to be kept in service for the period of twenty years.

And in view of the fact that the head chief of the said confederated tribes and bands of Indians is expected, and will be called upon, to perform many services of public character, occupying much of his time, the United States further agrees to pay to the said confederated tribes and bands of Indians five hundred dollars per year, for the term of twenty years after the ratification hereof, as a salary for such person as the said confederated tribes and bands of Indians may select to be their head chief, to build for him at a suitable point on the reservation a comfortable house and properly furnish the same, and to plough and fence ten acres of land. The said salary to be paid to, and the said house to be occupied by, such head chief so long as he may continue to hold that office.

## Kamaiakun Is the Head Chief

And it is distinctly understood and agreed that at the time of the conclusion of this treaty Kamaiakun is the duly elected and authorized head chief of the confederated tribes and bands aforesaid, styled the Yakama nation, and is recognized as such by the Commission on the part of the United States holding this treaty; and all the expenditures and expenses contemplated in this article of this treaty shall be defrayed by the United States, and shall not be deducted from the annuities agreed to be paid to said confederated tribes and bands of Indians. Nor shall the cost of transporting the goods for the annuity payments be charged upon the annuities, but shall be defrayed by the United States.

## Reservation May Be Surveyed

Article 6. The President may, from time to time, at his discretion, cause the whole or such portions of such reservation as he may think proper, to be surveyed into lots and assign the same to such individuals or families of the said confederated tribes and bands of Indians as are willing to avail themselves of the privilege, and will locate on the same as a permanent home on the same terms and subject to the same regulations as are provided in the sixth article of the treaty with the Omahas, so far as the same may be applicable.

## Annuities Not to Pay Debts of Individuals

Article 7. The annuities of the aforesaid confederated tribes and bands of Indians shall not be taken to pay the debts of individuals.

## Not to Make War But in Self Defense

Article 8.    The aforesaid confederated tribes and bands of Indians acknowledge their dependence upon the government of the United States, and promise to be friendly with all citizens thereof, and pledge themselves to commit no depredations upon the property of such citizens.

And should anyone or more of them violate this pledge, and the fact be satisfactorily provided before the agent, the property taken shall be returned, or in default thereof, or if injured or destroyed, compensation may be made by the government out of the annuities.

Nor will they make war upon any other tribe, except in self-defense, but will submit all matters of differences between them and other Indians to the government of the United States or its agent for decision, and abide thereby. And if any of the said Indians commit depredations on any other Indians within the territory of Washington or Oregon, the same rule shall prevail as that provided in this article in case of depredations against citizens. And the said confederated tribes and bands of Indians agree not to shelter or conceal offenders against the laws of the United States, but to deliver them up to the authorities for trial.

Article 9.    The said confederated tribes and bands of Indians desire to exclude from their reservation the use of ardent spirits, and to prevent their people from drinking the same, and, therefore, it is provided that any Indian belonging to said confederated tribes and bands of Indians, who is guilty of bringing liquor into said reservation, or who drinks liquor may have his or her annuities withheld from him or her for such time as the President may determine.

## Wenatshapam Fishery Reserved

Article 10.    And provided, That there is also reserved and set apart from the lands ceded by this treaty, for the use and benefit of the aforesaid confederated tribes and bands, a tract of land not exceeding in quantity one township of six miles square, situated at the forks of the Pisquouse or Wenatshapam River, and known as the "Wenatshapam fishery," which said reservation shall be surveyed and marked out whenever the President may direct, and be subject to the same provisions and restrictions as other Indian reservations.

## When Treaty to Take Effect

Article 11.    This treaty shall be obligatory upon the contracting parties as soon as the same shall be ratified by the President and Senate of the United States.

In testimony whereof, the said Isaac. I. Stevens governor and superintendent of Indian affairs for the Territory of Washington and the undersigned head chief, chiefs, headmen and delegates to the aforesaid confederated tribes and bands of Indians, have hereunto set their hands and seals, at the place and on the day and year hereinbefore written.

ISAAC I. STEVENS, Governor
and Superintendent
KAMAIAKUN, his X mark
SKLOOM, his X mark
OWHI, his X-mark
TE-COLE-KUN, his X mark
LA-HOOM, his X mark
ME-NI -NOCK, his X mark
ELIT PALMER, his X mark
WISH-OCH-KMPITS, his x mark
KOO-LAT-TOOSE, his x mark
SHEE-AH-COTTE, his X mark
TUCK-QUILLE, his X mark
KA-LOO-AS, his x watt
SCHA-NOO-A, his X mark
SLA-KISH, his X mark

Signed and sealed in presence of —

JAMES DOTY, Secretary of Treaties
MIE. CLES. (JEAN CHARLES) PANDOSY O.M.I.
WM. C. McKAY
WH. TAPPAN, sub Indian Agent. W.T.
C. CHIROUSE, O.M.I.
PATRICK McKENZIE, Interpreter
A.D. PAMBURN (PAMBRUN), Interpreter
JOEL PALMER, Supt. of
   Indian Affairs, O.T.
W.D. BIGLOW
A.D. PAMBURN (PAMBRUN), Interpreter

4

And whereas, the said treaty having been submitted to the Senate of the United States for its constitutional action thereon, the said Senate did, on the eighth day of March, one thousand eight hundred and fifty-nine, advise and consent to the ratification of the same by a resolution in the words and figures following, to wit:

"IN EXECUTIVE SESSION,
"SENATE OF THE UNITED STATES, March 8, 1859.

