RECEIVED
BIA WESTERN REGION

IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

2008 JUL 14

REGIONAL DIRECTOR

| | |
|---|---|
| THE NEZ PERCE TRIBE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 06cv02239-JR |
| | ) |
| DIRK KEMPTHORNE, | ) |
| Secretary of the Interior, et al., | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF**

**JAMES E. WILLIAMS**

I, James E. Williams, based on my personal knowledge or upon information provided to me in my official capacity and pursuant to 28 U.S.C. § 1746, do hereby declare and state:

1.      I am the Superintendent of the Truxton Cañon Agency for the Bureau of Indian Affairs ("BIA"). I have held this position since February 2006, and I have been at the Truxton Cañon Agency since May 12, 1988. My responsibilities as Superintendent include serving as the line officer responsible for planning, implementing, directing, monitoring and evaluating the BIA's trust responsibilities and program services within the Truxton Cañon Agency. The Truxton Cañon Agency services the Hualapai Tribe, as well as the Yavapai Apache Tribe, Yavapai Prescott Tribe, Havasupai Tribe, and Tonto Apache Tribe. As Agency Superintendent, I am responsible for the management, protection, development, conservation and wise utilization of Indian land including timber, soil, water, and the dependent living

1

resources; i.e. irrigation, power, range, wildlife, agriculture education and outdoor recreation for the Hualapai, Yavapai Apache, Yavapai Prescott, Havasupai, and Tonto Apache Reservations, except where the respective tribe manages the program pursuant to a contract under Public Law 93-638.    Although each of the services provided by the Bureau or contracted-for by the tribes implement the requirements of particular regulations in 25 Code of Federal Regulations, the detail of services provided and accounts managed varies between tribes given their respective differences, such as differing sizes of land base, different resources, and different sources of income.

2.    Programs of particular interest to the Hualapai Tribe include Range (the Tribe leases range for grazing); Wildlife (the Tribe has a wildlife park and fisheries); and Agricultural Education (an extension-type program providing assistance to Tribal members who ranch). The Tribe contracted to implement its own Forestry and Agricultural Extension programs in 1988 and in the last 15 years has contracted to run other programs in Natural Resources, including Water Resources (water management and monitoring the state of water sources) and Agriculture (leasing).

3.  The Hualapai Tribe has undertaken a variety of business ventures without the input or approval of BIA.  It has a program for tourist big game hunting; has leased land to a developer to build a skywalk overlooking the Grand Canyon and Colorado River; it rents its allotted gaming machines to other tribes for use in their respective casinos; and it is itself engaged in cattle ranching.  The Tribe completely manages these activities:  although the Tribe obtains my approval of leases, the Tribe itself leases the land, including putting the deal and the necessary information together for approval; it bills for the rents; and it collects the proceeds of its leases, business activities, and rights of way, without involvement of the BIA.  For instance, the Tribe obtained the BIA's approval of a master lease to develop a

2

resort on tribal land on the Grand Canyon Rim.   The Tribe itself negotiates subleases, for example for construction of the skywalk, but these subleases are not submitted to the Agency for approval:  they are conceived by, negotiated by, and paid for by the Tribe, and the Tribe bills for and collects the proceeds of these leases outside of the trust system.  In fact, aside from the Bureau's responsibility to collect lease proceeds or other revenues on behalf of individual Indians who are non-compos-mentis (of which there are currently none), the Agency collects no money in connection with any of the Hualapai Tribe's business ventures.

4.  Similarly, the Tribe leases lands for agricultural uses, and manages the harvesting and maintenance of timber on the reservation under a P. L. 93-638 contract.  After a timber sale, the BIA receives the first 10% of the proceeds, which it disburses to the Tribe upon my approval of a use and distribution plan submitted by the Tribe.  The balance of the proceeds are retained by the Tribe and do not enter the trust system

4.  Attached as Exhibit A is a true and correct copy of the constitution of the Hualapai Tribe (March 13, 1991).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15 th day of July, 2008.

James E. Williams

# DECLARATION OF

# James E. Williams

# July 14, 2008

# EXHIBIT A



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C.  20245

IN REPLY REFER TO:

Tribal Government Services - TR

THROUGH:  PHOENIX AREA DIRECTOR          MAR 1 3 1991

Mr. George Keller
Superintendent, Truxton Canon Agency
Bureau of Indian Affairs
P.O. Box 37
Valentine, Arizona  86437

We have received the results of the election held on February 14, 1991, by
the qualified voters of the Hualapai Indian Tribe of the Hualapai Indian
Reservation, Arizona.   The election was called in accordance with an order
issued on November 20, 1990, and modified on December 19, 1990, by the Deputy
to the Assistant Secretary - Indian Affairs (Tribal Services) which permitted
the qualified voters of the Hualapai Indian Tribe to vote on the adoption or
rejection of a proposed revised constitution.

