**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NEZ PERCE TRIBE, *et al.*, for and on behalf of themselves and all others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 06cv02239-JR |
| DIRK KEMPTHORNE, ) SECRETARY OF THE INTERIOR, *et al.*, ) ) | **(Electronically filed July 23, 2008)** |
| Defendants. ) ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS ACTION CERTIFICATION AND FOR
APPROVAL OF CLASS NOTICE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................1

ARGUMENT ..............................................................................................................1

I.     THE SOVEREIGNTY OF INDIAN TRIBES IS NO MORE AFFECTED
BY A DETERMINATION THAT THEY ARE PART OF A CLASS OF
PLAINTIFFS THAN IS THE SOVEREIGNTY OF ANY SOVEREIGN
THAT IS SUED AS A DEFENDANT ...............................................................1

II.    DEFENDANTS HAVE FAILED TO SHOW THAT PLAINTIFFS
DO NOT MEET THE RULE 23 REQUIREMENTS FOR
CLASS CERTIFICATION..................................................................................7

     A.    The Rule 23(a) Requirements Of Numerosity, Commonality,
And Typicality Are Met Here Easily; If Adequacy Is Not Met
Fully, Plaintiffs Should Be Allowed An Opportunity To Name
Additional Representatives .........................................................................7

          1.    Numerosity, Commonality, and Typicality .....................................7

          2.    Adequacy ........................................................................................10

     B.    Plaintiffs' Proposed Rule 23(b) Class With Opt-Out
Is Appropriate In This Case.......................................................................14

CONCLUSION ..........................................................................................................18

# TABLE OF AUTHORITIES

## CASES

*A-1 Contractors v. Strate*, 76 F.3d 930 (8th Cir. 1996),
  *aff'd*, 520 U.S. 438 (1997) ...........................................................................6

*Arizona Pub. Serv. Co. v. E.P.A.*, 211 F.3d 1280 (D.C. Cir. 2000),
  *cert. denied*, 532 U.S. 970 (2001) ................................................................2

*Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151
  (D.C. Cir. 1985) ...........................................................................................3

*Avery v. United States*, 534 F.Supp.2d 40 (D.D.C. 2008) ..................................4

*Bame v. Dillard*, 2008 WL 2168393 (D.D.C. May 22, 2008) ...........................7

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831
  (9th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005) ......................................5

*Chang v. United States*, 217 F.R.D. 262 (D.D.C. 2003) ....................................7

*Confederated Tribes of the Colville Indian Reservation v. Kempthorne*,
  No. 05-2471 (D.D.C. filed 2005) ................................................................12

*Covelo Indian Cmty v. Watt*, 551 F. Supp. 366 (D.D.C. 1982),
  *aff'd as modified and vacated as moot*, No. 83-2377
  (D.C. Cir. Feb. 1, 1983) ...............................................................................6

*Davis v. United States*, 192 F.3d 951 (10th Cir. 1999) ...................................10

*De Archibald v. United States*, 499 F.3d 1310 (Fed. Cir. 2007).......................5

*Ellsberg v. Mitchell*, 709 F.2d 51 (D.C. Cir. 1983),
  *cert. denied*, 465 U.S. 1038 (1984) .............................................................4

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) .....................................16

*Fraternal Order of Police v. Gates*, 2008 WL 2396182
  (D.D.C. June 13, 2008) .................................................................................3

*Hartman v. Duffey*, 19 F.3d 1459 (D.C.Cir. 1994) ........................................12

*Hill v. United States*, 2008 WL 2522333 (D.D.C. June 25, 2008) ...................3

*Hornbeck Offshore Transp., LLC. v. United States*, 2008 WL 258086
(D.D.C. July 1, 2008) ............................................................................3

*In re Agent Orange Prod. Liability Litigation*, 506 F.Supp. 762
(C.D.N.Y. 1980) ...................................................................................7

*Jones v. Bowen*, 121 F.R.D. 344 (N.D.Ill. 1988), *vacated as
amended on other grounds*, No. 87 C 7419, 1989 WL 91865
(N.D.Ill. Aug. 8, 1989), *vacated as moot*, 938 F.2d 801 (7th Cir. 1991)................. 12

*Kiowa Tribe v. Mfg. Tech., Inc.*, 523 U.S. 751 (1998).........................................2

*Klugel v. Small*, 519 F.Supp.2d 66 (D.D.C. 2007) ...........................................3

*Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991) ...................................3

*Lindsay v. Government Emp. Ins. Co.*, 2008 WL 2673796
(D.D.C. July 3, 2008)...................................................................7, 8, 9

*Matyasovsky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35
(D. Conn. 2005) ....................................................................................9

*National Fed'n of the Blind v. Target Corp.*, 2007 WL 2846462
(N.D.Cal. Oct. 2, 2007)........................................................................ 14

*Nevada v. Hicks*, 196 F.3d 1020 (9th Cir. 2000),
*rev'd on other grounds*, 533 U.S. 353 (2001)..........................................6

*Plains Commerce Bank v. Long Family Land & Cattle Co.*,
128 S.Ct. 2709 (2008).............................................................................2

*Republic of the Philippines v. Pimentel*, 128 S.Ct. 2180 (2008) .......................4

*Rogers v. United States*, 877 F.2d 1550 (Fed. Cir. 1989)............................... 11

*Washington Bancorp. v. Washington,* 1989 WL 180755
(D.D.C. Sept. 26, 1989) ...................................................................... 10

*Washington Legal Foundation v. U.S. Sentencing Comm'n*,
89 F.3d 897 (D.C. Cir. 1996)................................................................3

*Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381 (1998)....................4

# LEGISLATIVE MATERIALS

U.S. Department of the Interior, Bureau of Indian Affairs, Reconciliation
Management Plan for the Trust Funds Management Improvement Program
(Sep. 1991), *reprinted in* Hearing on the Bureau of Indian Affairs'
Management of the $2 Billion Indian Trust Fund Before the U.S. House
of Representatives, Committee on Government Operations, Subcommittee
on Environment, Energy, and Natural Resources, 101st Cong.,
2nd Sess (1991) ........................................................................................................... 13

# ADMINISTRATIVE MATERIALS

Letter from Sue Ellen Sloca, FOIA Officer, Office of the Secretary
of the Department of the Interior (Jan. 16, 2007) ........................................................ 2

# TREATISES

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed.) .................. 9, 15, 16

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants ask this Court to deny class action certification despite centuries of uncontested reports criticizing their failures as the unilaterally self-imposed exclusive trustee for the trust fund accounts of all Indian tribes, including their failure ever to perform the most basic fiduciary obligation of providing full and complete accountings. Defendants ask this Court to deny class certification notwithstanding scores of recommendations in these reports and mandates in laws regarding how to account and otherwise be a proper fiduciary for the trust fund accounts of all tribes. Defendants' arguments are based on their novel litigation position that tribes are "too sovereign" and "too unique" to be class plaintiffs.

But it is the actions and conduct of Defendants that are at issue here, and for class certification purposes the law and facts pertinent to those actions and conduct are numerous, common, and typical with respect to the named Plaintiffs and all putative class members here. In almost 200 years, no tribe has been given a full and complete accounting of its trust fund. This fundamental breach of trust is an issue in and of itself deserved of declaratory and injunctive relief by this Court for the proposed plaintiff class.

## ARGUMENT

## I.    THE SOVEREIGNTY OF INDIAN TRIBES IS NO MORE AFFECTED BY A DETERMINATION THAT THEY ARE PART OF A CLASS OF PLAINTIFFS THAN IS THE SOVEREIGNTY OF ANY SOVEREIGN THAT IS SUED AS A DEFENDANT

Plaintiffs seek certification of a plaintiff class consisting of trust fund account holders that received Arthur Andersen (AA) reports from Defendants who are the trustee for these accounts. The vast majority of these account holders are American Indian and Alaska Native

Tribes.[1]  As part of their effort to avoid judicial declaration and enforcement of their fiduciary obligations, Defendants state the obvious point that tribes are sovereign nations.  Defendants then assert that sovereignty against tribes, claiming that tribal sovereignty *per se* bars a plaintiff class consisting of tribes.  Defs' Mem. at 8 ("Indian Tribes are Sovereign Nations and Cannot be Forced into a Lawsuit as Class Members").  This specious argument has no basis in law or logic.

