# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NEZ PERCE TRIBE, *et al.,*  )
for and on behalf of themselves  )
all others similarly situated,  )
                                 )
               Plaintiffs,  )
                                 )
        v.  )     Case No. 06cv02239-JR
                                 )
                                 )     **Electronically Filed on**
DIRK KEMPTHORNE,  )     **August 8, 2008**
SECRETARY OF THE INTERIOR, *et al.,*  )
                                 )
           Defendants.  )
_____)

## PLAINTIFFS' MOTION FOR LEAVE FOR PLAINTIFFS' COUNSEL TO SEND COURT-APPROVED NOTICE TO MEMBERS OF THE PUTATIVE CLASS OF PLAINTIFFS, AND FOR MEMBERS OF THE PUTATIVE CLASS TO HAVE AN OPPORTUNITY FOR PERMISSIVE JOINDER AS PLAINTIFFS BEFORE A RULING ON CLASS ACTION CERTIFICATION

Pursuant to Fed. R. Civ. P. 23(d) and LCvR 7, Plaintiffs respectfully move this Court for an Order granting leave for Plaintiffs' counsel, the Native American Rights Fund, to send a Court-Approved Notice to members of the putative class of plaintiffs, and for members of the putative class to have an opportunity for permissive joinder under Fed. R. Civ. P. 20(a)(1) as plaintiffs in this action before the Court rules on Plaintiffs' pending motion for class action certification. The Notice generally would inform the putative class members of the status of this action and Plaintiffs' class certification motion following the oral argument on that motion, which was held on July 24, 2008, and of their options for protecting their interests. The points and authorities in support of this Motion are set forth in the supporting Memorandum submitted herewith, along with a Proposed

Notice for the Court's approval.  Pursuant to LCvR 7( c ), a Proposed Order also is submitted herewith this Motion.  Pursuant to LCvR 7(f), Plaintiffs request oral argument on this Motion.

Pursuant to LCvR 7(m), counsel for Plaintiffs states that on August 4 and 8, 2008, she discussed this Motion with counsel for Defendants, and is authorized to state that Defendants oppose the Motion.

DATED this 8th day of August, 2008

Respectfully submitted,

/s/     Melody L. McCoy
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of August, 2008, a true and correct copy of the foregoing PLAINTIFFS' MOTION FOR LEAVE FOR PLAINTIFFS' COUNSEL TO SEND COURT-APPROVED NOTICE TO MEMBERS OF THE PUTATIVE CLASS OF PLAINTIFFS, AND FOR MEMBERS OF THE PUTATIVE CLASS TO HAVE AN OPPORTUNITY FOR PERMISSIVE JOINDER AS PLAINTIFFS BEFORE A RULING ON CLASS ACTION CERTIFICATION; PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE FOR PLAINTIFFS' COUNSEL TO SEND COURT-APPROVED NOTICE TO MEMBERS OF THE PUTATIVE CLASS OF PLAINTIFFS, AND FOR MEMBERS OF THE PUTATIVE CLASS TO HAVE AN OPPORTUNITY FOR PERMISSIVE JOINDER AS PLAINTIFFS BEFORE A RULING ON CLASS ACTION CERTIFICATION; [PROPOSED] COURT-APPROVED NOTICE TO MEMBERS OF THE PUTATIVE CLASS; and, [PROPOSED] ORDER was served by Electronic Case Filing or by regular first class U.S. mail, postage pre-paid, on the following counsel:


E. KENNETH STEGEBY
ANTHONY P. HOANG
KEVIN J. LARSEN
MAUREEN RUDOLPH
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663
Tel (202) 616-4119
Tel (202) 305-0241
Tel (202) 305-0479
Fax (202) 353-2021


JOHN H. MARTIN
U.S. Department of Justice
Natural Resources Section
1961 Stout St., Eighth Floor
Denver, CO 80294
john.h.martin@usdoj.gov
Tel: (303) 844-1383
Fax (303) 844-1350


Attorneys for Defendants

3

OF COUNSEL:

PAUL SMYTH
ELISABETH BRANDON
THOMAS BARTMAN
GLADYS I. COHOCARI
SHANI N. WALKER
Office of the Solicitor
U.S. Department of the Interior
Washington, DC 20240


TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
U.S. Department of the Treasury
Washington, DC 20227

_/s/    Melody L. McCoy_____
MELODY L. MCCOY, USDC Bar. No. CO0043
Attorney for Plaintiffs

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, *et al.,* | ) | |
| for and on behalf of themselves | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06cv02239-JR |
| | ) | |
| | ) | **Electronically filed on** |
| DIRK KEMPTHORNE, | ) | **August 8, 2008** |
| SECRETARY OF THE INTERIOR, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
LEAVE FOR PLAINTIFFS' COUNSEL TO SEND COURT-APPROVED NOTICE
TO MEMBERS OF THE PUTATIVE CLASS OF PLAINTIFFS, AND FOR MEMBERS
OF THE PUTATIVE CLASS TO HAVE AN OPPORTUNITY FOR PERMISSIVE
JOINDER AS PLAINTIFFS BEFORE A RULING ON CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **I.**    **THIS COURT MAY AND SHOULD PERMIT NOTICE BY PLAINTIFFS'**
         **COUNSEL TO THE PUTATIVE CLASS AT THE PRE-CERTIFICATION**
         **STAGE OF THIS LITIGATION UNDER RULE 23(d)(2)** . . . . . . . . . . . . . 5

         **A.**    **The Grounds For Such Notice In this Case Are Sufficient** . . . . . . . . 5

         **B.**    **Plaintiffs' Proposed Notice** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    **II.**    **AN OPPORTUNITY FOR MEMBERS OF THE PUTATIVE CLASS TO**
         **PERMISSIVELY JOIN THIS ACTION AS PLAINTIFFS AT THE PRE-**
         **CERTIFICATION STAGE IS APPROPRIATE** . . . . . . . . . . . . . . . . . . . . . . 15

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**ATTACHMENT**: *Tentative Agenda, ITMA 16th Annual Membership Conference*, October 25-27, 2006 (Oct. 23, 2006)

**TABLE OF AUTHORITIES**

**CASES**

*Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n,*
    136 F.R.D. 372 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Doe v. Lexington-Fayette Urban Cnty Gov.*, 407 F.3d 755 (6th Cir. 2005) . . . . . . . . . . . . . . . . 8

*Edwards v. Accredited Home Lenders, Inc.,* 2008 WL 1756364 (S.D. Ala. Apr. 11, 2008) . . . . 7

*Frye v. Baptist Mem'l Hosp., Inc.*, 2008 WL 2117264 (W.D. Tenn. May 20, 2008) **. . . . . .** 6, 7

*Griffith v. Javitch, Block & Rathbone, LLP*, 241 F.R.D. 600 (S.D. Ohio 2007) . . . . . . . . . 11-12

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hardy v. Vought Corp.*, 1979 WL 117 (N.D. Tex. Apr. 2, 1979) . . . . . . . . . . . . . . . . . . . . . . . 12

*Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Elscint, Ltd. Sec. Lit.*, 674 F.Supp. 374 (D. Mass. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Casey's Gen. Stores,* 517 F.Supp.2d 1080 (S.D. Iowa 2007) . . . . . . . . . . . . . . . . . . . 13

*Jones v. Jeld-Wen, Inc.,* 2008 WL 2058517 (S.D. Fla. May 9, 2008) . . . . . . . . . . . . . . . . . . . . 8

*Laventhall v. General Dynamics Corp.*, 91 F.R.D. 208 (E.D. Mo. 1981),
    *aff'd*, 704 F.2d 407 (8th Cir. 1983), *cert. denied*, 464 U.S. 846 (1983) . . . . . . . . . . 8, 9, 12

*Leist v. Tamco Ent., Inc.*, 1984 WL 2425 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maddox v. Knowledge Learning Corp,* 499 F.Supp.2d 1338 (N.D. Ga. 2007) . . . . . . . . . . . . 6, 7

*M.K. v. Tenet*, 216 F.R.D. 133 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pennsylvania Nurses' Ass'n v. Pennsylvania,* 1987 WL 109018 (M.D. Pa. Oct. 1, 1987) . . . . . 8