"*Resolved, (two thirds of the senators present concurring.) That the Senate advise and consent to the ratification of treaty between the United States and the head chief, chiefs, headmen, and delegates of the Yakama, Palouse, and other confederated tribes and bands of Indians, occupying lands lying in Washington Territory, who for the purpose of this treaty, are to be considered as one nation, under the name of "Yakama," with Kamaiakun as its head chief, signed 9th June, 1855.*
Attest:                                                    "ASBURY DICKENS, Secretary."

Now, therefore, be it known that I, JAMES BUCHANAN, President of the United States of America, do, in pursuance of the advice and consent of the Senate, as expressed in their resolution of March eighth, one thousand eight hundred and fifty-nine, accept, ratify, and confirm the said treaty.

In testimony whereof, I have hereunto caused the seal of the United States to be affixed, and have signed the same with my hand.

Done at the city of Washington, this eighteenth day of April, in the year of our Lord one thousand eight hundred and fifty-nine, and of the independence of the United States the eighty-third.

JAMES BUCHANAN

By the President:
    LEWIS CASS, Secretary of State



1. YAKAMA
2. PALOUSE
3. PISQUOUSE
4. WENATSHAPAM
5. KLIKATAT
6. KLINQUIT
7. KOW-WAS-SAY-EE
8. LI-AY-WAS

9. SKIN PAH
10. WISH-HAM
11. SHYIKS
12. OCHE-CHOTES
13. KAH-MILT-PAH
14. SE-AP-CAT

5

Case 1:06-cv-02299-JR    Document 64-11    Filed 07/14/2008    Page 10 of 31

# Yakama Nation Organizational Structure



Above: Tribal Council In Session

Left: Chief Kamiakin

10/12/07 MRC

**General Council**
- Code of Ethics
- Tribal Council
- Tribal Council Executive Board

- Office of the Special Trustee
- Bureau of Indian Affairs

**8 Standing Committees**
- Fish, Wildlife & Law and Order
- Timber Grazing, Overall Economic Development
- Health, Employment, Welfare Rec., Youth activities
- Loan, Extension, Education And Housing
- Enrollment
- Roads, Irrigation & Land
- Budget & Finance
- Legislative

**Special Committees**
- Cultural
- Public Relations/Media
- Timber, Fish & Wildlife
- Radioactive/Hazardous Waste
- Veteran's

26

# Standing Committees & Programs

## Yakama Nation Standing Committees & Programs 2007



**Timber, Grazing, Overall Economic Development Committee**

| | |
|---|---|
| Yakama Sun Kings | Economic Development |
| Cultural Heritage Center Administration | Yakama Forest Products |
| Yakama Legends Casino | Yakama Power |
| Yukamari | Tribal Forestry (Formerly: Forest Dev.) |
| Fire Management | Fuels Management |
| BIA Forestry | Range Program |

**Fish, Wildlife & Law and Order Committee**

| | |
|---|---|
| Justice Services | Legal Council |
| Court of Appeals | Children's Court |
| Gaming Commission | Fisheries |
| Wildlife | Yakama/Klickitat Fisheries Project |
| Public Safety | |

**Loan, Extension, Education And Housing Committee**

| | |
|---|---|
| Yakama Housing Authority | Higher Education |
| Yakama Nation Head Start | Adult Vocational Training |
| Yakama Nation Credit Enterprise | Yakama Nation Tribal School |

**Health, Employment, Welfare Recreational Youth Activities Committee**

| | |
|---|---|
| Office of Personnel | Tribal Employee Rights Office (TERO) |
| Tribal Insurance | Basic Food Nutrition Education Program |
| Women, Infant and Children (WIC) | Nak-Nu-We-Sha |
| White Swan Health Clinic Ambulance | Tobacco Prevention |
| Home Health | YN Behavioral Health |
| Contract Health Services | YN Diabetes Program |
| Comprehensive Community Alcoholism Program | Community Health Representative Program |
| Water & Sewer Tribal Maintenance | Vocational Rehabilitation |
| Native Workforce Development | Youth Activities |
| Area Agency on Aging | Human Services Administration |
| Commodity Foods Distribution | Low Income Home Energy Assistance Program |
| Maternal Child Health | Nutritionist Program |
| Domestic Violence | Mt. Adams Community Center |
| Childcare Block Grant | |

28

# Standing Committees & Programs

## Yakama Nation Standing Committees & Programs 2007



Chief White Swan

Chief Yet-ti-mo-chet (brother of Chief Kamiakin)

10/12/07 MRC Personnel

29

NEZ PERCE EXHIBIT

Back to Table of Contents

## 1999 Revised Constitution and Bylaws of the Nez Perce Tribe

Revised: 1999

## PREAMBLE

We, the members of the Nez Perce Tribe, in order to exercise our tribal rights and promote our common welfare, do hereby establish this Constitution and Bylaws.