As evidenced by the completed Certificate of Results of Election, the
Constitution of the Hualapai Indian Tribe of the Hualapai Indian Reservation,
Arizona, was duly adopted by a vote of 141 for and 33 against in an election
in which at least thirty percent (30%) of the 236 members registered and
entitled to vote cast their ballots.

The Constitution of the Hualapai Indian Tribe of the Hualapai Indian
Reservation, Arizona, is hereby approved pursuant to the authority granted to
the Secretary of the Interior by the Act of June 18, 1934 (48 Stat. 984), as
amended, and delegated to me by 230 D.M. 2.4.  Please deliver the enclosed
original document to the tribe.

Sincerely,

*Denise Homer*

Acting              Director, Office of Tribal Services

Enclosure

CONSTITUTION OF THE HUALAPAI INDIAN TRIBE
OF THE
HUALAPAI INDIAN RESERVATION, ARIZONA

PREAMBLE

We, the members of the Hualapai Indian Tribe of the Hualapai Indian Reservation, a federally recognized sovereign Indian Tribe, do hereby adopt this constitution in order to:

- govern ourselves under our own laws and customs for the common good and well-being of the Tribe and its members.

- protect our lands and natural resources for ourselves and our children.

- maintain our culture, language and tribal identity.

- ensure the political integrity of the Tribe.

- protect the individual rights of our members.

- maintain peace and order through the establishment and administration of justice.

- preserve, secure and exercise all the inherent sovereign rights and powers of an Indian tribe.

This constitution shall supersede the Amended Constitution and Bylaws of the Hualapai Tribe of the Hualapai Reservation, Arizona, adopted October 22, 1955, and approved by the Secretary of the Interior on January 16, 1956, and shall govern the Hualapai Tribe from its effective date.

ARTICLE I - JURISDICTION

The jurisdiction of the Hualapai Tribe shall extend to all lands within the boundaries of the Hualapai Indian Reservation as established by Executive Orders of January 4, 1883, and June 2, 1911, and Public Law 93-560, December 30, 1974, and to any and all lands held by the Tribe, trust allotments located outside the reservation boundaries to the extent permitted by Federal law, and to any additional lands acquired by the Tribe or by the United States for the benefit of the Tribe. It is hereby declared that the title to these lands includes but is not limited to all the surface rights, subsurface rights, tenements, hereditaments, all water rights and all accretions and that such lands are held by the United States of America in trust for the Hualapai Tribe. Except as prohibited by Federal law, the Hualapai Tribe shall have jurisdiction over all persons, property, lands, water, air space, resources and all activities occurring within the boundaries of the reservation or on other lands within the jurisdiction of the Tribe, notwithstanding the issuance of any right-of-way. Nothing in this article shall be construed to limit the ability of the Tribe to exercise its jurisdiction based upon its inherent sovereignty as an Indian Tribe.

ARTICLE II – MEMBERSHIP

Section 1.  **Requirements**.  The membership of the Hualapai Tribe shall consist of:

    (a)  All persons of Hualapai blood who qualified for and were accepted into membership in the Hualapai Tribe under the membership requirements contained in the original constitution approved by the Secretary of the Interior December 17, 1938, and the amended constitution approved January 16, 1956;

    (b)  All persons of one-fourth (1/4) degree or more Hualapai Indian blood.

Section 2.  Admission Procedures.

    (a)  Applications for enrollment shall be made according to an enrollment ordinance adopted by the Tribal Council.  Applicants denied admission can appeal to the Tribal Court in accordance with appeal procedures established by the Tribal Council.

Section 3.  Enrollment Committee.  An enrollment committee of five (5) eligible voters shall be appointed and supervised by the Tribal Council.  The enrollment committee shall have the duty to maintain a current and accurate official tribal membership roll which shall include the names and addresses of all tribal members.

Section 4.  Loss of Membership and Reinstatement.  The following terms and conditions shall apply to loss of membership in the Hualapai Tribe:

    (a)  No person who is enrolled as a member of any other Indian tribe shall be eligible for enrollment in the Hualapai Tribe unless the person in question has first renounced his membership in the other tribe and unless the person has first provided the Hualapai Tribe with satisfactory evidence that his name has been stricken from the roll of the other tribe.

    (b)  Any member of the Hualapai Tribe who becomes a member of any other Indian tribe shall automatically forfeit his membership in the Hualapai Tribe.  Any person adversely affected by this section shall have a right to appeal to the Tribal Court in accordance with the appeal procedures established by the Tribal Council.

    (c)  Any person who has lost his membership in the Hualapai Tribe may apply for reinstatement after a period of two (2) years has elapsed from the date of removal from the membership roll, PROVIDED, That the person in question submits adequate proof to the Tribal Council that he has given up his membership in the other tribe involved.