Plaintiffs are indeed sovereign nations.  *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S.Ct. 2709, 2718 (2008); *Arizona Pub. Serv. Co. v. E.P.A.*, 211 F.3d 1280, 1287 (D.C. Cir. 2000), *cert. denied*, 532 U.S. 970 (2001).  As sovereigns, tribes enjoy sovereign immunity from suit.  *Kiowa Tribe v. Mfg. Tech., Inc.*, 523 U.S. 751, 754 (1998).  Defendants correctly state that Congress or a tribe may waive a tribe's immunity from suit.  *Id.*  Thus, as

---

[1] Attached to Plaintiffs' Memorandum in Support of their Motion for Class Action Certification is a Letter from Sue Ellen Sloca, FOIA Officer, Office of the Secretary of the Department of the Interior (Jan. 16, 2007).  *See* Attachment KK.  Attached to this Sloca Letter is an "Account Holders Distribution List" which contains the names of 310 tribal trust fund account holders to whom Defendants state that they sent AA reports in 1996 and 1997.  *Id.*  Most of these account holders are American Indian and Alaska Native Tribes.  The Account Holders Distribution List, prepared by Defendants and obtained by Plaintiffs from Defendants, is the basis of the class membership Plaintiffs here seek.  *See* Pls' Mem. at 30–32 (based on this list, the proposed class action, including the twelve named plaintiffs, consists of 260 tribes).

With no citation or explanation whatsoever, in opposing class certification, Defendants' Rebuttal Expert, Gregory J. Chavarria, the AA engagement project director, attaches to his Declaration a document entitled "Tribes included in Proposed Class."  *See* Attachment B to Declaration of Gregory J. Chavarria (July 14, 2008).  Mr. Chavarria's list includes 222 account holders (including account holder No. 1, who is identified as "NOT DEFINED").

In preparing for this Reply Brief and for oral argument on their Motion for Class Action Certification, Plaintiffs have endeavored to discern the difference(s) between the FOIA Account Holders Distribution List and Mr. Chavarria's list, but without further information or explanation, they simply are unable to do so.  Plaintiffs have identified an overlap between the two lists of the names of about 200 account holders, but they are puzzled by the omission of many of the tribal account holders' names from Mr. Chavarria's list and are uncertain about the source on which his list is based and why it differs from the Account Holders Distribution List. Indeed, there appear to be tribal account holders on Mr. Chavarria's list who are not named in the Account Holders Distribution List, which is of great concern to Plaintiffs who must rely on Defendants as trustees for such information.

Defendants acknowledge, federal law generally treats tribal sovereign immunity from suit the same as the immunity from suit of other sovereigns. *See, e.g., Hill v. United States*, 2008 WL 2522333, at * 2 (D.D.C. June 25, 2008) ("The United States is immune from suit unless it waives its sovereign immunity through an act of Congress."); *Fraternal Order of Police v. Gates*, 2008 WL 2396182, at * 3 (D.D.C. June 13, 2008) ("The United States is immune from suit except where it has expressly consented to be sued."); *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991) ("The United States is immune from suit absent an express waiver of its sovereign immunity.").

It is at this point that Defendants' argument fails. Notwithstanding their immunity from suit, sovereigns are sued all the time. They then choose on a case-by-case basis whether to raise any applicable defense of sovereign immunity. *See Hornbeck Offshore Transp., LLC. v. United States*, 2008 WL 258086, at * 5 (D.D.C. July 1, 2008) (noting that a particular court of appeals case, *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1156-60 (D.C. Cir. 1985), "remains applicable as a guide for how to approach an FTCA claim wherein the Government asserts that sovereign immunity bars the claim because of lack of a private analog."); *Klugel v. Small*, 519 F. Supp. 2d 66, 73 (D.D.C. 2007) ("United States asserts that the tort claims must be dismissed because of its sovereign immunity from suit."); *Washington Legal Foundation v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (government asserts "sovereign immunity from this suit . . .").

And, notwithstanding their immunity from suit, there nevertheless are specific and multiple judicial procedures that sovereigns must follow to prevent suits from going forward against them. They must (or, as Defendants would say, they are "forced to," *see* Defs' Mem. at 8) enter appearances, file answers, and make motions to dismiss or other motions. *See, e.g.,*

*Avery v. United States*, 534 F. Supp. 2d 40, 41-42 (D.D.C. 2008) (in suit against it, United States moves for judgment on the pleadings, and court finds United States enjoys sovereign immunity as to certain claim, which claim is then dismissed). These judicial procedures can be viewed as extensive and burdensome. *See Ellsberg v. Mitchell*, 709 F.2d 51, 73 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984) ("no doubt the parties on remand will once again go through the motions of briefing and arguing the immunity issues, [and] . . . the district court will once again slog through this . . . ."). But each and every sovereign has to go through such steps and await court adjudication of the issue. All of this happens notwithstanding sovereign immunity from suit and it happens to all sovereigns. *See Republic of the Philippines v. Pimentel*, 128 S.Ct. 2180, 2186 (2008) (foreign country named as defendant in interpleader action asserts sovereign immunity from suit in a motion to dismiss); *Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) (the Eleventh Amendment does not automatically destroy original jurisdiction but rather grants the state a legal power to assert a sovereign immunity defense should it choose to do so.").

In short, sovereign immunity from suit is not some self-effectuating right that keeps any sovereign from ever being sued, nor does it manifest itself fully without considerable judicial action. Defendants feign outrage that a determination of a plaintiff class consisting of tribes would amount to this Court's "regulation of tribal sovereignty," Defs' Mem. at 9, but the reality is that determinations of the immunity from suit of all sovereigns are matters that courts address routinely. There simply is no magical shield that prevents sovereigns from ever being sued or from ever appearing in court to assert and pursue the defenses to which they may be entitled as sovereigns but that courts must decide according to established rules of procedure.

Having a court determine that sovereigns are part of a plaintiff class is no different. Indeed, it is much less an affront to sovereignty than being named as defendants. This is especially so under Plaintiffs proposed "opt out" class here. *See* Proposed Notice of Class Action submitted with Plaintiffs' Motion for Class Action Certification (Doc. # 53–3). As class members, tribes need not retain attorneys to enter appearances, file pleadings, or make motions in this action. They simply will have to execute and return a form created by Plaintiffs' counsel (or by counsel for both parties, see Defs' Mem. at 46) and approved by this Court. *See* Proposed Notice at 9 (Form entitled "Request by Class Member to be Excluded from this Class Action").[2] In this respect, the four tribes that already have stated their position to this Court about not wanting to be members of the plaintiff class—Navajo, Jicarilla Apache, Laguna Pueblo, and Delaware—have more than demonstrated what needs to be done here. They have taken appropriate procedural steps to assert their legal position and "opt out" of a class in which they otherwise would be included. But contrary to Defendants' *ad nauseum* argument, *see* Defs' Mem. at 9–17, no waivers of tribal sovereign immunity are needed where, as here, tribes are not being sued, they are bringing the suit.

The concept of waiver is important, however, since, as sovereigns, the federal and state governments are free to waive their immunity from suit. *See, e.g., De Archibald v. United States*, 499 F.3d 1310, 1316 n.5 (Fed. Cir. 2007) (federal "government is free to waive sovereign immunity subject to any conditions that it chooses."); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005) ("It is long-settled that although a state may not be sued without its consent, such immunity is a privilege which may be waived by consenting to suit."). Defendants claim that Plaintiffs ask this Court to "stray from

---

[2] Plaintiffs have no objection to, as Defendants suggest, conferring with Defendants regarding Notice to the Class if class certification is granted.

the law," Defs' Mem. at 9, when it is Defendants' unsupported *per se* rule that would radically alter legal doctrine and strip tribes of an important right enjoyed by other sovereigns – the right to make their own choices about their sovereignty in a particular lawsuit.[3]

Finally, in arguing against a plaintiff class of tribes, Defendants fail even to mention (let alone try to distinguish) *Covelo Indian Cmty v. Watt*, 551 F. Supp. 366 (D.D.C. 1982), *aff'd as modified and vacated as moot*, No. 83-2377 (D.C. Cir. Feb. 1, 1983), the leading federal court case on plaintiff tribe classes.  Moreover, while Defendants argued against class certification in *Covelo*, their grounds there did not include the "tribal sovereignty" argument advanced here.[4] Ordinarily, Plaintiffs would appreciate Defendants' purported evolutionary understanding and advocacy of tribal sovereignty, but not when it is used against them, without any basis in law, blatantly and solely to avoid judicial examination of the merits of plaintiffs' claims.