*Pigford v. Glickman,* 182 F.R.D. 341 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ross v. Warner*, 80 F.R.D. 88 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Shannon v. Hess Oil Virgin Islands Corp.,* 100 F.R.D. 327 (D. Virgin Islands 1983) . . . . . . . . 16

*Twelve John Does v. District of Columbia,* 117 F.3d 571 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . 7

*Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.,*
    1994 WL 48794 (S.D.N.Y. Feb. 14, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


## STATUTES

25 U.S.C. § 4044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 100-202, 101 Stat. 1329 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 103-332, 108 Stat. 2499 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 107-153, 116 Stat. 79 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 109-54, 119 Stat. 499 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 109-158, 119 Stat. 2954 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


## LEGISLATIVE MATERIALS

S. Rep. 107-138 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

S. Rep. 109-201 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


## ADMINISTRATIVE MATERIALS

U.S. Department of the Interior, Bureau Highlights - Departmental Offices, BH-93,
    http://www.doi.gov/budget/2009/09Hilites/BH089.pdf . . . . . . . . . . . . . . . . . . . . . . . . . 12

# COURT RULES

Fed. R. Civ. P. 20(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

Fed. R. Civ. P. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

Fed. R. Civ. P. 23(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Local Civil Rule 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# TREATISES, ARTICLES, & OTHER MATERIALS

Alba Conte & Herbert Newberg, Newberg on Class Actions (4th ed. 2002) . . . . . . . . . . . . *passim*

Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,
    Federal Practice and Procedure (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Brad W. Gary, *Nez Perce Join Suit Calling for Audit of Trusts* . . . . . . . . . . . . . . . . . . . . . . . . 11

Tanya Lee, *Washington: Native American Rights Fund Files Lawsuit to Protect Tribes' Trust*
    *Fund Rights,* Targeted News Service, Jan. 16, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Alicia P.Q. Whittmeyer, *Tribes Sue Federal Government, Alleging Poor Trust Fund*
    *Mismanagement,* Associated Press State & Local Wire, Jan. 12, 2007 . . . . . . . . . . . . . 11

*Government Faces New Indian Suit over Interior Custody of Trust Funds,* Inside Energy with
    Federal Lands, Jan. 8, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tribes File Class Action Trust Accounting Lawsuit,* (Jan. 4, 2007),
    http://www.indianz.com/News/2007/0107502.asp . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tribes Turn to Court over Trust-Fund 'Mismanagement,'* 13 Native American Times, Jan. 12,
    2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*11 Tribes Claim Federal Government has Mismanaged Indian Accounts,* Lewiston Morning
    Tribune, Jan. 4, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Tentative Agenda, ITMA 16th Annual Membership Conference*,
October 25-27, 2006 (Oct. 23, 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(d) and LCvR 7, Plaintiffs have moved this Court for an Order granting leave for Plaintiffs' counsel to send court-approved notice to members of the putative class of plaintiffs and for an opportunity for members of the putative class to join this action as plaintiffs before the Court rules on Plaintiffs' pending motion for class certification. The Notice generally would inform the putative class members of the status of this action and Plaintiffs' class certification motion following the oral argument on the motion, which was held on July 24, 2008, and of their options for protecting their interests. Upon the sending of Notice, Plaintiffs propose that members of the putative class have sixty (60) days to permissively join this action as plaintiffs before the Court rules on class certification. The points and authorities in support of this Motion are as follows.

**STATEMENT OF THE CASE**

The Complaint in this action was filed on December 28, 2006 (Doc. # 1), and a First Amended Complaint was filed on April 2, 2007. (Doc. # 27). The action was filed by twelve named plaintiffs who are American Indian / Alaska Native Tribes, and it was filed as a class action under Fed. R. Civ. P. 23. *See* First Amended Complaint at ¶s 59-69 (Doc. # 27). The named plaintiff Tribes are among the hundreds of trust fund account beneficiaries for whom Defendants are the trustee. *See* Answer to First Amended Complaint at ¶s 2, 21, & 22 (Doc. # 28); *see also* Attachments to Letter from Sue Ellen Sloca, FOIA Officer, Office of the Secretary,

1

to Donald R. Wharton, Senior Attorney, Native American Rights Fund (Jan. 16, 2007), submitted as Attachment KK to Plaintiffs' Memorandum in Support of their Motion for Class Action Certification (Doc. # 57) ("Account Holders Distribution List" contains the names of 310 American Indian / Alaska Native Tribes "with tribal trust funds accounts at the Department of the Interior who received "Arthur Andersen" reconciliation reports in 1996 and 1997.").

Part of the relief Plaintiffs seek in this breach of trust action is a declaratory judgment that the Arthur Andersen (AA) Agreed-Upon Procedures Reports prepared by Defendants' contractor, AA, and sent by Defendants to all trust fund account holders in 1996-97 are not the "full and complete accountings" required by law. *See* First Amended Complaint at ¶s 70-73 (Doc. # 27); *Cobell v. Norton*, 240 F.3d 1081, 1102-04 (D.C. Cir. 2001); Pub. L. No. 100-202, 101 Stat. 1329 (1987); Pub. L. No. 103-332, 108 Stat. 2499 (1994); 25 U.S.C. § 4044.

The general statute of limitations for claims against the government provides in relevant part that civil actions against the government shall be barred unless filed within six years after the right of action first accrues. 28 U.S.C. § 2401(a). Congress has specifically addressed the accrual of tribal trust fund claims as being contingent on the provision of a requisite accounting. *See, e.g.*, Pub. L. No. 109-54, 119 Stat. 499 (2005) ("notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim . . . concerning losses to or mismanagement of trust funds, until the affected tribe . . . has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss.").

Separately, and additionally, Congress has acknowledged the unique claims accrual situation faced by tribes in the wake of the AA reports. *See* Pub. L. No. 107-153, 116 Stat. 79

2

(2002) ("To Encourage the Negotiated Settlement of Tribal Claims") (providing, *inter alia,* that, "[n]otwithstanding any other provision of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying a statute of limitations, any such report provided to or received by an Indian tribe in response to section 304 of the American Indian Trust Fund Management Report Act of 1994 (25 U.S.C. 4044) shall be deemed to have been received by the Indian tribe on December 31, 1999.").

In 2005, Congress amended the AA legislation to provide that the AA reports shall be deemed to have been received on December 31, 2000.  Pub. L. No. 109-158, 119 Stat. 2954 (2005).  The legislative history states that the purpose of the AA legislation  "is to address the possibility that the statute of limitations is running or has run on legal claims that Indian tribal governments may assert against the United States related to the management of tribal funds that are held in trust by the United States, as a result of reconciliation reports provided to the tribes by the Department of the Interior in response to Section 304 of the American Indian Trust Fund Management Reform Act of 1994 . . . ."  S. Rep. 107-138 at 1 (2002); *accord* S. Rep. 109-201 at 1 (2005).  Without further amendment of this legislation, this action was filed on December 28, 2006.[1]

On June 6, 2008, Plaintiffs moved for class action certification.  (Doc. # 53).  In general, Plaintiffs sought certification of a plaintiff class consisting of tribal trust fund account holders

---

[1]  Plaintiffs' position is that this action was filed timely and that none of the claims raised are time-barred by any applicable statute of limitations.  Assuming *arguendo,* however, that there are issues about timeliness, Plaintiffs expressly do not concede or waive in or by this Motion and Memorandum or otherwise any arguments or defenses that they may have regarding such issues.

3

who received or were eligible to receive AA reports from Defendants; have not received full and complete accountings of their trust funds; and, did not have their own actions for full and complete accountings pending as of December 31, 2006.  *See* Plaintiffs' Motion for Class Action Certification (Doc. # 53).  Due to the exclusively declaratory and injunctive relief requested, certification was sought primarily under Fed. R. Civ. P. 23(b)(2), and due to the sovereignty of tribes, discretionary notice and opt-out rights for the class were sought under Fed. R. Civ. P. 23(d).  *Id.*  Plaintiffs' best estimate of the number of potential class members, including themselves, was 260.  *See* Plaintiffs' Memorandum in Support of their Motion for Class Action Certification, at 32 (Doc. # 57).