Back to Top

## ARTICLE I - PURPOSE

The purpose of this Constitution and Bylaws shall be to protect and promote the interests of the Nez Perce Indians to develop cooperative relations with the Bureau of Indian Affairs and other federal agencies, and to cooperate with the State and local governments.

Back to Top

## ARTICLE II - NAME

This tribal organization shall be called "The Nez Perce Tribe".

Back to Top

## ARTICLE III - TERRITORY

The jurisdiction of the Nez Perce Tribe shall extend to all lands within the original confines of the Nez Perce reservation boundaries as established by treaty; and extra-territorial jurisdiction for the purposes of protecting the rights of the Nez Perce Tribe as guaranteed by treaties with the United States of America; and also to such other lands as may be hereafter acquired by or for the Nez Perce Indians of Idaho.

Back to Top

## ARTICLE IV - MEMBERSHIP

### Section 1.

The membership of the Nez Perce Tribe shall consist as follows, provided they have not lost or do not hereafter lose their membership under the terms of any tribal membership ordinance:

**(A)** All persons whose names appear on the official Nez Perce Tribal Membership Roll of December 3 ,1956, as corrected by any action of the Secretary of the Interior.

**(B)** All children who are of at least one-fourth (l/4) degree Nez Perce Indian ancestry born to a member of the Nez Perce Tribe, provided that an application for enrollment is filed with the Nez Perce Tribal Executive Committee within eighteen (18) years after birth.

**(C)** Person adopted into the Tribe under the terms of a tribal membership ordinance.

### Section 2.

The Executive Committee of the Tribe shall have power to make rules, subject to approval by the Secretary of the Interior or his authorized representative, governing the adoption of new members or the termination of membership in the Tribe.

Back to Top

## ARTICLE V - THE TRIBAL GENERAL COUNCIL

### Section 1.

The qualified voters of the Tribe as defined in Section 5 of this Article, shall constitute the Tribal General Council. There shall be two meetings of the Tribal General Council annually, which shall take place on the first Friday and Saturday in May and on the last Friday and Saturday in September.

### Section 2.

The Tribal General Council shall on the first day of the May, 1983 Tribal General Council meeting, upon being called to order by the Chairman of the Tribal General Council,, elect a Chairman, a Secretary, three (3) Election Judges and a Resolutions Committee of not more than four (4) members. Election of Tribal General Council officers shall thereafter be held on the
first day of September Tribal General Council meeting. Provided however, that the terms of the adoption of this amendment, shall be extended until the election of their successors in September, 1984.

### Section 3.

The officers of the Tribal General Council, elected under Section 2 of this Article, shall hold office for one year and until their successors have qualified.

### Section 4.

**(A)** It shall be the duty of the Chairman of theTribal General Council to preside over meetings of the Tribal General Council.

**(B)** It shall be the duty of the Secretary of the Tribal General Council to take minutes and record all action of the Tribal General Council.

**(C)** It shall be the duty of the Chairman and the Secretary of the Tribal General Council to prepare the agenda for every meeting of the Tribal General Council subject to amendment from the floor.

**(D)** It shall be the duty of the Election Judges to pass on the eligibility of members to vote in the General Council, to supervise all elections and decide all election disputes, subject to the provisions of any Tribal Election Ordinance, and to certify the election results as attested to by the Chairman of the Tribal General Council.

### Section 5.

Any enrolled member of the Nez Perce Tribe who is eighteen or over shall be entitled to vote in General Council Meetings or Elections.

### Section 6.

The Resolutions Committee shall have the power,between meetings of the General Council, to meet for a total of not to exceed ten days annually for the purpose of considering suggestions, problems and complaints from the people concerning tribal affairs. If the Resolutions Committee find any such suggestions, problem or complaint to merit its presentation to the Nez Perce Tribal Executive Committee, it shall do so. The Nez Perce Tribal Executive Committee shall be required to place such item or items on the agenda of its next regular meeting or to call a special meeting for the consideration of such item or items. The item or items shall be automatically placed on the agenda of each regular NPTEC meeting thereafter until final disposition has been made. A report in writing of the action taken at each meeting shall be mailed or delivered to each member of the Resolutions Committee within seven (7) days after each meeting. Nothing herein contained shall be construed as depriving a member of the right to appeal directly to the Nez Perce Tribal Executive Committee.

Back to Top

# ARTICLE VI - THE NEZ PERCE TRIBAL EXECUTIVE COMMITTEE

### Section 1.

The affairs of the Nez Perce Tribe shall be administered by a Tribal Executive

Committee (hereinafter referred to as NPTEC), consisting of nine (9) members elected by the Tribal General Council.