Section 5. <u>Honorary Membership</u>.   The title of "honorary member" of the
Hualapai Tribe may be granted to any person by the Tribal Council. Honorary
membership does not qualify a person for any benefits, assets, the right to
vote, or any other tribal rights or privileges.

Section 6. <u>Enforcement</u>.   The Tribal Council shall enforce this article by
ordinance, PROVIDED, That the Tribal Council shall have no power to establish
substantive requirements for membership in addition to those established in
Section 1 of this article nor to waive or alter any of those requirements in
Article II, or deny an applicant the right to appeal an adverse decision to
Tribal Court.

### ARTICLE III – ORGANIZATION OF THE GOVERNMENT

Section 1.   The Hualapai tribal government shall be divided into two separate
and independent branches of government: the Legislative Department,
consisting of the Tribal Council and the Tribal Administration, and the
Judicial Department.   The Tribal Administration shall be subordinate to the
Tribal Council and shall operate in accordance with Article VII.

### ARTICLE IV – THE TRIBAL COUNCIL

Section 1. <u>Legislative Body</u>.   The legislative body of the Hualapai Tribe
shall be known as the Hualapai Tribal Council and shall consist of nine (9)
members.

Section 2. <u>Terms of Office</u>.   The terms of office for all Tribal Council
Members including the Chairperson and Vice Chairperson shall be four (4)
years except as provided in Section 3 of this article. All Tribal Council
members, including Chairperson and Vice Chairperson, shall be eligible to
serve two (2) consecutive terms, whether full or partial terms. At the
completion of his second consecutive term, a council member shall not be
eligible to run for re-election or be eligible to fill a vacancy until a
period of one (1) year has elapsed.

Section 3. <u>The First Election</u>. The first election of council members under
this constitution shall be held on the first Saturday in June 1992. All nine
(9) council positions shall be declared vacant for purposes of the first
election.   There shall be no primary election for purposes of the first
election.   The candidate receiving the highest number of votes shall be
offered the position of Chairperson.   The candidate receiving the next
highest number of votes shall be offered the position of Vice Chairperson.
If either person offered the position of Chairperson or Vice Chairperson
declines, then the candidate(s) receiving the next highest number of votes
shall be offered the position(s). Both the Chairperson and the Vice Chair-
person shall serve for four (4) years.   The next three (3) candidates
receiving the next highest number of votes shall serve as council members for
four (4) years.   The other four (4) candidates receiving the next highest
number of votes for council member positions shall serve for two (2) years.
The first election shall be held in accordance with all other applicable
provisions of this constitution and applicable ordinances.

- 3 -

Section 4. <u>Selection of Secretary and Treasurer</u>. The Tribal Council shall choose a Secretary and a Treasurer from within or without the Tribal Council membership.

Section 5. <u>Meetings of the Tribal Council</u>.

    (a) A regular meeting of the Tribal Council shall be held on a date designated by the Chairperson during the first ten (10) days of each month.

    (b) Special meetings of the Tribal Council may be called by the Chairperson. The Chairperson shall call a special meeting upon the written request of three (3) or more members of the Tribal Council.

Section 6. <u>Quorum</u>. A quorum shall exist if six (6) or more members of the Tribal Council are present. A quorum is required at all meetings in order to conduct official business of the Tribal Council.

Section 7. <u>Voting</u>. The Tribal Council shall make decisions by a majority vote of those present unless otherwise stated in the constitution. The Tribal Council may vote by voice vote unless the Chairperson or any two (2) members of the Tribal Council request a secret vote. All members of the Tribal Council, including the Chairperson and Vice Chairperson, shall have the right to vote unless otherwise stated in this constitution. If the Secretary or Treasurer is appointed from outside the Tribal Council membership, they shall not vote.

Section 8. <u>Conflict of Interest</u>. Any council member who may have a direct personal or financial interest in any matter before the Hualapai Tribal Council not similarly shared by all members of the Tribal Council shall not vote on such matter without the consent of the remaining members of the Tribal Council. A council member shall reveal a direct personal or financial interest to the other members of the Tribal Council and failure to do so may constitute a violation of Section 9 of this article.

Section 9. <u>Code of Ethics</u>. The Tribal Council shall have the power to adopt a Code of Ethics governing the conduct of tribal officials. The Code of Ethics may include disciplinary procedures so long as the tribal official in question is afforded full due process rights.

Section 10. <u>Removal and Suspension from Office</u>.

    (a) The Tribal Council shall remove a council member for:

        (1) failing to attend three (3) regular or special meetings consecutively absent good cause as defined by ordinance;

        (2) converting tribal property or monies without authorization through the omission or misrepresentation of facts;

- 4 -

      (3)   final conviction by any Tribal, Federal or State Court of any of the following offenses:

         (A)   felony;

         (B)   three (3) misdemeanors while serving on the Tribal Council;

         (C)   contempt of court.