---

[3]  Perhaps Defendants are unaware that, like other sovereigns, tribes can and do waive their immunity from suit in the context of specific litigation.  *See, e.g., Nevada v. Hicks*, 196 F.3d 1020, 1023 n.2 (9th Cir. 2000), *rev'd on other grounds*, 533 U.S. 353 (2001) (tribe waives sovereign immunity from suit for limited purpose of defending against state's claims in federal court); *A-1 Contractors v. Strate*, 76 F.3d 930, 933  (8th Cir. 1996), *aff'd*, 520 U.S. 438 (1997) (tribe consents to suit for limited purpose of defending federal claims for injunctive relief). Nevertheless, Plaintiffs maintain that no such waivers are necessary here, where tribes are plaintiffs.

[4]  For the Court's convenience, copies of Defendants' Briefs in Opposition to the Motion for Class Certification in *Covelo* are attached hereto as Exhibit 1.

## II. DEFENDANTS HAVE FAILED TO SHOW THAT PLAINTIFFS DO NOT MEET THE RULE 23 REQUIREMENTS FOR CLASS CERTIFICATION

### A. The Rule 23(a) Requirements Of Numerosity, Commonality, And Typicality Are Met Here Easily; If Adequacy Is Not Met Fully, Class Certification Should Still Be Granted And Plaintiffs Should Be Allowed An Opportunity To Name Additional Representatives

#### 1. Numerosity, Commonality, and Typicality

Plaintiffs have made a reasonable estimate that the proposed class they seek will consist at least initially of about 260 tribes. *See* Pls' Mem. at 30–33; *see also Bame v. Dillard*, 2008 WL 2168393, at *3 (D.D.C. May 22, 2008) (Plaintiffs need not provide the exact number of potential class members to satisfy the numerosity requirement; however, there must be a reasonable basis for the estimate provided."). Defendants quibble that such a number is an unreasonable overestimation. Defs' Mem. at 19. Plaintiffs disagree; and, in any event reiterate that "[t]ypically, a class in excess of 40 members is sufficiently numerous to satisfy this requirement." *Lindsay v. Government Emp. Ins. Co.*, 2008 WL 2673796, at * 3 (D.D.C. July 3, 2008). Defendants have not shown that it is even remotely likely that no more than thirty tribes will remain in the class in addition to the named Plaintiffs.

A class of tens or hundreds of tribes in this case clearly would be in the interests of judicial economy. In addition to this case, this Court already is faced with over 35 other lawsuits raising the same or similar issues. If class certification is denied, the number of separate lawsuits likely will only increase, perhaps by as many as 250. Class certification here will reduce that number and that is the essence of judicial economy. *See In re Agent Orange Prod. Liability Litigation*, 506 F.Supp. 762, 790 (C.D.N.Y. 1980); *see also Chang v. United States*, 217 F.R.D. 262, 265 (D.D.C. 2003) (consolidation of multiple lawsuits by plaintiffs reduces litigation burden on defendants).

This is particularly so given the significant commonality of law and fact at issue here. Defendants' opposition to class certification is illuminating in terms of the breadth of commonalities that they concede, including

- the issues of the existence and scope of their fiduciary accounting duties to plaintiffs, and whether and how those duties have been or can be met;

- historical and present centralized tribal trust fund accounting hardware and software devices;

- that the AA project encompassed all tribal trust fund accounts and used uniform agreed –upon procedures to document, test, and report account transactions;

- that following the AA project uniform report packages were sent to all tribes.

*See* Defs' Mem. at 4–7, 22 and 25; *see also* Declaration of Gregory J. Chavarria at ¶s 6–16 (describing the uniform application of the AA project's procedures and tasks to the trust fund account transactions of all tribes, and the uniform reporting of the results of the project to all tribes); *id.* at ¶ 18 (Defendants account for tribal trust transactions within the same accounting system and required documentation for certain transactions is standardized). The resolution of the fiduciary accounting duty issue alone "will affect all or a significant number of the putative class members," thereby satisfying commonality. *Lindsay v. Government Emp. Ins. Co.*, 2008 WL 2673796, at *3.

Likewise, Defendants readily acknowledge, as they must, that their historical treatment of the trust fund accounts of all tribes basically is the same. *See* Defs' Mem. at 4–5 and 27–29. Virtually all pertinent reports and laws speak of Defendants' actions and conduct—as well as Defendants' inactions, misconduct, and failures—regarding tribal trust funds generally. Defendants' efforts, Defs' Mem. at 25–28 and 42, to depict their fiduciary duties as being very

"tribe-specific" thus are nothing but a litigation-generated smoke-screen intended to hide the typicality of the claims of Plaintiffs with those of the class they seek. *See Lindsay v. Government Emp. Ins. Co.*, 2008 WL 2673796, at *3; *Bame v. Dillard*, 2008 WL 2168393, at * 6–7.[5]

Defendants' emphasis on the postulated uniqueness of tribal trust fund accounts—how many accounts of which kind each tribe has, the different trust assets underlying the accounts, the differences among tribes and resources in geographic regions, differences in the level of account transaction activity, *etc.*, *see* Defs' Mem. at 4 and 22–27—cannot obscure the overwhelming commonalities and typicalities primarily due to the extensive common actions and conduct of Defendants underlying the claims here. "[C]ourt after court has found the existence of individualized issues among class members to be insufficient to defeat certification where the defendant governmental entity or officials acted in a similar manner toward all the class members." *Matyasovsky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35, 41 (D. Conn. 2005), *citing* 7 Alba Conte and Herbert Newberg, Newberg on Class Actions § 23:3 (4th ed.). "Defendants' misperformance or non-performance of their [most basic] fiduciary accounting transaction requirements impacted all tribes similarly." Supplemental Declaration of Kevin W. Nunes, at ¶ 8 (July 22, 2008), attached hereto as Exhibit 2. "There simply is a level at which the differences among the beneficiaries' sizes, revenue deposit amounts, and underlying sources of

---

[5]  Defendants argue that the Yakama Nation's participation in special agreed upon procedures as part of the AA project makes Yakama's trust fund account transactions not typical of those of other tribes. Defs' Mem. at 6 and 26. This does not respond to the fact, *see* Pls' Mem. at 39 fn.22, that the special agreed upon procedures applied to Yakama's transactions were in addition to the general agreed upon procedures applied to all tribal trust fund account transactions. Stated another way, the special procedures changed neither the underlying nature and typicality of Yakama's trust fund account transactions nor the application of the general procedures to those transactions.

revenue have no bearing on the indiscriminate impact of the [trustee's] misconduct on the beneficiaries." *Id.*

### 2. Adequacy

Defendants assert a number of arguments regarding the twelve named Plaintiffs' adequacy to serve as class representatives. Defs' Mem. at 30–34. Most of these arguments amount to alleged conflicts among class members that are "purely hypothetical, potential, or remote," which as a general rule should not defeat class certification. *Washington Bancorp. v. Washington,* 1989 WL 180755, at *11 (D.D.C. Sept. 26, 1989). For example, Defendants note that some members of the putative class here also have actions in the Court of Federal Claims (CFC). Defs' Mem. at 32–33. Of course the jurisdiction and powers of this Court and those of the CFC are different, and for that reason, tribes with CFC actions may well choose to "opt out" of this case. *See, e.g.*, Declaration of Thomas P. Schlosser, at ¶ 3, submitted herewith as Exhibit 3 ("Because of the Hoopa Valley Tribe's pending trust accounting and trust mismanagement case in the Court of Federal Claims, . . . the Hoopa Valley Tribe will not participate as a party in this case [and] [i]f this case is certified as a class action that requires non-participating tribes to opt out, I believe the Hoopa Valley Tribe will take action to opt out of the class."). But even with respect to tribes that stay in both forums, certain relief (such as accountings) that is proper in both venues may be partially duplicative, but not necessarily conflictive.