Following the filing of Defendants' Opposition (Doc. # 64) and Plaintiffs' Reply (Doc. # 70), oral argument on Plaintiffs' class certification motion was held on July 24, 2008 (Doc. # 69). At the conclusion of oral argument, the Court stated:

> On the class certification motion, I'm going to – I'm not going to deny it but I'm not going to grant it at this time.  I am very interested in, and frankly troubled by, the sovereignty issue, which is a very precise and delicate issue. . . .
>
> And I think the sovereign nation issue, as technical as it is – and it is quite technical – may be dispositve.  But even if it were not, I have yet to sort through the question of where you go with a class certification motion if you can't get much past the question of whether the government has provided an adequate accounting when it has issued these TRP reports.  I mean, once you get past that, you are into individual tribe-by-tribe accounting, and I'm not sure that a class action helps that problem at all, and I think it may exacerbate it.
>
> And so I'm not granting it.  I suppose for docket clarity I should deny it, but if I denied it, it would be without prejudice, because I think I can see a situation or two in which class certification might make some sense.
>
> But I really would suggest to the Native American Rights Fund that the much

simpler way of resolving this matter is to get in touch with those tribes that need representation and say, we'll take you on, we'll do it. Because that's what they're offering to do with a class certification motion anyway.

Transcript of Motions Hearing, at pp. 103-104 (July 24, 2008) (Doc. # 72); *see also* Minute Order

(July 25, 2008) ("Motion to certify class . . . submitted and taken under advisement.").

**ARGUMENT**

**I.    THIS COURT MAY AND SHOULD PERMIT NOTICE BY PLAINTIFFS' COUNSEL TO THE PUTATIVE CLASS AT THE PRE-CERTIFICATION STAGE OF THIS LITIGATION UNDER RULE 23(d)(2)**

**A.    The Grounds For Such Notice In This Case Are Sufficient**

Since Plaintiffs' class certification motion is pending, this case is at the "pre-certification

stage." In the pre-certification stage, communications generally by class counsel with putative

class members are permitted "for several reasons, such as the following:

(1)    the filing of a class complaint tolls the statute of limitations, and this information would be of value to class members who may be uncertain how they may preserve their claims;

(2)    in protracted litigation, when the court does not reach an early determination of the class issues, the class attorney may wish to notify absent class members, who may have learned of the action through attendant publicity, of the status of the litigation;

(3)    because absent class members need not enter an appearance or intervene in the action, they are entitled to rely on the class action attorney to prosecute the litigation on their behalf; and

(4)    communications with absent class members are appropriate as long as they are not considered abusive within the guidelines created by *Gulf Oil Co. v. Bernard.*"

5 Alba Conte & Herbert Newberg, Newberg on Class Actions § 15:12 (4th ed. 2002).

5

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), holds that neither the parties nor their counsel are required generally to obtain court approval before communicating with putative class members in a pre-certification context, except as needed to prevent serious misconduct such as false, misleading, or improper statements. 452 U.S. at 94-95. Under this authority, Plaintiffs' counsel at this time, subject to the *Gulf Oil Co. v. Bernard* guidelines, could contact members of the putative class regarding the status of and other information about this action. "[M]ost lawyer communications with [putative] class members, except those specifically proscribed by general ethical guidelines or court order, are presumptively proper." 5 Newberg on Class Actions § 15:9; *see also Frye v. Baptist Mem'l Hosp., Inc*., 2008 WL 2117264, at *4 (W.D. Tenn. May 20, 2008) (courts should generally allow pre-notice communications by class counsel with putative class members but "actively limit" false, misleading, or inaccurate statements in such communications).

In this instance, however, and especially in light of this Court's stated inclination to deny class certification and the Court's suggestions that Plaintiffs' counsel contact members of the putative class and that putative class members be allowed to join the action, Plaintiffs submit that, while it is not necessarily required, it is in the best interests of all involved for initial contact by Plaintiffs' counsel with putative class members to be done by way of court-approved notice. *See Hoffmann-LaRoche Inc. v. Sperling,* 493 U.S. 165, 171 (1989) ("By monitoring preparation and distribution of the notice, the court can ensure that it is timely, accurate, and informative."); *compare Maddox v. Knowledge Learning Corp,* 499 F.Supp.2d, 1338, 1344 (N.D. Ga. 2007) (discussing FLSA actions, where plaintiffs are not required generally to rely on court-facilitated notice to notify putative class members of action). Appropriate involvement of the court at the

6

outset of pre-certification communications, including notice, by class counsel with putative class members generally eliminates lingering or potential concerns. *See* 5 Newberg on Class Actions § 15:5, *citing Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C. Cir. 1997) and *Pigford v. Glickman,* 182 F.R.D. 341, 350 (D.D.C. 1998); *see also Maddox v. Knowledge Learning Corp*., 499 F.Supp.2d at 1342 (in some jurisdictions, local rules regulate communications by parties and their counsel with putative class members, including by means of court orders). In this case, court approval is particularly appropriate because, as discussed below, Plaintiffs' proposed Notice would inform the putative class members of the Court's suggestions that they be contacted by Plaintiffs' counsel, and that they have an opportunity to permissively join this action before the Court rules on class certification. *See Frye v. Baptist Mem. Hosp., Inc.,* 2008 WL 2117264, at *4-5 (discussing cases where class counsel via website improperly solicited putative members of FLSA collective actions).

Pre-certification court-approved notice typically is given under what is now Fed. R. Civ. P. 23(d)(1)(B) (formerly Rule 23(d)(2), *see Edwards v. Accredited Home Lenders, Inc.,* 2008 WL 1756364, at *2 n.1 (S.D. Ala. Apr. 11, 2008) ). This section states:

> In conducting an action under this rule, the court may issue orders that: . . . (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims and defenses, or otherwise to come into the action . . . .

Rule 23(d)(1)(B).

Rule 23(d)(1)(B) "serves as a catch-all provision in the class action rule, codifying the

inherent judicial power to give notice to class members other than the named parties when the

circumstances warrant it." 3 Newberg on Class Actions § 8:15. Notice under Rule 23(d) "serves

as a management tool throughout the litigation, as well as a means for bolstering due process

protections for absent class members, in appropriate circumstances." *Id.* (footnote omitted). "This

flexible, yet non-mandatory, notice provision . . .is constitutional on due process grounds." *Id.*

One district court recently has stated aptly that Rule 23(d) helps courts "preserve the integrity of

the class action" because it

> provides the Court with the authority to issue orders to protect class members,
> impose conditions on the representative parties, and deal with similar procedural
> matters. The Court's discretion, however, is not unlimited. The authority provided
> to the Court by Rule 23(d) to exercise control over a class action must, instead, be
> exercised within the boundaries of the Supreme Court case of *Gulf Oil, supra.*

*Jones v. Jeld-Wen, Inc.,* 2008 WL 2058517, at * 6 (S.D. Fla. May 9, 2008) (citation omitted).

Importantly, Rule 23(d) expressly makes discretionary notice available at any stage of

litigation. "Because of the inherent discretion in the rule, Rule 23(d) . . . notice can precede the

class ruling." 3 Newberg on Class Actions § 8:16 (footnote omitted). Thus, Rule 23(d) notice

may be given to a pre-certification class facing dismissal. *Laventhall v. General Dynamics*

*Corp.*, 91 F.R.D. 208, 210 (E.D. Mo. 1981), *aff'd*, 704 F.2d 407 (8th Cir. 1983), *cert. denied*, 464

U.S. 846 (1983).[2] Rule 23(d) notice also may be given "when a class definition is narrowed prior

---

[2]  Some jurisdictions interpret Fed. R. Civ. P. 23(e) to apply to putative classes, and thus
give notice of dismissal at the pre-certification stage under Rule 23(e). *See Doe v. Lexington-*
*Fayette Urban Cnty Gov.*, 407 F.3d 755, 761 (6th Cir. 2005); *see also Pennsylvania Nurses'*
*Ass'n v. Pennsylvania,* 1987 WL 109018, at *2 (M.D. Pa. Oct. 1, 1987) (discussing rule in Third
and Fourth Federal Appeals Courts Circuits).

to certification." *Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.,* 1994 WL 48794, at *1 (S.D.N.Y. Feb. 14, 1994); *accord  Ross v. Warner*, 80 F.R.D. 88, 90-92 (S.D.N.Y. 1978).