## Section 2.

**(A)** The full term of office of each member of the NPTEC shall be three years; the three year
terms, under the Tribal Constitution of 1948, expiring in 1962 to be designated "Class A", the three terms expiring in 1963 "Class B", and the three terms expiring in 1964 "Class C". Members of the NPTEC shall be elected at the May meeting of the Tribal General Council and shall serve until their successors have qualified.

**(B)** In the case of a vacancy on the NPTEC through death, resignation or removal, NPTEC shall elect a successor to serve until the next May meeting of the Tribal General Council. At such May meeting the General Council shall elect a successor to serve for the remainder of the term.

## Section 3.

Subject to the provisions of Article VII, Section 4, any qualified voter of the Nez Perce Tribe shall be eligible for election to the NPTEC, provided that he is one fourth (1/4) degree or more Nez Perce Indian ancestry and has had one year permanent residence within the confines of the reservation, as established by the Treaty of 1863, immediately preceding his election.

## Section 4.

The NPTEC shall meet immediately following the annual May meeting of the General Council for the purpose of electing from its own membership (a) a Chairman; (b) a Vice-Chairman; (c) a Secretary; (d) a Treasurer; (e) an Assistant Secretary-Treasurer; and (f) a Chaplain.

## Section 5.

Every member of the NPTEC shall have the right to vote on any matter which shall be brought before the Committee.

## Section 6.

A petition for the recall of a member of the NPTEC shall be in writing and signed by at least 175 of the persons who were eligible and registered to vote at the last preceding election of the NPTEC and shall charge that a member of the NPTEC has violated his oath of office or committed an act or acts of misconduct or neglect of duty, and such violation, act or acts shall be
concisely described in the petition. The petition shall be attested by the Chairman of the General Council. The petition shall be filed with the NPTEC. If the petition is in accordance with requirements of this section, the NPTEC shall call a special election to be held on a date not less than 30 days and not more than 60 days after such call. The election shall be held at polling places established at Lapwai, Kamiah, and Orofino, Idaho. At such election, the persons eligible and registered to vote at the last election of the NPTEC shall vote upon the recall petition by secret ballot. If at least two hundred sixty votes are cast and at least seventy-five percent of the votes cast favor recall,

Case 1:06-cv-02239-JR    Document 64-11    Filed 07/14/2008    Page 18 of 31

NPTEC shall declare that the member complained of in the petition is removed from office and his position shall be vacant and the NPTEC shall proceed in accordance with section 2(B) of Article VI.

Back to Top

# ARTICLE VII - REMOVAL FROM OFFICE AND DISQUALIFICATION

### Section 1.

Any member or officer of the NPTEC shall automatically forfeit his office if convicted by any court of competent jurisdiction of any criminal offense, other than a minor traffic, hunting or fishing violation, for which he is sentenced to imprisonment or payment of a fine in lieu thereof.

### Section 2.

NPTEC shall, by majority vote, expel any member of the NPTEC found guilty by it of (a) having absented himself from three successive meetings of the Committee without sufficient reason acceptable to the Committee; (b) other neglect of duty; or (c) gross misconduct. Before any vote for expulsion is taken in the matter, such member shall be given a written statement of the charges against him at least ten days before the meeting of the NPTEC at which he is to appear. He shall be given a reasonable opportunity to answer charges at the designated Committee meeting. Failure of the accused to appear at the scheduled time shall be deemed a waiver of his right to a hearing, unless a satisfactory excuse for such failure to appear is furnished within a reasonable time thereafter. The decision of the NPTEC shall be final.

### Section 3.

The NPTEC shall formulate and adopt a set of rules defining other neglect of duty and gross misconduct as applied to members of the Committee.

### Section 4.

(A) No person who has been convicted of a felony by a court of competent jurisdiction may serve as a member of the NPTEC until ten years following-his release from confinement.

(B) No person who has been convicted by a court of competent jurisdiction of a criminal
offense other than a felony or a minor traffic, hunting or fishing violation for which he was sentenced to imprisonment or payment of a fine in lieu thereof may serve as a member of the NPTEC until three years following his conviction.

(C) No person who has been removed from NPTEC under Section 2 of this Article may serve on it again until three years following his removal.

Back to Top

## ARTICLE VIII - POWERS AND DUTIES OF THE NEZ PERCE TRIBAL EXECUTIVE COMMITTEE

**Section 1.** The NPTEC shall have the following powers, to be exercised in accordance with this Constitution and with the applicable statutes of the United States.

    **(A)** To represent the Tribe in negotiations with federal, state and local governments and with private corporations, associations, and individuals and to advise and consult with government offkials concerning governmental activities affecting the Tribe;

    **(B)** To promote and protect the health education and general welfare of the members of the Tribe, and to administer welfare aid and such other services as may contribute to the social and economic advancement of the Tribe and its members;

    **(C)** To administer unrestricted tribal funds;

    **(D)** To prescribe rules governing nominations and elections of members of the NPTEC.

**Section 2.**

The NPTEC shall have the following powers, to be exercised in accordance with this Constitution and with applicable statutes of the United States and subject to approval by the Secretary of the Interior or his authorized representative.