(b)   A council member appealing a felony conviction shall be suspended pending the outcome of the final appeal.

Section 11.  Removal - Due Process Required.   In all removal proceedings under Sections 9 and 10, the council member in question shall be afforded full due process rights including a written statement of the charges, the right to respond to those charges and the right to present witnesses and other evidence in his defense. The decision of the Tribal Council shall be final and shall be appealable to the Tribal Court only if a claim is made that the tribal constitution has been violated or due process rights not afforded.   A council member removed from office must wait at least four (4) years from the official date of removal to run for office again.

Section 12.  Recall.

(a)   Any member of the Hualapai Tribe of voting age shall have the power to initiate recall proceedings against a council member by filing with the Election Board a written statement giving specific reasons why the council member in question should be recalled;

(b)   In order to force a recall election, the tribal member(s) circulating the petitions shall collect the signatures from twenty (20) percent of the eligible voters of the Tribe;

(c)   A maximum of three (3) members of the Tribal Council may be recalled at a time;

(d).   Individual petitions shall be circulated for each council member who is subject to recall;

(e)   A council member who is successfully recalled shall not be returned to office and must wait four (4) years from his final day in office before being eligible to run for office again or to be appointed to fill a vacancy;

(f)   The Tribal Council shall adopt ordinances to carry out the details of this section.

Section 13.  <u>Vacancies.</u>

    (a)   If a council member should die, resign, or be removed or recalled from office, the Tribal Council shall declare the position vacant. The Tribal Council shall fill a vacancy by special election unless less than ninety (90) days remain in the term, in which case the Tribal Council shall leave the position vacant. The person who fills the vacant position shall only serve out the term of the person whom he is replacing.

    (b)   All resignations from the Tribal Council shall be in writing,. A voluntary resignation, once submitted, cannot be withdrawn.

ARTICLE V - THE POWERS OF THE TRIBAL COUNCIL

The Tribal Council shall have all of the legislative powers vested in the Hualapai Tribe through its inherent sovereignty and Federal law and shall, in accordance with established customs of the Hualapai Tribe and subject to the express limitations contained in this constitution and the applicable laws of the United States, have the following powers:

    (a)   to represent the Tribe and act in all matters that concern the welfare of the Tribe, and to make decisions not inconsistent with or contrary to this constitution and applicable Federal law;

    (b)   to negotiate and make contracts with the Federal, State and local governments;

    (c)   to advise the Secretary of the Interior or his representative on all activities that may affect the Hualapai Tribe, and on all appropriation estimates and Federal projects for the benefit of the Tribe before such estimates and projects are submitted to the Office of Management and Budget and to Congress;

    (d)   to employ legal counsel, the choice of counsel and fixing of fees to be subject to the approval of the Secretary of the Interior, but only so long as such approval is required by Federal law;

    (e)   to prevent or veto the sale, disposition, lease or encumbrance of tribal lands, tribal funds or other tribal assets without the formal consent of the Tribe;

    (f)   to protect and preserve the wildlife and natural resources of the Tribe through the adoption of appropriate regulations and ordinances;

    (g)   to regulate hunting, fishing, trapping, camping, recreation, rafting, hiking and all other related activities on all lands within the jurisdiction of the Tribe;

- 6 -

(h)  to administer charity;

(i)  to purchase or accept any land or property for the Tribe;

(j)  to regulate the use and disposition of all land within the jurisdiction of the Tribe, in conformity with Article XI.

(k)  to request the Secretary of the Interior to confer trust or reservation status on lands reserved for, granted to or purchased by the Tribe;

(l)  to negotiate and issue leases for business purposes, and to otherwise regulate all business activities within the jurisdiction of the Tribe in conformity with this constitution;

(m)  to manage all tribal economic affairs and enterprises;

(n)  to lease tribal lands, natural resources, or other tribal assets within the jurisdiction of the Tribe, PROVIDED, That leases involving more than one thousand (1,000) acres or fifty thousand dollars ($50,000) shall also need the approval of the eligible voters of the Tribe voting in a special election; and PROVIDED, That all sales or exchanges of tribal lands, natural resources or other tribal assets shall be approved by the eligible voters of the Tribe voting at a special election, and PROVIDED, That development of natural resources shall be done in accordance with Article XI, Section 4, of this constitution;

(o)  to levy and collect taxes, duties, fees and assessments;

(p)  to appropriate and regulate the use of tribal funds;

(q)  to regulate the domestic relations of persons within the jurisdiction of the Tribe;

(r)  to enact ordinances governing law enforcement on lands within the jurisdiction of the Tribe;

(s)  To enact ordinances providing for the appointment of guardians for minors and mental incompetents;

(t)  to enact ordinances to provide for regulating the inheritance of real and personal property of members of the Tribe within the jurisdiction of the Tribe;