Other ostensible conflicts raised by Defendants simply are irrelevant. For example, Defendants allege that some of the named Plaintiffs (*e.g.*, Yurok and Santee Sioux) have disputes with other tribes over distributions of their trust funds. But this action raises no issues of fund beneficiary eligibility. *Compare Davis v. United States*, 192 F.3d 951 (10th Cir. 1999) (challenge to judgment fund distribution act by group of descendants excluded from judgment

fund act programs).  Nor does it raise any claims about fund distributions.  *Compare Rogers v.*
*United States*, 877 F.2d 1550 (Fed. Cir. 1989) (claimants not included in distribution of Indian
judgment funds sue for breach of trust).  To the extent that eligibility and post-distribution issues
exist, they have no bearing on the common issues raised here, including whether and how
Defendants must account for the trust fund accounts of all tribes.  *See* Declaration of Thomas P.
Schlosser, at ¶ 2 ("In my opinion, any conflict between the Hoopa Valley Tribe and the Yurok
Tribe does not relate to the subject matter of the request for declaratory judgment in this case.").

Defendants also make inappropriate and strange statements about three named Plaintiffs
(Nez Perce, Yakama, and Sac and Fox), who are participants in Phase I of a pilot project set forth
in a Cooperative Agreement between the U.S. Department of the Interior, Office of Historical
Trust Accounting (DOI/OHTA) and the InterTribal Monitoring Association on Indian Trust
Funds (Nov. 2004). The purpose of this project is to attempt to reach agreement on the balances
of the trust fund accounts of voluntarily participating tribes.  The purpose of Phase I of the
project is to develop a methodology that will allow Phase II tribes to reconcile their accounts for
the AA project period.  Defendants state that "after five years . . . as of today's date, Interior and
the tribes have not been able to reach agreement about what further accounting methods would
be necessary for all tribes to accept their account balances in full.  For this reason, it's hard to see
how class certification is the appropriate mechanism by which such decisions should be made."
Defs' Mem. at 33.  Whatever point about this project Defendants are trying to make in this
litigation runs counter to the Cooperative Agreement, which expressly provides that "no Tribe
that participates in any phase of the Project is required, in any manner, to reach agreement with
DOI/OHTA about the balance of that Tribe's trust fund account(s) or to settle with DOI/OHTA
any claims that the Tribe may have regarding its Tribal Trust Fund account(s)."   Section II

(A)(1).  It also ignores the fact that the final draft of the Proposed Phase I methodology was only presented to the pilot project tribes on June 17 and 18, 2008—about 35 days ago.  *See Confederated Tribes of the Colville Indian Reservation v. Kempthorne*, No. 05-2471 (Joint Status Report, ¶ I(B), July 11, 2008 (Doc. # 39).

Finally, Defendants point out that among the twelve named Plaintiffs, there is not one that accepted their account balances per the "Acknowledgment Form" appended to the AA report packages.  Defs' Mem. at 34, *citing* the Account Holders Distribution List Attachment B ("Account Holders that Accepted the Balances of their Trust Fund Accounts as of 5/8/97"), submitted as Attachment KK to Pls' Mem. In Support of Class Certification.  Without taking any position on the merits of what, if anything, such acceptances mean in terms of the claims raised in this action, Plaintiffs submit that in the overall scheme of class certification, this alleged deficiency is of little consequence.  If a named plaintiff representative of this group of account holders is necessary or appropriate, Plaintiffs respectfully request leave of this Court to address that.  Such procedure is consistent with the general rule that where named plaintiffs are found to be inadequate representatives for an uncertified class, "the appropriate remedy is to select different or additional representatives rather than to deny certification."  *Jones v. Bowen*, 121 F.R.D. 344, 348 n.3 (N.D.Ill. 1988), *vacated as amended on other grounds*, No. 87 C 7419, 1989 WL 91865 (N.D.Ill. Aug. 8, 1989), *vacated as moot*, 938 F.2d 801 (7th Cir. 1991).

Indeed, standard procedures such as naming additional representatives, creating subclasses, and otherwise modifying classes are the proper way to address many of Defendants remote adequacy concerns should they in fact occur.  *See Hartman v. Duffey*, 19 F.3d 1459, 1474 (D.C. Cir. 1994).  For example, Defendants argue that some of the named Plaintiffs have, under federal law, contracted or compacted various functions related to their trust fund accounts or

underlying assets that were formerly provided by Defendants. Defs' Mem. at 22–23 and 29. *See also* Declaration of Amy Dutschke (Yurok Tribe). This is among the very information that Plaintiffs' counsel sought from Defendants through informal discovery immediately after filing this action, along with such information presented by Defendants now (Mem. at 27–28) such as the types of trust accounts held. Plaintiffs' requests for this information were refused sometime in May 2007 by Defendants' counsel on the ground that they would not provide this information regarding tribal trust fund account holders, which in Defendants' view, Plaintiffs' counsel did not represent (*i.e.*, putative class members).

In short, Plaintiffs have made a good faith effort to name adequate class representatives. The twelve named Plaintiffs vary in terms of geographic location, size with respect to their membership, size with respect to dollar amounts of their trust fund accounts, and types of trust assets underlying their trust accounts. *See* Pls' Mem. at 21–22 and 39 fn.21. Defendants now attempt to take Plaintiffs to task for not naming adequate representatives based on information unavailable to Plaintiffs but available to Defendants. *See*, *e.g.*, Defs' Mem. at 27–28; *see also* Declaration of Gregory Chavarria, at ¶s 20–21 (apparently comparing percentages of the trust assets underlying the accounts of the twelve named Plaintiffs with percentages of the trust assets of all account holders involved in the AA project).[6]

---

[6] Plaintiffs, however, would like to respond to Mr. Chavarria's point based on information that they do have. As the AA project began, it was well known that the trust fund accounts of about 50 tribes represented between 85–90% of the dollar amount of all tribal trust funds held by Defendants. *See* U.S. Department of the Interior, Bureau of Indian Affairs, Reconciliation Management Plan for the Trust Funds Management Improvement Program (Sep. 1991), *reprinted in* Hearing on the Bureau of Indian Affairs' Management of the $2 Billion Indian Trust Fund Before the U.S. House of Representatives, Committee on Government Operations, Subcommittee on Environment, Energy, and Natural Resources, 101st Cong., 2nd Sess., at 227 (1991).

Of these "Top 50" tribal account holders, about 28 are excluded from Plaintiffs' class definition because they have their own pending actions for full and complete accountings. But that means

Plaintiffs have satisfied the vast majority of the elements for class certification under Rule 23(a). To the extent that Plaintiffs' efforts fall short in this one area of adequacy simply because of lack of information of which Defendants, as the trustees for these accounts were in sole possession and control, the proper course of action for this Court to take would be to grant class certification and order Defendants to provide promptly to Plaintiffs the information needed to name adequate representatives for the plaintiff class in this action and allow Plaintiffs a reasonable opportunity to name proper class representatives. *See National Fed'n of the Blind v. Target Corp.*, 2007 WL 2846462, at *14 (N.D.Cal. Oct. 2, 2007) (where court is satisfied that some putative class members would present the same type of legal and remedial theory as unnamed class members, as long as proposed class satisfies Rule 23 requirements generally, court may certify class conditioned upon the substitution of new named plaintiffs).

### B. Plaintiffs' Proposed Rule 23(b) Class With Opt-Out Is Appropriate In This Case

Defendants make three arguments against Plaintiffs' proposed class certification under Rule 23(b) with the option to opt out. First, Defendants argue that Plaintiffs are predominately

---

that the other 22 (44%) are either named Plaintiffs or putative class members. Of these 22, 6 have their own CFC actions, which means that of the Top 50, perhaps 16 (32%) might remain in the class. That is almost one-third of the Top 50.