Rule 23(d) notice at the pre-certification stage is appropriate "where the facts of the case show that lack of notice would unduly prejudice the ability of absent class members to bring independent actions on their claims, either by limiting the right of absent class members to recover in a subsequent suit, or by encouraging continued reliance by unnamed class members on the activity of named class members on their behalf." *Laventhall v. General Dynamics Corp.*, 91 F.R.D. at 210. Thus, where putative class members are facing exclusion due to a pre-certification narrowing of class definition, they need to be made aware of such impending exclusion because of potential prejudice to them, which is to say that they may be harmed by reliance on the class action. *Wertheim Schroder & Co. Inc. v. Avon Prod., Inc.*, 1994 WL 48794, at *2; *see also  In re Elscint, Ltd. Sec. Lit.*, 674 F.Supp. 374, 376 (D. Mass. 1987) (putative class members clearly have an interest in a lawsuit at the pre-certification stage where a court has expressed a tentative conclusion that plaintiffs are not entitled to class certification).

A leading example of Rule 23(d)(2) pre-certification discretionary notice is *Ross v. Warner*, *supra.* There, in the pre-certification stage, the court was considering a proposed amendment to a complaint that would have "drastically contracted" the proposed class definition by about 90 %. 80 F.R.D. at 91. The court granted the motion to amend conditioned upon giving notice under Rule 23(d) to the persons (over 900,000 individuals) who would be excluded from the proposed class under the amended complaint. *Id.* at 90. The court was of the view that equitable considerations called for discretionary notice to inform the putative class members who

9

may have refrained from pursuing their own actions in reliance on the class action, and whose claims might be barred by the statute of limitations by the amendment. *Id.* at 91.

Notice was appropriate in *Ross v. Warner* even though the action had been pending less than one year and there had been no prior formal notice of the action. 80 F.R.D. at 91. The court reasoned that the about-to-be-excluded proposed class members nevertheless likely were aware of the action due to the seriousness of the claims (alleged securities regulations and common law violations by a huge corporation) as well as the national media publicity surrounding the case. *Id.; accord Leist v. Tamco Ent., Inc.*, 1984 WL 2425, at *7 (S.D.N.Y. 1984) ("fact that none of the class membership were yet given court-authorized notice of the action or that the class was not defined in the [newspaper] articles" does not defeat findings of reliance on class action publicity by putative class members and prejudice to them). "Equity dictates that these possible litigants not forfeit their rights for lack of knowledge that they are once again on their own." *Ross v. Warner*, 80 F.R.D. at 91. "It is the Court's conclusion that some form of notice must be given to the abandoned class" under Rule 23(d). *Id.* at 91-92. "The class currently consists of nearly one million members: the protection of their rights is the responsibility of this Court." *Id.* at 92.

*Ross v. Warner* is strikingly similar to the instant case. *Ross v. Warner* was a securities fraud case against a very large public utility company; this is a breach of trust action against the federal government. The class in *Ross v. Warner* was being narrowed by 90%; here, if class certification is denied, the remaining 12 named plaintiffs are about 5% of the potential class of 260 tribes. *Ross v. Warner* had been pending for less than one year; this action has been pending for just over one and one-half years.

10

Most importantly, a significant factor in *Ross v. Warner* was the publicity of the case on which the putative class members likely relied, perhaps ultimately to their detriment in terms of the statute of limitations.  The publicity surrounding the instant case similarly has impacted putative class members.  In October, 2006, the planned filing of this case as a class action was reported on by Plaintiffs' counsel at the invitation of the Inter-Tribal Monitoring Association (ITMA), which is a consortium of 65 tribes, at ITMA's Annual Conference.[3]  *See Tentative Agenda, ITMA 16th Annual Membership Conference*, October 25-27, 2006 (Oct. 23, 2006)*,* attached hereto.  Since that time, a host of national and regional newspapers, news wire services, online news databases, and other media and publications have reported this action as being what it was filed as:  a class action on behalf of all tribes with trust funds that have not filed their own breach of trust actions.  *See, e.g., Tribes File Trust Funds Mismanagement Lawsuit Against Federal Government,* Targeted News Service (Dec. 28, 2008)[4]; *see also Griffith v. Javitch, Block*

---

[3]  Defendants already have admitted the significant pre-filing awareness of this action. *See* Defendants' Opposition to Plaintiffs' Motion for Class Action Certification at 12 and 19 (Doc. # 64) (citing a letter from Ernest Stensgar, President, Affiliated Tribes of Northwest Indians to John E. Echohawk, Executive Director, NARF, dated December 20, 2006).

[4]  *See also Tribes File Class Action Trust Accounting Lawsuit,* (Jan. 4, 2007), http://www.indianz.com/News/2007/0107502.asp; Brad W. Gary, *Nez Perce Join Suit Calling for Audit of Trusts; 11 Tribes Claim Federal Government has Mismanaged Indian Accounts,* Lewiston Morning Tribune, Jan. 4, 2007; *Government Faces New Indian Suit over Interior Custody of Trust Funds,* Inside Energy with Federal Lands, Jan. 8, 2007, at 10; *Tribes Turn to Court over Trust-Fund 'Mismanagement,'* 13 Native American Times, Jan. 12, 2007, at 5; Alicia P.Q. Whittmeyer, *Tribes Sue Federal Government, Alleging Poor Trust Fund Mismanagement,* Associated Press State & Local Wire, Jan. 12, 2007; Tanya Lee, *Washington: Native American Rights Fund Files Lawsuit to Protect Tribes' Trust Fund Rights,* Targeted News Service, Jan. 16, 2007.

*& Rathbone, LLP*, 241 F.R.D. 600, 602 (S.D. Ohio 2007) (discussing case where putative class members' reliance was objectively established in case receiving widespread publicity); *compare Laventhall v. General Dynamics Corp.*, 91 F.R.D. at 211 (finding no reliance by absent class members in case of minimal publicity).  Plaintiffs' counsel and the proposed class representatives have continued to report on the status of the action at several national and regional conferences and meetings.  *See Hardy v. Vought Corp.*, 1979 WL 117, at *3 (N.D. Tex. Apr. 2, 1979) ( absent class members can become aware of class proceedings through contact with class representatives).[5]  Defendants themselves made this action quite public when they noted it in President Bush's FY 2009 Budget Request to Congress.  *See* U.S. Department of the Interior, Bureau Highlights - Departmental Offices, BH-93, http://www.doi.gov/budget/2009/09Hilites/BH089.pdf (requesting $181.6 million for FY 2009 for the Office of the Special Trustee for American Indians, including $16.4 million for "analysis" of tribal trust fund claims, "including a class action case seeking certification of a class of over 250 Tribes.").

**B.    Plaintiffs' Proposed Notice**

With their Motion, Plaintiffs submit a Proposed Notice for the Court's approval.  Rule 23(d) does not specify the requirements of form or content of notice given under Rule 23(d).  "Therefore, practitioners and the court must fashion appropriate notice when it becomes clear that

---

[5]  Pre-certification communications with putative class members by proposed named representatives, are not, of course, subject to the same concerns as pre-certification communications with putative class members by class counsel.  *See* 5 Newberg on Class Actions § 15:13.

[such] notice to the class is needed." 3 Newberg on Class Actions § 8:15.  In general, notice under Rule 23(d) is intended to be "less rigid," more "informal," and more simplified than mandatory notice under Fed. R. Civ. P. 23(b)(3), although it must meet minimum requirements of due process and be "submitted to the court for approval." *Id.* (footnote omitted).