    **(A)** To manage the property of the Nez Perce Tribe, including tribal lands, restricted funds, timber and other resources, and to purchase or otherwise acquire lands or interest in lands within or without the reservation;

    **(B)** To engage in any business or other economic transaction that will further the economic development of the Tribe and its members;

    **(C)** To promulgate and enforce ordinances governing the conduct of all persons and activities within the boundaries of the Nez Perce reservation and in the exercise of treaty rights on or off the Nez Perce reservation, to provide for the maintenance of law and order and the administration of justice, and to regulate domestic relations and inheritance and testamentary disposition of personal property and real property, other than allotted lands, within the reservation;

    **(D)** To prescribe rules governing the adoption of members into the Tribe and the loss of membership;

    **(E)** To employ counsel or consultants for the protection and advancement of the Tribe, and for such other purpose as may be deemed necessary. The choice of attorneys and consultants and the fixing for fees to be approved by the Secretary of the Interior or his duly authorized representative;

**(F)** To exercise any other power which may heretofore have been
delegated or may hereafter be delegated to it by any agency of local, state
or federal government.

## Section 3.

Any resolution or ordinance which under Section 2 of this Article is subject to approval
by the Secretary of the Interior, shall be presented to the Superintendent of the
reservation who shall, within 10 days thereafter, approve or disapprove the same.

If the Superintendent shall approve any ordinance or resolution, he shall transmit it-
with his endorsement to the Secretary of the Interior who may, within 90 days from
the date of enactment, approve or disapprove it. The resolution shall become effective
upon approval by the Secretary or if it was neither approved nor disapproved upon the
expiration of the prescribed 90 days.

If the Superintendent shall refuse to approve any ordinance or resolution submitted to
him within 10 days after its enactment or passage, he shall advise the NPTEC of his
reasons therefore. If these reasons appear insufficient to the NPTEC, it may by a
majority vote, refer the ordinance or resolution to the Secretary of the Interior whom
may within 90 days of its receipt by him, approve the same in writing whereupon the
said ordinance or resolution shall become effective.

## Section 4.

When the approval by the Secretary of the Interior is required under Section 2 of this
Article, the Secretary,
where permitted by law, may waive this requirement in writing for such period as he,
in his sole discretion; deems fit.

## Section 5.

Any rights and powers heretofore vested in the Nez Perce Tribe, its General Council or
its Executive
Committee, but not expressly referred to in this Constitution and Bylaws shall not be
abridged by this Constitution and Bylaws, but may be exercised by the people of the
Tribe through adoption of appropriate amendments.

## Section 6.

A petition for a referendum on any ordinance or resolution of NPTEC shall be in writing,
shall be signed by at least 175 of the persons eligible and registered to vote at either
the preceding May or September meeting of the General Council, shall set forth the
ordinance or resolution with respect to which referendum is requested, and shall be
filed with the Chairman of the General Council and the Election Judges. If the petition
is in accordance with the requirements of this Section 6, the NPTEC shall call a
referendum upon the ordinance or resolution specified in the petition to be held not
less than 30 days, nor more than 60 days from the date of such call, and shall declare
the ordinance or resolution suspended until the date of the referendum. The election
shall be held at polling places established at Lapwai, Kamiah, and Orofino, Idaho. At
such election the persons eligible and registered to vote at either the preceding May or
September meetings of the General Council shall vote upon the ordinance or resolution

by secret ballot. The Election Judges shall certify the results of the election to the Chairman of the General Council and to the NPTEC. If at least two hundred sixty votes are cast and at least two-thirds of the votes cast are against the ordinance or resolution, the ordinance or resolution shall be null and void.

### Section 7.

A petition for an initiative shall.be signed by at least 175 of the persons eligible and registered to vote at either the preceding May or September meetings of the General Council, shall set out the full text of the proposal to be submitted to the legal voters of the Nez Perce Tribe, and shall be filed with the Chairman of the General Council and the Election Judges. If the petition is in accordance with the requirements of this Section, the NPTEC shall call an election to be held upon the proposal not less than thirty days from the date of such call. The election shall be held at polling places established at Lapwai, Kamiah, and Orofino, Idaho. At such election the persons eligible and registered to vote at either the preceding May or September meeting of the General Council shall vote upon the ordinance or resolution by secret-ballot. The Election Judges shall certify the result of the election to the Chairman of the General Council and to the NPTEC. If at least two hundred sixty votes are cast at least two-thirds of the votes cast are in favor of the proposal the initiative shall be declared adopted and shall become effective immediately.

Back to Top

## ARTICLE IX - AMENDMENTS

### Section 1.

This Constitution and Bylaws may be amended by a two-thirds vote at an election called for that purpose, provided that a total of not less than 100 valid votes shall be cast. Such an election may be called by a resolution of the NPTEC, or a majority vote of the Tribal General Council, drovided that not less than 75 votes are cast for such call. No amendment shall become effective until approved by the Secretary of the Interior or his duly authorized representative.