- 7 -

(u) to enact ordinances providing for the removal or exclusion of any non-member of the Tribe whose presence may be injurious to the members of the Tribe, and to prescribe conditions upon which non-members may remain within the territory of the Tribe, PROVIDED, That all actions of exclusion or removal shall be done by court proceeding;

(v) to regulate its own procedures;

(w) to appoint subordinate committees, commissions, boards, tribal officials and employees not otherwise provided for in this constitution, and to prescribe their salaries, tenure, duties, policies and procedures;

(x) to establish and to regulate subordinate organizations for economic and other purposes;

(y) to issue and to regulate motor vehicle license plates;

(z) to accept grants or donations from any person, organization, State or the United States;

(aa) to enact laws, ordinances and resolutions necessary or incidental to the exercise of its legislative powers;

(bb) to determine all terms and conditions of employment for all persons employed by the Tribe through the adoption of appropriate ordinances;

(cc) to appoint a Junior Tribal Council comprised of members of the Tribe age twenty-five (25) or younger designed to make advisory recommendations to the Tribal Council on matters affecting youth;

(dd) to take any and all actions necessary and proper for the exercise of the foregoing powers and duties, including those powers and duties not enumerated above, and all other powers and duties now or hereafter delegated to the Tribal Council, or vested in the Tribal Council through its inherent sovereignty.

## ARTICLE VI – THE JUDICIAL DEPARTMENT

Section 1. **The Judicial Department**. The judicial power of the Hualapai Tribe shall be vested in the judiciary which shall consist of a Tribal Court and a Court of Appeals and such other lower courts as deemed necessary by the Tribal Council.

- 8 -

Section 2. <u>Jurisdiction of the Court</u>. The tribal courts shall exercise jurisdiction over all cases and controversies within the jurisdiction of the Tribe, in law and equity, whether civil or criminal in nature, that arise under this document, the laws and customs of the Tribe, by virtue of the Tribe's inherent sovereignty, or which is vested in the tribal courts by Federal law.

Section 3. <u>Power of the Courts</u>. The Hualapai judiciary shall have the power to:

(a) interpret, construe and apply the laws of, or applicable to, the Hualapai Tribe;

(b) declare the laws of the Hualapai Tribe void if such laws are not in agreement with this constitution;

(c) issue injunctions, attachments, writs of mandamus, quo warranto, review, certiorari and prohibition, and writs of habeas corpus to any part of the Hualapai Tribe upon petition by, or on behalf of, any person held in actual custody;

(d) establish court procedures for the Hualapai judiciary, except that the Tribal Council may by ordinance alter such procedures consistent with this constitution.

Section 4. <u>Composition of the Court</u>. The Hualapai Tribal Court shall be composed of one Chief Judge and such Associate Judges as may be determined necessary by the Tribal Council.

Section 5. <u>Appointment of Judges</u>. The Chief Judge and Associate Judges shall be appointed by the Tribal Council. Should a vacancy occur through death, resignation, or otherwise, for the position of Chief Judge or Associate Judge(s), the Tribal Council shall appoint a person or persons to fill such vacancy or vacancies.

Section 6. <u>Term of Office</u>. Each Judge shall hold office for a period of two (2) years, unless sooner removed under Section 11, or by reason of abandonment of the office; however, the Chief Judge or Associate Judge shall be eligible for reappointment.

Section 7. <u>Court of Appeals</u>. The Hualapai Tribal Court of Appeals shall consist of one or more Judges selected in sequential order from a list of available Court of Appeals Judges compiled by the Tribal Council. The list of Court of Appeals Judges shall be renewed every two (2) years and shall include at least three (3) names. The Court of Appeals shall always consist of an odd number of Judges. No Judge shall sit on a Court of Appeals if he presided over the original proceedings or if disqualified under Article VI, Section 10.

- 9 -

Section 8.  **Qualifications of Judges**.  The qualifications for tribal Judges shall be established by ordinance enacted by the Tribal Council, but no additional requirements may be added during the tenure of a Judge already in office unless the additions or changes exempt the present judges during their term.

Section 9.  **Compensation**.  The Judge(s) shall receive for his services reasonable compensation.  The Tribal Council shall not diminish the compensation of a tribal Judge during his term in office.

Section 10.  **Disqualification to Act**.  No judge shall be qualified to act in any case wherein he has any direct interest or wherein any relatives by marriage or blood in the first degree are a party.

Section 11.  **Removal of Judges**.

    (a)  Any Judge of the Tribal Court may be suspended, dismissed, or removed by the Tribal Council for any of the following reasons:

        1.  conviction of a felony in any Tribal, Federal or State Court;

        2.  conviction of any two misdemeanors in any Tribal, Federal or State Court;

        3.  performing his official duties while under the influence of alcoholic beverages;

        4.  conviction, in any Tribal, Federal or State Court, of driving under the influence of alcohol or the equivalent crime;

        5.  failure to disqualify himself under Article VI, Section 10.