Of the non-Top 50 (the remaining 260) tribal account holders, fewer than 30 have their own accounting actions in federal district court, which means that there are at least 230 (88%) tribes with no district court accounting actions, which means that almost 90% of the non-Top 50 tribes are putative class members. About 12 of these 230 have their own CFC actions, which means they might opt out of the class. But even if four dozen of the 230 opt out, that is still more than 180 tribes, or over 75% of the non-Top 50 tribes.

This analysis also responds to Defendants' theory that all or even a vast majority of tribes have the resources to file their own tribal trust fund account claims. *See* Defs' Mem. at 20–21. Clearly, a majority of the Top 50 tribes have filed their own claims, but an even larger majority of the lesser dollar trust fund account tribal beneficiaries have not. Class certification here is needed to assist those tribes that do not have ample resources to pursue their breach of trust claims in court.

seeking monetary relief impermissible under Rule 23(b). Defs' Mem. at 35–38. Second, Defendants argue that Plaintiffs' claims are not generally applicable to the class. *Id.* at 38–39. Third, Defendants take issue with Plaintiffs' requested opt out option. *Id.* at 39–41. None of these arguments is persuasive.

As in their Motion to Dismiss, which is being briefed separately but simultaneously with this Motion for Class Action Certification, Defendants continue to ignore the critical legal distinction between claims for "money damages" and claims involving equitable "monetary relief." Plaintiffs will not duplicate the Opposition to the Motion to Dismiss briefing on that point here. Plaintiffs note, however, that none of the cases relied upon by Defendants in arguing against class certification under Rule 23(b)(2) on this point involved claims for breaches of trust such as are raised in this action. It is in the breach of trust context that the equitable powers of a court to fashion appropriate non-money damages monetary relief are most utilized. *See also* 2 Alba Conte and Herbert Newberg, Newberg on Class Actions § 4.12 (4th ed.) (Rule 23(b)(2) certification is appropriate "when monetary relief for class members . . . is part of the equitable relief granted . . . [or] sought.").

There are many claims and issues in this action that are generally applicable to the proposed class. The foremost such issues are the existence and scope of Defendants' fiduciary duty to provide accountings to beneficiaries as required by law, and whether and how Defendants have complied or must comply with that duty. It is at best disingenuous of Defendants to argue in opposing class certification that "an accounting is not something that can be completed on a class wide basis . . . ." Defs' Mem. at 39, when they are simultaneously arguing to this Court in their Motion to Dismiss that as a matter of law and fact they have completed the requisite accountings for all tribal beneficiaries through a multi-million dollar,

15

multi-year contract project that admittedly applied uniform procedures and tasks uniformly to the transactions—at least the transactions for which sufficient records were available—of the trust fund accounts of 310 tribes.

As stated above, a court's determination of a plaintiff class of tribes is far less intrusive on the tribes' sovereignty than are the judicial procedures and powers adhered to and exercised in adjudicating matters of the immunity from suit of all sovereigns. No waiver is necessary where the sovereigns are plaintiffs as opposed to defendants. And, Plaintiffs proposed opt out option here is consistent with and respectful of tribal sovereignty; Defendants' *per se* rule against plaintiff tribe classes that effectively nullifies tribes' rights as sovereigns to enjoy a right enjoyed by other sovereigns is not.

Moreover, Defendants misread authority such as *Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997), as standing for the proposition that a (b)(2) plaintiff class of sovereigns with an opt out option is somehow prohibited. *See* Defs' Mem. at 37 fn. 12 and 40. But *Eubanks v. Billington*, citing the leading treatise on class actions, states "that a district court may provide opt-out rights to a (b)(2) class in four different ways: . . . ."

> First, . . . the court could limit the Rule 23(b)(2) certification to certain issues only. Second, the court could certify the injunction claims under Rule 23(b)(2) and the damages claims undre Rule 23(b)(3). Third, the court could certify the entire class initially under Rule 23(b)(2), bifurcate the trial so that the defendant's liability potentially for both forms of relief is determined initially, and reconsider the class certification category if the plaintiffs and the class are successful at the liability stage. Finally, the court could certify special claims or issues under Rule 23(b)(2) and treat all the nondesignated claims or issues as individual or incidental ones to be determined separately after liability to the class has been adjudicated.

110 F.3d at 96, *citing* 2 Alba Conte and Herbert Newberg, Newberg on Class Actions § 4.14 (4th ed.) (emphasis added). Clearly there is considerably more authority and reason for (b)(2) opt out in this jurisdiction and in the instant case than Defendants posit.

Defendants' arguments against Plaintiffs' alternative bases for class certification, Rule 23(b)(1) and (b)(3), essentially boil down to repeats of their earlier assertions that Plaintiffs' claims are "too individualized" and that class certification generally will be inefficient, unnecessary, and to no avail in terms of creating any meaningful "uniform standards or practices for Defendants to follow" as trustee for tribal trust fund accounts. See Defs' Mem. at 42–45. In reply, Plaintiffs note that all of the tribe-specific, "highly individualized" trusteeship that Defendants now claim to offer and claim to have offered in the past did not stop and has not stopped scores of agency reports from severely criticizing Defendants' failure to account fully and properly for the trust fund accounts of all tribes; Congress from codifying the common law mandate for full and complete accountings by Defendants for the trust fund accounts of all tribes; and, Defendants from spending $21 million on a contract to apply uniform agreed-upon procedures in a uniform manner to a 20-year period of the trust fund account transactions of all tribes. Defendants' opening statement in opposition to class certification to the effect that each and every tribal beneficiary "has different accounting needs," Defs' Mem. at 1, is more accurately stated as "each and every tribe needs an accounting," and that mandate—finally—can begin to be accomplished through class certification in this case.

## CONCLUSION

For the above-stated reasons as well as the reasons set forth in Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Class Action Certification, Plaintiffs' Motion for Class Action Certification under Fed. R. Civ. P. 23(b)(2) should be granted, and this Court should designate the twelve named Plaintiffs as class representatives; appoint the Native American Rights Fund as Plaintiffs' class counsel; and approve the Proposed Notice to the Class which permits opt-out under Rule 23(d)(2).

DATED this 23rd day of July, 2008.

Respectfully submitted,

/s/     Melody L. McCoy
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO  80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2008, a true and correct copy of the foregoing  PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION AND FOR APPROVAL OF CLASS NOTICE was served by Electronic Case Filing or by regular first class U.S. mail, postage pre-paid, on the following counsel:

E. KENNETH STEGEBY
ANTHONY P. HOANG
KEVIN J. LARSEN
MAUREEN RUDOLPH
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC  20044-0663
Tel (202) 616-4119
Tel (202) 305-0241
Tel (202) 305-0479
Fax (202) 353-2021

JOHN H. MARTIN
U.S. Department of Justice
Natural Resources Section
1961 Stout St., Eighth Floor
Denver, CO  80294
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax (303) 844-1350

Attorneys for Defendants

OF COUNSEL:

PAUL SMYTH
ELISABETH BRANDON
THOMAS BARTMAN
GLADYS I. COHOCARI
SHANI N. WALKER
Office of the Solicitor
U.S. Department of the Interior
Washington, DC  20240


TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
U.S. Department of the Treasury
Washington, DC  20227



/s/      Melody L. McCoy
MELODY L. MCCOY, USDC Bar. No. CO0043
Attorney for Plaintiffs

# EXHIBIT  1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

COVELO INDIAN COMMUNITY, et al.,   )
                                    )
                Plaintiffs,   )
                                    )
              v.            )     C. A. No. 82-2725
                                    )
JAMES WATT, Secretary of the     )
Interior, et al.,               )
                                    )
                Defendants.   )
                                    )

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR CERTIFICATION AS A CLASS ACTION

Plaintiffs have moved this Court to certify the case
as a class action.  Purported class representatives are named
plaintiffs Covelo Indian Community, Bertha Visser, Dennis Allen,
Sampson Brings Them, Emma Little Chief Randall, Lillian Prue
Janis, and the Shoalwater Bay Indian Tribe ("named plaintiffs"). 1/
Plaintiffs define the putative class as "comprised of those
Indians and tribes with valid pre-July 18, 1966 claims subject
to the statute of limitations in 28 U.S.C. § 2415 which defendants
have refused to litigate or otherwise validly resolve before the
statute runs on December 11, 1982."  Plaintiffs' Memorandum in
Support of Motion for Certification as a Class Action, ("Plaintiffs'
Memorandum") at p. 2.  They seek certification of this class under
the provisions of Rule 23(a) and 23(b)(2), Fed.R.Civ.Pro.