Plaintiffs' Proposed Notice provides a "*factual, accurate, and balanced* outline of the proceedings to date." *Jones v. Casey's Gen. Stores,* 517 F.Supp.2d 1080, 1089 (S.D. Iowa 2007) (emphasis added).  The information includes: a brief description, such as that provided in the Statement of the Case in this Memorandum, of the trusteeship of the federal government for tribal trust funds, the provision of the AA reports, the general six-year statute of limitations, and Congress' two special laws addressing the accrual of tribal trust claims; the filing of this action; the relief sought in this action; the filing of Defendants' Answer denying liability and raising other defenses; the filing of Defendants' motion to dismiss and the pending status of that motion; the filing of Plaintiffs' class certification motion and the pending status of that motion; and, the Court's inclination as expressed at oral argument to deny class certification, as well as the Court's suggestions that Plaintiffs' counsel contact members of the putative class and that the members be permitted an opportunity to permissively join the action as plaintiffs before the Court rules on class certification.

The Notice further informs putative class members that they are not required to join this action but that they may seek to join the action under Fed. R. Civ. P. 20(a)(1) (Permissive Joinder of Plaintiffs) within 60 days of the Notice's date, during which time the Court will not rule on class certification.  The Notice states that if they are interested in joining the action, they may

13

contact Plaintiffs' counsel (NARF) or they may contact counsel of their own choice.  The Notice states that once the Court rules on class certification, they likely will have a very limited opportunity to attempt to intervene in this action, or to file their own independent actions, or they may risk their claims being time-barred by possibly applicable statutes of limitations.  As noted below, the Notice will provide a dedicated toll-free telephone line and a dedicated email address maintained by Plaintiffs' counsel for receipt only of general inquiries in response to the Notice. Plaintiffs' counsel will log and respond to such inquiries on an instance-by-instance basis under appropriate guidelines as established by the Court.

Given that all putative class members in the instant action are readily identifiable, Plaintiffs propose that their counsel simply send copies of the Notice by regular mail, and by email where readily available, individually to all 310 account holders on the Account Holders Distribution List  within 14 days of an Order by this Court granting this Motion.

Plaintiffs will bear the cost of the initial mailing of the Notice.  Plaintiffs also will establish a designated toll-free telephone number for Notice-related inquiries where voice-mails can be left and calls returned if necessary.  Plaintiffs also are willing to establish a similar dedicated email address, and if necessary, a dedicated Post Office Box.  Plaintiffs already have established a dedicated website for this lawsuit, www.tribaltrust.com.  A copy of the court-approved Notice will be posted on the website.  Upon the sending of Notice, Plaintiffs propose that members of the putative class have sixty (60) days to permissively join this action as plaintiffs before the Court rules on class certification.

14

II.    **AN OPPORTUNITY FOR MEMBERS OF THE PUTATIVE CLASS TO PERMISSIVELY JOIN THIS ACTION AS PLAINTIFFS AT THE PRE-CERTIFICATION STAGE IS APPROPRIATE**

At the conclusion of the oral argument on Plaintiffs' class certification motion, the Court stated its inclination to decline class certification, but did not rule on class certification -- it took the motion under advisement.  *See* Minute Order (July 25, 2008) ("Motion to certify class . . . submitted and taken under advisement.").  The Court also stated:

> But I really would suggest to the Native American Rights Fund that the much simpler way of resolving this matter is to get in touch with those tribes that need representation and say, we'll take you on, we'll do it.  Because that's what they're offering to do with a class certification motion anyway.

Transcript of Motions Hearing, at p. 104 (July 24, 2008) (Doc. # 72).  Plainly, the Court was suggesting that *before it rules on class certification*, Plaintiffs' counsel (NARF) should contact the members of the putative class, and that the putative class members should have an opportunity to permissively join the action as plaintiffs.

Permissive joinder of plaintiffs is provided for by Fed. R. Civ. P. 20(a)(1), which states, "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1652 (2008) (footnotes omitted); *accord M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("The purpose of

15

[Rule 20(a)(1)] is to promote trial convenience and expedite the final resolution of disputes.").

> Rule 20(a)
>
> establishes a procedure under which the demands of several parties arising out of the same litigable even may be tried together, thereby avoiding the unnecessary loss of time and money to the court and parties that the duplicate presentation of evidence relating to facts common to more than one demand for relief would entail. Thus, the rule permits the joinder of persons whose presence is procedurally convenient but is not regarded as essential to the court's complete disposition of any particular claim.

7 Federal Practice & Procedure § 1652 (footnotes omitted).  Joinder under Rule 20(a) is effectuated by motion "in the ususal manner and with notice to the other parties" under Fed. R. Civ. P. 21. 7 Federal Practice & Procedure § 1688 (footnote omitted).  Courts have the power and considerable discretion to order joinder under Rule 21 "on such terms as are just."  *Id.*, citing Rule 21.

The Court was correct to suggest joinder as an appropriate procedural device in this breach of trust action at this pre-certification stage.[6]  "Joinder of plaintiffs has been freely allowed in cases involving . . . beneficiaries in an action against a trustee for breach of a fiduciary duty."  7 Federal Practice & Procedure § 1656 (footnote omitted).  "Rule 21 specifically permits a change in parties "at any stage in the action."  *Id.* at § 1688 (footnote omitted); *see also Shannon v. Hess Oil Virgin Islands Corp.*, 100 F.RD. 327, 331 (D. Virgin Islands 1983) (citations omitted) ("given

---

[6] Once the court rules on class certification, if certification is denied and when that decision is final, putative class members have an opportunity to timely intervene in the action or file their own actions.  *See* 8 Newberg on Class Actions § 24:99; *see also* 5 Newberg on Class Actions § 16:11 (Intervention is liberally allowed after the denial of class status for the protection of absent class members interests.") (footnote omitted).

16

the pre-certification posture of this case, the present attempt at intervention is more akin to the effort to join co-plaintiffs . . . .").

There also is authority for the Court's suggestion of joinder as being a "much simpler way of resolving this matter" of multiple plaintiffs in this action. Transcript of Motions Hearing, at p. 104; *see Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n,* 136 F.R.D. 372, 378 (D. Del. 1991) (in questioning plaintiffs' view that class certification would best serve interests of judicial economy, court notes that on the facts of some cases, joinder may be a far simpler and less duplicative procedure). Accordingly, Plaintiffs suggest that, preceded by court-approved Notice from Plaintiffs' counsel in this case, as the Court suggested, the putative class members in this action be given an opportunity to permissively join the action as plaintiffs, as the Court suggested, before the Court rules on class certification.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Leave for Plaintiffs' Counsel to Send Court-Approved Notice to Members of the Putative Class of Plaintiffs and for Members of the Putative Class to Have an Opportunity to Permissively Join this Action as Plaintiffs before the Court Rules on Plaintiffs' Pending Motion for Class Certification should be granted.

DATED this 8th day of August, 2008

Respectfully submitted,

/s/    Melody L. McCoy
MELODY L. MCCOY, USDC Bar. No. CO0043
DONALD R. WHARTON
DAVID L. GOVER
DAWN S. BAUM
MARK C. TILDEN
JOHN E. ECHOHAWK
WALTER R. ECHO-HAWK, JR.
Native American Rights Fund
1506 Broadway
Boulder, CO 80302
Tel (303) 447-8760
Fax (303) 443-7776
E-mail mmccoy@narf.org

Attorneys for Plaintiffs

18

**INTERTRIBAL MONITORING ASSOCIATION on Indian Trust Funds**
**Phone: 505/247-1447   Fax: 505/247-1449   e-mail: itma@itmatrustfunds.org**

# TENTATIVE AGENDA

# ITMA 16th ANNUAL MEMBERSHIP CONFERENCE

### "Trust Reform by Preserving, Protecting and Enhancing Federal Fiduciary Trust Responsibilities"

~

### OCTOBER 25-27, 2006
### Golden Nugget Hotel & Casino
### Las Vegas, NV

---

# WEDNESDAY – October 25, 2006

*Room: Belair Ballroom*          *8:30 a.m.*          *CONTINENTAL BREAKFAST*

**9:00 a.m.**   CALL TO ORDER & WELCOMING.............……………......**Honorable Chief Jim Gray**
**Chief Osage Tribe & ITMA Chairman**