### Section 2.

Members of the Tribe must be given at least sixty (60) days notice of any election under Section 1 of this Article, such notice to include the text of any proposed amendment.

Back to Top

## BYLAWS OF THE NEZ PERCE TRIBE

## ARTICLE I - DUTIES OF THE OFFICERS OF THE NEZ PERCE TRIBAL EXECUTIVE COMMITTEE

### Section 1.

The Chairman, as chief executive officer of the NPTEC shall preside over all its meetings, affix his signature to official documents, and countersign warrants duly drawn by the Treasurer against the Tribal funds.

### Section 2.

The Vice-Chairman of the NPTEC shall preside at meetings and otherwise exercise the duties of the Chairman in the absence of the Chairman.

### Section 3.

The Secretary of the NPTEC shall conduct all correspondence, issue public notices, be responsible for the recordation and publication of the minutes, record official actions of the NPTEC and affix his signature to official documents.

### Section 4.

The Treasurer shall accept, receipt for, and safeguard all funds of the Tribe under his custody as directed by the NPTEC, and keep complete record of receipts and expenditures. He shall furnish a surety bond satisfactory to the NPTEC and Secretary of the Interior, the cost thereof to be paid from tribal funds, and he shall not disburse any funds of the Tribe except as duly authorized by the NPTEC, and he shall report on his account and all financial transactions at meetings of the Tribal General Council and the NPTEC.

### Section 5.

The Assistant Secretary-Treasurer shall assist, or serve in the absence of either the Secretary or the Treasurer, as provided in Section 3 and 4 of this Article. He shall furnish a surety bond satisfactory to the NPTEC and the Secretary of the Interior, the cost thereof to be paid from tribal funds.,

### Section 6.

The duties and compensation of all appointive committees and officers of the Tribe shall be defined by resolution of the NPTEC.

### Section 7.

The NPTEC may by resolution provide for an appropriate oath or affirmation of office to be subscribed to by all tribal officials.

Back to Top

## ARTICLE II - MEETINGS

### Section 1.

The NPTEC shall meet monthly in regular session, beginning on the second Tuesday of each month, except that in case the second Tuesday is a legal holiday or under other special circumstances as determined by the Chairman of the NPTEC, the meetings may begin on the Wednesday following the second Tuesday. Meetings shall be at the tribal office, unless the Chairman designates another place and gives due notice thereof to the members of the NPTEC.

### Section 2.

Special meetings of the NPTEC may be called by the Chairman or upon written request of at least five members of the NPTEC.

### Section 3.

At any meeting of the NPTEC duly called, six members hall constitute a quorum.

### Section 4.

The NPTEC may, by a vote of majority of the members present, exclude all non-members from any meeting, if that is deemed necessary in the interest of the Tribe.

### Section 5.

At meetings of the Tribal General Council, fifty (50) qualified voters of the Tribe shall constitute a quorum.

### Section 6.

All meetings of the NPTEC or the General Council shall be governed by Robert's Rules of Order.

Back to Top

## CERTIFICATE OF ADOPTION

This is to certify .that the above amendments to the Constitution and Bylaws of the Nez Perce Tribe of Idaho were ratified by a vote of 74 for and 58 against, at a meeting on May 6,1961, of the General Council called by the Nez Perce Tribal Executive Committee pursuant to Article IX of the Constitution and Bylaws approved by the Assistant Commissioner of Indian Affairs April 2,1948, and ratified by the Nez Perce Tribe in general assembly April 30, 1948.

/s/ Richard A. Halfmoon
Chairman, Nez Perce Tribal Executive Committee

/s/ Albert Ezekial
Assistant Secretary, Nez Perce Tribal Executive Committee

/s/ William E. Ensor, Jr.
Superintendent, Northern Idaho Agency

Back to Top

## APPROVAL

I, JOHN 0. CROW, Acting Commissioner of Indian Affairs, United States Department of
the Interior, do hereby approve the attached amendments of the Constitution and
Bylaws of the Nez Perce Tribe in Idaho as ratified by the Tribe at a duly called meeting
of the General Council on May 6,1961, by a vote of 74 For and 58 Against, as certified
by the Chairman and the Secretary of the Council.

The amendments approved shall be known as the Revised Constitution and Bylaws of
the Nez Perce Tribe of Idaho, and shall become effective as of this date.

Date: June 27. 1961 /s/ John 0. Crow
                    Washington, D.C. Acting Commissioner of Indian Affairs

### APPROVAL

I, STANLEY M. SPEAKS, Area Director, Portland Area Offke, Bureau of Indian Affairs,
United States Department of the Interior, under delegated authority, do hereby
approve the attached amendments of the Constitution and Bylaws of the Nez Perce
Tribe of Idaho as ratified by the Tribe at a duly called meeting of the General Council
on May 7,1983, as certified by the Chairman and the Secretary of the Council. The
amendments approved shall be known as the Revised Constitution and Bylaws of the
Nez Perce Tribe of Idaho and shall become effective as of this date.