        6.  unnecessary and repeated lengthy delays in hearing and adjudicating matters filed in the Tribal Court;

        7.  violating Article VIII, Section 13, of this constitution;

        8.  for good cause by at least seven (7) members of the Tribal Council;

    (b)  A Judge shall be given full and fair opportunity to reply to any and all charges for which he may be suspended, dismissed or removed from judicial office;

    (c)  A Judge suspended, dismissed or removed under Article VI, Section 11(a) (1-7), may appeal directly to the Tribal Court of Appeals which shall have jurisdiction over such matters.  Removal of a Judge under Article VI, Section 11(a) (8), shall be determined solely by the Tribal Council.

Section 12. <u>Right to Appeal</u>. Any party to a civil action, or a defendant in a criminal action, who is dissatisfied with the judgment or verdict may appeal therefrom to the Tribal Court of Appeals. All matters of law and procedure may be decided by the Court of Appeals. Findings of fact shall be made by the Trial Court and shall be reviewable only when arbitrary or capricious.

Section 13. <u>Rights of Defendants</u>.    The Hualapai Tribe, in exercising its powers of self-government, shall not:

(a)   subject any person for the same offense to be twice put in jeopardy;

(b)   compel any person in any criminal case to be a witness against himself;

(c)   deny to any person in a criminal proceeding the right to a speedy trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of an advocate for his defense admitted to practice before the Tribal Courts;

(d)   require excessive bail, impose excessive fines, or inflict cruel and unusual punishments;

(e)   pass any bill of attainder or ex post facto law; or;

(f)   deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six (6) persons.

Section 14. <u>Court Rules</u>.    The duties and procedures of the tribal court system, and all other court matters not enumerated in this article of the constitution, shall be established by the Hualapai Judiciary, except that the Tribal Council may by ordinance alter such procedures consistent with this constitution.

### ARTICLE VII - THE TRIBAL ADMINISTRATION

Section 1. <u>Executives</u>.    The tribal administration shall consist of the Chairperson, Vice Chairperson, Secretary and Treasurer of the Tribal Council and such other persons as the Tribal Council or their designee may find necessary for conducting tribal business. The Chairperson shall be in charge of the tribal administration in accordance with Section 2 of this article.

Section 2. <u>Duties</u>.    The tribal administration shall oversee the administration of tribal business and shall exercise those authorities delegated to it by the Tribal Council.

- 11 -

ARTICLE VIII - ELECTIONS

Section 1.  General Elections.  General elections to vote for council members shall be held in even numbered years on the first Saturday in June beginning in 1992.  The voting place shall be at Peach Springs, Arizona.  General elections before 1992 shall be held in accordance with the Amended Constitution and Bylaws of the Hualapai Tribe effective October 22, 1955.

Section 2.  Special Elections.  Special elections shall be held when called for by the Tribal Council, by this constitution, or by the voters as provided in this constitution or appropriate ordinances.  In all special elections, adequate notice shall be given to the voters and the Tribal Council shall specify the voting places.

Section 3.  Election Board.  At least one-hundred-twenty (120) days before each general election, or no less than ten (10) days before calling a special election, the Tribal Council shall appoint an Election Board.  All members of the Election Board must be members and eligible voters of the Hualapai Tribe.  The duties, procedures, structure and compensation of the Election Board shall be included in the election ordinance.

Section 4.  Nominations.  Any tribal member may submit his name to the Election Board as a candidate for tribal office in accordance with this article and the procedures outlined in the election ordinance.

Section 5  Qualifications for Office.

   (a)  Any member of the Hualapai Tribe shall be eligible to run for tribal office if he:

      (1)  is at least twenty-five (25) years of age, and

      (2)  is a resident of the reservation for at least one (1) year, and

      (3)  has never been convicted of a felony or been convicted of three (3) misdemeanors within the last twelve (12) months, whether by Tribal, Federal or State Court.

   (b)  For purposes of this section, all reservation trust lands, and all trust allotments held for the Tribe or its members, shall be considered part of the reservation.

   (c)  Persons attending school full time or in the military shall be considered residents for purposes of this section.

Section 6.  Voting Age.  All tribal members who are eighteen (18) years of age or older on the date of any tribal election shall be entitled to vote in the election.

- 12 -

Section 7.  **Ballots**.  All elections shall be by secret written ballot.

Section 8.  **Absentee Voting**.    Absentee voting may be permitted by ordinance adopted by the Tribal Council.

Section 9.  **Selection of Chairperson and Vice Chairperson**.  The selection of Chairperson and Vice Chairperson shall be by popular vote in accordance with the applicable provisions of the election ordinance and Section 10 of this article.