Federal defendants oppose certification of the proposed
class in this case on four grounds: 2/  (1) the class as defined
is vague and its members are not ascertainable; (2) since the
named plaintiffs do not themselves have standing, they cannot
adequately represent the purported class; (3) to certify the class
could unfairly bind all potential claimants in this suit if the

---

1/  Plaintiffs do not suggest that other plaintiffs named in
     the complaint are representatives of the class.

2/  Federal defendants do not concede that plaintiffs meet all
     the other requirements of Rules 23(a) and 23(b)(2).

- 2 -

plaintiffs lose the case; (4) defendants have not acted or refused to act on grounds generally applicable to the class as a whole.  For each of these reasons, plaintiffs do not meet the requirements of Rule 23 and their motion to have the class certified should be denied.

1.  Plaintiffs define the class as those with "valid" statute of limitations claims that are not "validly" resolved before December 31, 1982.  At the heart of plaintiffs' case is the question of whether federal defendants have made proper decisions about whether or not to litigate or whether or not to seek legislative resolution of over 15,000 potential claims subject to the December 31, 1982 statute of limitations in 28 U.S.C. § 2415.  The United States has made decisions about what kinds of litigation to press based in part on internal guidelines, and in part on an assessment of the facts in a given case.  However, whether a person's or a tribe's claim has been "validly" resolved, and therefore whether that person or tribe should be omitted from a plaintiffs' putative class, must be determined on the facts of each individual case.  For example, named plaintiff Bertha Visser has an alleged secretarial transfer claim worth approximately $20.  For the United States to refrain from seeking a remedy for that claim through litigation or legislation is a valid resolution of the claim.  Similarly, Lillian Prue Janis has an old age assistance for approximately $114.  For the United States to seek a legislative resolution of that claim, as it has done, rather than filing a lawsuit, is a valid resolution of that claim as well. 3/  The determination of whether a person is in or out of the class as plaintiffs have defined it is, therefore, a matter of determination,

---

3/  The facts regarding the potential claims of named plaintiffs are set forth more fully in Federal Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs Motion for Preliminary Injunction and in Support of Defendants' Motion To Dismiss or in the Alternative for Summary Judgment filed simultaneously herewith.

- 3 -

individual by individual, in light of the full facts of that
person's or tribe's case.  Where members of the class are
difficult to identify as being in or out of the class, the class
is so highly diverse and so difficult to identify that it is not
adequately defined or clearly ascertainable.  Such plaintiff
classes cannot be maintained.  Adashunas v. Negley, 626 F.2d
600, 604 (7th Cir 1980) (class of "children entitled to a public
education who have learning disabilities and 'who are not properly
identified and/or who are not receiving' special education,"
certification denied); DeBremaecker v. Short, 433 F.2d 733, 734
(5th Cir. 1970) (class of "residents of this State active in the
'peace movement,'" certification denied).  The class of those
with "claims not validly resolved before December 31, 1982," is
no less vague and unascertainable.  On this ground alone the
class should not be certified.

        Further, the proposed class covers persons and tribes
in different circumstances and with a number of types of proposed
claims.  The named plaintiffs do not themselves represent all of
the types of proposed claims that the Secretary of the Interior
has examined as part of his statute of limitations review (ex:
fishing rights, mineral trespasses).  Since the proposed class
covers amorphous and diverse interests (more diverse than the
interests that the named plaintiffs represent), it is not reasonably
clear that the proposed class members have all suffered violations
of their rights warranting some relief.  This as well is a deficiency
in the class action claims.  Adashunas v. Negley, supra, 626 F.2d
at 604.

        2.  Second, the named plaintiffs do not have standing to
maintain this action at all.  For a more detailed discussion of
plaintiffs' lack of standing, see Federal Defendants' Memorandom
of Points and Authorities in Opposition to Plaintiffs Motion for
Preliminary Injunction and in Support of Defendants' Motion to

- 4 -

Dismiss or In the Alternative for Summary Judgment (Defendants'
Memorandum), in Opposition to Motion for Preliminary Injunction
and in Support of Defendants' Motion to Dismiss or for Summary
Judgment, filed simultaneously herewith.  Bertha Visser and
Dennis Allen have secretarial transfer claims which are valued
at approximately $20; the decision by the United States not to
litigate those claims would not be changed by the relief plaintiffs
seek in this case.  Plaintiff Sampson Brings Them has an alleged
secretarial transfer claim; in fact, the United States was under
no obligation to seek consent before it transferred his ancestor's
property, so he has no claim at all; and certainly would not
obtain relief in his claim even if this Court awarded the relief
he seeks here.  Plaintiffs Emma Little Chief Randall and Lillian
Prue Janis have old age assistance claims.  The Secretary of the
Interior has sent legislation to Congress to seek to resolve
those claims.  These plaintiffs are entitled to no further relief.
The Shoalwater Bay Indian Tribe has a unique claim arising from a
General Land Office sale of eight acres of the tribe's land; the
claim is still being considered by the Secretary of the Interior
who has committed to inform Congress of his decision about the
matter by November 29, 1982.  See Attachment 1 to Defendants'
Memorandum.  Finally, the unapproved rights-of-way claims of the
Covelo Indian Community are still under consideration by the
Secretary of the Interior who will take some action on them
before December 31, 1982.  Therefore, none of these parties has
standing because none has injury in fact which would be remedied
by the relief plaintiffs seek in this lawsuit.  If the named
plaintiffs do not suffer injury, they are not eligible to represent
a class of persons who did suffer injury.  Seapiro v. Midwest Rubber
Reclaiming Co., 626 F.2d 63, 71 (1980), cert. denied, 449 U.S. 1079
(1981), citing East Texas Motor Freight v. Rodriguez, 431 U.S. 395
(1977).  While defendants do not concede that purported members of

- 5 -

the class did suffer injury, named plaintiffs are not adequate
representatives of the class under Rule 23(a)(4) and the class
should not be certified. 4/

    3.  Third, Plaintiffs do not seem to recognize that if
"the representatives in prosecuting their own claims will likewise
advance the claims of the class . . . and will necessarily represent
the interests of the class . . .," plaintiffs' memorandum at p. 9.
They will also bind the putative class members if they lose.  Courts
do not sanction class definitions which result in "fail-safe"
classes, "a class which would be bound only by a judgment favorable
to plaintiffs but not by an adverse judgment." Adashunas v. Negley,
supra, quoting Dafforn v. Rousseau Associates, Inc., 1972-2 Trade
Cases § 61,219 (N.D. Ind. 1976).  Therefore, the due process of
those persons who are putative members of the class but not
before the Court will indeed not be protected, but rather may be
adversely affected, by the class certification which plaintiffs
seek.

    4.  Finally, federal officials have not acted or refused
to act on grounds generally applicable to the class as a whole,
making appropriate relief with respect to the class as a whole,
as required by Rule 23(b)(2).  As is apparent from federal
defendants' lengthy statement of facts, examination must be made
of the facts underlying each potential claim for the court to
determine, in that case, whether the actions of the United States
"validly resolved" the claim.  The federal defendants have made
a systematic effort to collect, analyze, review, and process
potential claims which might be subject to the December 1982
Statute of Limitations in § 2415; any examination of the merits

---

4/  Cf., Berlin Democratic Club v. Rumsfeld, 410 F. Supp. 144
(D.D.C., 1976), where the court held that a unique situation
not likely to be repeated was not appropriate for class disposition.
Here, even if the Court finds that the Covelo Indian Community or
the Shoalwater Bay Tribe has standing, class certification should
be denied on this ground.

- 6 -

of their decisions must turn on a claim-by-claim review.  While
the federal defendants contend that no such review is appropriate
here, if a class were certified such review could be necessary.
Such case-by-case determination does not meet the requirements
of Rule 23(b)(2).

On these grounds, plaintiffs' motion for class
certification should be denied.