INVOCATION…..............................................**Honorable Governor Roland Johnson**
**Laguna Pueblo**

ROLL CALL / INTRODUCTIONS...........................…......**ITMA Secretary Scott Russell**
**Tribal Council, Crow Tribe**

**CHAIRMAN'S REMARKS ON TRUST REFORM**
An observation of where trust reform has gone during his three-year tenure as ITMA's Board of Directors, Chief Jim Gray will provide an overview.
.............................................................**Honorable Chief Jim Gray**
**Osage Tribe & ITMA Chairman**

**OVERVIEW OF FY'06 ANNUAL CONFERENCE & 2006 ITMA ACTIVITIES**
An overview of ITMA's projects and activities regarding trust related issues that ITMA has been at the forefront of during FY 2006. Explanation of the process for ensuring tribal participation in Association trust-related goals and objectives as established by the membership.
...................................................................…....**Mary Zuni-Chalan**
**ITMA Executive Director**

**10:00 a.m. ITMA TRUST MONITORING REPORT**
To ensure that ITMA meets its commitment to 'monitor' the activities of the government regarding trust reform issues, ITMA conducts regular monthly meetings with top level OST officials to discuss ongoing initiatives. ITMA representatives have made on-site visits to, the OST Headquarters, Call Center, the Lock Box, the National

---

Records Repository, etc. ITMA has conducted Listening Conferences to provide a venue for Indian individuals to meet directly with top level and regional federal representatives regarding concerns affecting their trust accounts and resources.  FY07 activities include continued meetings with OST principal staff, visiting OST Trust Officers on-site to assess the effectiveness of services, extent of utilization of the trust officer expertise by beneficiaries, and general knowledge of the availability of the trust officer; Review progress in upgrading management of trust assets including GIS mapping of trust lands, implementation of "collections" component of lock box system, communication of collection process to local BIA agencies to insure effective follow-up; conduct "Pilot Test" utilizing willing trust landowner to insure accuracy of title in TAMS system.

..................................................**Majel Russell, Esq., ITMA Legal Consultant**
**Elk River Law Office**

**10:30 a.m.   1994 INDIAN TRUST FUND MANAGEMENT REFORM ACT &**
**TITLE II, SECTION 202 "Voluntary Withdrawal from Trust Funds Program"**

An overview of the 1994 Indian Trust Fund Management Reform Act will be conducted.  In addition, Section 202 provides authority for tribes to take their unrestricted tribal trust funds out of government management and control, and to manage their funds directly under a management plan approved by the Secretary.  In approving a tribal trust fund management plan, the Secretary is required to make a determination that the plan affords protection against significant loss of principal.  Some tribes have taken advantage of this provision.  ITMA has had several requests for information from tribes wanting to hear about this part of the 1994 Reform Act, and about its applicability to their funds.

.............................................................................**David Harrison, Esq.**
**David Harrison Consulting**

**11:45 a.m.     Lunch   (on your own)**

**1:00 p.m.   U.S. CONGRESSIONAL UPDATE AND INITIATIVES REGARDING S.1439**
**"AMERICAN INDIAN TRUST REFORM ACT OF 2005"**

Report on two years work in the development of trust reform and Cobell settlement legislation. At the request of Congress, ITMA and NCAI co-chaired an effort to seek input of Indian individuals and Tribes into the formation of legislation.  On August 4, 2006 SCIA staff released a "staff draft" of S.1439 (which had not received approval from the Committee) for discussion purposes.  ITMA has taken no official position on the draft and is awaiting delivery of the final draft to comment.  The new version of S.1439 is expected to be released in the immediate future. The SCIA staff have a standing invite to participate on ITMA's Agenda. SCIA has scheduled five "tribal consultations" and a report on the first session will be provided to the membership by ITMA staff.

..............................**David Mullon, Esq., Majority Counsel, SCIA (Invited)**
.......................................................................**David Harrison, Esq.**
.......................................................................**Shenan Atcitty, Esq.**

**2:45 p.m.     Break**

**3:00 p.m.   ITMA TRIBAL TRUST FUND SETTLEMENT PROJECT**

At the directive of tribal leaders, ITMA has continued working with the Department of Interior on a voluntary tribal settlement proposal.  Staff will report on the efforts over the past year and describe the concepts of the near agreed upon two-phased initiative.  It is acknowledged that ITMA does not represent the interests of any particular Tribe and is not authorized to actually settle any claims. Many Tribes are awaiting the outcome to determine whether they should file lawsuits.  The continued progress of ITMA's project and the prospect for other settlement approaches could be jeopardized if Congress does not continue to toll the statute of limitations on the filing of tribal trust fund claims.  ITMA will discuss the impact of the DOI proposed regulations on this project.

**RULE 408 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Rule 408 protects any agreements or admissions made by litigating parties from later use in litigation should the settlement discussions break down.  The rule is a critical component to meaningful settlement discussions and Tribes should be fully aware of the impacts of any discussions with DOI regarding settlement.   Several options to address this concern will be explored. These options include negotiating a Rule 408 type protection with DOI before proceeding and/or encouraging and assisting Tribes with filing lawsuits.   The relation of Rule 408 and the ITMA Tribal Settlement Project will be discussed and will guide ITMA's Tribal Settlement initiatives.

...............................................Majel Russell, ITMA Legal Consultant
...........................Howie Arnette, Legal Counsel, Warm Springs Tribes
...............................................David Harrison, Harrison Consulting

**4:00 p.m.    PANEL DISCUSSION – TRUST RELATED LITIGATION**
Currently there are several lawsuits against the Federal Government by tribes in regards to trust funds and resources. The panelists who have been engaged in recent litigation will provide a report on recent court rulings relating to tribal trust lawsuits. The attorneys for the Crow Tribe, Confederated Tribes of Warm Springs, and the Osage Tribe and others will provide a brief overview of their cases. In addition, the attorneys for the Cobell plaintiffs will provide an update on the status of the Cobell lawsuit (individual IIM).

...............................Howard Arnett, Warm Springs Tribes, Legal Counsel
.....................................Wilson Pipestem, Osage Tribe, Legal Counsel
......................................Majel Russell, Crow Tribe, Legal Counsel

...........................................John Echohawk, Executive Director, NARF
.........................................................Keith Harper, Kilpatrick Stockton

**5:30 p.m.   CONFERENCE RECESS & ITMA Membership Business Meeting**

~ ~ ~

# WEDNESDAY, October 25, 2006
## 5:30 p.m. – 6:00 p.m.
*Meeting Room:  Belair Ballroom  (Same Meeting Room)*

# ITMA GENERAL MEMBERSHIP BUSINESS MEETING

# AGENDA

CALL TO ORDER..............................................................................Chairman Jim Gray

TRIBAL MEMBER ROLL CALL & CONDUCT ELECTIONS....Secretary Scott Russell

AGENDA ITEMS:

- Election of FY 2007 ITMA Board of Directors

- Six Board Positions

- Only ITMA Tribal members in good standing are allowed to participate in the voting process.
- Only official Tribal leaders or Delegates on file with ITMA are eligible to nominate and vote

- The Board seat belongs to the Tribe who designates its representative
- Six seats expire at the October 2006 Conference (other current seated Tribes serve thru 2007)

- Tribe nominated MUST BE PRESENT to accept nomination
- Newly elected Board Member serves 2-year term; beginning Oct '06 ending Oct '08

<u>Six Board Member terms ENDING AT OCTOBER 2006 Annual Conference. Elections to be conducted for the following seats:</u>

1. Oneida Tribe of Wisconsin
2. Tohono O'odham Nation
3. Central Council Tlingit & Haida
4. Shoshone Bannock Tribes
5. Confederated Tribes of Warm Springs
6. ~~Chippewa Cree Tribe~~
7. Association Representative

<u>Current ITMA Board of Directors Members SERVING THROUGH 2007 Annual Conference:</u>

1. Osage Tribe
2. Three Affiliated Tribes
3. Blackfeet Tribe
4. Confederated Tribes of Colville
5. Nez Perce Tribe
6. Crow Tribe