/s/ Wilford G. Bowker
Acting Area Director, Portland Area Office
Date: February 12. 1987
Portland, Oregon

### APPROVAL

I, STANLEY M. SPEAKS, Area Director, Bureau of Indian Affairs, Portland, Oregon, by
virtue of the authority granted to the Secretary of the Interior of the United States, by
the Act of June 181934 (48 Stat. 984), as amended, and delegated to me by 10 BIAM
3.1, do hereby approve the foregoing Amendment 1 to the Constitution and Bylaws of
the Nez Perce Tribe. This Amendment was adopted at the May 7,1988, meeting of the
General Council called for the purpose of amending the Constitution and Bylaws. The
vote was 153 for, 77 against which was two-thirds vote of those voting and a total of

more than 100 valid votes were cast.

/s/ Stanley M. Speaks
Portland Area Director
Bureau of Indian Affairs

Date: April 30, 1990
Portland, Oregon

**APPROVAL**

I, STANLEY M. SPEAKS, Area Director, Bureau of Indian Affairs , Portland, Oregon, by virtue of the authority granted to the Secretary of the Interior of the United States, by the Act of June 18,1934 (48 Stat.984), as amended, and delegated to me by 10 BIAM 3.1, do hereby approve the foregoing Amendment No. V to the Constitution and Bylaws of the Nez Perce Tribe of Idaho. This Amendment was adopted at the June 6,1999, meeting of the General Council called for the purpose of amending the Constitution and Bylaws. The vote was 154 for and 43 against which was two-thirds vote of those voting and a total of more than 100 valid votes were cast.

/s/ Stanley M. Speaks
Portland Area Director Bureau of Indian Affairs

Date: September 2, 1999
Portland, Oregon

Back to Top

## CONSTITUTIONAL HISTORY

**1.** The first modern version of the Constitution and By-Laws of the Nez Perce Tribe of Idaho, was approved by the Assistant Commissioner of Indian Affairs, William E. Censor, Jr., on April 2, 1948, and ratified by the General Council on April 30, 1948.

**2.** The first amendment to the Constitution and By Laws of the Nez Perce Tribe of Idaho was voted upon by the General Council on May 6,196 1, and approved by John 0. Crow, Acting Commissioner of Indian Affairs, on June 27, 1961.

**3.** The Revised Constitution and Bylaws of the Nez Perce Tribe was amended by the General Council on May 7,1983,and approved by Stanley M. Speaks, Area Director, Portland Area Office, Bureau of Indian Affairs, on August 12, 1983. This version clarified the jurisdiction of the Tribe. It also deleted the requirement of Department of Interior approval to call General Council meetings, and changed the name of the "Nez Perce Tribe of Idaho" to the "Nez Perce Tribe".

**4.** This amendment was voted upon by General Council on September 26,1986, and approved by Wilford G. Bowker, Acting Area Director, Portland Area Office, Bureau of

Indian Affairs, on February 12, 1987. Three new sections were added: Article VI, Section 6, Petition for the recall of NPTEC members; Article VIII, Section 6, Petition for a referendum; and Article VIII, Section 7, Petition for an initiative.

**5.** An amendment was voted upon by the General Council on May 7, 1988, and approved by Stanley M.

Speaks, Area Director, Portland Area Offrce, Bureau of Indian Affairs, on April 30, 1990. The following two sentences were added to Article V, Section 6: "The item or items shall be automatically placed on the agenda of each regular NPTEC meeting thereafter until final disposition has been made. A report in writing of the action taken at each meeting shall be mailed or delivered to each member of the Resolutions Committee within seven (7) days after each meeting.

**6.** The Revised Constitution and By-Laws of the Nez Perce Tribe, consisted primarily of changing the voting age from 21 years to all over 18 years regardless of where they live. This amendment was voted upon by the General Council on June 6,1999, and approved by Stanley M. Speaks, Portland Area Director, Bureau of Indian Affairs, on September 2, 1999.

Back to Top

# DECLARATION OF

# Guy Robbins

# July 14, 2008

# ATTACHMENT 2

Confederated Tribes and Bands
of the Yakama Nation

Established by the
Treaty of June 9, 1855

### RESOLUTION

T-046-08

WHEREAS, the Yakama Nation is a federally recognized Nation pursuant to the Treaty of 1855 (12 Stat. 951), and

WHEREAS, the Yakama Tribal Council is the governing body of the Confederated Tribes and Bands of the Yakama Nation by the authority delegated by Resolution T-38-56, and

WHEREAS, the following officers of the Yakama Tribal Council have been elected at a special meeting of said Tribal Council on this 28th day of November, 2007. The elected officers of the Yakama Tribal Council and appointments to Standing and Special Committees will remain the same for the duration of this term and are as follows:

*Ralph Sampson, Jr., Chairman*
*Lavina Washines , Vice-Chairwoman*
*Portia Shields, Secretary*

*Terry Goudy-Rambler, Asst. Secretary*
*Max Corpuz, Jr., Sgt-At-Arms*

WHEREAS, the Executive Board of the Yakama Tribal Council, composed of the Chairman, Vice-Chairman and Secretary, appointed members of the eight (8) Standing Committees of said Yakama Tribal Council, and the results of said appointments to the Committees, and elections within the committees are as follows:

1. Timber, Grazing, Overall Economic
   Development Committee
   Max Corpuz, Jr., Chairman
   Athena Yallup, Secretary
   Vera Hernandez, Member
   Donald Isadore, Jr., Member

2. Fish, Wildlife and Law
   and Order Committee
   Fidelia Andy, Chairman
   LaRena B. Sohappy, Secretary
   Athena Yallup, Member
   Terry Goudy Rambler, Member

3. Loan, Extension, Education and
   Housing Committee
   Stella Washines, Chairman
   LaRena B. Sohappy, Secretary
   Terry Goudy Rambler, Member
   Vera Hernandez, Member

4. Health, Employment, Welfare
   Rec., Youth Activities Committee
   Stella Washines, Chairman
   Athena Yallup, Secretary
   Sam Jim, Sr., Member
   Ruth Jim, Member

5. Roads, Irrig. & Land Committee
   Ruth Jim, Chairman
   Richard George, Secretary
   Max Corpuz, Jr. Member
   Sam Jim, Sr., Member

6. Enrollment Committee
   Ralph Sampson, Jr., Chairman
   Lavina Washines, Secretary
   Portia J. Shields, Member
   Donald Isadore, Jr., Member

7. Legislative Committee
   Richard George, Chairman
   Stella Washines, Secretary
   Terry Goudy Rambler, Member
   Fidelia Andy, Member

8. Budget & Finance Committee
   Ralph Sampson, Jr., Chairman
   Lavina Washines, Secretary
   Portia J. Shields, Member
   Athena Yallup, Member

*supercedes T-079-06*

Post Office Box 151, Fort Road, Toppenish, WA 98948 (509) 865-5121

Yakama Tribal Council Resolution,   T-046-08          11/28/07          **Page Three**

9.   *Public Relations/Media Committee*          10.   *Cultural Committee*

   Ralph Sampson, Jr., Chairman                    Lavina Washines, Chairman
   Lavina Washines, Secretary                      Sam Jim, Sr., Secretary
   Portia J. Shields, Member                       Ruth Jim, Member
   Mavis Kindness *(GC)*, Member                   Mose Squeochs *(GC)*, Member

11.   *Radioactive/Hazardous Committee*          12.   *Timber, Fish & Wildlife Committee*

   Mose Squeochs *(GC)*, Chairman                  Stella Washines, Chairman
   Donald Isadore, Jr., Secretary                  Vera Hernandez, Secretary
   LaRena B. Sohappy, Member                       Richard George, Member
   Portia J. Shields, Member                       Lavina Washines, Member

13.   *Veteran's Committee*

   Joe Jay Pinkham *(GC)*, Chairman
   Max Corpuz, Jr., Secretary
   Richard George, Member
   Fidelis Andy, Member

*supercedes T-079-06*          *TRIBAL COUNCIL   REORGANIZATION 11 28.07*
Post Office Box 151, Fort Road, Toppenish, WA 98948 (509) 865-5121

# DECLARATION OF

# Guy Robbins

# July 14, 2008

# ATTACHMENT 3

## Yakama Nation Self-Determination Contracts

| DOCUMENT REFERENCE | DESCRIPTION OF PROGRAM |
|---|---|
| CTP11T124 | Adult Vocational Training Program |
| CTP11T124 | Tribal Court Program |
| CTP11T124 | Enrollment Support Services |
| CTP11T124 | Law Enforcement Services |
| CTP11T124 | Agricultural Extension Services |
| CTP11T124 | Wildland Management & Development |
| CTP11T124 | Fisheries Management & Development |
| CTP11T124 | Water Resources Inventory |
| CTP11T124 | Climatlogical Data Collection Program |
| CTP11T124 | Higher Edeucation Program |
| CTP11T124 | Johnson O'Malley Program |
| CTP11T124 | Tribal School |
| CTP11T124 | Education of the Handicapped |
| CTP11T124 | Chapter 1 |
| CTP11T124 | Housing Improvement Program |
| CTP11T124 | Housing Improvement Program (Closed) |
| CTP11T124 | Tribal Forest Development |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | WIP Rehabilitation Activities |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Construction, Building #28 |
| CTP11T124 | Fire Suppression |
| CTP11T124 | Bridge Maintenance |
| CTP11T124 | Federal Hiway Trust Funds |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Road Maintenance Program |
| CTP11T124 | Road Construction - YIR |
| CTP11T124 | Yakama Tribal Shares |
| CTP11T124 | Facilities Management Program |
| CTP11T124 | Cooperative Construction (Flood Damage) |
| CTP11T124 | Indian Child Welfare |
| CTP11T124 | Forestry Financial Assistant |
| CTP11T124 | Vegetation Management |
| CTP11T124 | Real Estate Services |
| CTP11T124 | Economic Development |
| CTP11T124 | Hazard Fuels Reduction |
| CTP11T124 | Fire Management |

7/11/2008