Section 10.  **Primary Elections**.    In any general election where three (3) or more candidates are seeking the position of Chairperson, or the position of Vice Chairperson, there shall be a primary election held at least thirty (30) days before the general election.  A person may not run for both positions of Chairperson and Vice Chairperson in the primary election.  A primary election shall not be held for other council member positions but shall be limited to the positions of Chairperson and Vice Chairperson.  The primary election shall narrow the list of candidates for Chairperson and Vice Chairperson down to two (2) candidates who shall run off in the general election.  A primary which results in a tie between two (2) or more candidates shall be decided in the general election.  Candidates eliminated during the primary election may still seek the position of council member in the general election.  Candidates successful in the primary election may not run for the position of council member in the general election.

Section 11.  **Election Results**.    The candidates receiving the highest number of votes for the available positions shall be declared the winners for those positions.    The Election Board shall certify all election results within three (3) days of the date of the election.

Section 12.  **Tie Votes**.    In the case of a tie vote between two (2) or more candidates, a special runoff election shall be held after five (5) days but no more than forty-five (45) days after the election results are certified by the Election Board.    All eligible voters shall be permitted to vote in any runoff election.

Section 13.  **Challenges to the Election Results**.    Any tribal member may challenge election results by filing a suit in Tribal Court within ten (10) days after the Election Board certifies the election results.  The Tribal Court shall hear and decide election cases within thirty (30) days after the Election Board certifies the results, except where the party challenging the Election Board's decision requests additional time which may be granted at the discretion of the Tribal Council, PROVIDED, That only one extension of time may be granted.  If the Tribal Court invalidates the election results, the Court shall order that a new election be held as soon as possible.

Section 14. __Oath of Office__.   The  oath of office for newly elected Tribal
Council members shall be administered no later than sixty (60) days after the
election results are certified.  In the first election in 1992, the oath of
office shall be administered immediately after the election results are
certified.

Section 15. __Election Ordinance__. In all tribal elections, the Tribal Council
shall have the power to prescribe ordinances governing the casting and
canvassing of ballots and other necessary details of election procedures.

## ARTICLE IX - BILL OF RIGHTS

The Hualapai Tribe, in exercising its powers of self-government, shall not:

(a) make or enforce any law prohibiting the free exercise of religion,
     or abridging the freedom of speech, or of the press, or the right of
     the people peaceably to assemble and to petition for redress of
     grievances;

(b) violate the right of the people to be secure in their persons,
     houses, papers, and effects against unreasonable search and
     seizures, nor issue warrants, but upon probable cause, supported by
     oath or affirmation, and particularly describing the place to be
     searched and person or thing to be seized;

(c) take any private property for a public use without just
     compensation; or

(d) deny to any person within its jurisdiction the equal protection of
     its laws or deprive any person of liberty or property without due
     process of law.

## ARTICLE X - DUTIES OF THE OFFICERS

The duties of the Chairperson, Vice Chairperson, Secretary and Treasurer
shall be established by ordinance enacted by the Tribal Council.

## ARTICLE XI - LAND

Section 1. __No Allotments__.   All lands within the jurisdiction of the Tribe
shall remain tribal property and shall not be divided by allotment in any way
whatsoever to individuals, groups of individuals, or any other entity.

Section 2. __Assignments__.  Assignment of land for private use may be made by
the Tribal Council in conformity with ordinances which may be adopted on this
subject, PROVIDED, That assignments once granted shall not be revoked absent
good cause.  Title to the assigned lands shall not vest in the assignee.

Section 3. <u>Land Use Ordinance</u>. A comprehensive land use ordinance shall be adopted as soon as possible after the adoption of this constitution. The ordinance shall include sections on timber management and fuel wood cutting, zoning, wildlife management, cattle management, and other natural resources management.

Section 4. <u>Limited Power to Develop Natural Resources</u>. The Tribal Council shall not develop on a commercial or industrial basis any natural resources of the Tribe without the consent of the majority of the total number of eligible voters of the Tribe. Small scale development of natural resources involving less than $50,000 may be approved by the Tribal Council without the approval of the voters so long as the intent of this provision is not violated. Any tribal member may enforce this section in Tribal Court which shall have jurisdiction over these matters.

## ARTICLE XII - MEETINGS OF THE TRIBE

The Tribal Council may from time to time call general meetings of all voters of the Tribe to identify and discuss important tribal matters. A minimum of two general meetings shall be held each year.

## ARTICLE XIII - REFERENDUM AND INITIATIVE

Upon petition of at least twenty-five (25) percent of the eligible voters of the Tribe, or upon the request of the majority of the members of the Tribal Council, any enacted or proposed ordinance, resolution or other official action of the Tribal Council shall be submitted by the Tribal Council to popular initiative or referendum and the vote of the majority of the qualified voters in such initiative or referendum shall decide whether the ordinance, resolution or other official action shall thereafter be in effect, PROVIDED, That twenty-five (25) percent or more of the eligible voters shall vote in such initiative or referendum. Official petition forms shall be issued by the tribal Secretary and shall be circulated and completed within one-hundred-twenty (120) days of the date of issuance. The Secretary shall notify the petitioners of the number of required signatures for a valid petition. The Tribal Council must act within thirty (30) days of the receipt of a valid petition and must schedule an election on the proposed petition within ninety (90) days thereafter.