Respectfully submitted,

LOIS J. SCHIFFER
Special Litigation Counsel

JAMES P. LEAPE, ESQ.
Department of Justice
Land and Natural Resources Division
Washington, D.C.  20530
(202) 633-2793

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
COVELO INDIAN COMMUNITY, et al.,   )
                                   )
                  Plaintiffs,      )
                                   )
            v.                     )    C. A. No. 82-2725
                                   )
JAMES WATT, Secretary of the       )
Interior, et al.,                  )
                                   )
                  Defendants.      )
_____)
```

### FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CERTIFICATION AS A CLASS ACTION

On October 27, 1982, several days after federal defendants filed an Opposition to Plaintiffs' Motion for Certification as a Class Action, plaintiffs filed an Amended Motion for Certification. Federal defendants oppose the amended motion. As reasons for that opposition, they incorporate by reference their Opposition to Plaintiffs' Motion for Certification as a Class Action filed herein on October 21, 1982. 1/

In their Amended Motion, plaintiffs seek to add Henry Rivers, Marcella Ryan Lebeau, and the Blackfeet Tribe of Indians to the list of named plaintiffs who would be class representatives. These additional plaintiffs may not be members of the purported class, lack standing, and generally do not make plaintiffs' proposed class any more viable.

First, whether named plaintiffs are members of the class or whether they have standing in their own right is open to serious question. Marcella Ryan Lebeau, alleges she has a forced fee patent claim because her mother was forced to take a fee patent to an allotment; however, her mother signed an application for fee patent which is regarded as giving consent to the conveyance. LeBeau therefore has no "valid" forced fee patent claim. See Def. Response

---

1/  Plaintiffs filed a Response to Federal Defendants' Opposition
    to Class Action Certification on October 28, 1982, the day after
    their Amended Motion was filed.

- 2 -

led simultaneously herewith at 9.

Henry Rivers allegedly has a forced fee claim as well. Rivers' father was issued a fee patent on the allotment without application in 1919. However, in 1920 the father obtained three mortgages on the property. Mortgages are an indication of consent to the fee transfer. 3/ Because of that indication of consent, Rivers does not have a "valid" forced fee patent claim which has not been "validly" resolved by federal officials. He is not a member of the class and does not have standing.

Similarly, the Blackfeet Tribe does not have standing. See Defendants' Memorandum of Points and Authorities, at 34-35; Defendants' Response at 10. 4/ Moreover, the Tribe owns land claimed by some of the tribal members. Therefore, the interests of the Tribe may be antagonistic to those of certain members of the alleged class that it purports to represent. Such a conflict is a basis for finding that the class representative does not adequately represent the class under the requirements of Rule 23(a)(4). 3B Moore's Federal Practice ¶ 23.07[3]; Cook County College Teachers Union v. Byrd, 456 F.2d 882 (7th Cir. 1972), cert. denied, 414 U.S. 883.

---

3/ Regarding the facts of Rivers' case, see Defendants' Response filed simultaneously herewith at p. 9. See, regarding such indications of consent, Defendants' Memorandum of Points and Authorities, filed herein on October 21, 1982, at p. 20. The allotment was not sold at a tax sale until 1935.

4/ Plaintiffs' suggestion that the United States agrees that the Blackfeet Tribe has valid claims, because it has stipulated that the Tribe has "claims," neglects the fact that "claim" is defined in the Stipulation of Facts, at p. 1 as follows:

Use of the term "claim" or "claims" does not signify acquiescence by the defendants in the validity of each and every particular claim, nor do defendants agree that such claim or claims are appropriate for litigation and legislative proposals, but the parties agree that the term "claim" or "claims" means a matter or matters identified by the BIA as those that might give rise to causes of action subject to the December 31, 1982 statute of limitations in 28 U.S.C. § 2415.

- 3 -

As is apparent in the analysis of whether the additional named plaintiffs are members of the class or can adequately represent the class, a determination of whether the potential claims of a person or tribe are "valid," or have been "validly" resolved, must be made case-by-case. When case-by-case determinations of facts must be made, class certification is not appropriate. <u>Gordon</u> v. <u>Aetna Life Insurance Company</u>, 467 F.2d 717, 720 (D.C. Cir. 1971).

The Court of Appeals in this Circuit requires that a plaintiff seeking class certification demonstrate, under a strict burden of proof, that all of the requirements of Rule 23(a) are clearly met. <u>Melong</u> v. <u>Micronesian Claims Commission</u>, 643 F.2d 10, 17 (D.C. Cir. 1980). Plaintiffs have failed to carry that burden here, and their amended motion should be denied.

Respectfully submitted,

LOIS J. SCHIFFER
Special Litigation Counsel
U.S. Department of Justice
Land and Natural Resources Division
10th Street & Pennsylvania Avenue, N.W.
Washington, D.C.  20530
(202) 633-2834

Dated:  November 1, 1982

CERTIFICATE OF SERVICE

I hereby certify that on November 1, 1982, copies of the following documents:

1. Federal Defendants' Motion for Leave to File Responsive Pleading, with proposed order;

2. Federal Defendants' Response to Plaintiffs' Response;

3. Federal Defendants' Opposition to Plaintiffs' Amended Motion for Certification as a Class Action

were served on counsel for plaintiffs, by hand, at the following address:

James C. Moore, Esq.
Moore & Foster, P.C.
1625 K Street, N.W.
Washington, D.C.

and on counsel for plaintiffs, by express mail overnight service, at the following address:

Anita Remerowski, Esq.
Native American Rights Fund
1506 Broadway
Boulder, Colorado  80302-6296

_____
LOIS J. SCHIFFER
Special Litigation Counsel
U.S. Department of Justice
Land and Natural Resources Division
10th & Pennsylvania Avenue, N.W.
Washington, D.C.  20530
(202) 633-2793

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE NEZ PERCE TRIBE, et al.,     )
for and on behalf of themselves     )
and all others similarly situated,     )
    )
           Plaintiffs,     )
    )    Case No. 06cv02239-JR
       v.     )
    )
DIRK KEMPTHORNE,     )
SECRETARY OF THE INTERIOR, et al.     )
    )
Defendants.     )
_____ )

SUPPLEMENTAL DECLARATION OF KEVIN W. NUNES

I, Kevin W. Nunes, hereby make the following declaration:

1.      I am over the legal age of eighteen years and I am competent to testify to the matters herein. The matters set forth in this Supplemental Declaration are based on my personal knowledge and analysis, and I could and would testify competently to these matters if called as a witness. My office address is as follows: Kevin W. Nunes, Rocky Hill Advisors, Inc., 7 Essex Green Dr., Ste. 53-55, Peabody, MA, 01960, telephone number: (978) 531-5900, email address: kevin@rockyhilladvisors.com.

2.      I have served as an expert for Plaintiffs in this action since November 2006. On June 5, 2008, I prepared a Declaration in support of Plaintiffs' Motion for Class Certification. The information set forth in that Declaration and in my resume attached to that Declaration regarding my qualifications to make that Declaration has not changed. This Supplemental Declaration is submitted in support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Class Certification

1

in this action which I understand will be filed on or before July 23, 2008.

3.    My Declaration of June 5, 2008 sets forth the reports and materials that I reviewed in

preparation for that Declaration. In preparing for this Supplemental Declaration, I reviewed the

following materials: a)  the Declaration of Gregory J. Chavarria and Attachments A - C thereto,

dated July 14, 2008, submitted in support of Defendants' Opposition to Plaintiffs' Motion for Class

Action Certification, dated July 14, 2008; and, b)  Defendants' Opposition to Plaintiffs' Motion for

Class Action Certification, dated July 14, 2008.


## Rebuttal of Gregory J. Chavarria Declaration

4.    As stated in my Declaration dated June 5, 2008 at ¶ 9, it is my general conclusion

that "from a fiduciary accounting perspective, and based upon what I know about the [Arthur

Andersen (AA)] Agreed-Upon Procedures Project . . . Defendants' and AA'[s] treatment of the trust

fund account transactions of the twelve named Plaintiffs is typical of their treatment of the trust fund

account transactions of other tribes involved in the Agreed-Upon Procedures Project . . . ."

Declaration of Kevin W. Nunes, at ¶ 9. I further specifically concluded that "AA applied the

Agreed-Upon Procedures to the trust fund account transactions of all tribes consistently . . . [and that

the Project] reports to tribes provided the same general information to all tribes about the Project and

its results in uniform format." Declaration of Kevin W. Nunes, at ¶ 10(d) and (e). By the terms