*<u>Following Elections:</u>*
### RECESS OF ITMA MEMBERSHIP MEETING

~~~

 *6:30 p.m.    -    ITMA FY'07 BOARD OF DIRECTORS MEETING*
*Immediately Following Board Member Elections:*

## *AGENDA*
- *Election of FY '07 Board Officers*
  - *Chairman*
  - *Vice Chairman*
  - *Secretary*
  - *Treasurer*

- *ITMA Business Issues*

# THURSDAY– October 26, 2007
*Room:  Belair*                     *8:30 a.m.*                     *CONTINENTAL BREAKFAST*

### 9:00 a.m.   RECONVENE GENERAL ASSEMBLY

INVOCATION....................................................Councilwoman Betty Cooper
Blackfeet Tribe

ANNOUNCEMENTS............................................ITMA Executive Director

**9:05 a.m.   OFFICE OF THE SPECIAL TRUSTEE REPORT**
Update of OST trust reform activities and

..........................**Donna Erwin, OST Deputy Principal Special Trustee**
..................................**Carrie Moore, Office of External Affairs Officer**
...................................**Patricia Gerard, ITMA-OST Agreement Officer**

**10:00 a.m.   ITMA ANALYSIS AND TRIBAL DISCUSSION OF DOI REGULATORY INITIATIVE -- PROBATE RELATED SECTIONS**

The DOI conducted regional consultation meetings on the initial December 2005 draft regulations pertaining to the areas of: probate; probate hearings and appeals; tribal probate codes; life estates and future interests in Indian land; Indian land title of record; and, conveyances of trust or restricted land. In August 2005, DOI released the second draft of the probate-related regulations for tribal comment and the October 10 deadline for submission of comments to the redraft has been extended. ITMA will conduct a section-by-section overview of the draft regulations and focus discussion on key elements of concern as presented by tribes. Issues deriving from this session will be presented to DOI representatives in a follow up session during the Conference. ITMA will formalize comments for submission to DOI as its official comment on behalf of our membership.

...........................................................**Majel Russell, Esq., ITMA Legal Consultant**
**Elk River Law Office**

*11:30 a.m.   -   ITMA 15th ANNUAL LUNCHEON*
*Room:  Augusta Ballroom                   & Silent Auction*

**1:00 p.m.   ITMA ANALYSIS AND TRIBAL DISCUSSION OF DOI REGULATORY INITIATIVE -- PART 112 - TRUST FUNDS AND ACCOUNTING APPEALS**

This session will provide an overview of the major provisions contained within the second draft version of the DOI regulation released on June 29, 2006 entitled "Tribal Trust Fund Accounting and Appeals". Discussion will center on its potential impact on existing tribal trust fund claims and ITMA's tribal trust fund settlement project. The scope of the proposed rules would essentially affect every tribe that has or has had an interest in any tribal trust fund account administered by the Department. Specifically, the draft rules establish a framework under which a tribe would first undergo a consultation meeting with the Department to review its reconciliation report prepared by Arthur Andersen & Company (Arthur Andersen), as well as any subsequent "reconciliation efforts." Next, the tribe would be given a choice to select one of three processes to undergo for the ultimate resolution of trust fund accounting and "funds-related claims"; an "expedited settlement proposal," a "negotiated tribal accounting plan," and a "historical statement of account." In its official comments to the Department, ITMA stated "that the Department should withdraw the draft Part 112 regulations given the substantial adverse impact they will have on national policies as expressed in laws duly enacted by the Congress and on the federal government's long-recognized fiduciary duties to Indian tribes and peoples."

...........................................................**Shenan Atcitty, Esq., ITMA Legal Consultant**
**Holland & Knight, LLP**

*2:45 p.m.      BREAK*

**3:00 p.m.   NATIONAL CONGRESS OF AMERICAN INDIANS CONFERENCE REPORT**

An overview of the October 2006 NCAI National Conference and priorities for the coming year. A report on the National Budget process for the Department of Interior.

..........................................................**Honorable  Governor  Joe  Garcia**
**National Congress of American Indians (President)**

**4:00 p.m.   STATUTE OF LIMITATIONS EXTENSION**

In 2002, Congress passed Public Law 107-153 establishing December 31, 1999 as the date that Tribes were deemed to have received their respective tribal trust fund reconciliation project report (the "Andersen reports"), required by Section 304 of the American Indian Trust Fund Management Reform Act of 1994 (25 U.S.C. § 4044). Under the general federal six year statute of limitations, this law effectively set a deadline of December 31, 2005

for Tribes to file lawsuits on the adequacy and sufficiency of the Andersen reports. During 2005, ITMA spearheaded the effort to secure a six-year extension of the statute of limitations. DOJ objected to the extension and Congress issued only a one-year extension (P.L. 109-138) to Dec. 30, 2005.  ITMA has requested that Congress provide an additional extension of the statute of limitations to provide a continuing opportunity for out-of-court settlements and to ensure the ability for negotiated settlements between Tribes and the United States to take place and strongly recommends Congress provide additional direction requiring the DOI to fully and properly consult with Indian Tribes on the effect of the expiration language, as well as to provide Congress a substantive report on its consultation outreach to the Tribes and recommendations for equitably resolving these claims and has provided proposed language to meet these objectives.  Proposed legislative language will be discussed.
.......................................................................**Shenan Atcitty, Esq., ITMA Legal Consultant**
**Holland & Knight, LLP**

**5:00 p.m.    CONFERENCE RECESS**


# FRIDAY - October 27, 2006

*Room:  Belair*                              *8:30 a.m.*                    *CONTINENTAL BREAKFAST*

**9:00 a.m.    RECONVENE GENERAL ASSEMBLY**

**INVOCATION**.................................................................**John Wadda**
**Eastern Shoshone Tribe**

**ANNOUNCEMENTS**...........................................**ITMA Executive Director**

**9:05 a.m.    ENERGY RIGHTS OF WAY STUDY REPORT**
Under Section 1813 of the Energy Policy Act of 2005, Congress mandated the Department of Interior and Department of Energy (Departments) to conduct a study of energy rights of way (ROW) on Indian lands and submit their findings in a report to Congress by August 7, 2006. The industry requested Congress to provide a legislative "fix" that would enable the Secretary of Interior to issue a right of way, over tribal objections, for energy transportation. The Departments initiated the process with a series of national scoping meetings where concerns from Indian Country and the industry were received.  The Departments issued a draft report and held four consultation sessions. An overview of the report and tribal, ITMA and other organizational comments will be presented during the session.
......................................................**David Lester, Executive Director**
**Council of Energy Resources Tribes**

**10:00 a.m.  DOJ JUDGEMENT FUND**
An overview of what the Judgment Fund is.  The Judgment Fund continues to be mentioned as a method of payment of potential settlements and lawsuits for the Plaintiff individuals and tribes.  This session will focus on informing participants on what government department oversees the Judgment Fund and the statutory basis for the Judgment Fund and how any settlement or lawsuit award be distributed through the Judgment Fund.
....................................................................**Steve McHugh, Esq.**
**Holland & Knight, LLP**

**11:00 a.m.  TRIBAL LEADERS AND REPRESENTATIVES**
Discussion and strategy development of FY'07 directives to the Intertribal Monitoring Association on Indian Trust Funds staff on trust-related issues.


**12:00 p.m.  ADJOURN 16^TH ANNUAL CONFERENCE**

*All sessions conducted in general assembly; sessions scheduling subject to change.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, et al., | ) | |
| for and on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 06cv02239-JR |
| v. | ) | |
| | ) | **Electronically filed on** |
| DIRK KEMPTHORNE, | ) | **August 8, 2008** |
| SECRETARY OF THE INTERIOR, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED]**
**NOTICE TO MEMBERS OF PUTATIVE CLASS OF PLAINTIFF TRIBES:**
**PRE-CERTIFICATION STATUS OF CASE AND OPPORTUNITY TO JOIN**

**THIS NOTICE MAY CONCERN IMPORTANT TRIBAL RIGHTS. PLEASE READ IT CAREFULLY.**

**TO:    ALL TRIBAL TRUST FUND ACCOUNT HOLDERS. IF YOUR TRIBE RECEIVED AN ARTHUR ANDERSEN "AGREED-UPON ENGAGEMENT AND PROCEDURES REPORT" IN 1996 OR 1997, THIS LAWSUIT MAY AFFECT THE TRIBE'S RIGHTS.**

*A court authorized this Notice.  This is not a solicitation from a lawyer.*