## ARTICLE XIV - ORDINANCES AND RESOLUTIONS

Section 1. <u>Ordinances</u>. All final decisions on matters of permanent interest shall be embodied in ordinances. Such enactments shall be available for inspection by members of the Tribe during normal business hours.

Section 2. <u>Resolutions</u>. All final decisions on matters of temporary interest where a formal expression is needed shall be embodied in a resolution, noted in the minutes, and shall be available for inspection by members of the Tribe during normal business hours.

Section 3. **Form.**   All ordinances and resolutions shall be dated and numbered and shall include a certificate showing the presence of a quorum and the number of members voting for and against the proposed enactment.

Section 4. **Review.**   The Tribal Council shall submit tribal laws and enactments to the Secretary of the Interior for his review, comment and approval only when required to do so by Federal law.

### ARTICLE XV – AMENDMENTS

This constitution may be amended by a majority vote of the qualified voters of the Tribe voting at an election called for that purpose by the Secretary of the Interior, PROVIDED, That at least thirty (30) percent of those entitled to vote shall vote in such election; but no amendment shall become effective until approved by the Secretary of the Interior or until deemed approved by the Secretary by operation of law. It shall be the duty of the Secretary of the Interior to call and hold an election on any proposed amendment at the request of the Tribal Council, or upon presentation of a petition signed by thirty (30) percent of the qualified voters of the Tribe.

### ARTICLE XVI – SOVEREIGN IMMUNITY

Section 1. **Tribe and Employees Immune from Suit.**

(a)   The Hualapai Tribe hereby declares that, in exercising self-determination and sovereignty to its fullest extent, the Tribe is immune from suit except to the extent that the Tribal Council expressly waives sovereign immunity, or as provided by this constitution. No tribal employee or Tribal Council member acting within the scope of his duties or authority is subject to suit.

Section 2. **Waivers of Sovereign Immunity.**

(b)   Express waivers of sovereign immunity shall require the approval of at least thirty (30) percent of the total number of eligible voters of the Tribe voting in a special election if the waiver may:

(1)   expose the Tribe to liability in excess of $250,000. dollars, or its equivalent, or

(2)   expose more than one-hundred (100) acres of land to possible foreclosure, or encumbrance.

ARTICLE XVII - SAVINGS CLAUSE

All enactments of the Tribe adopted before the effective date of this constitution shall continue in effect to the extent that they are consistent with this constitution.

ARTICLE XVIII - SEVERABILITY

If any provision of this constitution shall in the future be declared invalid by a court of competent jurisdiction, the invalid provision or provisions shall be severed and the remaining provisions shall continue in full force and effect.

ARTICLE XIX - ADOPTION OF CONSTITUTION

This constitution, when adopted by a majority vote of the registered voters of the Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona, voting at a special election authorized by the Secretary of the Interior in which at least thirty (30) percent of those registered in accordance with Secretarial regulations to vote shall vote, shall be submitted to the Secretary of the Interior for his approval and, if approved by the Secretary of the Interior or by operation of law, shall be effective from the date of such approval.

## CERTIFICATE OF RESULTS OF ELECTION

Pursuant to an order issued by Ronal Eden, Deputy to the Assistant Secretary – Indian Affairs (Tribal Services), on November 20, 1990, the Constitution of the Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona, was submitted to the qualified voters of the Hualapai Indian Tribe, and on February 14, 1991 (date), was duly adopted/rejected by a vote of 141 (number) for, and 33 (number) against, and -0- (number) cast ballots found separated or mutilated, in an election in which at least thirty (30) percent of the 236 (number) entitled to vote cast their ballots in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984), as amended.

_____
Chairman, Election Board

_____
Election Board Member

_____
Election Board Member

_____
Election Board Member

Washington, D. C.

Date: FEB 14 1991

- 18 -

☑ 023/023

CERTIFICATE OF APPROVAL

I, ___DENISE HOMER___, Director, Office of Tribal Services, by virtue of the authority granted to the Secretary of the Interior by the Act of June 18, 1934 (48 Stat. 984), as amended, and delegated to me by 230 D.M. 2.4, do hereby approve the Constitution of the Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona, PROVIDED, That nothing contained in this approval shall be construed as authorizing any action under this constitution that would be contrary to Federal law.


                                    *Denise Homer*
                                    Director, Office of Tribal Services


Washington, D.C.

Date:   MAR 1 3 1991


- 19 -