"typical treatment" and "consistent application," I meant that the same procedures and practices

applied to the transactions in any one account were applied similarly to the transactions in all

accounts.

5.    In his Declaration, Mr. Chavarria states that he was "the overall engagement manager

responsible for the planning and performance" of the AA Agreed-Upon Procedures Project. Gregory J. Chavarria Declaration, at ¶3. In describing the various components of the Project, Mr. Chavarria makes it very clear that, with the exception of where specific tasks were applied on a sample basis, for example, the "Five Tribe Pilot Project," *Id.* at ¶ 12, the Project's procedures and tasks were applied uniformly to the trust fund account transactions of all tribes, and the results of the Project were reported by AA in a uniform manner. *Id.* at ¶s 6-16. Mr. Chavarria's statements support my same conclusion that AA applied uniform procedures and reported results in a uniform manner.

6.      Mr. Chavarria does not dispute that, as I stated in my Declaration, "the BIA and AA jointly developed 'Agreed-Upon Procedures' that were intended to be applied consistently to the tribal trust fund account transactions of all tribes." Kevin W. Nunes Declaration, at ¶ 10( c ). In my opinion, the BIA and AA were able to develop uniform Project procedures that were intended to be applied in a uniform manner and that were in fact applied uniformly in a meaningful way, primarily because, as I stated in my Declaration, "the basic reporting by Defendants on tribal trust fund account transactions appears to be consistent for all tribes." Kevin W. Nunes Declaration, at 10(b). To elaborate on this point, it is my opinion that among tribal trust fund account transactions there is significant inherent typicality with respect to the underlying types of accounting and financial data, which could only result from the uniform application of practices and procedures regarding the keeping of account transaction data and records, the processing of account transactions, and the reporting of account transactions by Defendants. This opinion is consistent with another fact, undisputed by Mr. Chavarria, that "the tribal trust fund account manuals and handbooks developed by Defendants set forth uniform instructions for processing tribal trust fund account transactions for all tribes [and that] the basic reporting by Defendants on tribal trust fund account transactions

3

appears to be consistent for all tribes . . . ." Declaration of Kevin W. Nunes at ¶ 10(a) - (b). Indeed, Mr. Chavarria's opinion that "[t]hese [tribal] trust transactions are accounted for within the same accounting system and documentation for certain transactions is standardized," supports my conclusions. Declaration of Gregory J. Chavarria, at ¶ 18.

7.    As stated in my Declaration, it is my general conclusion that "from a fiduciary accounting perspective, and based upon what I know about the Agreed-Upon Procedures Project and other tribal trust fund account transaction materials that I have reviewed, the trust fund account transactions of the twelve named Plaintiffs are representative generally of the trust fund account transactions processed by Defendants for other tribes covered by the Project." Declaration of Kevin W. Nunes, at ¶ 9. In his Declaration, Mr. Chavarria points out that various tribes have different trust assets underlying their trust accounts, and that the trust income generated by different underlying trust assets may be subject to different accounting documentation and record keeping procedures and practices of Defendants. Declaration of Gregory J. Chavvaria, at ¶s 19 and 24. Regarding this point, I have observed that there are different ways that tribal trust fund account transactions are triggered and that there are differences in the level of trust account transaction activity among tribes, primarily due to the variety and amounts of trust assets underlying the tribes' trust fund accounts. It nevertheless is my opinion, based on the various tribal trust fund account manuals, procedures handbooks, and training manuals produced by Defendants since the late 1960s that I have reviewed, that from a fiduciary accounting perspective, Defendants' trust account transaction documentation, processing, and record keeping requirements were uniform to all tribes as to the various resources. Thus, for examples, transactions for trust fund accounts of tribes that are based on timber revenue were to be processed, documented, and reported by Defendants uniformly, and transactions for trust

4

accounts of tribes that are based on surface lease revenue were to be processed, documented, and reported by Defendants uniformly.

8.    It also is my general opinion that, from a fiduciary accounting perspective, Defendants' misperformance or non-performance of their fiduciary accounting transaction requirements impacted all tribes similarly. For example, in the same manner in which Defendants were in a fiduciary position with respect to the trust fund accounts of tribes, a bank may act as a fiduciary for multiple beneficiaries whose periodic revenue-generating activities differ in terms of dollar amount. Further, deposits to the bank made by the beneficiaries most likely derive from revenue that the beneficiaries amongst themselves generate from many different sources. But as a fiduciary, the bank records transactions, clears deposits, custodies funds, credits interest, and reports account balances in the same manner for all of its beneficiaries, regardless of the size of the beneficiaries, the dollar amounts they deposit, and the source of the revenue – and even if each beneficiary does not use all of the fiduciary services that the bank provides. If the bank as fiduciary fails to produce monthly account statements in a given month for whatever reason, all of the beneficiaries are impacted similarly by the bank's failure at least in the same threshold way. There simply is a level at which the differences among the beneficiaries' sizes, revenue deposit amounts, and underlying sources of revenue have no bearing on the indiscriminate impact of the bank's misconduct on the beneficiaries.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22nd , 2008 in Peabody, Massachusetts.

Kevin W. Nunes

State of  Massachusetts    )
                           ss.:
County of   Essex          )

Subscribed and sworn before me this  22nd  day of _____July_____, 2008.

Barbara R. Benjamin
Notary Public   Barbara R. Benjamin

_____October 31, 2014_____
My commission expires

6

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE NEZ PERCE TRIBE, *et al.,*        )
for and on behalf of themselves       )
all others similarly situated,        )
                                      )
                    Plaintiffs,       )        Case No. 06cv02239-JR
                                      )
        v.                            )
                                      )
DIRK KEMPTHORNE,                      )
SECRETARY OF THE INTERIOR, *et al.,*  )
                                      )
                    Defendants.       )
_____)

### Declaration of Thomas P. Schlosser

I, Thomas P. Schlosser, declare as follows:

1.      I am attorney of record for the Hoopa Valley Tribe in several pending matters in the Court of Federal Claims including *Short v. United States*, Civ. No. 63-CV-102; *Hoopa Valley Tribe v. United States*, Civ. No. 06-CV-00908-LMB; and *Hoopa Valley Tribe v. United States*, Civ. No. 08-CV-72.  I also represented the Tribe in the Interior Board of Indian Appeals matter in *Hoopa Valley Tribe v. Special Trustee for American Indians*, IBIA Dkt. No. 07-90-A. I have personal knowledge concerning the matters stated herein.

2.      I have reviewed Defendants' Opposition to Plaintiffs' Motion for Class Action Certification and Approval of Class Notice filed in this matter on July 14, 2008, and disagree with their characterization of the above actions.  For example, defendants' memorandum cites the above matters and contends that the Yurok Tribe and the Hoopa Valley Tribe "claim the right to distribution of the same settlement fund."  Opp. at 31-32.  In reality, the Yurok Tribe is not a party to any of the above listed actions and has sought no relief there. Also, in none of

those matters did the Hoopa Valley Tribe seek distribution of a settlement fund. Furthermore, in my opinion, any conflict between the Hoopa Valley Tribe and the Yurok Tribe does not relate to the subject matter of the request for declaratory judgment in this case.

3.    Because of the Hoopa Valley Tribe's pending trust accounting and trust mismanagement case in the Court of Federal Claims, *Hoopa Valley Tribe v. United States*, Civ. No. 06-CV-00908-LMB, the Hoopa Valley Tribe will not participate as a party in this case. If this case is certified as a class action that requires non-participating tribes to opt out, I believe the Hoopa Valley Tribe will take action to opt out of the class.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  July 21, 2008.

Thomas P. Schlosser
Morisset, Schlosser, Jozwiak & McGaw
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Tel:    (206) 386-5200
Fax:    (206) 386-7322
t.schlosser@msaj.com

T:\WPDOCS\0020\09685\pleadings\TPSDecl071708_02.doc
nmc:7/18/08

2