GENERAL BACKGROUND OF THIS CASE

The U.S. Department of the Interior is the trustee for the trust fund accounts of American Indian / Alaska Native tribes.  As trustee, the Interior Department is required to provide accountings to the tribal beneficiaries.

In 1996 - 1997, the Interior Department provided tribes with reports on their trust funds that were prepared by the government's contractor, Arthur Andersen (AA).  Interior Department records show that your Tribe received or was eligible to receive an AA report.

1

The general statute of limitations for civil actions against the federal government provides that claims shall be barred unless filed within 6 years after the right of action first accrues. 28 U.S.C. § 2401(a).

Congress has passed 2 special laws regarding the statute of limitations with respect to tribal trust claims against the government. These laws provide generally that: 1) the statute of limitations does not begin to run on the claims until the tribe has received an accounting of funds from which the tribe can determine whether there has been a loss; and, 2) for purposes of calculating possibly applicable statutes of limitations deadlines, the date on which tribes received their AA reports is deemed to be December 31, 2000.

This action was filed on December 28, 2006 by 12 tribes (Nez Perce, Mescalero Apache, Tule River, Hualapai, Yakama, Klamath, Yurok Tribe, Cheyenne-Arapaho, Pawnee, Sac and Fox, Santee Sioux, and Tlingit and Haida). It alleges in part that the AA reports are not the trust fund accountings required by law. On that point, it seeks a declaratory judgment. ***Importantly, this is not a case for money damages, although there may be some equitable monetary relief awarded if entitlement to such can be established.***

The Interior Department denies any liability or wrongdoing. The Court has not decided whether the Interior Department is liable in any way or whether it did anything wrong.

The Interior Department has moved to dismiss this action (and the separate actions of 7 other tribes) on the grounds that the court does not have jurisdiction over the claims against it because of the sovereign immunity from suit of the federal government, and Administrative Procedures Act restrictions on court review of agency actions. The Defendants' Motion to Dismiss this case is pending before the Court.

STATUS OF CLASS ACTION CERTIFICATION

This action was filed as a class action on behalf of all tribes who received or were eligible to receive AA reports and did not have their own actions for accountings pending as of December 31, 2006. Based on the Interior Department's and court records, the 12 named Plaintiffs estimate that, including themselves, there are about 260 tribes in the class for which they seek certification.

The 12 named plaintiff tribes moved for class certification on June 6, 2008. Due to the sovereignty of tribes, Plaintiffs asked that, if the Court granted class certification, each tribe have an opportunity to exclude itself from the class. The Defendants opposed class certification, and the Court heard oral argument on Plaintiffs' motion on July 24, 2008.

At the conclusion of the oral argument, the Court took the class certification motion under advisement – and the Court has not ruled on class certification yet. However, during the oral argument, the Court indicated that it was inclined to deny class certification on the ground that tribes are sovereigns that cannot be made members of a plaintiff class without a waiver of their sovereign immunity from suit, and that even requiring tribes to exclude themselves from a plaintiff class offends their sovereignty.

The Court also suggested that there was a more appropriate procedural way of addressing the issue of multiple tribes having the same or similar concerns over the AA reports and their trust fund accounts. The Court suggested: 1) that counsel for the 12 named plaintiff tribes, the Native American Rights Fund (NARF), contact the members of the putative class; and, 2) that the members of the putative class be given an opportunity to voluntarily join this action as plaintiffs before the Court rules on class certification.

On August 8, 2008, the 12 named plaintiffs moved the Court for leave to allow NARF to contact the members of the putative class by court-approved notice, and for an opportunity for members of the putative class to join this action voluntarily as additional plaintiffs before the Court rules on class certification. On _____, the Court granted this motion of Plaintiffs and approved this Notice.


HOW YOUR LEGAL RIGHTS MAY BE AFFECTED AND WHAT YOU MAY DO

**The Court has ruled that before it rules on Plaintiffs' motion for class certification, members of the putative class shall have 60 days from the date of this Notice, or, until [actual date 60 days from date of Notice to be inserted here] to voluntarily join this action as a plaintiff. This deadline likely will not be extended, so you have a very limited time in which to make a decision.**

If you are a member of the putative class in this action – that is, if you are a tribe that received or was eligible to receive an AA report, and if you do not already have your own action pending for an accounting of your trust funds -- at this time:

- YOU ARE NOT REQUIRED TO JOIN THIS ACTION

- YOU MAY SEEK TO VOLUNTARILY JOIN THIS ACTION


If you do not want to join this action, and if the Court denies class certification, you likely will still have a very limited opportunity to intervene in this action if you wish to do so. *If you do not join or intervene timely in this action, you may risk some or all of your tribal trust fund claims being "time-barred" by possibly applicable statutes of limitations.*

3

If you wish to join this action, you will need an attorney to seek that joinder.  You may contact the counsel of the 12 named plaintiffs (NARF) according to the information below, or, you may contact counsel of your own choice.  *Either with NARF or with your own counsel you have only 60 days from the date of this Notice, or, until [actual date 60 days from date of Notice to be inserted here], to have your attorney file your permissive joinder motion with the Court.*

If you wish to contact NARF, you may reach us at:

•        Telephone number:  1-800-___-_____; or,

•        Email address:  _____@_____

*Please note that this telephone number and this email address are set up only to RECEIVE voice-mails and emails, but your inquiry will be logged and responded to.*

NARF also maintains a website for this case, which is www.tribaltrust.com.

If you wish to know more about this action you may inspect the Court's file during normal business hours at the Office of the Clerk, U.S. District Court for the District of Columbia, 333 Constitution Ave, NW, Washington, DC, 20001.  **PLEASE DO NOT WRITE OR TELEPHONE THE COURT REGARDING THIS NOTICE OR THIS CASE.**

SO APPROVED:

Dated: _____        _____
                                                                      HON. JAMES ROBERTSON
                                                                      United States District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE NEZ PERCE TRIBE, *et al.,* | ) | |
| for and on behalf of themselves | ) | |
| all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06cv02239-JR |
| | ) | |
| | ) | **Electronically filed on** |
| DIRK KEMPTHORNE, | ) | **August 8, 2008** |
| SECRETARY OF THE INTERIOR, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE FOR
PLAINTIFFS' COUNSEL TO SEND COURT-APPROVED NOTICE TO MEMBERS
OF THE PUTATIVE CLASS OF PLAINTIFFS, AND FOR MEMBERS OF THE
PUTATIVE CLASS TO HAVE AN OPPORTUNITY FOR PERMISSIVE JOINDER AS
PLAINTIFFS BEFORE A RULING ON CLASS ACTION CERTIFICATION, AND
APPROVING NOTICE TO PUTATIVE CLASS**

This matter is before the Court on Plaintiffs' Motion for Leave for Plaintiffs' Counsel to

Send Court-Approved Notice to Members of the Putative Class of Plaintiffs, and for Members of

the Putative Class to have an Opportunity for Permissive Joinder as Plaintiffs before a Ruling on

Plaintiffs' Pending Motion for Class Certification, and for Approval of Plaintiffs' Proposed Notice

to the Putative Class. Upon consideration of Plaintiffs' Motion and Defendants' Opposition to the

Motion, it is hereby ORDERED that Plaintiffs' Motion is GRANTED.

1

Plaintiffs' counsel shall have 14 days from the date of entry of this Order to send the Approved Notice to members of the putative class. Members of the putative class shall have sixty days from the date that Notice is sent to join this action as plaintiffs under Rule 20(a)(1) during which time I will not rule on class certification.


SO ORDERED.


Date: _____     _____
                                                                          HON. JAMES ROBERTSON
                                                                          United States District Court

2